**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:23-cr-00061-MN |
| | ) | |
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____)

**MR. BIDEN'S RULE 33 MOTION FOR A NEW TRIAL ON ALL COUNTS**
**FOR LACK OF JURISDICTION**

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

## INTRODUCTION

Pursuant to Rule 33, Mr. Biden moves for a new trial on all counts because the Court was divested of jurisdiction when it empaneled the jury and conducted the trial without it.

## BACKGROUND

Mr. Biden filed two notices of appeal in this case to the Third Circuit raising claims on appeal that would prevent a trial on any count in this case—a first notice on April 17, 2024 (D.E.105) and a second notice on May 20, 2024 (D.E.133). The Third Circuit entered an order dismissing the first appeal on May 9, 2024, but the issuance of the mandate was delayed while the Third Circuit considered Mr. Biden's petition for rehearing and rehearing *en banc*. *See* Fed. R. App. P. 41(b) (addressing issuance of the mandate). The Third Circuit entered an order dismissing Mr. Biden's second appeal on May 28, 2024, and denied Mr. Biden's rehearing petition on the first appeal on May 31, 2024. The Third Circuit, however, did not then and has not yet issued its mandate as to the orders dismissing either appeal. Thus, when this Court empaneled the jury on June 3, 2024 and proceeded to trial, it was without jurisdiction to do so.

## ARGUMENT

## I.   A NEW TRIAL IS REQUIRED BECAUSE THIS COURT LACKED JURISDICTION

### A.  A New Trial Is Required Because This Court Was Divested Of Jurisdiction

"An appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007) ("automatic divestiture"); *Venen v. Sweet*, 758 F.2d 117, 120 (3d Cir. 1985) ("As a general rule, the timely filing of a notice of appeal is an event of jurisdictional significance, *immediately* conferring jurisdiction on a Court of Appeals

and divesting a district court of its control over those aspects of the case involved in the appeal.")
(emphasis added).  It is black-letter law that "[t]he action of a court of appeals does not become
final until its mandate is issued." *United States v. Felton*, 811 F.2d 190, 198 (3d Cir. 1987).  "When
the matter is on appeal, the district court lacks power to proceed. . . .  The mandate of the court of
appeals serves to fix with certainty the point at which jurisdiction passes from the appellate to the
trial court."  *Id.*; *see Price v. Dunn*, 139 S. Ct. 1533, 1537 (2019) (Thomas, J. concurring in denial
of certiorari) ("'a district court generally is without jurisdiction to rule in a case that is on appeal'—
even after the court has rendered a decision—'until the mandate has issued'") (citations omitted);
*Shahin v. PNC Bank, N.A.*, 2016 WL 5403101, at *2 (D. Del. Sept. 26, 2016) (explaining
jurisdiction remains with the Third Circuit until it issues its mandate); *Bradshaw v. Lappin*, 2009
WL 1396189, at *1 (D. Colo. May 15, 2009) (refusing to proceed to trial because it risks reversal,
as "[i]t is well established that jurisdiction does not return to a district court until issuance of the
appellate mandate").  "Simply put, jurisdiction follows the mandate."  *Shahin v. PNC Bank, N.A.*,
678 F. App'x 62, 63 (3d Cir. 2017) (quoting *United States v. Rivera*, 844 F.2d 916, 921 (2d Cir.
1988)).

Naturally, any district court action taken after it has been divested of jurisdiction by an
appeal must be vacated.  *Venen*, 758 F.2d at 123 (acknowledging that vacating the district court's
orders "will burden the district court in the proceedings which will undoubtedly follow.
Nevertheless, jurisdictional requirements may not be disregarded for convenience sake").  The
proceedings in this case closely track *United States v. DeFries*, 129 F.3d 1293 (D.C. Cir. 1997).
There, the government appealed the dismissal of a single count and the D.C. Circuit reversed,
reinstating the count, but the defendant filed a petition for rehearing which delayed the issuance of
the mandate.  Nevertheless, the district court empaneled a jury and proceeded to trial.  The D.C.

Circuit issued its mandate about one week into the trial. On appeal from the conviction that followed, the D.C. Circuit vacated the conviction on the count that had been the subject of the pending appeal when the trial began because the mandate had not issued. *Id.* at 1302. The D.C. Circuit explained: "In reaching this conclusion, we fully understand that appellants' trial took several months, consuming thousands of hours of court and lawyer time. The mandate rule, however, is clear, well-established, and grounded in solid considerations of efficient judicial administration." *Id.* at 1303. Here, no mandate was issued during the trial or even now, and the Special Counsel did not move the Third Circuit for an expedited mandate after it ruled.

This case is no different from *DeFries* in terms of the fact that the Court empaneled a jury and proceeded to trial before the Court of Appeals returned jurisdiction to the Court by issuing its mandate. Consequently, the conviction must be vacated here, as it was in *DeFries*.

**B. The Fact That The Third Circuit May Ultimately Issue A Mandate Returning Jurisdiction To This Court Does Not Cure The Defect In Proceeding Without Jurisdiction**

That the Third Circuit may later issue a mandate returning jurisdiction to this Court, after a 7-day trial resulting in a three-count conviction, does not change the fact that the trial proceeded before jurisdiction was returned to this Court. As the D.C. Circuit explained in *DeFries*: "That we ultimately sustained the district court's jurisdiction in this case is of no moment; district court jurisdiction cannot turn on retrospective examination of appeals court action. Where, as here, our mandate had not issued, the district court lacked jurisdiction to proceed with trial whether we later sustained its jurisdiction or not." *Id.* at 1303.

Likewise, the Third Circuit has squarely ruled that a dismissal for lack of jurisdiction does not restore jurisdiction to a district court until it issues its mandate. *See District 65, Distributive, Processing & Office Workers Union v. McKague*, 216 F.2d 153, 155 (3d Cir. 1954). In *District*

*65*, the Third Circuit advised at oral argument that it was inclined to dismiss the appeal for lack of jurisdiction because there was no final order and it ultimately did issue "an order dismissing the appeal . . . for want of jurisdiction." *Id.* Appellant's counsel suggested at oral argument that he would go back to the district court to obtain a final order, but the Third Circuit "then unequivocally informed counsel that the court below was without jurisdiction to make such an order since the appeal was pending in this court." *Id.* Nevertheless, the appellant did go back to the district court to request a final order, and the district court granted that order. Although the Third Circuit ultimately concluded it lacked jurisdiction over the initial appeal, the Third Circuit held "[t]he court below was without jurisdiction to enter the [subsequent] order" as long as the appeal remained pending before the Third Circuit. *Id.*; *see Leonard v. United States*, 633 F.2d 599, 610 (2d Cir. 1980) (describing *District 65* as holding "the filing of a notice of appeal from a non-appealable order also immediately divests the district court of jurisdiction to proceed as to the matters involved in the purported appeal"); *Am. Inst. for Mental Stud. v. Brinn*, 1985 WL 3486, at *1 (S.D.N.Y. Nov. 4, 1985) (explaining *District 65*'s "holding that actions taken by district court after filing of notice of appeal, even from non-appealable orders, will be vacated"). Accordingly, the law is settled in this Circuit and dictates that the Court must vacate Mr. Biden's convictions and order a new trial.

To be sure, the Third Circuit is sensitive to the consequences of district courts being unnecessarily divested of jurisdiction by unwarranted appeals, and it has provided a procedure for addressing those situations. In *United States v. Leppo*, the Third Circuit adopted a procedure for handling improper attempts to divest a district court of jurisdiction by filing a "frivolous appeal." 634 F.2d 101, 104 (3d Cir. 1980). In that case, a district court granted a defendant's motion for a mistrial based on improper testimony by a government agent. Six weeks after granting the

defendant's mistrial motion, the defendant claimed—contrary to well-established law—that a mistrial order prevents retrial under the Double Jeopardy Clause. *Id.* at 103. The Third Circuit "agree[d] with the district court that Leppo's motion to dismiss was both dilatory and frivolous." *Id.* The Third Circuit plainly had no jurisdiction over the interlocutory appeal.

To handle future frivolous claims of appellate jurisdiction and prevent them from improperly divesting district courts of jurisdiction, the Third Circuit adopted the *Dunbar* rule. *Id.* at 105 (citing *United States v. Dunbar*, 611 F.2d 985 (5th Cir. 1980) (*en banc*)). *Leppo* explained that a frivolous appeal "does not divest the district court of jurisdiction to proceed with trial, if the district court has found the motion to be frivolous and supported its conclusions by written findings. . . . Of course, in the absence of a finding that the motion is frivolous, the trial court must suspend its proceedings once a notice of appeal is filed." *Id.* This certification process "must be used with restraint" because it is a narrow exception to the rule requiring district courts to wait for the courts of appeals to decide their own jurisdiction. *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989) (Easterbrook, J.).

The Special Counsel did not ask this Court to certify Mr. Biden's first or second appeals as frivolous, and this Court made no certification that either appeal was frivolous. It is not surprising that the Special Counsel did not ask for certification and this Court did not make such a certification. For an appeal to be frivolous, an appellate court must find that the district court's "disposition is so plainly correct that nothing can be said on the other side," *Apostol*, 870 F.2d at 1339, or that the appellant's argument "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The issue is not even whether the appeal is likely to succeed on the merits, but only whether the appeal is arguable; the test is designed to screen out only "inarguable claims." *Id.* at 328. One side loses in every appeal, but that does not mean the losing

side's arguments were frivolous.  Here, Mr. Biden's claims to appellate jurisdiction did not prevail but they were not frivolous.

More importantly, this Court did not certify Mr. Biden's appeals as frivolous, so that it could reassert jurisdiction.[1]  And, as the Third Circuit made clear in *Leppo*, "in the absence of a finding that the motion is frivolous, the trial court must suspend its proceedings once a notice of appeal is filed."  634 F.2d at 105.  A district court's options when faced with an interlocutory appeal are to either wait for jurisdiction to be restored by the court of appeals' mandate or to issue a certification of frivolousness.  The Third Circuit also could have been asked to file its mandates sooner.  The certification process would be meaningless if a district court could obtain the same result by ignoring the process, and it would create the added problem of uncertainty as to where jurisdiction exists.  The mandate rule and certification process provide that certainty, and that is lost if both are ignored.  Mr. Biden's convictions should be vacated.

## CONCLUSION

Mr. Biden's convictions should be vacated because the Court lacked jurisdiction to proceed to trial.


Dated: June 24, 2024                        Respectfully submitted,

                                            /s/ *Abbe David Lowell*
Bartholomew J. Dalton (#808)                Abbe David Lowell
DALTON & ASSOCIATES, P.A.                   Christopher D. Man

---

[1] By contrast, when Mr. Biden filed a motion explicitly seeking injunctive relief and indicated that he may seek an interlocutory appeal on the denial of that motion, the Special Counsel asked the Court to deny the motion and certify it as frivolous under the *Dunbar* procedure.  The Court did as the Special Counsel requested and denied the motion and explicitly made the *Dunbar* certification.  D.E.191 at 8–9.  Mr. Biden then advised the Court that he would not appeal that issue, but he objected to the Court's finding of frivolousness.  D.E.194.  The fact that the Special Counsel asked the Court for a *Dunbar* certification as to that order, and the Court did so, stands in marked contrast to Mr. Biden's first two appeals of orders where no *Dunbar* certification was requested or given.  Consequently, jurisdiction does not return to this Court until the mandates issue following the completion of those appeals.

6

1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

WINSTON & STRAWN
1901 L Street NW
Washington, D.C. 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com
CMan@winston.com

*Counsel for Robert Hunter Biden*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2024, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Abbe David Lowell*
Abbe David Lowell

*Counsel for Robert Hunter Biden*