08:13:49  1                    IN THE UNITED STATES DISTRICT COURT

2                        FOR THE DISTRICT OF DELAWARE

3

4     UNITED STATES OF AMERICA, ) VOLUME 1
                                )
5                               ) CRIMINAL ACTION
      v.                        ) NO. 23cr61(MN)
6                               )
      ROBERT HUNTER BIDEN,      )
7                               )
                  Defendant.    )
8

9

10                        Monday, June 3, 2024
                          8:45 a.m.
11                        Jury Trial

12                        Courtroom 4A
                          844 King Street
13                        Wilmington, Delaware

14

15

16    BEFORE:  THE HONORABLE MARYELLEN NOREIKA
                United States District Court Judge

17

18

19    APPEARANCES:

20
                          SPECIAL COUNSEL'S OFFICE
21                        BY:  DEREK E. HINES, ESQ.
                          BY:  LEO WISE, ESQ.
22

23                                Counsel for the United States

24

25

1    APPEARANCES CONTINUED:

2

3              DALTON & ASSOCIATES, P.A.
               BY:  BARTHOLOMEW J. DALTON, ESQ.
4              BY:  CONNOR DALTON, ESQ.

5              -and-

6              WINSTON & STRAWN LLP
               BY:  ABBE DAVID LOWELL, ESQ.
7              BY:  DAVID KOLANSKY, ESQ.
               BY:  ISABELLA OISHI, ESQ.

8

9                       Counsel for the Defendant

10

11

12              _ _ _ _ _ _ _ _ _ _ _

13

08:17:32 14

08:46:56 15

08:46:56 16              THE COURT:  All right.  Good morning, everyone.

08:46:58 17    Please be seated.

08:47:00 18              All right.  Thank you for being here, everyone.

08:47:06 19    My name is Maryellen Noreika, and I am the judge in this

08:47:09 20    criminal case, which is the United States vs. Robert Hunter

08:47:14 21    Biden, for which we are about to pick a jury.  I am going to

08:47:17 22    ask you all some questions to help us in the jury selection

08:47:20 23    process.  Before I ask my questions, I am going to ask my

08:47:24 24    deputy clerk to swear in the panel to answer any questions

08:47:27 25    truthfully.

08:47:30  1              **COURTROOM DEPUTY:  Members of the jury panel,**

08:47:32  2  **will you please rise and raise your right hand.**

08:47:39  3              **(Jury panel sworn.)**

08:47:50  4              **THE COURT:  All right.  Thank you very much.**

08:47:53  5  **You may be seated.**

08:47:55  6              **All right.  You each have a list of the**

08:47:57  7  **questions that I am going to read.  If you answer yes to any**

08:48:01  8  **of the questions that I ask, please make a note.  At the end**

08:48:04  9  **of the questions, you will all move into another courtroom**

08:48:07 10  **and then I will ask those of you who answered yes to any of**

08:48:11 11  **the questions to come back into this courtroom one at a time**

08:48:14 12  **so that you can talk with the lawyers and me about your**

08:48:16 13  **answers.**

08:48:17 14              **Jury selection and the presentation of evidence**

08:48:21 15  **in this case is expected to conclude by next Friday,**

08:48:26 16  **June 14th, 2024, but jury deliberations could extend your**

08:48:30 17  **service beyond that.  The schedule that I expect to keep**

08:48:33 18  **over the days of evidence presentation will include a**

08:48:35 19  **morning break of fifteen minutes, a lunch break of thirty to**

08:48:39 20  **forty-five minutes, and an afternoon break of fifteen**

08:48:42 21  **minutes.  We will start at 9:00 a.m. and finish no later**

08:48:45 22  **than 4:30 or 4:45 p.m. each day.**

08:48:48 23              **1.  Does the schedule that I have just mentioned**

08:48:50 24  **present a special problem to any of you?**

08:48:54 25              **2.  As I mentioned earlier, this is a criminal**

case.  It involves three charges against the defendant, Robert Hunter Biden.

I.  Count One alleges that the defendant made a false statement in the purchase of a firearm in violation of Title 18, United States Code, Section 922(a)(6).

II.  Count Two alleges that the defendant made a false statement related to information required to be kept by law by a federal firearms licensed dealer, in violation of Title 18, United States Code, Section 924(a)(1)(A).

III.  Count Three alleges that the defendant, knowing that he was an unlawful user of a controlled substance or addicted to a controlled substance, did knowingly possess a firearm, in violation of Title 18, United States Code, Section 922(g)(3).

The jury in this case will be asked to decide whether Robert Hunter Biden is guilty beyond a reasonable doubt of these charges against him.  Mr. Biden has pled not guilty to each of the charges and is presumed to be innocent.  Have you heard or read anything about this case or the underlying investigation from the news, social media or any other source?

3.  Have you formed any opinions about this case that would prevent you from being a fair and impartial juror?

4.  Is there anything about the nature of the

08:50:19 1    charges in this case that would prevent you from being a

08:50:24 2    fair and impartial juror?

08:50:26 3          5.   The lawyers involved in this case are:

08:50:31 4    Derrick Hines and Leo Wise, of the United States Department

08:50:37 5    of Justice who represent the United States, and Abbe Lowell,

08:50:48 6    David Kolansky and Isabella Oishi of Winston & Strawn LLP,

08:50:58 7    and Bartholomew Dalton of Dalton and Associates, who

08:51:03 8    represent Robert Hunter Biden.  Do you or your immediate

08:51:08 9    family, such as spouse, child, parent, or sibling, know any

08:51:14 10   of the attorneys I have just named?

08:51:18 11         6.   Have you or any member of your immediate

08:51:21 12   family had any business dealings with, or been employed by,

08:51:25 13   any of these attorneys or their offices?

08:51:27 14         7.   Are you, any member of your immediate

08:51:29 15   family, or close friends acquaintances with Robert Hunter

08:51:34 16   Biden or any member of his family?

08:51:38 17         8.   For the next question, there is a list of

08:51:42 18   the potential witnesses in this case.  I am going to ask you

08:51:46 19   to look through that list.

08:52:04 20         Are you familiar with any of these potential

08:52:07 21   witnesses?

08:52:09 22         9.   The law enforcement agencies involved in

08:52:13 23   this case are:

08:52:14 24         The Federal Bureau of Investigation, the FBI,

08:52:17 25         The Bureau of Alcohol, Tobacco, and Firearms,

the ATF,

       The U.S. Drug Enforcement Administration, DEA,

       The Delaware State Police, DSP.

       Would the fact that those agencies investigated this case interfere with your ability to be a fair and impartial juror?

       10.  Have you, any member of your immediate family, or close friends ever been employed by, or investigated by, any law enforcement agency, including: Delaware or other state or local police, the FBI, ATF, DEA, the Secret Service, U.S. Marshals, IRS, the U.S. Immigration and Customs Enforcement, U.S. Customs and Border Protection, The Bureau of Prisons, any state of federal prosecutor's office, or any state or local prison system?

       11.  Do you believe that you will give more or less weight to the testimony of a law enforcement officer, simply because he or she is employed as a law enforcement officer?

       12.  Have you or any member of your immediate family ever been (a) the victim of a crime, (b) a witness in a criminal case, (c) arrested for a crime, not including minor traffic offenses?

       13.  Do you have any opinions about the criminal justice system that would make it difficult for you to be a fair and impartial juror in this case?

14.  Are you, any member of your immediate family or close friends studying, planning to or currently working in the legal profession (e.g., lawyer, paralegal, or legal secretary)?

15.  Do you have any education or training or work experience in any of the following areas:  Firearms, Law Enforcement or policing; investigations; substance/alcohol abuse, laboratory testing; retail sales? Firearms:

16.  Do you believe that all people should be permitted by law to buy or possess a firearm regardless of whether they have been or are a user of controlled substance or addicted to a controlled substance?

17.  Do you believe that the government should not be able to require a background check for a gun purchase?

18.  Do you or a close family member have any experience purchasing a firearm (including a handgun, pistol, automatic rifle, hunting rifle, or other)?

19.  Are you familiar with any laws, regulations, or requirements regarding purchasing, owning, or selling a firearm?

20.  Have you or a close family member ever filled out any government forms as part of a purchase of a firearm?

08:55:02 1          21.  Do you have any strong views about gun

08:55:04 2  ownership in this country, the gun lobby, or the Second

08:55:08 3  Amendment?

08:55:08 4  Politics:

08:55:08 5          22.  If you are eligible to vote in any

08:55:13 6  elections in which Joseph R Biden was a candidate, would

08:55:18 7  that fact prevent you from maintaining an open and impartial

08:55:23 8  mind until all of the evidence is presented, and the

08:55:25 9  instructions of the Court are given?

08:55:27 10          23.  Have you ever donated money to a political

08:55:32 11  campaign?

08:55:33 12          24.  Have you ever been actively involved in a

08:55:38 13  political campaign, political organization, or any

08:55:41 14  organization that is associated with political party?

08:55:44 15          25.  Have you, or any member of your immediate

08:55:48 16  family or household ever run for, sought, or held any

08:55:52 17  elected or appointed political office?

08:55:55 18          26.  Do your views regarding the 2024 election

08:55:59 19  or of any of the candidates for president in any way prevent

08:56:02 20  you from being a fair and impartial juror in this case?

08:56:06 21          27.  Do you believe the United States Department

08:56:12 22  of Justice, the FBI, ATF, DEA or any other law enforcement

08:56:18 23  agency investigates and prosecutes individuals because of

08:56:21 24  politics?

08:56:22 25          28.  Do you believe Robert Hunter Biden is being

prosecuted in this case because his father is the President of the United States and a candidate for president?

29.    Do you believe Robert Hunter Biden is not being prosecuted for other crimes because his father is the President of the United States and candidate for president?

30.    Do you disagree that the law should apply equally to all, including the son of the President?

Addiction Matters:

31.    Have you, a family member or a close friend ever suffered from drug or alcohol abuse, or been addicted to drugs or alcohol in any way?

32.    Have you, any member of your family or close friends ever sought treatment, professional counsel, entered a rehab program, gone to Alcoholics Anonymous, or tried other forms of addiction treatment or therapy?

33.    Do you have any strong negative views about past users of controlled substances, narcotics, or alcohol?

34.    Do you believe someone who is addicted to drugs should not be charged with a crime?

35.    Do you have any opinions about addiction to drugs or alcohol that would prevent you from maintaining an open, impartial mind until all of the evidence is presented, and the instructions of the Court are given?

36.    If you are selected to sit as a juror in this case, are you aware of any reason why you would be

08:57:45 1  unable to render a verdict solely based on the evidence

08:57:50 2  presented at trial?

08:57:50 3          37.  If you are selected to sit as a juror in

08:57:55 4  this case, are you aware of any reason why you would not be

08:57:58 5  able to follow the law as I give it to you?

08:58:02 6          38.  If you are chosen to sit as a juror in this

08:58:06 7  case, you will be instructed that you will not be able to do

08:58:09 8  any research or investigation, including on the Internet, on

08:58:12 9  any issues in the case or communicate with others about your

08:58:17 10 jury service.  Is this an instruction that you will be able

08:58:24 11 to follow?

08:58:25 12          So, these instructions actually says able, I'm

08:58:31 13 asking you if you will be unable to follow that.

08:58:34 14          39.  Under the law, a defendant need not testify

08:58:41 15 or produce any evidence.  The burden of proof is always on

08:58:45 16 the government.  If a defendant does not testify, the jury

08:58:50 17 may not consider that fact in any way in reaching a

08:58:54 18 decision.  Would you have difficulty following this rule?

08:58:56 19          40.  A fundamental principle of our legal system

08:59:03 20 is that when a person is charged with a crime, he is

08:59:06 21 presumed to be innocent unless and until the government

08:59:09 22 proves guilty beyond a reasonable doubt.  If you are

08:59:11 23 selected to sit as a juror in this case, will you have

08:59:15 24 difficulty following this rule of law?

08:59:17 25          41.  Robert Hunter Biden, as the defendant in

08:59:24  1    this case, may choose not to testify in his own defense, and

08:59:27  2    I instruct you that the choice not to testify, if that is

08:59:33  3    Robert Hunter Biden's choice, may not be held against him.

08:59:37  4    If you are selected as a juror in this case, will you have

08:59:41  5    any difficulty following this instruction?

08:59:43  6            42.   Testimony may be presented in this case by

08:59:46  7    a witness who has received a grant of immunity.  I instruct

08:59:51  8    you that if such a witness testifies, you will have to

08:59:54  9    evaluate that witness's testimony as you would that of any

08:59:58 10    other witness.  If you are selected as a juror in this case,

09:00:01 11    will you have difficulty following that instruction?

09:00:04 12            43.   Have you served on a jury in a criminal

09:00:09 13    case before?

09:00:09 14            44.   Have you served on a grand jury before?

09:00:12 15            45.   Have you ever been a witness in a civil or

09:00:16 16    criminal matter, or been a plaintiff or defendant in any

09:00:20 17    case?

09:00:20 18            46.   Is there anything, such as poor vision,

09:00:25 19    difficulty hearing, difficulty understanding spoken or

09:00:28 20    written English, that would make it difficult for you to

09:00:31 21    serve on this jury?

09:00:33 22            47.   This is my final question.  Is there

09:00:36 23    anything else, including something that you have remembered

09:00:39 24    in connection with one of the earlier questions, that you

09:00:41 25    think you would like to tell me in connection with your

09:00:45 1    service as a juror in this case?

09:00:48 2                That's the end of my questions.  Let me ask the

09:00:55 3    parties, anything that I need to correct or change?

09:00:58 4                MR. HINES:  No, Your Honor.

09:00:59 5                MR. LOWELL:  No, ma'am.

09:01:00 6                THE COURT:  All right.  Thank you.

09:01:02 7                All right.  So at this point, what I am going to

09:01:04 8    do is ask you all to move to the courtroom next door, which

09:01:10 9    is 4B.  You'll be sitting in the same order that you're

09:01:15 10   sitting in here, hopefully, or close to it.  And then what

09:01:22 11   we'll do is my chambers staff will bring you in here back

09:01:28 12   one at a time if you answered yes to any questions.  So

09:01:32 13   they'll ask you if you answered yes, and then if you did,

09:01:35 14   bring you back in here where we can talk about your answers.

09:01:38 15               All right.  While you are waiting, it is very

09:01:42 16   important that you follow the instructions I am about to

09:01:45 17   give you.  I am not providing these instructions to make

09:01:49 18   your service difficult, I am doing so because they are very

09:01:52 19   important.

09:01:53 20               The Sixth Amendment of our constitution

09:01:57 21   guarantees a trial by an impartial jury.  That means jurors

09:02:01 22   must decide the case based solely on the evidence and the

09:02:04 23   law presented here in the courtroom.  My instructions are

09:02:08 24   designed to limit your exposure about the case to anything

09:02:11 25   outside of the courtroom, and ensure a fair trial.

09:02:16  1          So, my instructions:  Do not take any pictures

09:02:20  2   or make any videos or any other type of recording.  Taking

09:02:25  3   pictures, making videos and recordings is not permitted

09:02:30  4   inside of a Federal courtroom.  You all have been allowed to

09:02:33  5   keep your phones with you.  That is a privilege that you

09:02:36  6   have as jurors in recognition of your service.  Most people

09:02:40  7   coming into the courthouse do not have that privilege, so I

09:02:43  8   ask you not to abuse it.

09:02:47  9          Do not talk with anyone else or listen to others

09:02:49 10   talk about this case.  This means you do not talk with

09:02:52 11   anyone about this case.  It means do not talk among

09:02:56 12   yourselves.  Do not talk to or listen to any of the parties,

09:02:59 13   lawyers, or witnesses involved in this case outside of this

09:03:02 14   courtroom.

09:03:03 15          Do not talk to anyone in your family, do not

09:03:09 16   listen to anyone in your family, or friends about this case.

09:03:12 17   Do not talk to or listen to any press or members of the

09:03:15 18   public who are watching this case.  Do not talk to or listen

09:03:19 19   to anyone about this case.

09:03:21 20          Do not watch or listen to any television, radio,

09:03:25 21   podcast, or any other type of mainstream media, or social

09:03:30 22   media programs, or reports about this case, or read any news

09:03:33 23   or internet sources addressing this case in any way.  Do not

09:03:38 24   conduct independent research about the case or the matters,

09:03:42 25   legal issues, individuals or other entities involved in this

case.

        Do not visit any location in this case or conduct any experiments addressing issues in this case.  Do not search or review any traditional sources of information about this case such as dictionaries, reference materials, television news, or entertainment programs or radio programs, or podcasts.

        Do not search the internet or other electronic resources for information about this case, or the witnesses or parties involved in it.  Do not communicate about the case with anyone -- I think I have already said this, but I'll say it again -- including your family or friends whether in person, in writing, through e-mail, text messaging, blogs, social media websites and apps like Twitter, Facebook, Instagram, LinkedIn, WhatsApp, and Snapchat.  Because it is so important to the parties' rights that you decide this case based solely on the evidence and my instructions as to the law, any time that you return to the courtroom, I may ask you whether you have followed these instructions or learned about or shared any information outside of this courtroom.  I would like to let you know that so you don't feel that I'm just putting you on the spot if I do ask those questions.

        Okay.  At this point, I am going to ask you to follow -- who are they following, Mark?  You can follow my

09:05:07 1    **folks, Ms. Smith and Mr. Buckson, and they'll show you the**

09:05:11 2    **right place to go.  It will take us about five minutes,**

09:05:14 3    **ten minutes, we'll take a quick break while you guys go over**

09:05:19 4    **there and then we'll start bringing you back.**

09:05:22 5              **COURTROOM DEPUTY:  All rise.**

09:07:45 6              **(A brief recess was taken.)**

09:14:10 7              **THE COURT:  All right.  Please be seated.  We**

09:14:15 8    **asked the first 35 jurors, potential jurors, if they had**

09:14:21 9    **answered yes to any questions, and one, juror number 21 did**

09:14:26 10    **not answer yes to any questions.  So we'll put juror number**

09:14:34 11    **21 in our pool.**

09:14:37 12              **All right.**

09:14:46 13              **(Juror entering the courtroom.**

09:14:57 14              **THE COURT:  Good morning, sir.**

09:14:59 15              **A JUROR:  Good morning.**

09:15:00 16              **THE COURT:  Thanks for coming in here.**

09:15:01 17              **A JUROR:  No problem.**

09:15:03 18              **THE COURT:  All right.  So you answered yes.**

09:15:05 19    **What question, or questions did you answer yes to?**

09:15:08 20              **A JUROR:  There was quite a few.**

09:15:11 21              **THE COURT:  We can go through in order so you**

09:15:13 22    **don't --**

09:15:14 23              **A JUROR:  Sure, sure.  Number one was not a yes.**

09:15:18 24    **I think the first yes that I would have answered to would**

09:15:21 25    **have been number two, obviously.**

09:15:23  1                THE COURT:  All right.  So you heard something

09:15:25  2    about this case?

09:15:26  3                A JUROR:  Yes.

09:15:26  4                THE COURT:  All right.  Can you tell us what

09:15:31  5    you've heard?

09:15:32  6                A JUROR:  I mean, just the fact that it's

09:15:34  7    happening.  I'm not one to really read into news stories,

09:15:39  8    but of course it's, you know, any sort of social media or

09:15:43  9    attached to any social media, of course it's going to cycle

09:15:48 10    its way through your feed.

09:15:49 11                THE COURT:  Can you tell me specifically what

09:15:54 12    outlets you mentioned, social media, can you tell us what

09:15:58 13    sources?

09:15:59 14                A JUROR:  It would be Google, really, any time

09:16:03 15    you Google search anything, any of the Google news, or

09:16:06 16    Microsoft news, or anything, it pops up.

09:16:10 17                THE COURT:  Anything else that you can think of?

09:16:13 18                A JUROR:  No.

09:16:13 19                THE COURT:  Where do you get your news, news

09:16:16 20    sources, social media, television news, podcasts?

09:16:19 21                A JUROR:  Radio, and internet.

09:16:21 22                THE COURT:  And any specific radio or internet?

09:16:24 23                A JUROR:  I mean, I really only listen to one

09:16:27 24    specific radio station, it's a Baltimore radio station, 98

09:16:32 25    Rock, outside of that, no, Spotify music, things like that.

09:16:38  1          THE COURT:  Nothing like having to come in here

09:16:39  2  and tell everybody what your favorite songs are.

09:16:45  3          Is there anything about what you have heard

09:16:46  4  about this case or read about or had flashed up on your

09:16:52  5  screen that would make it difficult for you to be fair and

09:16:55  6  impartial?

09:16:56  7          A JUROR:  No.

09:16:56  8          THE COURT:  What's your next yes question?

09:17:00  9          A JUROR:  The next yes question, it would be

09:17:13 10  question number ten.

09:17:14 11          THE COURT:  Member of your immediate family

09:17:16 12  employed by law enforcement, can you tell us about that?

09:17:19 13          A JUROR:  Investigated by, essentially, that

09:17:21 14  would be me, Your Honor.

09:17:22 15          THE COURT:  Okay.  All right.  You probably want

09:17:25 16  to go back to what was your favorite song, huh?  Okay.  So

09:17:30 17  tell me, can you tell us a little bit about that?

09:17:33 18          A JUROR:  Well, just local law enforcement, it

09:17:35 19  would be traffic tickets, I think the last thing, most

09:17:41 20  recent thing that I had was a disorderly conduct in June of

09:17:45 21  last year, maybe March, possibly.  I can't quite remember

09:17:50 22  the exact date.

09:17:51 23          THE COURT:  Okay.  Were any of these things --

09:17:54 24  did any of these result in a conviction?

09:17:56 25          A JUROR:  Yes, one.

09:17:57 1                    THE COURT:  Okay.  Was that a misdemeanor or

09:18:00 2      felony?

09:18:01 3                    A JUROR:  Misdemeanor.

09:18:02 4                    THE COURT:  And that was in Delaware?

09:18:04 5                    A JUROR:  Yes, for Delaware.

09:18:05 6                    THE COURT:  And that was the disorderly conduct?

09:18:08 7                    A JUROR:  Yes.

09:18:08 8                    THE COURT:  Anything about that experience that

09:18:10 9      you had with the investigation or anything like that that

09:18:15 10     makes it difficult for you to be fair and impartial in a

09:18:22 11     case where you're going to have testimony from law

09:18:24 12     enforcement agencies?

09:18:26 13                   A JUROR:  I don't think so, no.

09:18:27 14                   THE COURT:  Okay.  All right.  What's your next

09:18:32 15     yes question?

09:18:33 16                   A JUROR:  That would have been 12, essentially,

09:18:35 17     for the arrested for a crime.

09:18:38 18                   THE COURT:  That's the same thing?

09:18:39 19                   A JUROR:  Essentially, yes.  And actually, I was

09:18:42 20     also arrested back in 2008 for misdemeanor possession of

09:18:47 21     marijuana.

09:18:49 22                   THE COURT:  Okay.  Was that where you -- was

09:18:52 23     there a --

09:18:53 24                   A JUROR:  Charge.

09:18:56 25                   THE COURT:  Did you have to pay a fine or

09:18:57  1    anything?

09:18:57  2            A JUROR:  I went to jail for 14 days, it was

09:19:01  3    either that or 7 or 8 years of supervised probation, so I

09:19:06  4    decided that I'll just do that.

09:19:09  5            THE COURT:  Okay.  And anything about that

09:19:10  6    experience that makes it difficult for you to be fair and

09:19:13  7    impartial?

09:19:14  8            A JUROR:  No.

09:19:15  9            THE COURT:  All right.  What's your next yes

09:19:23 10    question?

09:19:23 11            A JUROR:  It would be number 18, where it goes

09:19:26 12    into the --

09:19:27 13            THE COURT:  Purchasing of firearms?

09:19:28 14            A JUROR:  Purchasing a firearm, yes.

09:19:30 15            THE COURT:  Are there multiple ones on this

09:19:33 16    subject?

09:19:33 17            A JUROR:  Yes, like 18, 19, 20, 21.

09:19:37 18            THE COURT:  Okay.  So let's take those.  Tell me

09:19:40 19    about your thoughts on gun ownership, let's start with that

09:19:46 20    and then you can tell us about your personal --

09:19:49 21            A JUROR:  I just -- I believe it's a God given

09:19:52 22    right, obviously it's in our constitution, the Second

09:19:58 23    Amendment that we have, it's been around for a very long

09:20:00 24    time, getting to the semantics of it, that's not for me to

09:20:05 25    decide, but outside of that.  I'm not -- I'm not like a gun

09:20:09  1    aficionado, I own a hunting shotgun, outside of that, I

09:20:15  2    don't own any other firearms.

09:20:17  3              THE COURT:  Any connection with that, did you

09:20:20  4    have to fill out paperwork.

09:20:22  5              A JUROR:  Yes, I wasn't really sure, it's been

09:20:25  6    almost twenty years, I'm thirty-eight now, the first time I

09:20:28  7    ever bought that shotgun, I don't remember filling out

09:20:32  8    federal paperwork necessarily, but I did fill out background

09:20:36  9    check paperwork and things of that nature.

09:20:38 10              THE COURT:  Other than that, do you have any

09:20:40 11    other familiarities with laws, requirements, or regulations

09:20:43 12    about owning or selling a gun?

09:20:45 13              A JUROR:  Nope.

09:20:46 14              THE COURT:  Anyone else in your close family

09:20:47 15    that you were talking about or just you with that gun?

09:20:50 16              A JUROR:  Just me, like I have a brother who is

09:20:53 17    also a firefighter who owns a firearm.  If you're talking

09:20:57 18    immediate family, specify immediate family, I have a huge

09:21:01 19    extended family that is also very, very second amendment

09:21:06 20    savvy I guess you could say.

09:21:09 21              THE COURT:  Is there anything about that -- so

09:21:11 22    you said strong views about gun ownership is you think you

09:21:15 23    should be able to own a gun.  Is there anything about that

09:21:17 24    that would make it difficult for you to be a juror in this

09:21:21 25    case, where the question is whether someone violated a law

09:21:27 1    that would prohibit him from owning a gun?

09:21:31 2                A JUROR:  Especially if it was a law that was

09:21:33 3    violated, I feel like as long as the law was followed, yes,

09:21:36 4    it would be -- no, I wouldn't be impartial to that.

09:21:40 5                THE COURT:  You wouldn't be impartial?

09:21:42 6                A JUROR:  No, like I said, I have my opinions,

09:21:45 7    but as long as the law -- if you're not following the law

09:21:48 8    for that -- that amendment, then, I mean, yes, I have my

09:21:53 9    opinion on that, I guess you could say.  I don't know if I

09:21:57 10   would be impartial or not, I'm sorry.

09:21:58 11               THE COURT:  You don't know?

09:21:59 12               A JUROR:  I might not be.

09:22:00 13               THE COURT:  Okay.  So you might not be impartial

09:22:03 14   if someone had their -- if someone were violating a law that

09:22:08 15   kept them from having a gun?

09:22:12 16               A JUROR:  Okay.  So yeah, if you put it that

09:22:15 17   way, yes, I would not be impartial, I guess -- I mean, yes

09:22:19 18   -- yes, that's what you're asking, yes.

09:22:20 19               THE COURT:  Okay.  What's your next one that

09:22:22 20   you've answered.

09:22:30 21               A JUROR:  Number 45, same thing, have you ever

09:22:47 22   been a witness in a civil or a defendant in a--

09:22:51 23               THE COURT:  Okay.

09:22:51 24               A JUROR:  Yes.

09:22:52 25               THE COURT:  Any other ones that you answered yes

09:22:54  1   to?

09:22:55  2                   A JUROR:  Not that I saw, no, not that I had

09:22:57  3   marked.

09:22:58  4                   THE COURT:  All right.  Thank you.

09:22:59  5                   A JUROR:  Okay.

09:23:00  6                   THE COURT:  Mr. Hines, anything you want to ask?

09:23:02  7                   MR. HINES:  No, Your Honor.

09:23:03  8                   THE COURT:  Mr. Lowell?

09:23:04  9                   MR. LOWELL:  May we just approach a moment, Your

09:23:06 10   Honor, to get clarification.

09:26:20 11                       (Side-bar.

09:26:20 12                   THE COURT:  He said he's confused, I said I

09:26:20 13   understand.

09:26:20 14                   MR. LOWELL:  So maybe we can ask it in the

09:26:20 15   clearest way possible, which is I understand his view about

09:26:20 16   the second amendment, I want to figure out the question, the

09:26:20 17   question could be, so given your views, if you find that

09:26:20 18   someone has violated a law that he or she will be accused

09:26:20 19   of -- that's what I don't get he said either would or would

09:26:20 20   be impartial, I don't see it as artfully as you said, that

09:26:20 21   was garbled twice.

09:26:20 22                   THE COURT:  I thought it got garbled the first

09:26:20 23   time, then he said he could not be impartial.

09:26:20 24                   MR. HINES:  We would move for cause.

09:26:20 25                   MR. LOWELL:  I want the record to be clear

09:26:20  1   whether he can be impartial in a case in which there is a

09:26:20  2   violation in which someone has violated a law and not

09:26:20  3   supposed to be owning the gun.

09:26:20  4           MR. HINES:  I think the question was, what he

09:26:20  5   said, I don't know if I would impartial or not, no, and then

09:26:20  6   you asked, then you might not be impartial, and he said I

09:26:21  7   would not be impartial.

09:26:21  8           MR. LOWELL:  Is there a problem with just

09:26:21  9   clarifying that?

09:26:21 10           THE COURT:  All right.

09:26:21 11           When you were saying that you weren't sure you

09:26:21 12   could be impartial and I appreciate --

09:26:21 13           A JUROR:  To be honest, I'm very nervous, the

09:26:21 14   first time I have ever had to do something like this before.

09:26:21 15           THE COURT:  I get it.  I totally understand,

09:26:21 16   it's natural.  So when you were asked about whether you

09:26:21 17   could be impartial, do you feel that you would have

09:26:21 18   difficulty being impartial looking at or judging a matter

09:26:21 19   where someone broke the law that would prohibit him from

09:26:21 20   having a firearm?

09:26:21 21           A JUROR:  No.

09:26:21 22           THE COURT:  So I just need to be clear, because

09:26:21 23   you said you couldn't -- you would be, you couldn't be

09:26:21 24   impartial and now you're saying you could be impartial and

09:26:21 25   so now I'm getting -- I want to make sure that we understand

09:26:21  1    where you're coming from.

09:26:21  2              A JUROR:  Am I able to essentially try to, I

09:26:21  3    guess I'm more of a three-year old in the aspect that's

09:26:21  4    needed.  What you're saying if someone breaks the law, would

09:26:21  5    I be impartial as far as looking at that case?

09:26:21  6              THE COURT:  Yes.

09:26:21  7              A JUROR:  With them breaking the law and then

09:26:21  8    not being allowed to purchase that firearm?

09:26:21  9              THE COURT:  Yes.

09:26:21 10              A JUROR:  No, I would not be impartial.

09:26:21 11              THE COURT:  All right.  Thank you very much.

09:26:21 12    Just give us a minute.

09:26:21 13              A JUROR:  Yes.

09:26:21 14              (Juror leaving the courtroom.

09:26:21 15              MR. HINES:  Your Honor, we move for cause, the

09:26:21 16    juror cannot be impartial.

09:26:21 17              MR. LOWELL:  With that clarification, yes.

09:26:21 18              THE COURT:  Thank you.  We'll excuse him for

09:26:21 19    cause.

09:26:32 20              (Juror number two entering the courtroom. )

09:26:54 21              THE COURT:  All right.  Good morning, ma'am.

09:26:56 22    Thank you so much for coming in.  I know it's weird with a

09:26:59 23    lot of people in here, but I appreciate it.

09:27:01 24              So can you tell me what questions you answered

09:27:04 25    yes to?

09:27:05  1                    A JUROR:  Number two, I heard about the case on

09:27:09  2     the news.

09:27:09  3                    THE COURT:  Can you tell us what you have heard?

09:27:11  4                    A JUROR:  I was watching the news last week and

09:27:14  5     I heard it was starting and it clicked for me, that's why it

09:27:19  6     moved from an 8:30 reporting time to 7:30.

09:27:23  7                    THE COURT:  Did you then do any further research

09:27:25  8     about the case or any of the charges in the case?

09:27:29  9                    A JUROR:  No.

09:27:29 10                    THE COURT:  And can you tell us-- so it was, you

09:27:34 11     said on the news?

09:27:35 12                    A JUROR:  I think I was watching Good Morning

09:27:39 13     America.

09:27:39 14                    THE COURT:  And do you remember seeing it or

09:27:40 15     hearing from it any place else?

09:27:42 16                    A JUROR:  No.

09:27:44 17                    THE COURT:  Okay.  And generally speaking, can

09:27:48 18     you tell us where you get your news from?

09:27:51 19                    A JUROR:  Like Good Morning America, or like CNN

09:27:56 20     or MSNBC.

09:28:00 21                    THE COURT:  All right.  Did you answer any other

09:28:02 22     questions?

09:28:02 23                    A JUROR:  Yes.

09:28:03 24                    THE COURT:  Okay.

09:28:04 25                    A JUROR:  Number 12, I had an apartment, I was a

09:28:07 1    victim of a crime, my apartment was broken into about a

09:28:11 2    decade ago.

09:28:12 3                THE COURT:  Okay.  And is there anything about

09:28:15 4    that experience that you had when your apartment was broken

09:28:19 5    into that would make it difficult for you to be fair and

09:28:22 6    impartial here?

09:28:23 7                A JUROR:  No.

09:28:25 8                THE COURT:  All right.  Anything else you

09:28:26 9    answered yes?

09:28:28 10               A JUROR:  Numbers 23 and 24, I have donated and

09:28:32 11   volunteered on campaigns in the past.

09:28:35 12               THE COURT:  Okay.  Can you tell us what

09:28:37 13   campaigns -- so, 23 and 24, you have donated.  How often do

09:28:42 14   you donate?

09:28:44 15               A JUROR:  Rarely.

09:28:44 16               THE COURT:  Do you recall when you --

09:28:46 17               A JUROR:  I know I donated to Hillary Clinton's

09:28:49 18   campaign for president, and volunteered on that one, as well

09:28:53 19   as some other local campaigns.

09:28:57 20               THE COURT:  What other local campaigns?

09:28:59 21               A JUROR:  I don't remember.

09:29:03 22               THE COURT:  Anything else that you -- so you

09:29:09 23   said that you were involved and volunteered for the Hillary

09:29:17 24   Clinton campaign?

09:29:19 25               A JUROR:  Made phones calls and talked to people

09:29:21  1   on the street.

09:29:22  2            THE COURT:  Was that for the 2016 presidential

09:29:25  3   --

09:29:25  4            A JUROR:  The 2018, I didn't volunteer in 2016.

09:29:29  5   2008, sorry.

09:29:30  6            THE COURT:  2008?

09:29:32  7            A JUROR:  Not 2018.

09:29:33  8            THE COURT:  2008.

09:29:34  9            A JUROR:  I volunteered.

09:29:36 10            THE COURT:  For the primary?

09:29:37 11            A JUROR:  Yes.

09:29:38 12            THE COURT:  How long did you do that?

09:29:40 13            A JUROR:  I was in Kentucky at the time, I did

09:29:43 14   it for the Kentucky primary, it was about a month or so, I

09:29:47 15   think.

09:29:47 16            THE COURT:  And did you do anything other than

09:29:51 17   make phone calls?

09:29:53 18            A JUROR:  I think I like handed out pamphlets on

09:29:56 19   the street, I don't remember exactly.

09:29:59 20            THE COURT:  All right.  Is there anything about

09:30:01 21   that experience that would make it difficult for you to be

09:30:04 22   fair and impartial involving -- in a case involving the son

09:30:10 23   of the democratic President of the United States?

09:30:14 24            A JUROR:  No.

09:30:14 25            THE COURT:  You would be able to find him guilty

09:30:16 1    if you thought the evidence and law dictated that?

09:30:19 2            A JUROR:  Yeah, I don't see any relation

09:30:23 3    between.

09:30:25 4            THE COURT:  All right, any other questions you

09:30:28 5    answered yes to?

09:30:30 6            A JUROR:  Questions 31 and 32, I know it didn't

09:30:35 7    say immediate family, I have had aunts and uncles and

09:30:39 8    cousins who are alcoholics in AA and other drugs.

09:30:45 9            THE COURT:  Is that -- I'm sorry to hear that.

09:30:50 10   Is that something that you have intimate familiarity with,

09:30:56 11   or just sort of that you know about?

09:30:57 12           A JUROR:  I know about.

09:30:59 13           THE COURT:  And is there anything about you

09:31:04 14   knowing about your family members with those issues that

09:31:08 15   would make it difficult for you to be fair and impartial in

09:31:14 16   terms of a case involving assertions that there was drug

09:31:20 17   addiction or a use of controlled substances?

09:31:23 18           A JUROR:  No, I would want my family members to

09:31:27 19   be treated impartially as well.

09:31:29 20           THE COURT:  Based on that experience, you

09:31:30 21   wouldn't have a problem convicting someone if they admitted

09:31:34 22   a crime or did something while using a controlled substance?

09:31:38 23           A JUROR:  No.

09:31:38 24           THE COURT:  Any others that you answered yes to?

09:31:40 25           A JUROR:  That was it.

09:31:41  1          THE COURT:  Any questions you want to ask?

09:31:43  2          MR. HINES:  No, Your Honor.

09:31:43  3          MR. LOWELL:  No, Your Honor.

09:31:44  4          THE COURT:  Thank you.  Just give us a minute.

09:31:51  5          (Juror exiting the courtroom.

09:31:54  6          MR. LOWELL:  May I address the Court, if someone

09:31:56  7  says something about politics, or guns, or drugs, instead of

09:32:00  8  saying "could you find the defendant guilty", could I ask

09:32:02  9  that you ask the question, notwithstanding your politics.

09:32:07 10          THE COURT:  Could you be impartial?

09:32:09 11          MR. LOWELL:  Could you be fair and impartial in

09:32:11 12  hearing the evidence?

09:32:11 13          THE COURT:  I would be happy to.  Okay.  Any

09:32:15 14  motions?

09:32:16 15          MR. HINES:  No motion.

09:32:17 16          MR. LOWELL:  No motion.

09:32:18 17          THE COURT:  Okay.

09:32:45 18          (Juror number three entering the courtroom.

09:32:50 19          THE COURT:  All right.  Good morning.

09:32:51 20          A JUROR:  Good morning.

09:32:52 21          THE COURT:  All right.  Thanks for coming in.

09:32:54 22  Can you tell us what questions you answered yes to?

09:32:58 23          A JUROR:  Number 2, number 12, and number 31 and

09:33:07 24  32.

09:33:08 25          THE COURT:  Okay.  Let's start with number two.

09:33:11 1    That's the one have you heard anything about this case.  All

09:33:14 2    right.  Can you tell us what you've heard?

09:33:18 3                    A JUROR:  Sure, I just watch the evening news

09:33:20 4    every night, so whatever is being reported, I take it in and

09:33:24 5    let it go, and move on with my day.

09:33:26 6                    THE COURT:  Have you done any -- after hearing

09:33:28 7    about it on the evening news, did you do any additional

09:33:31 8    research?

09:33:32 9                    A JUROR:  No.

09:33:32 10                   THE COURT:  Okay.  You said the evening news,

09:33:34 11   where do you typically get your news from?

09:33:37 12                   A JUROR:  The CBS Evening News.

09:33:41 13                   THE COURT:  Any other newspapers, television,

09:33:45 14   radio, magazines, podcasts, social media?

09:33:48 15                   A JUROR:  No.

09:33:49 16                   THE COURT:  So then you said number 12?

09:34:01 17                   A JUROR:  Yes.

09:34:01 18                   THE COURT:  Have you or any member of your

09:34:06 19   immediate family ever been the victim of a crime.

09:34:09 20                   A JUROR:  My sister committed a crime, arrested

09:34:12 21   for a crime.

09:34:13 22                   THE COURT:  Do you recall what that was?

09:34:14 23                   A JUROR:  I believe it was credit card fraud and

09:34:17 24   drug charges.

09:34:20 25                   THE COURT:  Was she convicted?

09:34:24 1                      A JUROR:  Yes.

09:34:25 2                      THE COURT:  Do you know if that was in a state

09:34:26 3      or --

09:34:27 4                      A JUROR:  It was in the State of Delaware.

09:34:29 5                      THE COURT:  Was that recently?

09:34:30 6                      A JUROR:  What year is this?

09:34:34 7                      THE COURT:  2024.

09:34:35 8                      A JUROR:  Probably ten years ago.

09:34:37 9                      THE COURT:  Anything about that experience that

09:34:39 10     would make it difficult for you to be fair and impartial?

09:34:43 11                     A JUROR:  No.

09:34:44 12                     THE COURT:  Did she go to prison for that?

09:34:46 13                     A JUROR:  She did.

09:34:47 14                     THE COURT:  Okay.  Anything else for number 12?

09:34:52 15                     A JUROR:  No.

09:34:53 16                     THE COURT:  Okay.  And then you said 31 and 32?

09:34:56 17                     A JUROR:  Correct.

09:34:57 18                     THE COURT:  Drug or alcohol abuse, been addicted

09:35:08 19     to drugs?

09:35:08 20                     A JUROR:  Correct, and that's my sister again.

09:35:11 21                     THE COURT:  Is your sister currently still --

09:35:15 22                     A JUROR:  She's currently clean.

09:35:20 23                     THE COURT:  And is there anything about your

09:35:22 24     sister's struggles that would make it difficult for you to

09:35:29 25     be fair and impartial in dealing with this case?

09:35:33  1                  A JUROR:  I don't believe so, no.

09:35:34  2                  THE COURT:  Any further questions?

09:35:36  3                  MR. HINES:  No, Your Honor.

09:35:37  4                  MR. LOWELL:  No, Your Honor.

09:35:39  5                  THE COURT:  All right.  Thank you very much.

09:35:40  6                  A JUROR:  Thank you.

09:35:41  7                  (Juror leaving the courtroom.

09:35:44  8                  MR. LOWELL:  Judge, because there is only one to

09:35:48  9      have any questions, as they come in, you're now following

09:35:51 10      the order of the juror list?

09:35:54 11                  THE COURT:  Yes.  So that was juror number

09:35:57 12      three.  So there are no motions?

09:35:59 13                  MR. HINES:  No, Your Honor.

09:35:59 14                  MR. LOWELL:  No, Your Honor.

09:36:21 15                  (Juror number four entering the courtroom.

09:36:26 16                  THE COURT:  Good morning.

09:36:28 17                  A JUROR:  Hi, how are you?

09:36:29 18                  THE COURT:  Fine, thanks.  Thanks for coming in.

09:36:31 19                  A JUROR:  No problem.

09:36:31 20                  THE COURT:  Okay.  You answered yes.  Can you

09:36:33 21      tell us what questions you answered yes to?

09:36:36 22                  A JUROR:  Yes.  Number one.

09:36:37 23                  THE COURT:  Okay.

09:36:38 24                  A JUROR:  Number six.

09:36:39 25                  THE COURT:  Okay.

09:36:40 1          A JUROR:  Number 18, 19, 20.  That's it.

09:36:54 2          THE COURT:  Okay.  Mark, can you ask people when

09:36:57 3  they're sitting out there if they could just write at the

09:37:00 4  top of their page what numbers they answered, it may make it

09:37:04 5  go faster than looking through the pages.

09:37:06 6          What about number one?

09:37:08 7          A JUROR:  Yeah.  So I was full-time, I'm -- I'm

09:37:15 8  the sole income earner for my family of three, so it would

09:37:17 9  be kind of hard to be here.

09:37:21 10         THE COURT:  You would not get paid?

09:37:23 11         A JUROR:  Yeah, I won't get paid.

09:37:25 12         THE COURT:  You're an admissions director for

09:37:27 13 what?

09:37:27 14         A JUROR:  Acadia Silverside, it's a skilled

09:37:36 15 nursing facility.

09:37:36 16         THE COURT:  And so essentially, you would have

09:37:38 17 to take two weeks off of work?

09:37:40 18         A JUROR:  Uh-huh.

09:37:41 19         THE COURT:  And not get paid, and you're the

09:37:44 20 sole breadwinner?

09:37:45 21         A JUROR:  Yes, that's correct.

09:37:46 22         THE COURT:  Okay.

09:37:47 23         A JUROR:  We're also in a plan of action period

09:37:52 24 at my job for the state, we have to make up a plan of action

09:37:56 25 for our survey that we just recently had, and I do take part

09:38:00  1    in that.

09:38:01  2            THE COURT:  Okay.  All right.  Do you want to

09:38:04  3    tell us about number six?

09:38:07  4            Your answer to number six.  Have you or your

09:38:11  5    immediate -- had business dealings with or been employed by

09:38:14  6    the attorneys.

09:38:15  7            A JUROR:  So Dalton and Associates, I recently

09:38:17  8    reached out to them for the death of my mother for a case,

09:38:23  9    potential medical malpractice case.

09:38:25 10            THE COURT:  Have you heard --

09:38:26 11            A JUROR:  Yeah, it was denied by them.  They

09:38:29 12    didn't want to take on the case.

09:38:30 13            THE COURT:  They didn't take the case?

09:38:32 14            A JUROR:  Correct.

09:38:32 15            THE COURT:  All right.  How about 18, 19, 20?

09:38:37 16            A JUROR:  I own a firearm.

09:38:40 17            THE COURT:  Okay.  Anything about that -- can

09:38:44 18    you tell us what was the purpose of -- what's your purpose

09:38:48 19    for having it, is it just self protection, recreational,

09:38:54 20    hunting, collecting?

09:38:56 21            A JUROR:  Just recreation and protection.

09:38:58 22            THE COURT:  Okay.  And do you -- is that where

09:39:02 23    you have experience purchasing a firearm, you purchased it

09:39:05 24    yourself?

09:39:06 25            A JUROR:  Yes, that's correct.

09:39:07  1              THE COURT:  And did you have familiarity with

09:39:10  2    the laws, regulations, and requirements, is that from the

09:39:13  3    purchase of that single firearm?

09:39:16  4              A JUROR:  Yes.

09:39:17  5              THE COURT:  What type of firearm is it?

09:39:18  6              A JUROR:  It's a handgun.

09:39:21  7              THE COURT:  All right.  Anything about -- do you

09:39:23  8    have any strong views on the Second Amendment?

09:39:25  9              A JUROR:  Uh-uh.

09:39:26 10              THE COURT:  Okay.  Anything about your purchase

09:39:28 11    of the firearm or the forms you had to fill out that would

09:39:31 12    make it difficult for you to be fair and impartial?

09:39:34 13              A JUROR:  No.

09:39:35 14              THE COURT:  Any questions?

09:39:36 15              MR. HINES:  No, Your Honor.

09:39:37 16              MR. LOWELL:  Two follow ups, judge.  Can you ask

09:39:41 17    -- may I ask?

09:39:41 18              THE COURT:  You may ask.

09:39:42 19              MR. LOWELL:  Thank you, ma'am.  Good morning.

09:39:44 20    How long have you had that handgun and where did you

09:39:47 21    purchase it?

09:39:48 22              A JUROR:  I probably have had it since -- it's

09:39:53 23    been at least ten years, and I bought it from Cabalas.

09:39:58 24              MR. LOWELL:  Thank you.

09:39:59 25              A JUROR:  Uh-huh.

09:40:00  1          THE COURT:  All right.  Thank you.  Just give us

09:40:02  2  a moment.

09:40:03  3          (Juror leaving the courtroom.

09:40:08  4          MR. HINES:  We're moving for cause on financial

09:40:10  5  hardship for her family.  She's the solo worker for her

09:40:15  6  family, she needs to support them.

09:40:17  7          MR. LOWELL:  No objection.

09:40:18  8          THE COURT:  So I will excuse her for cause.

09:41:01  9          (Juror entering the courtroom.

09:41:26 10          THE COURT:  Good morning.

09:41:27 11          A JUROR:  Hi.

09:41:28 12          THE COURT:  Hi, how are you.  Thanks for coming

09:41:31 13  in.  So what numbers did you answer yes to?

09:41:35 14          A JUROR:  10, 18, and 43.

09:41:44 15          THE COURT:  10, 15.

09:41:45 16          A JUROR:  10,18.

09:41:46 17          THE COURT:  10, 18 and 43.

09:41:49 18          Ten, have you, any member of your immediate

09:41:52 19  family, or close friends been employed by, investigated by

09:41:56 20  any law enforcement agency?

09:42:01 21          A JUROR:  --

09:42:02 22          THE COURT:  She used to work for the Secret

09:42:04 23  Service.  They're trying to hear what you're saying, too, so

09:42:08 24  that, so if you could speak up.  If not, we could give her

09:42:12 25  the microphone.

09:42:13  1        THE COURT:  Okay.  So you used to work for the

09:42:16  2   Secret Service, how long did you work for them?

09:42:18  3        A JUROR:  24 years.

09:42:19  4        THE COURT:  Okay.  And did you work here in

09:42:24  5   Delaware, where did you work?

09:42:25  6        A JUROR:  In D.C.

09:42:26  7        THE COURT:  In D.C.

09:42:28  8        A JUROR:  Uh-huh.

09:42:31  9        THE COURT:  Anything else that you answered for

09:42:36 10   other than that?

09:42:37 11        A JUROR:  18.

09:42:38 12        THE COURT:  No, no, I'm sorry, I'm just trying

09:42:40 13   to make sure if there is anything other than your work for

09:42:43 14   the Secret Service that made you answer yes to number ten.

09:42:46 15        A JUROR:  No, oh, my husband worked for the

09:42:49 16   Secret Service.

09:42:49 17        THE COURT:  And your husband worked for the

09:42:51 18   Secret Service.  What kind of responsibilities did you have?

09:42:54 19        A JUROR:  I was a contract negotiator.

09:43:02 20        THE COURT:  And your husband?

09:43:03 21        A JUROR:  He's an Uniformed Division Officer.

09:43:09 22        THE COURT:  Is there anything about that, your

09:43:11 23   work, or your knowledge of your husband's work that would

09:43:15 24   make it difficult for you to be fair and impartial in this

09:43:18 25   case?

09:43:19  1              A JUROR:  No, ma'am.

09:43:19  2              THE COURT:  Okay.  What about number 18?

09:43:22  3              A JUROR:  My father, my husband owns a handgun.

09:43:26  4              THE COURT:  A handgun.  Is that part -- is that

09:43:29  5     personal use or at his job?

09:43:31  6              A JUROR:  No, personal, he's retired, he's been

09:43:33  7     retired since '92.

09:43:35  8              THE COURT:  Okay.  Are you retired from the

09:43:37  9     Secret Service?

09:43:38 10              A JUROR:  I did.

09:43:38 11              THE COURT:  When was that?

09:43:39 12              A JUROR:  12 years ago.

09:43:40 13              THE COURT:  Okay.  All right.  So he owns a gun.

09:43:43 14     Do you know anything about the paperwork or regulations or

09:43:48 15     requirements for owning a gun?

09:43:50 16              A JUROR:  Not really.

09:43:51 17              THE COURT:  Anything about the fact that he owns

09:43:53 18     a gun that would make it difficult for you to be fair and

09:43:57 19     impartial?

09:43:58 20              A JUROR:  No, ma'am.

09:43:58 21              THE COURT:  And then number 43, have you served

09:44:07 22     on a jury in a criminal case before?

09:44:09 23              A JUROR:  Yes, in Anne Arundel County, I was an

09:44:12 24     alternate juror on a criminal case.

09:44:15 25              THE COURT:  What county?

09:44:16  1                    A JUROR:  It's Anne Arundel County, in Maryland.

09:44:19  2                    THE COURT:  In Maryland?

09:44:20  3                    A JUROR:  Yes.

09:44:21  4                    THE COURT:  How long ago was that?

09:44:23  5                    A JUROR:  Probably about 20 years ago or

09:44:24  6      something like that.

09:44:25  7                    THE COURT:  Did you actually deliberate, you

09:44:28  8      said you were an alternate.

09:44:29  9                    A JUROR:  I was an alternate, so I did not

09:44:31 10      deliberate, yes.

09:44:34 11                    THE COURT:  Anything about that experience that

09:44:36 12      would make it difficult for you to be fair and impartial

09:44:40 13      here?

09:44:40 14                    A JUROR:  No.

09:44:40 15                    THE COURT:  Any further questions you all want

09:44:42 16      to ask?

09:44:43 17                    MR. HINES:  No, Your Honor.

09:44:43 18                    MR. LOWELL:  I have one, judge.  Ma'am, thanks

09:44:46 19      for your service.  Where when you were a Uniformed Person in

09:44:50 20      the Secret Service were you deployed, where did you work in

09:44:53 21      Washington?

09:44:54 22                    A JUROR:  It was my husband that was a Uniformed

09:44:57 23      Division Officer.

09:44:57 24                    THE COURT:  Do you know whether he was --

09:44:58 25                    A JUROR:  He was in D.C., he's a Uniformed

09:45:01 1   Division Officer there in D.C.

09:45:02 2           MR. LOWELL:  Different places, was at the

09:45:04 3   Capital, was he at some other Federal Building, do you know?

09:45:07 4           A JUROR:  Yeah, he would have been at different

09:45:09 5   buildings, the Whitehouse, Capital, foreign missions, that

09:45:12 6   type of thing.

09:45:15 7           MR. LOWELL:  Thank you.

09:45:16 8           A JUROR:  I just did contract negotiations, I

09:45:21 9   was in administrations.

09:45:21 10          THE COURT:  You don't need to include -- it's

09:45:24 11  fine.  Give us a minute.

09:45:26 12              (Juror leaving the courtroom.

09:45:33 13          MR. HINES:  We have no motion.

09:45:34 14          MR. LOWELL:  No motion.

09:45:35 15          THE COURT:  Okay.  Thank you.

09:45:40 16              (Juror entering the courtroom.

09:45:44 17          THE COURT:  You're number six?

09:45:45 18          A JUROR:  Yes.

09:45:45 19          THE COURT:  Thank you for coming in.  Can you

09:45:48 20  tell us what questions you answered yes to?

09:45:51 21          A JUROR:  1, 2, 18, 20, 21, 28, 29, 31, 32.

09:46:01 22          THE COURT:  Okay.  Let's start with number one.

09:46:03 23  That's the issue of hardship, difficulty in serving.

09:46:09 24          A JUROR:  Yes, so next week my husband will be

09:46:11 25  out of town for two days, so I don't know if I could make

09:46:14  1    the 9 o'clock.  I still would probably be able to make like

09:46:18  2    a little later.  And then if it extends, I already have

09:46:22  3    vacation booked from the 17th through the 20th.

09:46:31  4                THE COURT:  Okay.  Let's just, with respect to

09:46:35  5    the -- you would have to take care of your children in the

09:46:40  6    morning?

09:46:40  7                A JUROR:  Yeah, I have three young children.

09:46:42  8                THE COURT:  And if you couldn't get here by

09:46:46  9    9 o'clock, I'm just trying to figure out --

09:46:49 10                A JUROR:  Probably 9:30.

09:46:50 11                THE COURT:  You could get here by 9:30.  Okay.

09:46:57 12          You said also number two?

09:46:59 13                A JUROR:  Yeah, number two.  I don't know if

09:47:02 14    this is the same thing, but I have heard about the computer,

09:47:07 15    a long time ago, and data being removed from the computer,

09:47:11 16    but that was a couple of years ago.  I don't know if it's

09:47:15 17    the same case or not.  And I have heard of other cases that

09:47:20 18    he is on trial for.

09:47:22 19                THE COURT:  Okay.  Do you remember the subject

09:47:23 20    matter of any of that?

09:47:26 21                A JUROR:  No.

09:47:29 22                THE COURT:  Okay.  And so you haven't done any

09:47:34 23    --

09:47:34 24                A JUROR:  No, I had no idea what I was coming to

09:47:37 25    today.

09:47:37  1          THE COURT:  All right.  Can you tell us,

09:47:39  2  generally speaking, where you might have heard, where do you

09:47:41  3  get your news from, where you might have heard --

09:47:44  4          A JUROR:  I have an App on my phone, the 6ABC

09:47:48  5  app.

09:47:48  6          THE COURT:  The 6ABC?

09:47:50  7          A JUROR:  Yeah.

09:47:50  8          THE COURT:  That's like the local ABC family.

09:47:53  9          A JUROR:  Yeah, exactly.

09:47:54 10          THE COURT:  Anyplace else?

09:47:55 11          A JUROR:  No, I don't get to watch the TV very

09:47:59 12  often because of my children.

09:48:00 13          THE COURT:  Three kids?

09:48:01 14          A JUROR:  Yeah.

09:48:02 15          THE COURT:  Okay.  You said 18.  That is --

09:48:11 16          A JUROR:  Yeah, my father owns a variety of

09:48:16 17  guns.  I don't know what types, but I know he has a couple.

09:48:19 18          THE COURT:  Do you own any guns?

09:48:21 19          A JUROR:  No.

09:48:21 20          THE COURT:  Do you -- and so do you know

09:48:27 21  anything about the filling out of the paperwork for the

09:48:30 22  guns?

09:48:30 23          A JUROR:  No, I have no idea what paperwork.

09:48:33 24          THE COURT:  Did you answer yes to 21, about

09:48:35 25  strong views about gun ownership?

09:48:37 1          A JUROR:  Yeah, and in our country I don't feel

09:48:42 2    like the laws are strong enough and anyone can get a gun.

09:48:46 3    And that politicians care more about money than protecting

09:48:51 4    us, in general.

09:48:52 5          THE COURT:  Okay.  So in -- is it fair to say

09:48:58 6    that your strong views are, you would like more gun laws?

09:49:03 7          A JUROR:  Yeah.

09:49:04 8          THE COURT:  Now, is there anything about your

09:49:06 9    views that would make it difficult for you to be fair and

09:49:09 10   impartial in a case where the defendant is -- or fair and

09:49:14 11   impartial in this case?

09:49:17 12         A JUROR:  In general, I feel like I'm a very

09:49:21 13   fair person, so I would try to be fair and impartial, but

09:49:25 14   that's, you know.

09:49:26 15         THE COURT:  Okay.  Do you think you could put

09:49:29 16   aside your strong views on gun ownership and listen to the

09:49:34 17   facts and apply the law in this case?

09:49:36 18         A JUROR:  I would try my best, yes.

09:49:39 19         THE COURT:  Okay.  So if you were a defendant in

09:49:42 20   a case and someone said I would try my best, that would

09:49:45 21   probably give you a little bit of heart burn.  So I'm trying

09:49:49 22   to figure out, does I'll try my best really mean I don't

09:49:52 23   think I can do it, or I think I can do it, that's what I'm

09:49:56 24   trying to understand?

09:49:57 25         A JUROR:  I would do it.

09:49:58 1                THE COURT:  Okay.  All right.  Anything else on

09:50:02 2  the close family members or experience with the firearms,

09:50:05 3  other than your dad?

09:50:06 4                 A JUROR:  No.

09:50:07 5                THE COURT:  And what you've already told us

09:50:09 6  about your thoughts?

09:50:10 7                 A JUROR:  No.

09:50:10 8                THE COURT:  Okay.  31 and 32.

09:50:14 9               This has to do with people you know who have

09:50:21 10  suffered from drug or alcohol abuse or addictions.

09:50:26 11               A JUROR:  Addiction.

09:50:28 12              THE COURT:  Can you just tell us about that?

09:50:29 13              A JUROR:  My brother, he's struggled with opioid

09:50:33 14  addiction.

09:50:36 15              THE COURT:  Is he currently struggling with it?

09:50:39 16              A JUROR:  He is going to rehab and seems to be

09:50:42 17  doing better right now.

09:50:51 18              THE COURT:  Is there anything about your

09:50:52 19  experience with your brother and his struggles that would

09:50:55 20  make it difficult for you to be fair and impartial here?

09:50:58 21              A JUROR:  I do not think so.

09:51:00 22              THE COURT:  All right.  Any questions you all

09:51:02 23  want to ask?

09:51:03 24              MR. HINES:  No, Your Honor.

09:51:04 25              MR. LOWELL:  No, Your Honor.

09:51:05  1           THE COURT:  All right.  Thank you.  Just give us

09:51:07  2  a minute.

09:51:07  3           A JUROR:  Thank you.

09:51:08  4           (Juror leaving the courtroom. )

09:51:12  5           MR. LOWELL:  I would on a cumulative basis of

09:51:15  6  the answers including to be worried about vacation, we move

09:51:27  7  to strike for cause?

09:51:28  8           THE COURT:  She said -- she didn't say I don't

09:51:30  9  think so, she said I think so, and then she said I would.

09:51:35 10           MR. LOWELL:  I can make it for the record, I

09:51:39 11  heard familiarity with other cases, her having to be prodded

09:51:44 12  by you three times on the issue of that gun, I think that

09:51:50 13  it's a better case to strike her for cause.

09:51:53 14           MR. HINES:  I don't think it was prodding, I

09:51:54 15  think she was thinking very carefully about Your Honor's

09:51:57 16  questions, and she couldn't be more emphatic at the end that

09:52:02 17  I would do it, she could be fair and impartial, so I don't

09:52:06 18  think that's an issue.

09:52:06 19           THE COURT:  What about the schedule?

09:52:08 20           MR. HINES:  I think from the perspective of a

09:52:11 21  vacation later, I don't think we're going into the week of

09:52:13 22  the 17th, but I don't know what the defense case will be,

09:52:17 23  nonetheless, I think we can work with her if Your Honor

09:52:19 24  would like to start later, if she does get selected for the

09:52:23 25  jury, and at this point of the proceedings before keeping

09:52:26   1    her in the pool.

09:52:27   2              MR. LOWELL:  On that last point, I don't know

09:52:29   3    how long the case will take either, of course, but I do know

09:52:33   4    the possibility of jury deliberations can be when she's

09:52:37   5    planning to go on vacation, that kind of pressure on

09:52:39   6    somebody trying to get done I don't think is something we

09:52:42   7    can take the risk of given the availability of other jurors

09:52:46   8    and the questions she answered as she did.

09:52:48   9              MR. HINES:  One other thing, Your Honor, she

09:52:50  10    said her husband will be out of town next week, it wouldn't

09:52:53  11    be just all week, it will just be two days.

09:52:57  12              THE COURT:  I'm not so worried about the two

09:52:59  13    days, it's the 17th.  I'll overrule the objections because I

09:53:03  14    do think her answer was quite emphatic that she would be

09:53:07  15    fair, and I am going to hope that vacation doesn't create a

09:53:15  16    problem, it is two weeks from today which we really should

09:53:19  17    be finished.

09:53:22  18              (Juror entering the courtroom.

09:53:32  19              THE COURT:  Good morning.

09:53:33  20              A JUROR:  Good morning.

09:53:33  21              THE COURT:  Juror number seven?

09:53:36  22              A JUROR:  Yes.

09:53:36  23              THE COURT:  Thanks for coming in.  Can you tell

09:53:40  24    us which questions you answered yes to?

09:53:43  25              A JUROR:  31 and 32.

09:53:45 1        THE COURT:  All right.  So that is the question
09:53:47 2  about you or folks who are close to you who have struggled
09:53:51 3  with addiction.
09:53:52 4        A JUROR:  Yes.
09:53:52 5        THE COURT:  Can you tell us a little bit about
09:53:55 6  that?
09:53:55 7        A JUROR:  I know of a family member that has
09:53:57 8  struggled with addiction, in and out of rehab, and still in
09:54:01 9  rehab.
09:54:02 10        THE COURT:  Still struggling?
09:54:03 11        A JUROR:  Yes.
09:54:03 12        THE COURT:  Is this a close family member?
09:54:05 13        A JUROR:  Close family member.
09:54:07 14        THE COURT:  Okay.  And is there anything about
09:54:11 15  your knowledge of that or your interactions with that person
09:54:15 16  or other family members that would make it difficult for you
09:54:18 17  to be fair and impartial in this case?
09:54:23 18        A JUROR:  Other than I know that once you tried
09:54:25 19  it and you go get help, you're going to go back, you know,
09:54:33 20  get more of the stuff that he shouldn't have in his body.
09:54:36 21        THE COURT:  So does that mean it would be
09:54:38 22  difficult for you to be fair and impartial?
09:54:41 23        A JUROR:  Probably.  Thinking about it.
09:54:43 24        THE COURT:  Okay.  So let me ask if anyone has
09:54:48 25  any questions you want to follow-up?

09:54:50  1                    MR. HINES:  No, Your Honor.

09:54:51  2                    MR. LOWELL:  No, ma'am.

09:54:52  3                    THE COURT:  All right.  Thank you.  Just give us

09:54:54  4    a moment.

09:54:55  5                        (Juror exiting the courtroom. )

09:54:59  6                    MR. HINES:  Move to strike.

09:55:00  7                    MR. LOWELL:  Given her answer, I think that's

09:55:02  8    right.

09:55:04  9                    THE COURT:  Okay.  Next.

09:55:10 10                        (Juror entering the courtroom.

09:55:14 11                    THE COURT:  Good morning, sir.  Thanks for

09:55:16 12    coming in.

09:55:17 13                    A JUROR:  Good morning.

09:55:18 14                    THE COURT:  All right.  You are juror number

09:55:20 15    eight?

09:55:20 16                    A JUROR:  Yeah.

09:55:21 17                    THE COURT:  Can you tell us which questions you

09:55:23 18    answered yes to?

09:55:25 19                    A JUROR:  1, 2, 4, 9, 11, 15, 16, 18, 21, 27,

09:55:35 20    28, 31, 32, 35, 36 and 43.

09:55:39 21                    THE COURT:  Okay.  Let's start with number one.

09:55:49 22                    A JUROR:  I work at an eye care clinic, I'm one

09:55:53 23    of only a few people that can work at every one of our

09:55:56 24    clinics due to travel restrictions for others.  We're

09:56:00 25    already short staffed, and we only have about four new

09:56:03 1    people that are in training right now.  None of them can

09:56:06 2    actually do most of the work that we have there, so I'm one

09:56:10 3    of the senior members there.

09:56:12 4         THE COURT:  So if you were not available for the

09:56:15 5    next two weeks, would these patients not get the care that

09:56:21 6    they need?

09:56:22 7         A JUROR:  We would have to reduce our schedule

09:56:24 8    every day at least to allow for time, that's at the main

09:56:30 9    place that I'm at, I think we have 2 or 3 senior members,

09:56:34 10   and one that only does medical testing.

09:56:46 11        MR. HINES:  Your Honor, I don't think we need to

09:56:51 12   go further.

09:56:51 13        THE COURT:  We're going to excuse you so you can

09:56:54 14   do the things you need to do.  Do you have your stuff with

09:56:58 15   you?

09:56:59 16        A JUROR:  Yes.

09:56:59 17        THE COURT:  You're excused.  Thank you very much

09:57:04 18   for coming in.

09:57:06 19             (Juror exiting the courtroom.

09:57:08 20             (Juror entering the courtroom.

09:57:11 21        THE COURT:  Good morning, sir.

09:57:12 22        A JUROR:  Good morning.

09:57:12 23        THE COURT:  Thanks for coming in.  Can you tell

09:57:15 24   us what you answered yes to?

09:57:17 25        A JUROR:  1, 18, 19, 20, 21, 46 and 47.

09:57:26  1                    THE COURT:  All right.  Can you tell us your

09:57:28  2      issue, your scheduling issue?

09:57:30  3                    A JUROR:  I'm self-employed, I can't --

09:57:35  4      financially I can't --

09:57:36  5                    THE COURT:  You're a carpenter, you do

09:57:39  6      carpentry.  If you're not around, no one is doing work that

09:57:43  7      gets you paid?

09:57:44  8                    A JUROR:  Exactly.

09:57:45  9                    THE COURT:  And two weeks would be --

09:57:47 10                    A JUROR:  Bankrupt me.

09:57:48 11                    THE COURT:  It would bankrupt you.  Want me to

09:57:54 12      ask further questions?

09:57:55 13                    MR. HINES:  No, Your Honor.

09:57:58 14                    MR. LOWELL:  We understand, judge, we agree on

09:58:02 15      this.

09:58:02 16                    THE COURT:  Thank you.  We're going to let you

09:58:05 17      go and thank you for coming in today.  I appreciate it.

09:58:09 18                    (Juror exiting the courtroom. )

09:58:13 19                    (Juror number ten entering the courtroom).

09:58:19 20                    THE COURT:  Good morning, ma'am.  How are you?

09:58:22 21                    A JUROR:  Hi, I'm okay.

09:58:23 22                    THE COURT:  Thanks for coming in.

09:58:25 23                    A JUROR:  Okay.

09:58:25 24                    THE COURT:  All right.  So can you tell us what

09:58:30 25      questions you answered yes to?

09:58:32 1          A JUROR:  I answered yes to 31 and 32.

09:58:35 2          THE COURT:  31 and 32.  Okay.  Those are the

09:58:38 3   questions about whether you or someone who is close to you

09:58:42 4   have struggled with addiction.

09:58:44 5          A JUROR:  Yes.

09:58:44 6          THE COURT:  Can you tell us a little bit about

09:58:47 7   that?

09:58:48 8          A JUROR:  Yeah, it's my boyfriend, he suffers

09:58:51 9   from addiction.  That's pretty much it.

09:58:58 10          THE COURT:  So this is your current boyfriend?

09:59:01 11          A JUROR:  Yes.

09:59:01 12          THE COURT:  And is he currently using drugs?

09:59:06 13          A JUROR:  Not right now, no.

09:59:08 14          THE COURT:  Okay.  And, but you have been with

09:59:11 15   him during the periods of time when he has struggled?

09:59:16 16          A JUROR:  Yes.

09:59:17 17          THE COURT:  Do you think that your experience

09:59:18 18   with him would make it difficult for you to be fair and

09:59:21 19   impartial in this case?

09:59:22 20          A JUROR:  No.

09:59:23 21          THE COURT:  Okay.  Any questions that you all

09:59:28 22   want to ask?

09:59:31 23          MR. HINES:  Ma'am, since your boyfriend began

09:59:35 24   using drugs, began struggling with drugs, have you ever

09:59:39 25   purchased or tried to purchase a firearm?

```
09:59:41  1              A JUROR:  No.

09:59:41  2              MR. HINES:  Thank you.

09:59:42  3              THE COURT:  Anything Mr. Lowell?

09:59:44  4              MR. LOWELL:  No.

09:59:44  5              THE COURT:  Thank you very much.  You can just

09:59:46  6    give us a minute.

09:59:47  7                   (Juror exiting the courtroom. )

09:59:52  8              MR. LOWELL:  No motion.

09:59:54  9              MR. HINES:  No motion.

09:59:56 10              THE COURT:  Okay.  Thank you.

09:59:58 11                   (Juror entering the courtroom. )

10:00:07 12              THE COURT:  Good morning, sir.  How are you?

10:00:09 13              A JUROR:  Good morning, how are you?

10:00:10 14              THE COURT:  Fine, thank you.

10:00:11 15              Thanks for coming in.  Can you tell us what

10:00:14 16    questions you answered yes to?

10:00:16 17              A JUROR:  Number 3, 9, 10, 11, 12, 18, 20, 21,

10:00:25 18    22, 26, 29, 31, 32, 33, 35, 38, 41, 45 and 47.

10:00:38 19              THE COURT:  All right.  I kind of lost count

10:00:43 20    after a while, but we'll figure it out.

10:00:45 21              Question number three, have you formed any

10:00:49 22    opinions about this case that would prevent you from being

10:00:53 23    fair and impartial?

10:00:54 24              A JUROR:  Yes.

10:00:54 25              THE COURT:  Can you tell us --
```

10:00:57  1              A JUROR:  It piggy backs numbers 9, 10 and 11 as

10:01:00  2    well, ma'am.

10:01:01  3              THE COURT:  Is that because of the --

10:01:02  4              A JUROR:  I have very strong roots, my father

10:01:05  5    was a police officer for 30 plus years, my grandfather was

10:01:11  6    employed by the FBI for 20 plus years.

10:01:13  7              THE COURT:  You think it would be difficult for

10:01:15  8    you to be fair and impartial?

10:01:16  9              A JUROR:  Correct.

10:01:17 10              THE COURT:  Any issues if I excuse juror number

10:01:20 11    11?

10:01:22 12              MR. LOWELL:  No, ma'am.

10:01:23 13              MR. HINES:  No, ma'am.

10:01:24 14              THE COURT:  Thank you very much, sir.

10:01:26 15              A JUROR:  You're welcome.

10:01:27 16              (Juror exiting the courtroom.

10:01:32 17              (Juror entering the courtroom.

10:01:37 18              THE COURT:  Good morning, sir.  Thanks for

10:01:42 19    coming in.

10:01:42 20              A JUROR:  Good morning.

10:01:43 21              THE COURT:  All right.  Can you tell us what

10:01:44 22    questions you answered yes to?

10:01:46 23              A JUROR:  Question number one.

10:01:48 24              THE COURT:  Okay.

10:01:49 25              A JUROR:  I might just have a scheduling concern

10:01:54  1  because I have a dentist appointment on the 12th at

10:01:58  2  9:00 a.m.

10:01:59  3            THE COURT:  Okay.  Dentist appointment on the

10:02:02  4  12th?

10:02:07  5            A JUROR:  I just might need to reschedule it.

10:02:10  6            THE COURT:  Would it be a hardship to you to

10:02:13  7  reschedule the dentist appointment?

10:02:15  8            A JUROR:  I don't think so, no.

10:02:16  9            THE COURT:  Anything else that you had?

10:02:18 10            A JUROR:  Number two, I believe.

10:02:19 11            THE COURT:  Okay.

10:02:20 12            A JUROR:  I heard about this information on the

10:02:23 13  news.

10:02:23 14            THE COURT:  Okay.  And do you recall what you

10:02:26 15  heard?

10:02:27 16            A JUROR:  About having a possibility of a gun

10:02:36 17  and maybe drugs, that's what I've heard.

10:02:39 18            THE COURT:  Okay.  Have you done any research or

10:02:42 19  looked into it?

10:02:42 20            A JUROR:  No.

10:02:43 21            THE COURT:  Or do you just recall hearing about

10:02:46 22  it?

10:02:46 23            A JUROR:  I just recall hearing about it.

10:02:47 24            THE COURT:  Where do you typically get your news

10:02:49 25  from?

10:02:50 1          A JUROR:  I usually get it from on normal social

10:02:55 2    media, be it like YouTube, but I sometimes do research on

10:02:59 3    the Guardian and CNN, but not really this time.

10:03:05 4          THE COURT:  Not really this time, or not at all?

10:03:07 5          A JUROR:  I mean, I do look at the news on

10:03:10 6    Guardian and CNN, but not about this case.

10:03:13 7          THE COURT:  Okay.  Got you.  Okay.  Anything --

10:03:18 8    any other questions you answered yes to?

10:03:20 9          A JUROR:  16, I believe.

10:03:23 10          THE COURT:  Okay.  Training or work experience

10:03:26 11    in various areas.

10:03:29 12          A JUROR:  I have worked in retail before and

10:03:35 13    trained in laboratories, for chemistry for schooling, so

10:03:43 14    that laboratory work.  I won't say lab testing per se, but

10:03:51 15    worked in a lab.

10:03:52 16          THE COURT:  Okay.  What type of retail sales

10:03:55 17    were you involved in?

10:03:55 18          A JUROR:  I worked at Rite Aid.

10:03:59 19          THE COURT:  Rite Aid?

10:04:00 20          A JUROR:  Yeah.

10:04:00 21          THE COURT:  Okay.  Any other questions you

10:04:04 22    answered yes to?

10:04:06 23          A JUROR:  43.

10:04:09 24          THE COURT:  You have served on a jury before?

10:04:12 25          A JUROR:  Yes.

10:04:12  1                    THE COURT:  When was that?

10:04:13  2                    A JUROR:  That was a long while ago, I would say

10:04:16  3    11 years ago.

10:04:17  4                    THE COURT:  Was that in Delaware or some place

10:04:19  5    else?

10:04:19  6                    A JUROR:  It was in Delaware.

10:04:21  7                    THE COURT:  Was it the State Court, do you

10:04:21  8    remember?

10:04:23  9                    A JUROR:  I believe it was the State Court.

10:04:26 10                    THE COURT:  Do you remember what kind of case it

10:04:27 11    was?

10:04:28 12                    A JUROR:  Some sort of legal conflict with a

10:04:34 13    dentist and a client at one point, but that was -- I didn't

10:04:39 14    really actually take part in that case, for the jury, they

10:04:45 15    asked.

10:04:45 16                    THE COURT:  Say that again?

10:04:46 17                    A JUROR:  They didn't pick me as a juror.

10:04:49 18                    THE COURT:  So you didn't actually serve on the

10:04:51 19    jury?

10:04:52 20                    A JUROR:  No.

10:04:52 21                    THE COURT:  You just got pulled for jury duty?

10:04:56 22                    A JUROR:  Yes.

10:04:56 23                    THE COURT:  Any other questions you answered yes

10:04:58 24    to?

10:04:58 25                    A JUROR:  No, this is the last, there is only 3,

10:05:00 1   4.

10:05:00 2              THE COURT:  Any questions you all want to ask?

10:05:05 3              MR. HINES:  No, Your Honor.

10:05:05 4              MR. LOWELL:  Yes, Your Honor.  Just on the lab

10:05:07 5   part, I think I heard you say that you have some experience

10:05:11 6   working either in or on or with a lab?

10:05:14 7              A JUROR:  When I was going for schooling, I

10:05:16 8   worked with lab, training and such.

10:05:18 9              MR. LOWELL:  Could you be a little more specific

10:05:20 10  as to lab training, what kind -- was it -- I mean, just a

10:05:24 11  general chemistry course, or was it for a specific area, can

10:05:27 12  you recall that?

10:05:29 13             A JUROR:  Chemistry, analytical chemistry.

10:05:41 14  Yeah, I think biochemistry.

10:05:43 15             MR. LOWELL:  When you say in school, what level

10:05:45 16  of school was that?

10:05:46 17             A JUROR:  That was at Del-Tech, community

10:05:49 18  college, it was for my bachelors.

10:05:51 19             MR. LOWELL:  Did you ever, as part of that, have

10:05:53 20  to review or see lab reports from any kind of lab testing?

10:05:59 21             A JUROR:  Be it like the school or the

10:06:01 22  experimentations that we did in the course, yes.

10:06:04 23             MR. LOWELL:  And did you ever have to

10:06:05 24  participate and write such a lab report?

10:06:08 25             A JUROR:  Yes.

10:06:10  1          MR. LOWELL:  And how often would that occur?

10:06:12  2          A JUROR:  Well, for the class itself, as opposed

10:06:18  3   to any time we actually had labs, which would be maybe once

10:06:26  4   every week.

10:06:28  5          MR. LOWELL:  Thank you, judge.  Thank you, sir.

10:06:31  6          THE COURT:  Thank you.  Give us a moment.

10:06:36  7             (Juror exiting the courtroom.)

10:06:39  8          THE COURT:  Any motions?

10:06:49  9          MR. HINES:  No motion, Your Honor.

10:06:50 10          MR. LOWELL:  No motion.

10:06:51 11          THE COURT:  All right.  Thank you.

10:06:58 12             (Juror entering the courtroom.)

10:07:01 13          THE COURT:  All right.  Good morning, sir.

10:07:03 14          A JUROR:  Good morning.

10:07:03 15          THE COURT:  Thanks for coming in.  Dolphins fan?

10:07:06 16          A JUROR:  I am.

10:07:07 17          THE COURT:  All right.  Can you tell us what

10:07:09 18   questions you answered yes to?

10:07:11 19          A JUROR:  1, 2, 3, 27, 29.

10:07:17 20          THE COURT:  Okay.  Let's start with number one.

10:07:20 21   Scheduling issues?

10:07:21 22          A JUROR:  Yeah, it's mainly because I have three

10:07:24 23   small kids at home, and their summer break starts next week,

10:07:28 24   and my wife just had surgery on her stomach, so she's not

10:07:33 25   going to --

10:07:33 1          THE COURT:  Take care of them?

10:07:34 2          A JUROR:  She's not able to lift anything yet

10:07:37 3  and move around fully, it's just a time concern.

10:07:40 4          THE COURT:  Are the kids home during the day?

10:07:42 5          A JUROR:  They're at school right now, 6, 12 and

10:07:45 6  13, they're all at school, they'll all be done school I

10:07:49 7  think next Friday.

10:07:50 8          THE COURT:  Next Friday, you mean the 14th?

10:07:52 9          A JUROR:  The 14th, I think it's the last day of

10:07:54 10  school.

10:07:54 11          THE COURT:  If you were finished by the 14th,

10:07:56 12  would that be a concern?

10:07:58 13          A JUROR:  With them, today my wife's mom came,

10:08:02 14  so I don't know if that would be something she could do

10:08:04 15  every day.

10:08:05 16          THE COURT:  Aren't they in school?

10:08:06 17          A JUROR:  They're in school, they got them on

10:08:09 18  the bus and stuff like that.

10:08:11 19          THE COURT:  You have to pick up your kids and

10:08:13 20  pick them up and put them on the bus?

10:08:15 21          A JUROR:  No, we have to walk out there with

10:08:18 22  them.

10:08:18 23          THE COURT:  Okay.  All right.  Any other

10:08:20 24  scheduling issues?

10:08:22 25          A JUROR:  Just work scheduling, tough sometimes,

10:08:26  1    working in finance, at Black Rock, so we're very busy at

10:08:31  2    this time, nothing else besides that.

10:08:34  3                THE COURT:  What about, questions 2 and 3, you

10:08:38  4    answered that you have formed opinions about this case.  Why

10:08:42  5    don't you tell me about that?

10:08:43  6                A JUROR:  Yeah, it's not so much this specific

10:08:46  7    case, it's just I have seen stuff in the news on the

10:08:50  8    defendant, and pictures, I have seen stuff of that nature.

10:08:54  9    The specific case, I don't know as much on.  I generally try

10:08:58 10    not to listen to too much of the news, I don't pay too much

10:09:03 11    attention to it, but I am on Twitter, I don't follow it, I

10:09:07 12    get a lot of feeds and stuff all the time with news and

10:09:10 13    information.

10:09:10 14                THE COURT:  Do you think it would be difficult

10:09:12 15    for you to be fair and impartial given what you have seen?

10:09:15 16                A JUROR:  I would hope I would try not to be --

10:09:18 17    or try to be, but --

10:09:20 18                THE COURT:  You don't know?

10:09:21 19                A JUROR:  Try to be honest, I have seen a lot in

10:09:23 20    the news.

10:09:24 21                THE COURT:  I understand and appreciate it --

10:09:26 22    you have seen things and we appreciate that, we're just

10:09:29 23    trying to figure out if you feel like you might not be able

10:09:33 24    to be impartial, now is the time to tell us.

10:09:35 25                A JUROR:  Yeah, I mean, it's hard to say for

| 10:09:38 | 1 | sure, I mean, I don't know enough about the actual case, but |
| 10:09:42 | 2 | I know I have seen on people involved and family and |
| 10:09:46 | 3 | everything. |
| 10:09:46 | 4 | THE COURT:  How about for 27 and 29? |
| 10:09:50 | 5 | A JUROR:  Politics, yeah, that seems to be. |
| 10:09:58 | 6 | THE COURT:  So you think that -- |
| 10:10:00 | 7 | A JUROR:  It seems like, again, not the specific |
| 10:10:02 | 8 | case, but in general, it seems like politics is playing a |
| 10:10:05 | 9 | big role in who gets charged for what and when. |
| 10:10:09 | 10 | THE COURT:  You think that would make it |
| 10:10:11 | 11 | difficult for you to be fair and impartial here? |
| 10:10:13 | 12 | A JUROR:  It could. |
| 10:10:14 | 13 | THE COURT:  Any questions you want to follow-up |
| 10:10:16 | 14 | with? |
| 10:10:18 | 15 | MR. HINES:  We have no further questions. |
| 10:10:19 | 16 | MR. LOWELL:  We have no further questions. |
| 10:10:20 | 17 | THE COURT:  Thanks, sir.  You can give us a |
| 10:10:23 | 18 | minute. |
| 10:10:23 | 19 | (Juror exiting the courtroom.) |
| 10:10:29 | 20 | MR. HINES:  Joint motion for cause. |
| 10:10:30 | 21 | MR. LOWELL:  Joint motion. |
| 10:10:31 | 22 | THE COURT:  Thank you.  Granted. |
| 10:10:32 | 23 | MR. LOWELL:  I did want to find out why he is a |
| 10:10:36 | 24 | Dolphins fan. |
| 10:10:36 | 25 | THE COURT:  I'm a Steelers fan, so I wasn't that |

10:10:39  1    concerned.

10:10:43  2                    (Juror entering the courtroom.)

10:10:48  3                    THE COURT:  Good morning.

10:10:51  4                    A JUROR:  Good morning.

10:10:51  5                    THE COURT:  How are you?

10:10:52  6                    A JUROR:  I'm good, how are you?

10:10:54  7                    THE COURT:  Fine thanks, thanks for coming in.

10:10:56  8    Can you tell us what questions you answered yes to?

10:10:59  9                    A JUROR:  A lot of them.

10:11:00 10                    THE COURT:  Okay.

10:11:00 11                    A JUROR:  3, 4, 12, 18, 19, 20, 21, 22, 26, 28,

10:11:07 12    30, 32, 38, 42, and 45.

10:11:11 13                    THE COURT:  Okay.  So let's start with number

10:11:17 14    three, which is you feel like you formed opinions in this

10:11:21 15    case that would prevent you from being fair and impartial.

10:11:25 16                    A JUROR:  Yes.

10:11:25 17                    THE COURT:  Can you just tell us, is that

10:11:28 18    because of stuff that you have heard?

10:11:30 19                    A JUROR:  Previously, not specifically for this

10:11:32 20    case, but yes, like from years ago.

10:11:34 21                    THE COURT:  Okay.  And you think that that would

10:11:37 22    make it difficult for you to give this case -- to decide

10:11:40 23    this case based only on the facts that you see here and the

10:11:44 24    law that I give you?

10:11:45 25                    A JUROR:  I honestly at this point, I don't

10:11:48 1   know.  Only because like I read who it was against, I kind

10:11:53 2   of laughed, like oh, great, so.

10:11:56 3           THE COURT:  All right.  Okay.  Do you want me to

10:12:03 4   go through all these other 50 questions?  She answered yes

10:12:12 5   to questions three and four, which are things that would

10:12:14 6   make it difficult for her to be fair and impartial?

10:12:17 7           MR. HINES:  Could we ask what she saw?

10:12:19 8           A JUROR:  It's just stuff from like when Biden

10:12:22 9   was running for president, and all the stories about him and

10:12:26 10  Hunter, I don't know, that's why I said, I don't know if I

10:12:30 11  could be very impartial, just because of my personal

10:12:34 12  opinions from previous things heard.

10:12:47 13          MR. HINES:  Maybe it's just me in the room, just

10:12:50 14  to be clear, what is the opinion?

10:12:52 15          A JUROR:  Not a good one.  Sorry.  I don't know

10:12:57 16  how else --

10:12:58 17          THE COURT:  No, and we appreciate you being

10:13:00 18  honest, it's important for this part of the process, I know

10:13:02 19  it's hard, you got all these people looking at you, so I

10:13:07 20  appreciate you coming in here and being willing to be

10:13:10 21  candid, it's not easy.  All right.  Thank you, just give us

10:13:15 22  a second.

10:13:15 23          (Juror exiting the courtroom.)

10:13:20 24          MR. LOWELL:  It's a joint motion.

10:13:22 25          MR. HINES:  Joint.

10:13:22 1          MR. LOWELL:  Okay.

10:13:23 2          MR. HINES:  Your Honor, before the juror comes

10:13:24 3  in, two kind of thoughts, questions, I think it's clear on

10:13:28 4  the record so far what number jurors we have gone through,

10:13:32 5  but just as the transcript goes on, if we could identify

10:13:35 6  what juror number as they come in, or when they're stricken,

10:13:39 7  just so the record is clear, and then second, I think with

10:13:42 8  respect to these questions about what they've read, one

10:13:46 9  thing, we're just talking it out here, people, all kinds of

10:13:51 10 people have read stuff, and they can express you know, they

10:13:54 11 read something on the internet, but knowing what they have

10:13:57 12 read and what their opinion of that is tell us whether or

10:14:01 13 not they're trying to get off the jury.

10:14:02 14         THE COURT:  Right.  And you can feel free to ask

10:14:05 15 those questions.

10:14:05 16         MR. HINES:  Okay.

10:14:06 17         THE COURT:  I'm not going to sit up here and ask

10:14:09 18 every question for you guys, I'm just trying to follow-up

10:14:13 19 with things, but feel free.

10:14:15 20         MR. HINES:  Thank you.

10:14:16 21         (Juror 15 entering the courtroom.)

10:14:25 22         COURTROOM DEPUTY:  Juror number 15.

10:14:28 23         THE COURT:  All right.  Good morning, sir.

10:14:29 24 Thanks for coming in.

10:14:30 25         A JUROR:  Good morning.

10:14:31  1                    THE COURT:  Can you tell us what questions you

10:14:33  2    answered yes to?

10:14:35  3                    A JUROR:  2, 27, 31, 32, 33, 35.

10:14:45  4                    THE COURT:  All right.  Number two, you have

10:14:46  5    heard something about this case?

10:14:48  6                    A JUROR:  Yeah, just on the news this morning.

10:14:50  7                    THE COURT:  Oh, on the news this morning, and

10:14:53  8    then you wound up coming up here.  What was the news that

10:14:57  9    you were listening to, do you remember?

10:14:59 10                    A JUROR:  They just said something about he was

10:15:02 11    going to be in Wilmington.

10:15:03 12                    THE COURT:  Where do you typically get your news

10:15:05 13    from, newspapers, television, radio?

10:15:08 14                    A JUROR:  Television.

10:15:08 15                    THE COURT:  Television.  Any particular

10:15:11 16    stations?

10:15:11 17                    A JUROR:  6ABC.

10:15:15 18                    THE COURT:  6ABC.  All right.  And have you

10:15:20 19    heard anything else about the case other than the fact that

10:15:22 20    it was happening today?  Do you know anything about the

10:15:26 21    topics?

10:15:27 22                    A JUROR:  Just how they highlight it.

10:15:31 23                    THE COURT:  Can you just be specific, what, if

10:15:34 24    anything, you recall?  It's fine if you don't, you don't

10:15:37 25    have to make something up, I'm just trying to understand.

10:15:40 1                  A JUROR:  No, just what you read off.

10:15:42 2                  THE COURT:  Oh, that he was charged with gun --

10:15:45 3                  A JUROR:  Right.

10:15:46 4                  THE COURT:  Okay.  Do you think that there is

10:15:49 5      any reason, based on what you have heard, that you would

10:15:52 6      have a difficult time being fair and impartial in this case?

10:15:56 7                  A JUROR:  No.

10:15:56 8                  THE COURT:  All right.  You said number 27.  Do

10:16:13 9      you believe the United States Department of Justice or any

10:16:15 10     other law enforcement agency investigates and prosecutes

10:16:20 11     individuals because of politics?

10:16:22 12                 A JUROR:  Yes.

10:16:22 13                 THE COURT:  And you think they do?

10:16:24 14                 A JUROR:  I think that they have.

10:16:27 15                 THE COURT:  You think that they have?

10:16:28 16                 A JUROR:  Yes.

10:16:28 17                 THE COURT:  Is there a particular thing that you

10:16:30 18     have in mind there?

10:16:31 19                 A JUROR:  Just recently.

10:16:32 20                 THE COURT:  You're talking about President Trump

10:16:35 21     in New York?

10:16:35 22                 A JUROR:  New York, yes.

10:16:37 23                 THE COURT:  Do your feelings -- is there

10:16:40 24     anything elsewhere you think that's an issue, or is that the

10:16:43 25     one that has you --

10:16:44  1          A JUROR:  That's the recent one.

10:16:46  2          THE COURT:  And is there anything about that

10:16:48  3   belief that makes you think that you would have a difficult

10:16:51  4   time being fair and impartial in this case?

10:16:54  5          A JUROR:  No.

10:16:56  6          THE COURT:  All right.  The 31, 32, 33, and 35,

10:17:07  7   they all have to do with folks that may be close to you who

10:17:12  8   have suffered from drug or alcohol abuse.

10:17:17  9          A JUROR:  Yes.

10:17:17 10          THE COURT:  Can you tell us about that?

10:17:19 11          A JUROR:  Drugs.

10:17:21 12          THE COURT:  Drugs.  Is that someone in your

10:17:23 13   family?

10:17:25 14          A JUROR:  A nephew and a brother-in-law.

10:17:29 15          THE COURT:  I know it's very difficult and I'm

10:17:32 16   sorry, sir.

10:17:33 17          And are these people who are currently

10:17:36 18   struggling?

10:17:38 19          A JUROR:  One is, one isn't.

10:17:40 20          THE COURT:  Okay.  And I can tell that's a very

10:17:45 21   emotional thing for you, and I know it's hard and I'm very

10:17:48 22   sorry.  Is there anything about that experience that you

10:17:51 23   think would make it difficult for you to serve in this case

10:17:54 24   where you're going to hear about, or hear assertions about

10:18:02 25   use of drugs?

| | | |
|---|---|---|
| 10:18:04 | 1 | A JUROR:  I'm not sure. |

A JUROR:  I'm not sure.

THE COURT:  You don't know.  You think it might make it difficult for you to be fair and impartial.

A JUROR:  Could be.

THE COURT:  Okay.  You also answered yes to number 35, which is opinions about addiction to drugs or alcohol that would prevent you from maintaining an open and impartial mind.  Is that because of your personal experiences you think you might not be able to be impartial?

A JUROR:  Yes.

THE COURT:  All right.  Anything further you all want to follow-up?

MR. HINES:  No, Your Honor.

MR. LOWELL:  No, ma'am.

THE COURT:  All right.  Thank you.

(Juror 15 exiting the courtroom.)

MR. LOWELL:  Joint.

MR. HINES:  Joint motion, Your Honor.

MR. LOWELL:  Joint motion.

THE COURT:  Granted.

(Juror 16 entering the courtroom) .

COURTROOM DEPUTY:  Juror number 16 here.

THE COURT:  All right.  Good morning.  Good morning.

A JUROR:  Good morning.

10:19:23  1          THE COURT:  Hi.  Thanks for coming in.  All

10:19:26  2  right.  Can you tell us what questions you answered yes to?

10:19:29  3          A JUROR:  2, 18, and 20.

10:19:32  4          THE COURT:  2, 18 and 20.  Okay.  Can you tell

10:19:36  5  us, number two is, have you heard anything about this case.

10:19:39  6  Can you tell us what you have heard about this case?

10:19:41  7          A JUROR:  I just heard in general that a case

10:19:44  8  was going to be happening.

10:19:47  9          THE COURT:  And where did you hear that?

10:19:51 10          A JUROR:  I'm not sure, it was online.

10:19:54 11          THE COURT:  And where do you typically get news

10:19:56 12  like that when you say online?

10:19:58 13          A JUROR:  YouTube.

10:20:00 14          THE COURT:  YouTube?

10:20:01 15          A JUROR:  Uh-huh.

10:20:02 16          THE COURT:  Any place else?

10:20:03 17          A JUROR:  No.

10:20:04 18          THE COURT:  All right.  Anything that you recall

10:20:06 19  hearing about this case that would make you question whether

10:20:09 20  you could be fair and impartial?

10:20:12 21          A JUROR:  No, no.

10:20:16 22          THE COURT:  All right.  Question number 18, is

10:20:21 23  close family have any experience with purchasing a firearm.

10:20:29 24  Have you purchased or is that someone in your family?

10:20:32 25          A JUROR:  My mother.

| | | |
|---|---|---|
| 10:20:33 | 1 | THE COURT:  Your mother? |
| 10:20:34 | 2 | And is it just a single firearm or multiple? |
| 10:20:39 | 3 | A JUROR:  Just one. |
| 10:20:39 | 4 | THE COURT:  Just one.  Do you know what kind it |
| 10:20:42 | 5 | is? |
| 10:20:42 | 6 | A JUROR:  No. |
| 10:20:42 | 7 | THE COURT:  No. |
| 10:20:43 | 8 | Do you have any familiarity with the forms that |
| 10:20:50 | 9 | have to be filled out in order to purchase a firearm? |
| 10:20:54 | 10 | A JUROR:  No. |
| 10:20:54 | 11 | THE COURT:  You haven't talked with your mother |
| 10:20:56 | 12 | about that?  Okay.  Anything about the fact that your mother |
| 10:21:00 | 13 | owns a firearm that would make it difficult for you to be |
| 10:21:03 | 14 | fair and impartial in this case? |
| 10:21:05 | 15 | A JUROR:  No. |
| 10:21:06 | 16 | THE COURT:  Any questions? |
| 10:21:07 | 17 | MR. HINES:  No, Your Honor. |
| 10:21:08 | 18 | MR. LOWELL:  Just one.  Good morning, ma'am. |
| 10:21:12 | 19 | You said something about on YouTube is where you heard |
| 10:21:15 | 20 | something about the case, is that where you got it? |
| 10:21:17 | 21 | A JUROR:  Yes. |
| 10:21:18 | 22 | MR. LOWELL:  Can you remember what it is you |
| 10:21:19 | 23 | heard about the case? |
| 10:21:21 | 24 | A JUROR:  I heard the news about a firearm. |
| 10:21:26 | 25 | MR. LOWELL:  Is that all? |

10:21:27  1                    A JUROR:  I think there were drugs involved.

10:21:31  2                    MR. LOWELL:  When was that that you acquired

10:21:35  3     this knowledge?

10:21:36  4                    A JUROR:  Probably a couple months ago.

10:21:37  5                    MR. LOWELL:  Nothing recently?

10:21:39  6                    A JUROR:  No.

10:21:39  7                    MR. LOWELL:  Do you know anything about the

10:21:41  8     specifics of that gun charge to remember the drugs that you

10:21:43  9     heard about?

10:21:44 10                    A JUROR:  No.

10:21:45 11                    THE COURT:  All right.  Thank you very much.

10:21:46 12     Just give us a moment.

10:21:48 13                        (Juror exiting the courtroom.)

10:21:58 14                    MR. HINES:  No motions.

10:21:59 15                    MR. LOWELL:  No motion, judge.

10:22:01 16                    THE COURT:  Okay.

10:22:03 17                        (Juror 17 entering the courtroom.)

10:22:09 18                    COURTROOM DEPUTY:  Juror number 17.

10:22:14 19                    THE COURT:  Good morning, ma'am.  Thanks for

10:22:17 20     coming in.

10:22:17 21                    A JUROR:  Hello.

10:22:18 22                    THE COURT:  Can you tell us what questions you

10:22:20 23     answered yes to?

10:22:22 24                    A JUROR:  7, 31, and 32.

10:22:25 25                    THE COURT:  All right.  Thank you.  Let's start

| | |
|---|---|
| 10:22:29 1 | with number seven.  That is you or any member of your |
| 10:22:37 2 | immediate family or close friends acquainted with Robert |
| 10:22:40 3 | Hunter Biden or any member of his family.  Can you tell us |
| 10:22:43 4 | about that? |
| 10:22:45 5 | A JUROR:  I'm not really like acquainted |
| 10:22:47 6 | personally, but my job before, I was a bartender, and I |
| 10:22:52 7 | served John T. Owens on and off, like I saw him in the |
| 10:22:57 8 | hallway.  So I don't know if that has any relation, but I do |
| 10:23:01 9 | know him, but like not intimately, if that makes sense. |
| 10:23:07 10 | THE COURT:  Anything about the -- your knowledge |
| 10:23:11 11 | of him that would make it difficult for you to be fair and |
| 10:23:14 12 | impartial in this case? |
| 10:23:16 13 | A JUROR:  No. |
| 10:23:17 14 | THE COURT:  How well do you know him, just as a |
| 10:23:19 15 | bartender? |
| 10:23:20 16 | A JUROR:  Yeah, just like he came in a few |
| 10:23:22 17 | times. |
| 10:23:23 18 | THE COURT:  From the bar? |
| 10:23:24 19 | A JUROR:  Yes. |
| 10:23:25 20 | THE COURT:  And where was that bar? |
| 10:23:26 21 | A JUROR:  Two Stones Pub, in Kennett Square. |
| 10:23:37 22 | THE COURT:  And you don't work there anymore? |
| 10:23:39 23 | A JUROR:  No. |
| 10:23:40 24 | THE COURT:  Okay.  31 and 32, that is people who |
| 10:23:47 25 | are close to you who have struggled with addiction or drug |

10:23:54 1    or alcohol abuse?

10:23:56 2              A JUROR:  Yes.

10:23:56 3              THE COURT:  Can you tell us a little bit about

10:23:58 4    that?

10:23:59 5              A JUROR:  My best friend went to rehab, I want

10:24:03 6    to say three years ago here in Delaware, and she is still

10:24:08 7    sober, so she goes to AA frequently, so I am like

10:24:15 8    knowledgeable of that a little bit.  But that's the extent

10:24:19 9    of it.

10:24:21 10              THE COURT:  Anything about that experience that

10:24:22 11   you had with your friend that would make it difficult for

10:24:25 12   you to be fair and impartial in this case?

10:24:27 13              A JUROR:  No.

10:24:29 14              THE COURT:  Any questions that you all have?

10:24:40 15              MR. HINES:  No, Your Honor, not from us.

10:24:42 16              MR. LOWELL:  No other questions.

10:24:43 17              THE COURT:  All right.  Thank you.  Just give us

10:24:45 18   a moment, please.

10:24:46 19              (Juror exiting the courtroom.)

10:24:53 20              MR. HINES:  No motions.

10:24:54 21              MR. LOWELL:  No motion.

10:24:56 22              THE COURT:  Okay.

10:24:58 23              (Juror 18 entering the courtroom.)

10:25:02 24              COURTROOM DEPUTY:  Juror number 18.

10:25:10 25              THE COURT:  Good morning, ma'am.  Thanks for

10:25:12 1    coming in.  All right.  Can you tell us what questions you

10:25:15 2    answered yes to?

10:25:17 3                    A JUROR:  Started with question one, actually

10:25:19 4    with my schedule, I do have a doctor's appointment scheduled

10:25:23 5    next week, it's a midday appointment, 1:00 p.m.  And at the

10:25:27 6    end of the week, Thursday, we had a trip planned to the

10:25:30 7    beach with hotel accommodations already booked.

10:25:33 8                    THE COURT:  So you have already booked your

10:25:35 9    trip?

10:25:35 10                   A JUROR:  Yes, ma'am.

10:25:36 11                   THE COURT:  And the doctor's appointment, would

10:25:37 12   it be difficult for you to reschedule that?

10:25:39 13                   A JUROR:  Not really, I probably could move it,

10:25:42 14   but I do have to have it, it's every three weeks I have a

10:25:47 15   follow-up appointment with my same doctor.

10:25:50 16                   THE COURT:  Any other questions that you

10:25:52 17   answered yes to?

10:25:53 18                   A JUROR:  Yes, question two, I had heard a

10:25:55 19   little bit about it, it's in the news and in passing, but I

10:25:59 20   mean, I don't really dig into stuff much, so I wouldn't say

10:26:04 21   other than just what I have heard.

10:26:05 22                   THE COURT:  Okay.  When you say you heard about

10:26:07 23   it on the news, where do you typically get your news?

10:26:11 24                   A JUROR:  I watch NBC news, and I watch Lester

10:26:17 25   Holt pretty regularly every night.

10:26:20  1                    THE COURT:  And do you recall anything specific

10:26:22  2      about this case that would make it difficult for you to be

10:26:25  3      fair and impartial?

10:26:26  4                    A JUROR:  No.

10:26:27  5                    THE COURT:  Any other questions you answered yes

10:26:29  6      to?

10:26:29  7                    A JUROR:  Question ten, I have been investigated

10:26:32  8      by the FBI, it was actually a while ago, 20 some years ago

10:26:37  9      because of employment, I was excluded due to my vision, but

10:26:42 10      they did do a background check.

10:26:49 11                    THE COURT:  Anything about that experience that

10:26:51 12      would make it difficult for you to be fair and impartial?

10:26:54 13                    A JUROR:  No.

10:26:55 14                    THE COURT:  Any other questions you answered yes

10:26:56 15      to?

10:26:57 16                    A JUROR:  Question 15, I do have experience with

10:27:01 17      dealing with people that are drug and alcohol abuse --

10:27:09 18                    THE COURT:  Sorry, training or work experience?

10:27:10 19                    A JUROR:  I do have experience with people that

10:27:12 20      are suffering from substance abuse, I currently work for

10:27:15 21      Christiana Hospital, the main hospital for Delaware.  Direct

10:27:19 22      patient care.  And I also have 20 years experience in retail

10:27:24 23      pharmaceutical management, I was a Tylenol manager.

10:27:36 24                    THE COURT:  Okay.  Any other questions that you

10:27:38 25      answered yes to?

10:27:39  1          A JUROR:  Question 31, my dad had issues with

10:27:43  2   alcohol when I was a younger child, and my uncle, to my

10:27:47  3   knowledge, had issues with drugs when I was younger, but

10:27:51  4   both, going into question 32, entered rehab and programs

10:27:58  5   that would help them get past it, and both of them recovered

10:28:01  6   well and are doing fine.

10:28:04  7          THE COURT:  Okay.  Anything about those

10:28:06  8   experiences that would make it difficult for you to be fair

10:28:08  9   and impartial?

10:28:10 10          A JUROR:  No.

10:28:11 11          THE COURT:  Okay.  Any other questions you

10:28:13 12   answered yes to?

10:28:14 13          A JUROR:  Question 45, I am currently involved

10:28:17 14   in a car accident case litigation pending with the insurance

10:28:25 15   company of the person that struck me, they were in a company

10:28:29 16   vehicle, and we're trying to recover expenses for that, so I

10:28:34 17   am currently a plaintiff in that case.

10:28:36 18          THE COURT:  So you were injured in an accident?

10:28:38 19          A JUROR:  Yes, car accident.

10:28:39 20          THE COURT:  Anything else on that one?

10:28:42 21          A JUROR:  No.

10:28:42 22          THE COURT:  Anything about your experience with

10:28:44 23   the courts or any thing like that that would make it

10:28:49 24   difficult for you to be fair and impartial here?

10:28:52 25          A JUROR:  No.

10:28:52  1                    THE COURT:  All right.  Any other questions you

10:28:54  2       answered yes to?

10:28:55  3                    A JUROR:  No, Your Honor.

10:28:56  4                    THE COURT:  All right.  Let me just ask you

10:28:58  5       because I did get a note that you said you had a vacation.

10:29:02  6       So you have a vacation scheduled for the 11th?

10:29:06  7                    A JUROR:  The 13th, hotel accommodations are for

10:29:11  8       Thursday and then coming back Sunday evening.

10:29:14  9                    THE COURT:  The 13th?

10:29:15 10                    A JUROR:  Yes.

10:29:16 11                    THE COURT:  And that's already booked and paid

10:29:17 12       for?

10:29:18 13                    A JUROR:  Yes.

10:29:18 14                    THE COURT:  Any questions you all want to ask?

10:29:22 15                    MR. HINES:  Ma'am, could you tell us more about

10:29:24 16       what you do for Christiana?

10:29:25 17                    A JUROR:  I'm currently a patient care

10:29:28 18       technician, but I do have physical limitations so they have

10:29:31 19       me on light duty clerking, I have been doing that job for

10:29:36 20       about two years now.

10:29:37 21                    MR. HINES:  Thank you.

10:29:38 22                    THE COURT:  Mr. Lowell?

10:29:40 23                    MR. LOWELL:  No questions, Your Honor.

10:29:41 24                    THE COURT:  Thank you.  Just give us a moment,

10:29:44 25       please.

10:29:45  1                 (Juror exiting the courtroom.)

10:29:48  2                 THE COURT:  I'm a little concerned about the

10:29:54  3      vacation, but -- because it's in the middle of the time as

10:29:57  4      opposed to the last one, which was the end, but I leave it

10:30:00  5      with you guys.

10:30:04  6                 MR. HINES:  We make a motion to strike for cause

10:30:07  7      based on that hardship.

10:30:10  8                 MR. LOWELL:  I again can't tell, when I'm

10:30:15  9      worried about the timing, it seems like it would end sooner,

10:30:21 10      I don't think we have enough data to know, we wouldn't agree

10:30:25 11      with that as the reason to excuse the juror at this stage.

10:30:30 12                 THE COURT:  All right.  I won't.  I mean, I

10:30:41 13      guess we are having four alternates, so if it becomes a

10:30:47 14      problem -- I just want to be clear for all these folks,

10:30:52 15      though, if the trial goes on past Thursday, and she asked to

10:30:58 16      be excused, I will excuse her.

10:31:00 17                 MR. LOWELL:  Understand.

10:31:01 18                 THE COURT:  Okay.  All right.  So then I won't

10:31:06 19      excuse her now.

10:31:08 20                 (Juror 19 entering the courtroom.)

10:31:25 21                 COURTROOM DEPUTY:  Juror number 19.

10:31:27 22                 THE COURT:  Good morning.  Just give me one

10:31:31 23      second, please.  Juror number 19.  Good morning.  Thanks for

10:31:39 24      coming in.  What questions did you answer yes to?

10:31:42 25                 A JUROR:  16, 20 and 43.

10:31:45 1              16 I'm more like on the fence.

10:31:49 2              THE COURT:  16 is what, you're on the fence?

10:31:51 3              A JUROR:  I'm on the fence.

10:31:52 4              THE COURT:  So 16 is do you believe all people

10:31:55 5 should be committed by law to buy or possess guns regardless

10:31:59 6 of whether they have been a user of a controlled substance

10:32:02 7 or addicted to a controlled substance.  So tell me what your

10:32:06 8 opinions are there?

10:32:10 9              A JUROR:  Sorry, on the fence on this and

10:32:16 10 another question, but I don't think that people who smoke

10:32:21 11 weed or use it shouldn't -- should not be allowed to have a

10:32:24 12 firearm.

10:32:25 13              THE COURT:  Okay.  So is that -- is that

10:32:30 14 something that would make it difficult for you to be fair

10:32:35 15 and impartial in a case where someone is -- the case, in

10:32:42 16 this case, that involves a question as to whether the

10:32:49 17 defendant could have gotten a gun?

10:32:54 18              A JUROR:  I'm sorry?

10:32:54 19              THE COURT:  I'm just trying to figure out, would

10:32:56 20 that make it difficult for you to be fair and impartial in

10:33:00 21 this case?

10:33:00 22              A JUROR:  No, it would not, no.

10:33:02 23              THE COURT:  And even though you think that

10:33:04 24 people who, for example, use marijuana should be allowed to

10:33:08 25 have guns, you think you could put that aside and listen to

10:33:12  1    the facts of this case and listen to the law that I give

10:33:17  2    you?

10:33:17  3              A JUROR:  Yes.

10:33:18  4              THE COURT:  All right.  What about question

10:33:21  5    number 20, that's the firearm form, has someone close to you

10:33:28  6    ever filled out a form for a firearm?

10:33:30  7              A JUROR:  Yes, my father and brother.

10:33:35  8              THE COURT:  And have you ever filled one out?

10:33:39  9              A JUROR:  No.

10:33:39  10             THE COURT:  Do you know -- do you know anything

10:33:43  11   about their experience in filling out the forms?

10:33:45  12             A JUROR:  No, I don't.

10:33:46  13             THE COURT:  You said your father and brother

10:33:49  14   have filled out forms.  Do you know whether they actually

10:33:53  15   completed a purchase of a firearm?

10:33:55  16             A JUROR:  Yes.

10:33:55  17             THE COURT:  Did they?

10:33:57  18             A JUROR:  Yes.

10:33:57  19             THE COURT:  Okay.  So would that mean that you

10:34:02  20   would probably answer yes to question 18 as well?

10:34:06  21             A JUROR:  Yes.

10:34:06  22             THE COURT:  Okay.  And is that -- you said it

10:34:09  23   was your father and brother, do they each have a single, or

10:34:13  24   multiple firearms?

10:34:15  25             A JUROR:  My father had a single, and my brother

10:34:19  1   has multiple.

10:34:20  2               THE COURT:  Okay.  Anything about their feelings

10:34:24  3   about firearms, or their experience in obtaining them that

10:34:29  4   would make it difficult for you to be fair and impartial?

10:34:32  5               A JUROR:  No.

10:34:33  6               THE COURT:  All right.  And the last one was 43,

10:34:35  7   have you served on a criminal jury before?

10:34:39  8               A JUROR:  Yes.

10:34:39  9               THE COURT:  Can you tell us about that?

10:34:41 10               A JUROR:  The first one was too many years ago

10:34:45 11   to remember, that was in another state, a short case, an

10:34:50 12   assault case.  And the second was last year, Circuit Court,

10:34:54 13   that was -- I think that was a firearm case, a firearm was

10:35:00 14   involved.  But I can't remember the specifics.

10:35:03 15               THE COURT:  Do you remember the outcome?  Did

10:35:05 16   you actually participate in the deliberations?

10:35:08 17               A JUROR:  Yes.

10:35:08 18               THE COURT:  Do you remember the outcome for the

10:35:10 19   one that was a long time ago, the assault case?

10:35:13 20               A JUROR:  Guilty.

10:35:14 21               THE COURT:  What about the last year's firearm

10:35:16 22   case?

10:35:17 23               A JUROR:  Guilty.

10:35:17 24               THE COURT:  All right.  Anything about those

10:35:19 25   experiences that would make it difficult for you to be fair

10:35:22  1    and impartial in this case?

10:35:24  2              A JUROR:  No, my memory is not the best.

10:35:26  3              THE COURT:  You let it go as soon as you left

10:35:29  4    the courthouse.  All right.  Any questions you all want to

10:35:32  5    follow-up with?

10:35:44  6              MR. HINES:  Ma'am, why do you believe that you

10:35:49  7    should be able to own a gun if you smoke marijuana?

10:35:53  8              A JUROR:  Weed to me isn't as bad as the drugs

10:36:03  9    like heroin, for example, and I think we're -- I know it's

10:36:12 10    not smoking weed.

10:36:14 11              MR. LOWELL:  Good morning.  On your two jury

10:36:17 12    experiences, the one last year, you were a deliberating

10:36:20 13    juror in both of those cases?

10:36:22 14              A JUROR:  Yes.

10:36:22 15              MR. LOWELL:  Were you the foreperson in either

10:36:25 16    of them?

10:36:25 17              A JUROR:  No.

10:36:26 18              MR. LOWELL:  Would the fact that both of those

10:36:28 19    juries came to the conclusion of guilty have any impact on

10:36:32 20    your ability to hear evidence here, and if the government

10:36:35 21    didn't prove its case, find somebody not guilty?

10:36:39 22              A JUROR:  No.

10:36:40 23              THE COURT:  Alright.  Thank you, just give us a

10:36:43 24    moment, please.

10:36:44 25                   (Juror exiting the courtroom.)

| | | |
|---|---|---|
| 10:36:47 | 1 | THE COURT:  Any motions? |
| 10:36:55 | 2 | MR. HINES:  No motion. |
| 10:36:56 | 3 | MR. LOWELL:  No motion. |
| 10:37:01 | 4 | (Juror 20 entering the courtroom.) |
| 10:37:06 | 5 | COURTROOM DEPUTY:  Juror number 20. |
| 10:37:13 | 6 | THE COURT:  Good morning, sir.  Thanks for |
| 10:37:15 | 7 | coming in. |
| 10:37:16 | 8 | A JUROR:  Thank you. |
| 10:37:17 | 9 | THE COURT:  All right.  So what questions did |
| 10:37:19 | 10 | you answer yes to? |
| 10:37:21 | 11 | A JUROR:  1, 18, 19, 20, 27, 32, 36 and 37. |
| 10:37:37 | 12 | THE COURT:  Let's start with number one, that's |
| 10:37:38 | 13 | the scheduling issue, can you tell us your issue? |
| 10:37:41 | 14 | A JUROR:  Work and I have stuff, I'm trying to |
| 10:37:47 | 15 | -- I'm trying to find a job, so I've been trying to do |
| 10:37:52 | 16 | interviews and lot of stuff like that. |
| 10:37:54 | 17 | THE COURT:  So you're currently working? |
| 10:37:56 | 18 | A JUROR:  Uh-huh. |
| 10:37:57 | 19 | THE COURT:  And you work during the day? |
| 10:38:00 | 20 | A JUROR:  I only work Tuesday and weekends. |
| 10:38:03 | 21 | THE COURT:  Tuesday and the weekend? |
| 10:38:05 | 22 | A JUROR:  Uh-huh. |
| 10:38:05 | 23 | THE COURT:  And if you're not there Tuesday, do |
| 10:38:09 | 24 | you get paid? |
| 10:38:11 | 25 | A JUROR:  No. |

10:38:12  1          THE COURT:  And do you have interviews

10:38:18  2  scheduled?

10:38:18  3          A JUROR:  Only tomorrow.

10:38:20  4          THE COURT:  You do have interviews scheduled

10:38:23  5  tomorrow?

10:38:25  6          A JUROR:  Uh-huh.

10:38:26  7          THE COURT:  Okay.  Are these for jobs that --

10:38:32  8  like if you got the job, is it the kind of thing where you

10:38:36  9  would start quickly, or you're just still interviewing

10:38:39 10  trying to figure out what you want to do and where you go?

10:38:42 11          A JUROR:  I don't know how quickly I would have

10:38:43 12  to start, but probably not.

10:38:46 13          THE COURT:  Okay.  You get one last summer off

10:38:50 14  after graduating?

10:38:51 15          A JUROR:  Yeah.

10:38:52 16          THE COURT:  All right.  Okay.  Then you said you

10:38:56 17  answered yes to question number 18, so 18, 19 and 20, those

10:39:03 18  are about whether you or folks close to you own a gun?

10:39:07 19          A JUROR:  Yes.  I have close family that has

10:39:10 20  owned one.

10:39:11 21          THE COURT:  Is that single, each owns a single

10:39:14 22  gun, multiple guns?

10:39:16 23          A JUROR:  Single gun, just handguns.

10:39:19 24          THE COURT:  Handguns.  Are you familiar with the

10:39:23 25  -- do you own a gun?

10:39:24  1          A JUROR:  No.

10:39:24  2          THE COURT:  Are you familiar with the paperwork

10:39:27  3    or the laws, regulations, requirements for owning a gun?

10:39:32  4          A JUROR:  A little bit, not really much.

10:39:33  5          THE COURT:  Can you tell us what you're familiar

10:39:36  6    with?

10:39:38  7          A JUROR:  Discharging a gun, not that much

10:39:42  8    really, I just know what I hear in conversations with them.

10:39:45  9          THE COURT:  Have you ever heard any

10:39:46 10    conversations that, about the paperwork or anything like

10:39:50 11    that that you need to own a gun?

10:39:53 12          A JUROR:  I know you need references to, to

10:39:56 13    eventually get the license to own a gun, yeah, that's about

10:40:00 14    it.

10:40:01 15          THE COURT:  All right.  Anything about your

10:40:04 16    family members or friends experiences with obtaining or

10:40:08 17    owning a gun that would make it difficult for you to be fair

10:40:11 18    and impartial here?

10:40:12 19          A JUROR:  Nope.

10:40:13 20          THE COURT:  You answered yes to question number

10:40:16 21    27, which is do you believe the United States Department of

10:40:19 22    Justice, the FBI, ATF, DEA, or other law enforcement

10:40:23 23    agencies investigate and prosecute individuals because of

10:40:27 24    politics.

10:40:27 25          A JUROR:  Yes.

10:40:28  1          THE COURT:  Can you tell me about that?

10:40:29  2          A JUROR:  From recent education, my

10:40:32  3   understanding of the history, the government does --

10:40:37  4   political figures, that's why I came to my conclusion to

10:40:41  5   saying yes.

10:40:42  6          THE COURT:  Is there anything in particular

10:40:44  7   you're thinking of there?

10:40:45  8          A JUROR:  So right at the moment, a lot of

10:40:49  9   things dealing with African Americans, the government,

10:40:52 10   United States of America, but if I got selected it won't

10:40:58 11   affect me at all.

10:40:59 12          THE COURT:  You're thinking more historical with

10:41:03 13   issues?

10:41:03 14          A JUROR:  Yes.

10:41:04 15          THE COURT:  Do you think you could put aside

10:41:06 16   those beliefs and give the -- both sides here a fair shake?

10:41:11 17          A JUROR:  Absolutely.

10:41:12 18          THE COURT:  Okay.  Then you answered yes to

10:41:17 19   question 32, which is member of your family, or close

10:41:26 20   friend, or you sought treatment, counseling, rehab and

10:41:30 21   things like that?

10:41:30 22          A JUROR:  I did, two years ago, I got a DUI and

10:41:34 23   I had to go to the Alcoholics Anonymous.

10:41:39 24          THE COURT:  Okay.  And was there anything about

10:41:43 25   that experience that would make it difficult for you to be

10:41:47  1  fair and impartial here?

10:41:48  2          A JUROR:  No.

10:41:48  3          THE COURT:  So were you -- you got the DUI, were

10:41:51  4  you convicted of DUI?

10:41:55  5          A JUROR:  I pled guilty.

10:41:58  6          THE COURT:  And you also answered yes to

10:42:01  7  question three, which is if you're selected to sit as a

10:42:03  8  juror, are you aware of any reason why you would be unable

10:42:07  9  to render a verdict solely on the evidence presented at

10:42:11 10  trial.

10:42:12 11          A JUROR:  What is that again?

10:42:24 12          THE COURT:  I just want to make sure I didn't

10:42:26 13  write those wrong, I have 1, 18, 19, 20, 27, 32, 36 and 37.

10:42:33 14          A JUROR:  Oh, okay, okay.  I'm sorry for that.

10:42:36 15          THE COURT:  So 36 and 37, which are you said

10:42:40 16  there is a reason you wouldn't be able to render a verdict

10:42:44 17  solely on the evidence presented, and there is a reason why

10:42:47 18  you would not be able to follow the law.

10:42:50 19          A JUROR:  Oh.  I meant to put no, I was probably

10:42:56 20  going through too fast, I'm sorry, I meant to put those as

10:43:01 21  no.

10:43:01 22          THE COURT:  Let's just be clear.  If you are

10:43:03 23  selected as a juror in this case, is there any reason that

10:43:06 24  you're aware of why you would be unable to render a verdict

10:43:10 25  based solely on the evidence presented at trial?

10:43:13  1     A JUROR:  No.

10:43:13  2     THE COURT:  If you are selected, are you aware

10:43:16  3 of any reason why you would not be able to follow the law as

10:43:19  4 I give it to you and apply the facts?

10:43:21  5     A JUROR:  No.

10:43:21  6     THE COURT:  Any other questions, did you answer

10:43:23  7 yes to questions 46 or 47?

10:43:27  8     A JUROR:  No, ma'am.

10:43:28  9     THE COURT:  Okay.  All right.  Anything you want

10:43:31 10 to follow-up on?

10:43:32 11     MR. HINES:  Yes, Your Honor, thank you.  Sir, is

10:43:34 12 there anything about your past DUI experience and

10:43:37 13 interaction with law enforcement that causes you to have a

10:43:41 14 negative opinion of law enforcement.

10:43:43 15     A JUROR:  No.

10:43:43 16     MR. HINES:  With respect to your family members

10:43:45 17 that own firearms, have any of them ever struggled with

10:43:49 18 substance abuse or used, currently used controlled

10:43:52 19 substances?

10:43:53 20     A JUROR:  No.

10:43:54 21     MR. HINES:  Thank you.

10:43:55 22     MR. LOWELL:  No questions.

10:43:55 23     THE COURT:  All right.  Thank you, sir.  Give us

10:43:57 24 a moment.

10:43:58 25     (Juror exiting the courtroom.)

10:44:07 1          MR. HINES:  No motion, Your Honor.

10:44:08 2          MR. LOWELL:  No motion.

10:44:10 3          THE COURT:  Okay.  And then I believe juror

10:44:13 4 number 21 did not answer yes to any questions, so she'll be

10:44:17 5 in the pool.

10:44:19 6          MR. LOWELL:  Are we sure, he said none, that

10:44:21 7 seems odd, but we have no yes answers for number 21, right?

10:44:26 8          THE COURT:  She said she did not answer yes to

10:44:28 9 any questions.

10:44:29 10          MR. LOWELL:  She.  Okay.

10:44:32 11          (Juror 22 entered the courtroom.)

10:44:35 12          COURTROOM DEPUTY:  Juror number 22.

10:44:39 13          THE COURT:  Good morning, sir.

10:44:42 14          A JUROR:  Good morning.

10:44:43 15          THE COURT:  Thanks for coming in.

10:44:44 16          A JUROR:  How are you doing?

10:44:46 17          THE COURT:  I'm fine, thanks.  What questions

10:44:48 18 did you answer yes to?

10:44:49 19          A JUROR:  1, 2, 3, 10, 14, 21, 4.

10:44:58 20          THE COURT:  21 and 24.

10:45:00 21          A JUROR:  No, number four.

10:45:02 22          THE COURT:  Number four.  1, 2, 3, 4, 10, 14 and

10:45:06 23 21 okay.  So let's stick with -- let's start with your

10:45:12 24 scheduling issues.

10:45:14 25          A JUROR:  I have a funeral Wednesday, I had a

10:45:18 1    relative pass away in a car accident.

10:45:21 2                    THE COURT:  I'm sorry to hear that.

10:45:22 3                    A JUROR:  I have money that is on vacation to go

10:45:25 4    away, $3,000.

10:45:26 5                    THE COURT:  When is that?

10:45:28 6                    A JUROR:  Saturday the 8th, I'm supposed to go

10:45:31 7    away.

10:45:33 8                    That's probably it.

10:45:36 9                    THE COURT:  That's kind of significant.

10:45:38 10                   A JUROR:  That's a lot scheduled.

10:45:41 11                   THE COURT:  Okay.  And then 2 and 3 were that

10:45:43 12   you heard about this case and that you --

10:45:45 13                   A JUROR:  Oh yeah.

10:45:46 14                   THE COURT:  And that you are concerned that you

10:45:49 15   have formed opinions that would make it difficult for you to

10:45:52 16   be fair and impartial?

10:45:53 17                   A JUROR:  Yes.

10:45:53 18                   THE COURT:  Can you tell us about that?

10:45:55 19                   A JUROR:  Just the social media and what I have

10:45:59 20   read.  The people the defendant knows.

10:46:08 21                   THE COURT:  You have strong views on that, or

10:46:12 22   why do you think it would make it difficult for you to be --

10:46:15 23                   A JUROR:  I just think my opinion, it would be

10:46:18 24   -- I don't know if I could give him a fair and impartial --

10:46:23 25   what's the word I'm looking for?  I can't really think of

```
10:46:29  1    the word I'm looking for right now.
10:46:31  2              THE COURT:  Okay.  But you've heard things about
10:46:36  3    this case that you -- are they things that you think are
10:46:40  4    positive or negative?
10:46:42  5              A JUROR:  Negative towards the defendant getting
10:46:46  6    a fair trial.
10:46:47  7              THE COURT:  Okay.
10:46:48  8              A JUROR:  In my opinion.
10:46:49  9              THE COURT:  Okay.  So the things you have heard
10:46:52 10    are -- so is that negative that -- you think they're
10:46:55 11    negative, and it would make it difficult for you to give him
10:46:58 12    a fair trial?
10:46:59 13              A JUROR:  Very good.
10:47:01 14              THE COURT:  Okay.  All right.  So thank you very
10:47:03 15    much, sir.  We don't need to go through the other ones.  I
10:47:07 16    appreciate your candor.
10:47:09 17              A JUROR:  Okay.
10:47:09 18              THE COURT:  Just give us a moment.
10:47:11 19              (Juror exiting the courtroom.)
10:47:14 20              MR. LOWELL:  Joint motion.
10:47:15 21              MR. HINES:  Joint motion, Your Honor.
10:47:16 22              THE COURT:  All right.
10:47:18 23              (Juror 23 entering the courtroom.)
10:47:22 24              COURTROOM DEPUTY:  Juror number 23.
10:47:29 25              THE COURT:  Good morning, sir.
```

10:47:32  1                    A JUROR:  Hi.

10:47:33  2                    THE COURT:  Hi.  Thanks for coming in.  What

10:47:36  3      questions did you answer yes to?

10:47:38  4                    A JUROR:  Question number one.

10:47:40  5                    THE COURT:  Anything else?

10:47:42  6                    A JUROR:  Question number one, question number

10:47:51  7      four.  Number 15 and number 43.

10:48:11  8                    THE COURT:  All right.  Thank you.

10:48:12  9                    So let's start with number one which is about

10:48:15 10      your schedule.  Can you tell us about that?

10:48:17 11                    A JUROR:  Yeah, I am a professor at the Delaware

10:48:22 12      University, during this time, I am mentoring research

10:48:25 13      students, I also have summer class, in the second semester,

10:48:31 14      and I think it's going to interfere with my work.

10:48:34 15                    THE COURT:  Teaching summer classes, when do

10:48:36 16      summer classes start at Delaware State University?

10:48:38 17                    A JUROR:  The first summer session will start --

10:48:43 18      the second summer session, I don't know exactly.  But

10:48:46 19      anyway, I am going to advise the students, the undergraduate

10:48:51 20      students up to July at this point.

10:48:54 21                    THE COURT:  Let's just focus on the teaching

10:48:56 22      first.  You're teaching summer session, are you teaching the

10:49:01 23      current summer session?

10:49:02 24                    A JUROR:  No, I am not.

10:49:04 25                    THE COURT:  And you don't know when the second

10:49:06 1   summer session begins?

10:49:08 2             A JUROR:  I don't know.

10:49:08 3             THE COURT:  So you don't know whether that is

10:49:10 4   going to be a problem or not?

10:49:12 5             A JUROR:  Yeah.

10:49:14 6             THE COURT:  Tell me about your mentoring, what

10:49:16 7   does the mentoring of students involve?

10:49:18 8             A JUROR:  No, I got a grant from the Delaware

10:49:21 9   State and doing project, research project, on some prefab

10:49:28 10  compound.  These are under-grad students I'm supposed to be

10:49:31 11  around.

10:49:39 12            I'm actually mentoring undergraduate students, a

10:49:44 13  couple of them, the main is going to be over --

10:49:50 14            THE COURT:  What does mentoring involve, do you

10:49:52 15  see them every single day?

10:49:54 16            A JUROR:  Yeah, because they're undergraduate

10:49:56 17  students, the graduate students, no, every day from 1 to 5

10:50:02 18  I'm supposed to be there around because they are --

10:50:08 19            THE COURT:  If you weren't there because you are

10:50:09 20  here, what would happen?

10:50:10 21            A JUROR:  They can't do the work.

10:50:13 22            THE COURT:  They can't do the work?

10:50:15 23            A JUROR:  Yeah, they're graduate students, they

10:50:17 24  can do it, but undergraduates, they can't.

10:50:19 25            THE COURT:  All right.  You also answered yes to

10:50:21  1  question number four, which is there anything about the

10:50:23  2  nature of the charges that would --

10:50:27  3          A JUROR:  Well, as far as I am concerned with my

10:50:29  4  background in chemistry, I don't know the law that much, I

10:50:34  5  don't have that much exposure.  Originally, I'm from

10:50:40  6  Ethiopia also, but I have a degree in chemistry, I don't

10:50:47  7  know the law that well, what that would be.

10:50:50  8          THE COURT:  So your answer to question number 4

10:50:52  9  when you answered that yes, is because you just aren't sure

10:50:54 10  that you know anything about the law.

10:50:57 11          A JUROR:  Yes, I don't have good exposure.

10:51:00 12          THE COURT:  Do you understand that your job here

10:51:02 13  would be to listen to what happens in the courtroom and

10:51:04 14  decide the facts and then apply the law, it's my job to give

10:51:08 15  you the law that you have to apply.

10:51:09 16          A JUROR:  That's okay.

10:51:10 17          THE COURT:  Would that make you --

10:51:12 18          A JUROR:  Yeah.

10:51:12 19          THE COURT:  Reconsider your yes answer to

10:51:14 20  question number four?

10:51:15 21          A JUROR:  Yeah, okay, yeah, yeah.

10:51:17 22          THE COURT:  All right.  What about question

10:51:18 23  number 15?

10:51:21 24          A JUROR:  15.

10:51:24 25          THE COURT:  Education.

10:51:25  1          A JUROR:  You have education, yeah, my

10:51:27  2    background is chemistry, yes, I do lab testing every day.

10:51:34  3          THE COURT:  Every day, in fact, you want to

10:51:36  4    oversee some undergraduates doing some laboratory testing.

10:51:39  5          A JUROR:  Yeah, research testing.

10:51:41  6          THE COURT:  And then 46 -- 46 is there some

10:51:49  7    difficulty that you have that would make it difficult?

10:51:52  8          A JUROR:  So, I'm a professor in chemistry, I

10:51:56  9    teach chemistry, my language may be okay in chemistry, but

10:52:00 10    I'm originally from Ethiopia, I'm not good at the language

10:52:07 11    as far as the law is concerned.

10:52:09 12          THE COURT:  So you would be concerned that

10:52:10 13    people might talk quickly or say something and you might

10:52:14 14    miss it?

10:52:14 15          A JUROR:  Yes, for instance I did my post work

10:52:18 16    in Texas, people speak there, I finish my study in Boston,

10:52:24 17    before being in Delaware, they're different -- following I'm

10:52:30 18    having a problem.

10:52:30 19          THE COURT:  Any questions you all want to ask?

10:52:42 20          MR. HINES:  No, Your Honor.

10:52:43 21          MR. LOWELL:  No, ma'am.

10:52:44 22          THE COURT:  All right.  Thank you.

10:52:47 23          (Juror exiting the courtroom.)

10:52:57 24          MR. LOWELL:  Do you want me to go first?  We

10:52:59 25    would move for the reasons that he indicated both in terms

10:53:01 1    of his schedule with the undergraduates, and especially the

10:53:05 2    language, and he has the laboratory aspect, it's not a risk

10:53:09 3    we will be willing to take.

10:53:11 4                    THE COURT:  I agree.  We'll excuse him.

10:53:23 5                    (Juror 24 entering the courtroom.)

10:53:26 6                    COURTROOM DEPUTY:  Juror number 24.

10:53:31 7                    THE COURT:  Good morning, ma'am.

10:53:35 8                    A JUROR:  Right here.

10:53:36 9                    THE COURT:  All right.  Good morning.

10:53:38 10                   A JUROR:  Hi.

10:53:38 11                   THE COURT:  Hi.  Thanks for coming in.  All

10:53:40 12   right.  Can you tell us what questions you answered yes to?

10:53:43 13                   A JUROR:  I'm sorry?

10:53:44 14                   THE COURT:  What questions did you answer yes

10:53:46 15   to?

10:53:48 16                   A JUROR:  Well, one, I actually have an excuse

10:53:53 17   from the Court as of, you know, I'm not available as of the

10:53:59 18   19th.

10:54:01 19                   THE COURT:  Okay.  So if this were to finish

10:54:05 20   before the 19th, that's okay?

10:54:07 21                   A JUROR:  Yes.

10:54:07 22                   THE COURT:  Okay.  Anything else?  Any other

10:54:12 23   questions you answered yes to?

10:54:14 24                   A JUROR:  2.

10:54:15 25                   THE COURT:  Okay.  Anything you need to tell us

10:54:19  1    what you have heard about this case?

10:54:21  2            A JUROR:  I don't know, everything that's been

10:54:26  3    on the news over the last year or so.

10:54:29  4            THE COURT:  Okay.  So can you be a little bit

10:54:31  5    more specific because we're trying to figure out if you, you

10:54:35  6    know, I guess my question is, based on what you have heard,

10:54:39  7    do you think you could be fair and impartial in this case?

10:54:41  8            A JUROR:  Yes.  Yes.

10:54:42  9            THE COURT:  So then can you tell us what you

10:54:45  10   have heard, where you have heard it so that we can --

10:54:49  11           A JUROR:  Just various news channels, CNN,

10:54:54  12   MSNBC, Fox, we listen to all of them.  I watch the Nightly

10:54:58  13   News, and just the implications of the gun charges, I do

10:55:02  14   have strong feelings about guns, and who should have them,

10:55:06  15   and it wasn't done legally, and that's what I have heard and

10:55:13  16   how they were trying to strike a bargain with the gun

10:55:17  17   charges after the tax evasion charges.

10:55:20  18           THE COURT:  Do you think based on your strong

10:55:23  19   opinions on guns and who should be allowed to have guns,

10:55:25  20   that you would have a hard time being fair and impartial in

10:55:30  21   this case?

10:55:31  22           A JUROR:  I think I can be impartial, I can

10:55:34  23   listen to the testimony and the evidence and yes, I feel I

10:55:37  24   can make a decision based on that.

10:55:42  25           THE COURT:  What other -- you have told me you

10:55:46 1    answered yes to question number one and number two.  What

10:55:48 2    other questions did you answer yes to?

10:55:53 3                A JUROR:  Three, do you have a formed opinion

10:55:55 4    about this case.  I said yes to that, but I'm answering I

10:55:59 5    can be impartial.

10:56:00 6                THE COURT:  So what opinions have you formed?

10:56:05 7                A JUROR:  Well, basically what I just said, just

10:56:07 8    the information that I have --

10:56:10 9                THE COURT:  The question is, do you have

10:56:12 10   information or have you formed an opinion?  So question

10:56:16 11   number three is have you formed any opinions?

10:56:18 12               A JUROR:  Okay, no.

10:56:19 13               THE COURT:  So you --

10:56:25 14               A JUROR:  I think I could be fair and impartial,

10:56:30 15   so I guess the answer is no, I have not formed an opinion.

10:56:34 16               THE COURT:  What else did you answer yes to?

10:56:38 17               A JUROR:  Well, 14, I do have a paralegal

10:56:42 18   degree.

10:56:43 19               THE COURT:  Okay.

10:56:43 20               A JUROR:  But it's from the late 70's.  I worked

10:56:47 21   with the public defenders office back then, but that hasn't

10:56:52 22   been a career for me.

10:56:53 23               THE COURT:  Okay.

10:57:00 24               A JUROR 19.

10:57:05 25               THE COURT:  Can you --

10:57:06 1      A JUROR:  Yes, I know what you're supposed to do

10:57:09 2  to purchase a gun legally.

10:57:10 3      THE COURT:  Okay.  And how is it that you have

10:57:13 4  come to that --

10:57:14 5      A JUROR:  Just based on what I hear on the news,

10:57:16 6  that you're supposed to do, and I do believe there should be

10:57:20 7  background checks.  And that's basically the same thing with

10:57:25 8  21 that I answered yes to, I do believe that there are

10:57:34 9  certain guns that should not be allowed to -- for everyone

10:57:40 10  to have.

10:57:41 11      THE COURT:  What type -- what kind of guns?

10:57:44 12      A JUROR:  What kind of guns?  Assault rifles.

10:57:52 13  And that's it.  21 was my last yes.

10:57:55 14      THE COURT:  All right.  Any follow-up?

10:57:57 15      MR. HINES:  No, Your Honor.

10:57:59 16      MR. LOWELL:  Good morning.

10:58:00 17      A JUROR:  Good morning.

10:58:00 18      MR. LOWELL:  You said that you listed a number

10:58:03 19  of media outlets, and you said you knew about various cases.

10:58:07 20  What did you know about the charges about taxes and what you

10:58:14 21  called the bargain?

10:58:15 22      A JUROR:  About what?

10:58:16 23      MR. LOWELL:  You said something about knowing

10:58:17 24  about the cases, about a tax case and you mentioned the word

10:58:21 25  "bargain", I'm asking you what did you know about it?

10:58:24 1              A JUROR:  I don't know what you heard, I said

10:58:25 2     from the news media over the past year, the tax evasion

10:58:33 3     charges, and the gun charges and there was supposed to be a

10:58:36 4     deal, and then the deal wasn't accepted by the judge, that's

10:58:40 5     what I was referencing.

10:58:42 6              MR. LOWELL:  And I was too, that's the extent?

10:58:44 7              A JUROR:  Yeah, that's -- there was trying to be

10:58:47 8     a deal with tax evasion and the gun charges and that wasn't

10:58:52 9     accepted and that's why we're here.

10:58:54 10             MR. LOWELL:  And do you know anything more about

10:58:57 11    why that was or why that was not accepted?

10:58:59 12             A JUROR:  No.

10:59:00 13             MR. LOWELL:  Having heard that there was such a

10:59:02 14    deal in the works, and now hearing this case is going

10:59:05 15    forward, would that affect your ability to judge the

10:59:08 16    evidence?

10:59:08 17             A JUROR:  No, as I said, I feel I can be

10:59:10 18    impartial based on the evidence as presented.

10:59:13 19             MR. LOWELL:  I want to ask you about that, I

10:59:14 20    think you said the words "I think I could" and then you said

10:59:17 21    "I guess I could", is that an equivocation, or is it because

10:59:21 22    you really firmly believe that?  I mean, just tell us.

10:59:26 23             A JUROR:  I feel that I could, yes, listen to

10:59:31 24    the testimony, and the evidence that's presented, and make a

10:59:35 25    fair and reasonable decision.

10:59:38  1                    MR. LOWELL:  Thank you.

10:59:40  2                    THE COURT:  All right.  Thank you.  Thank you,

10:59:42  3   ma'am.  Just give us a moment, please.

10:59:44  4                    (Juror exiting courtroom.)

10:59:49  5                    MR. HINES:  No motion, Your Honor.

10:59:51  6                    MR. LOWELL:  Move to strike for cause for the

10:59:53  7   following reasons, three times words like as you told

10:59:58  8   another juror, when you say you think you could be fair and

11:00:02  9   impartial, that gives people heartburn, I know she corrected

11:00:05 10   herself afterwards, and then she said I guess.  Strong

11:00:09 11   feelings about guns and in affecting the deliberations with

11:00:12 12   the possibility of knowing about the tax case and that there

11:00:15 13   was a bargain and that's why we're here, we move to strike.

11:00:21 14                    MR. HINES:  We oppose, she was very firm in her

11:00:23 15   answers that she could be impartial, except one of those

11:00:26 16   answers she said "I think I could be impartial", and

11:00:30 17   Mr. Lowell asked a follow-up questions and she very clearly

11:00:35 18   clarified she could be impartial, and for that reason we

11:00:38 19   oppose.

11:00:38 20                    THE COURT:  I'm just looking at the -- she was

11:00:46 21   very adamant, "I said I feel I can be impartial based on the

11:00:51 22   evidence, I feel that I could, yes, listen to the testimony

11:00:55 23   and the evidence that's presented to make a fair and

11:00:58 24   reasonable decision."  So she did not equivocate there.  So

11:01:09 25   I'll let her go.  Overrule the objections.  25.

11:01:16  1                    (Juror 25 entering the courtroom.)

11:01:20  2                    COURTROOM DEPUTY:  Juror number 25.

11:01:29  3                    THE COURT:  Good morning, sir.

11:01:32  4                    A JUROR:  Good morning.

11:01:32  5                    THE COURT:  Hi, thanks for coming in.

11:01:35  6                    You answered yes.  What questions did you answer

11:01:38  7      yes to?

11:01:39  8                    A JUROR:  1, 2, 5, 7, 10, 12, 15, 16, 18, 19,

11:01:45  9      20, 21, 23, 24, 27, 31, 32, 38, 45 and 47.

11:01:52 10                    THE COURT:  Okay.  Let's start with one, the

11:01:55 11      schedule.  What's your issue?

11:01:58 12                    A JUROR:  My wife had surgery last Tuesday,

11:02:01 13      which involved a skin graph, and she has to go back tomorrow

11:02:05 14      to see whether it's successful or not or if she needs

11:02:09 15      further treatment.

11:02:10 16                    THE COURT:  You couldn't be here tomorrow

11:02:12 17      because you have to take her?

11:02:13 18                    A JUROR:  She could take herself, but I have to

11:02:15 19      be there for support in case she has to get more treatment,

11:02:19 20      I don't know how further it's going to be involved, the skin

11:02:22 21      graph, and whether it's successful or not.

11:02:24 22                    THE COURT:  So you want to be there for your

11:02:26 23      wife tomorrow?

11:02:27 24                    A JUROR:  That's correct.

11:02:28 25                    THE COURT:  Anything else on the schedule?  Any

11:02:31  1   other issues you have with the schedule?

11:02:33  2              A JUROR:  Other than missing work.

11:02:36  3              THE COURT:  Is that part of your issue, I mean,

11:02:38  4   the problem with jury service, one of the issues with jury

11:02:42  5   service is you miss work.

11:02:43  6              A JUROR:  Yeah.

11:02:44  7              THE COURT:  We need to, everyone has that issue

11:02:47  8   and the question is, is this a special concern for you?

11:02:50  9              A JUROR:  No, it's just the other issue.

11:02:54 10              THE COURT:  You said, you answered yes to

11:02:56 11   question number two, which is you had heard something about

11:03:01 12   this case.  What did you hear?

11:03:04 13              A JUROR:  If I knew any of the attorneys.

11:03:11 14              THE COURT:  I'm sorry, I thought it was number

11:03:14 15   two, which is this a case involving three charges, and you

11:03:17 16   were asked have you heard anything about this case.

11:03:20 17              A JUROR:  Okay.  Yes, I have.

11:03:25 18              THE COURT:  Okay.  So what have you heard?

11:03:27 19              A JUROR:  I have been following the news.

11:03:30 20              THE COURT:  You have been following?

11:03:30 21              A JUROR:  Yes, correct.  Do you think the fact

11:03:33 22   that you have been following the news would make it

11:03:36 23   difficult for you to be fair and impartial and listen only

11:03:39 24   to the evidence in this case?

11:03:40 25              A JUROR:  No, I don't.

11:03:40  1                    THE COURT:  When you say you have been following

11:03:42  2      it, tell me how you have been following it?

11:03:45  3                    A JUROR:  I have been listening to the news and

11:03:47  4      you know, just what's going on, that's about it.

11:03:51  5                    THE COURT:  Is this something where then you

11:03:53  6      have gone off and done additional research, or just when you

11:03:56  7      say following it --

11:03:58  8                    A JUROR:  No, I haven't done any additional

11:04:00  9      research.

11:04:01 10                    THE COURT:  You just hear it on the news?

11:04:02 11                    A JUROR:  That's correct.

11:04:03 12                    THE COURT:  Is there a particular source that

11:04:04 13      you get your news from, is it television, radio?

11:04:08 14                    A JUROR:  Both.

11:04:09 15                    THE COURT:  Podcasts, magazines?

11:04:11 16                    A JUROR:  Internet.

11:04:12 17                    THE COURT:  Internet?

11:04:13 18                    A JUROR:  Television, radio.

11:04:14 19                    THE COURT:  Any particular stations or

11:04:21 20      television stations or radio stations?

11:04:24 21                    A JUROR:  Yeah, I listen to Fox News, CNN, WGBE,

11:04:30 22      I believe, it is on the radio.  And just the general, when

11:04:36 23      you go on to the internet, the general news that flashes.

11:04:41 24                    THE COURT:  When you said you were following the

11:04:43 25      case, have you formed any opinions in this case?

11:04:47  1          A JUROR:  No, I have not.

11:04:48  2          THE COURT:  All right.  You said that one of the

11:04:54  3  questions was do you know any of the lawyers involved in

11:04:56  4  this case?

11:04:57  5          A JUROR:  Yes.  Years ago I knew an attorney,

11:05:01  6  Bartholomew Dalton, I don't know if it's the same one or

11:05:06  7  not, its been so many years, I was a police officer.

11:05:08  8          THE COURT:  When you were a police officer?

11:05:09  9          A JUROR:  Yes.

11:05:10 10          THE COURT:  And anything about -- did you work

11:05:14 11  with him or just --

11:05:16 12          A JUROR:  I just remember the name, this is

11:05:17 13  quite a few years ago.

11:05:19 14          THE COURT:  Anything about your recollection of

11:05:21 15  that name that would make it difficult for you to be fair

11:05:24 16  and impartial?

11:05:25 17          A JUROR:  No, no, not at all.

11:05:27 18          THE COURT:  Okay.  The next question is -- that

11:05:30 19  you answered yes to was are you or any member of your

11:05:34 20  immediate family or close friends or acquaintances, or close

11:05:38 21  friends acquaintances with Robert Hunter Biden, or any

11:05:41 22  member of his family.

11:05:43 23          A JUROR:  I'm an acquaintance with the first

11:05:46 24  lady, Jill Biden, we worked at the same school for quite a

11:05:52 25  few years, and I have met her husband a couple of times at

11:05:57 1  events, when I was a Delaware police and Delaware Tech when

11:06:02 2  they came to events there, and the navel observatory for a

11:06:08 3  holiday one year.

11:06:12 4          THE COURT:  So that's it, your -- you were a

11:06:15 5  colleague or a former colleague of Jill Biden.

11:06:19 6          A JUROR:  Yes, we worked at the same college,

11:06:22 7  she was an instructor, and I was a director of

11:06:25 8  administrative services.

11:06:27 9          THE COURT:  And anything about that relationship

11:06:30 10 that would make it difficult for you to be fair and

11:06:32 11 impartial?

11:06:33 12         A JUROR:  Not at all.

11:06:34 13         THE COURT:  Okay.  And you've also met with Joe

11:06:38 14 Biden, anything about your interactions with him that would

11:06:41 15 make it difficult for you to be fair and impartial?

11:06:44 16         A JUROR:  No, just met him at events, you know.

11:06:48 17         THE COURT:  Okay.  You also answered yes to the

11:06:54 18 question about you or those closest to you being employed

11:06:59 19 by, investigated by any law enforcement agency.  What is

11:07:03 20 your -- I think you mentioned you used to be a police

11:07:07 21 officer?

11:07:07 22         A JUROR:  Yes, I was with the Wilmington Police

11:07:11 23 Department for 23 years.

11:07:12 24         THE COURT:  Anything else that made you answer

11:07:13 25 yes to that question?

11:07:17 1          A JUROR:  No.

11:07:26 2          THE COURT:  Okay.  Anything about your

11:07:33 3  employment as a police officer that would make it difficult

11:07:35 4  for you to be fair and impartial?  There will be testimony

11:07:38 5  of law enforcement.  Will you be able to fairly evaluate

11:07:42 6  that testimony?

11:07:42 7          A JUROR:  Yes, I will.  Yes.

11:07:45 8          THE COURT:  Okay.  You answered yes to question

11:07:52 9  12, which is have you or any member of your immediate family

11:07:55 10  been a victim in a crime, a witness in a criminal case, or

11:07:59 11  arrested for a crime, not including minor traffic offense,

11:08:02 12  can you tell us about that?

11:08:03 13          A JUROR:  Yes, I have been a witness in quite a

11:08:06 14  few criminal cases.

11:08:07 15          THE COURT:  Is that based on your time as a

11:08:09 16  police officer?

11:08:09 17          A JUROR:  Yes.  And I have a family member who

11:08:13 18  has been arrested.

11:08:14 19          THE COURT:  And can you tell us what the arrest

11:08:16 20  was for?

11:08:18 21          A JUROR:  It's so long ago, it had something to

11:08:23 22  do with a prescription.

11:08:28 23          THE COURT:  Anything about your time as a police

11:08:31 24  officer, your being a witness in cases, those were criminal

11:08:36 25  cases -- when you were a witness, it was criminal cases?

11:08:39  1                    A JUROR:  Uh-huh.

11:08:40  2                    THE COURT:  Anything about that or your family

11:08:42  3      members's arrest that would make it difficult for you to be

11:08:45  4      fair and impartial?

11:08:46  5                    A JUROR:  No, not at all.

11:08:48  6                    THE COURT:  Okay.  You also answered yes to

11:08:51  7      question 23 about donating to a political campaign.  So can

11:08:58  8      you tell us what political campaign?

11:09:03  9                    A JUROR:  I have donated to the National

11:09:16 10      Republican Committee.

11:09:16 11                    THE COURT:  Anything else, any individual

11:09:18 12      candidates?

11:09:19 13                    A JUROR:  Yeah, years ago, I donated to the

11:09:25 14      attorney general's race.

11:09:27 15                    THE COURT:  In Delaware?

11:09:28 16                    A JUROR:  One of the candidates.

11:09:30 17                    THE COURT:  Do you remember which one?

11:09:31 18                    A JUROR:  I do.

11:09:31 19                    THE COURT:  Who was it?

11:09:33 20                    A JUROR:  Ferris Wharton.

11:09:38 21                    THE COURT:  Anything else that you recall?

11:09:40 22                    A JUROR:  No.

11:09:40 23                    THE COURT:  And how recent -- so the attorney

11:09:43 24      general one, that was a while back?

11:09:45 25                    A JUROR:  A long time ago, right.

11:09:47  1                    THE COURT:  What about your donations to the

11:09:50  2      National Republican Committee, how recent was that?

11:09:54  3                    A JUROR:  Recently.

11:09:55  4                    THE COURT:  Recently?

11:09:57  5                    Would that fact prevent you from maintaining an

11:09:59  6      open impartial mind until all the evidence is presented and

11:10:02  7      I instruct you?

11:10:03  8                    A JUROR:  No, not at all.  I just recall, I

11:10:07  9      donated to a city council race years ago, there was a

11:10:11 10      campaign manager, someone who ran for Wilmington city

11:10:16 11      manager.

11:10:16 12                    THE COURT:  The city manager?

11:10:18 13                    A JUROR:  Yes and I supported that candidate.

11:10:20 14                    THE COURT:  Who was that?

11:10:21 15                    A JUROR:  Stephen Martelli.

11:10:23 16                    THE COURT:  Was that a while back?

11:10:24 17                    A JUROR:  Yes.

11:10:25 18                    THE COURT:  And then when it said have you ever

11:10:28 19      been actively involved in a political campaign, political

11:10:31 20      organization, an organization with a political party, that

11:10:35 21      would include what you're telling me about?

11:10:37 22                    A JUROR:  That's correct.

11:10:37 23                    THE COURT:  Anything else other than that?

11:10:39 24                    A JUROR:  Years ago when I was young, I worked

11:10:40 25      for another city council person on a campaign, but that's a

11:10:45 1    long time ago.

11:10:46 2                THE COURT:  Do you remember who that was, just

11:10:49 3    so we date it?

11:10:50 4                A JUROR:  I don't know, I don't remember, but I

11:10:51 5    was a teenager.

11:10:52 6                THE COURT:  With respect to Mr. Martelli, you

11:10:55 7    said the -- what was your role?

11:10:58 8                A JUROR:  Campaign manager.

11:11:00 9                THE COURT:  Campaign manager.  And how long were

11:11:03 10   you the campaign manager?

11:11:06 11               A JUROR:  During the --

11:11:08 12               THE COURT:  The campaign.

11:11:09 13               A JUROR:  Yeah.

11:11:10 14               THE COURT:  Okay.

11:11:11 15               A JUROR:  It wasn't very long, city council

11:11:13 16   position.

11:11:14 17               THE COURT:  Anything about that experience or

11:11:15 18   that -- that would make it difficult for you to be fair and

11:11:19 19   impartial?

11:11:20 20               A JUROR:  No.

11:11:21 21               THE COURT:  Okay.  27, do you believe the United

11:11:29 22   States Department of Justice, FBI, ATF, DEA, or any other

11:11:34 23   law enforcement agency investigates and prosecutes

11:11:36 24   individuals because of politics?

11:11:38 25               A JUROR:  I believe there have been some cases

11:11:41 1    based on political --

11:11:43 2              THE COURT:  Are you thinking anything in general

11:11:46 3    in particular or in general?

11:11:47 4              A JUROR:  I was thinking about the case with the

11:11:49 5    dossier, where the FBI agents were involved and this recent

11:11:54 6    New York trial that just happened.

11:11:56 7              THE COURT:  When you say the dossier, are you

11:11:58 8    talking about, I can't remember the name of the person, but

11:12:03 9    the one that involved President Trump?

11:12:05 10             A JUROR:  Yes.

11:12:06 11             THE COURT:  And the New York case that you're

11:12:07 12   talking about, that involved the recent former President

11:12:11 13   Trump in New York?

11:12:12 14             A JUROR:  That's correct, yes.

11:12:13 15             THE COURT:  And you think that those were

11:12:16 16   investigations that were done because of politics?

11:12:19 17             A JUROR:  I believe they may have been, I can't

11:12:22 18   say for certain, but I think there is some political

11:12:27 19   interest going on there.

11:12:28 20             THE COURT:  And would you be able to put those

11:12:31 21   thoughts aside and be fair and impartial in this case?

11:12:34 22             A JUROR:  Absolutely.

11:12:35 23             THE COURT:  31, 32, those deal with people who

11:12:40 24   are close to you or you involving -- involved in a struggle

11:12:45 25   with drug or alcohol abuse or addiction.

11:12:47  1                A JUROR:  Yes.

11:12:48  2                THE COURT:  Can you tell us about that?

11:12:49  3                A JUROR:  Yes.  I had a spouse who had problems

11:12:52  4     with addiction years ago.

11:12:54  5                THE COURT:  Okay.  Is that a current spouse?

11:12:57  6                A JUROR:  Yes.

11:12:57  7                THE COURT:  And is there anything about your

11:13:04  8     experience with your spouse, or your spouse's experience

11:13:07  9     that you're familiar with, that would make it difficult for

11:13:10 10     you to be fair and impartial and listen to the facts in this

11:13:12 11     case?

11:13:13 12                A JUROR:  No, not at all.

11:13:14 13                THE COURT:  If you answered yes to 38 -- if

11:13:21 14     you're chosen to sit as a juror, you will be instructed you

11:13:25 15     cannot do research or investigation, including on the

11:13:27 16     internet, on any issues, or communicate with anyone, is this

11:13:31 17     an instruction you will be able to follow?  I changed that

11:13:34 18     one to say "is that an instruction you will be unable to

11:13:37 19     follow?"  So I guess my question is, when you said you

11:13:41 20     answered yes, is that because you answered it as written?

11:13:44 21                A JUROR:  Yes, I answered it as written.

11:13:46 22                THE COURT:  As written?

11:13:47 23                A JUROR:  Yes, I did.

11:13:48 24                THE COURT:  So your answer is that's an

11:13:50 25     instruction you would be able to follow?

11:13:52  1           A JUROR:  Yes.

11:13:52  2           THE COURT:  We usually try to do it and I

11:13:54  3  usually try to catch the ones that are answered yes, and a

11:13:58  4  fair answer, but we missed that one.

11:14:00  5           45.  Have you been a witness in a civil or

11:14:04  6  criminal matter, you told us about your time as a witness

11:14:09  7  when you were in the police force.  Anything else that

11:14:11  8  causes you to answer yes to that one?

11:14:14  9           A JUROR:  No, just during my employment.

11:14:16 10           THE COURT:  And then you answered yes to 47,

11:14:18 11  which is the catch all, anything else that you think it

11:14:22 12  would be good to tell me in connection with this case.

11:14:27 13           A JUROR:  Yeah, just the name, Bartholomew

11:14:32 14  Dalton, I wasn't certain it was the same Bart Dalton that I

11:14:36 15  knew many years ago.

11:14:38 16           THE COURT:  All right.  Any follow-up?

11:14:40 17           MR. HINES:  Sir, can I ask, which years were you

11:14:43 18  -- did you serve with the Wilmington department of police?

11:14:46 19           A JUROR:  January 14th, 1980, to January 29,

11:14:51 20  2003.

11:14:51 21           MR. HINES:  Thank you.

11:14:53 22           MR. LOWELL:  Thank you, ma'am.  Good morning.

11:14:56 23           A JUROR:  Good morning.

11:14:57 24           MR. LOWELL:  When you were in the police force,

11:14:59 25  did you work ever with the Delaware State Police.

11:15:01  1          A JUROR:  On occasion, yes.

11:15:02  2          MR. LOWELL:  How many occasions?

11:15:04  3          A JUROR:  Numerous.

11:15:05  4          MR. LOWELL:  Numerous.

11:15:06  5          A JUROR:  Yeah.

11:15:07  6          MR. LOWELL:  When you said that you had

11:15:08  7  witnessed various offenses and were a witness, were you ever

11:15:13  8  a testifying police officer?

11:15:15  9          A JUROR:  Uh-uh.  Yes.

11:15:15 10          MR. LOWELL:  How many times for that?

11:15:17 11          A JUROR:  Numerous, numerous.

11:15:19 12          MR. LOWELL:  So if there was in this case,

11:15:21 13  testimony from a police officer who says X, and then a

11:15:25 14  non-law enforcement person who says the opposite, would you

11:15:28 15  start thinking that the police officer was more correct?

11:15:33 16          A JUROR:  I would listen to any testimony with

11:15:36 17  an open mind and make judgment based on what's said, the

11:15:40 18  facts.

11:15:40 19          MR. LOWELL:  You paused, I just wanted to make

11:15:44 20  sure I understood.  So you would judge a police officer's

11:15:46 21  testimony equally to a non-police officer's testimony?

11:15:50 22          A JUROR:  Yes.

11:15:51 23          MR. LOWELL:  In the race that you said you were

11:15:53 24  a campaign manager?

11:15:55 25          A JUROR:  Yes.

11:15:55 1          MR. LOWELL:  Is that the one for the attorney

11:15:57 2  general position?

11:15:58 3          A JUROR:  No, city council person.

11:16:00 4          MR. LOWELL:  And the attorney general position,

11:16:03 5  the person you supported, who is that?

11:16:05 6          A JUROR:  Ferris Wharton.

11:16:07 7          MR. LOWELL:  Do you know who he ran against?

11:16:09 8          A JUROR:  Yes, Beau Biden.

11:16:11 9          MR. LOWELL:  So, would the fact that you worked

11:16:13 10  for the person running against Mr. Biden's brother impact

11:16:16 11  you with being a fair and impartial juror?

11:16:19 12          A JUROR:  I didn't work with him, I just

11:16:21 13  supported his candidacy.

11:16:23 14          MR. LOWELL:  Would it have any impact on you?

11:16:24 15          A JUROR:  No.

11:16:25 16          MR. LOWELL:  It would not?

11:16:26 17          A JUROR:  No.

11:16:27 18          MR. LOWELL:  You said something about the

11:16:28 19  politics that involved the dossier case, and the one about

11:16:33 20  former President Trump in New York.

11:16:33 21          A JUROR:  Yes.

11:16:34 22          MR. LOWELL:  Those are the two you mentioned?

11:16:36 23          A JUROR:  Yes.

11:16:37 24          MR. LOWELL:  Do politics ever play a role in

11:16:40 25  your mind on whether or not somebody from the opposite party

11:16:43  1   gets prosecuted and investigated, you only mentioned Trump,

11:16:47  2   do politics ever get involved in the democrats?

11:16:51  3              A JUROR:  No, not the ones that you call.

11:16:53  4              MR. LOWELL:  Only those two?

11:16:54  5              A JUROR:  The ones currently now.

11:16:55  6              MR. LOWELL:  The ones against former President

11:16:58  7   Trump?

11:16:58  8              A JUROR:  Yes.

11:16:59  9              MR. LOWELL:  And the fact that your belief --

11:17:00 10              A JUROR:  Well, at the time he was the.  For the

11:17:02 11   first one.

11:17:02 12              MR. LOWELL:  So again, given your views about

11:17:04 13   the cases against former President Trump, who is a candidate

11:17:08 14   against Mr. Biden's father, would that have any impact on

11:17:12 15   your ability to be a fair and impartial juror?

11:17:15 16              A JUROR:  No.

11:17:15 17              MR. LOWELL:  No other questions.

11:17:17 18              THE COURT:  All right.  Thank you.

11:17:19 19              (Juror exiting the courtroom.)

11:17:28 20              MR. HINES:  No motion.

11:17:29 21              MR. LOWELL:  I won't persuade you that he should

11:17:33 22   be struck for cause, I'll just make a mark for myself.

11:17:37 23   Thank you.

11:17:39 24              THE COURT:  All right.

11:17:42 25              (Juror 26 entering the courtroom.)

11:17:51  1                 COURTROOM DEPUTY:  Juror number 26.

11:17:53  2                 THE COURT:  Good morning, sir.

11:17:56  3                 A JUROR:  Good morning.

11:17:57  4                 THE COURT:  Thanks for coming in.  Can you tell

11:17:59  5      us what you answered yes to?

11:18:01  6                 A JUROR:  Number 2.

11:18:04  7                 THE COURT:  Anything else?

11:18:05  8                 A JUROR:  15.  18.  19.  20.  And 21.

11:18:12  9                 THE COURT:  Okay.  Let's start with number two.

11:18:15 10      You said you heard about this case?

11:18:17 11                 A JUROR:  Yeah.

11:18:17 12                 THE COURT:  Can you tell us what you have heard?

11:18:19 13                 A JUROR:  You know, like you might look at like

11:18:25 14      Twitter, and they might come up with a profile or something

11:18:28 15      coming up about this case, I have seen it, MSNBC, CNN.

11:18:34 16                 THE COURT:  Have you read those articles when

11:18:36 17      they come up, or listen to the reports when they come on

11:18:39 18      those news channels?

11:18:41 19                 A JUROR:  Not really.

11:18:41 20                 THE COURT:  Can you tell us what, if anything,

11:18:43 21      you know about this case?

11:18:45 22                 A JUROR:  That it's the son of our President.

11:18:47 23                 THE COURT:  Okay.

11:18:48 24                 A JUROR:  That's pretty much all.

11:18:50 25                 THE COURT:  Okay.  And do you know anything

11:18:52  1    about the facts of the case?

11:18:55  2                    A JUROR:  No.

11:18:55  3                    THE COURT:  Or you're just saying I know that I

11:18:57  4    have heard about it.

11:18:58  5                    A JUROR:  I have heard about the story, but I

11:19:00  6    don't really know in depth about what's going on with the

11:19:04  7    case.

11:19:05  8                    THE COURT:  And then you answered yes to

11:19:06  9    question 15?

11:19:10 10                    A JUROR:  Yes.

11:19:11 11                    THE COURT:  Which is education, or work

11:19:13 12    experience.  Can you tell us about that?

11:19:15 13                    A JUROR:  Yes.  I'm a Delaware State CCW

11:19:21 14    carrier, and I'm also an out of state Florida CCW carrier.

11:19:26 15                    THE COURT:  And CCW is?

11:19:28 16                    A JUROR:  Concealed carry weapons.

11:19:32 17                    THE COURT:  Okay.  I should probably know that.

11:19:35 18                    Okay.  So you have a permit to carry concealed

11:19:41 19    weapons in Delaware and Florida?

11:19:43 20                    A JUROR:  And in all states that are affiliated.

11:19:47 21                    THE COURT:  With that?

11:19:48 22                    A JUROR:  Yes.

11:19:48 23                    THE COURT:  And is that -- so with training --

11:19:53 24    does that -- in order to get that, do you have to have some

11:19:57 25    kind of training in firearms?

11:19:59  1                    A JUROR:  Yes.

11:19:59  2                    THE COURT:  What kind of training do you need?

11:20:01  3                    A JUROR:  You need the basic standard questions,

11:20:04  4     as far as how to handle the weapons, typical knowledge about

11:20:07  5     how to carry, how to make sure the chamber is empty when you

11:20:12  6     handle it.  Where to carry it, there are certain

11:20:15  7     restrictions on where you can carry weapons, et cetera.

11:20:19  8                    THE COURT:  And then you also answered yes to

11:20:21  9     some other questions about whether you, close family

11:20:24 10     members, have experience either owning or purchasing a

11:20:29 11     firearm.  So given your CCW licenses, I assume you own a

11:20:37 12     firearm?

11:20:37 13                    A JUROR:  Yeah, several.

11:20:39 14                    THE COURT:  Several.

11:20:40 15                    A JUROR:  Yeah.

11:20:40 16                    THE COURT:  How many?

11:20:41 17                    A JUROR:  3.

11:20:41 18                    THE COURT:  And what type of firearms?

11:20:43 19                    A JUROR:  Right now, pistols.

11:20:46 20                    THE COURT:  Okay.  And you have owned other ones

11:20:49 21     in the past?

11:20:50 22                    A JUROR:  Yes.

11:20:50 23                    THE COURT:  Anything about your experience in

11:20:56 24     purchasing a firearm or dealing with the laws, regulations

11:20:59 25     or requirements of purchasing them that impacts your ability

11:21:03 1  to be fair and impartial?

11:21:05 2              A JUROR:  No.

11:21:05 3              THE COURT:  Other than -- so how many firearms

11:21:12 4  do you think you have owned during your lifetime?

11:21:15 5              A JUROR:  Probably six.

11:21:16 6              THE COURT:  And some of them you have gotten rid

11:21:18 7  of?

11:21:19 8              A JUROR:  Yeah, you want to get the newest brand

11:21:23 9  that are shooting, velocity, et cetera.

11:21:29 10             THE COURT:  What do you use, if you don't mind,

11:21:31 11 what do you use them for, recreational, protection, hunting,

11:21:35 12 collector?

11:21:36 13             A JUROR:  Protection.

11:21:37 14             THE COURT:  Protection.

11:21:39 15             Now, anything about you having filled out forms

11:21:43 16 as part of the purchase of a firearm that would impact your

11:21:46 17 ability to be fair and impartial?

11:21:48 18             A JUROR:  No.

11:21:48 19             THE COURT:  How about you said yes to question

11:21:51 20 21, you have strong views about gun ownership in this

11:21:55 21 country, the gun lobby, or the Second Amendment.

11:21:58 22             A JUROR:  Yes.

11:21:58 23             THE COURT:  Can you tell us about that?

11:22:00 24             A JUROR:  I think, I believe the Second

11:22:03 25 Amendment is very important, and I stand with it, and I

11:22:07  1    think every law abiding citizen that follows the law should

11:22:10  2    be able to have their Second Amendment.

11:22:13  3                    THE COURT:  Okay.  And do you think that would

11:22:15  4    impact your ability to be fair and impartial in this case?

11:22:18  5                    A JUROR:  No.

11:22:19  6                    THE COURT:  So you would be okay in listening to

11:22:23  7    the evidence and applying the law as I said it even if it

11:22:27  8    was different from how you view the Second Amendment, gun

11:22:33  9    ownership, the gun lobby, things like that?

11:22:37 10                    A JUROR:  Yeah.

11:22:37 11                    THE COURT:  Okay.  Any follow-up?

11:22:41 12                    MR. HINES:  No, Your Honor.

11:22:44 13                    MR. LOWELL:  No follow-up.

11:22:45 14                    THE COURT:  Thank you.  Thank you, sir.

11:22:48 15                    (Juror exiting the courtroom.)

11:23:02 16                    (Juror 27 entering the courtroom.)

11:23:05 17                    COURTROOM DEPUTY:  Juror number 27.

11:23:08 18                    THE COURT:  Good morning, ma'am.

11:23:11 19                    A JUROR:  Good morning.

11:23:12 20                    THE COURT:  Thanks for coming in.

11:23:14 21                    So, can you tell us what questions you answered

11:23:18 22    yes to?

11:23:18 23                    A JUROR:  Number 2, number 10, 18, 20, 31 and

11:23:25 24    32.

11:23:26 25                    THE COURT:  All right.  Thank you.  Let's start

11:23:28  1    with number two, that's whether you have heard anything

11:23:30  2    about this case.  Can you tell us what you have heard about

11:23:33  3    this case?

11:23:33  4              A JUROR:  Basically just all on the news where

11:23:35  5    it was coming up, nothing really more than that.  I just

11:23:39  6    know that, about it.

11:23:41  7              THE COURT:  So you have heard there was a case

11:23:43  8    involving this defendant that was coming up?

11:23:45  9              A JUROR:  Yes.

11:23:46 10              THE COURT:  Did you do any investigation or any

11:23:48 11    looking into that?

11:23:49 12              A JUROR:  No, no.

11:23:50 13              THE COURT:  And where did you hear it to your

11:23:53 14    recollection?

11:23:54 15              A JUROR:  I think it was on -- when I'm at work

11:23:57 16    and you pull up your home pages, one of the things that

11:24:02 17    flash by, one of that.

11:24:06 18              THE COURT:  Okay.  Anything about what you have

11:24:08 19    heard so far that you think would -- like that you've

11:24:11 20    already formed an opinion, or it would be difficult for you

11:24:14 21    to be fair and impartial?

11:24:16 22              A JUROR:  No, I don't believe so.

11:24:17 23              THE COURT:  Okay.  All right.  You also answered

11:24:20 24    yes to question number ten?

11:24:29 25              A JUROR:  Yes, my husband is a local cop in the

11:24:31  1    city of Fruitland, Maryland.

11:24:34  2                    THE COURT:  Fruitland, did you say?

11:24:36  3                    A JUROR:  Fruitland, I live in Sussex County, so

11:24:40  4    I live on the border between Delaware and Maryland, so he's

11:24:43  5    a cop in Maryland.

11:24:45  6                    THE COURT:  And anything about that that would

11:24:49  7    make it difficult for you to be fair and impartial if you

11:24:52  8    heard other law enforcement agents testifying in this case?

11:24:56  9                    A JUROR:  I don't believe so, no.

11:24:58 10                    THE COURT:  You answered yes to question 18

11:25:07 11    about you or someone close to you having experience

11:25:13 12    purchasing or filling out the forms for a gun?

11:25:17 13                    A JUROR:  That would be my husband.

11:25:19 14                    THE COURT:  So in addition to having a firearm

11:25:21 15    for work, does he also have a personal firearm?

11:25:24 16                    A JUROR:  He does.

11:25:25 17                    THE COURT:  And anything about -- do you know

11:25:29 18    what kind of gun that is?

11:25:31 19                    A JUROR:  It's his off duty pistol, I'm not

11:25:34 20    really sure what kind it is now.

11:25:37 21                    THE COURT:  That's fine.  And anything about

11:25:40 22    that that he has that firearm, or that he has had to fill

11:25:46 23    out paperwork for that, anything about that that means you

11:25:50 24    can't be fair and impartial in this case?

11:25:52 25                    A JUROR:  No, I don't believe so.

11:25:53 1            THE COURT:  And then you also answered yes to

11:25:58 2  some questions about those close to you who have suffered

11:26:03 3  from drug or alcohol abuse or addiction?

11:26:06 4            A JUROR:  Uh-huh.  I'm sorry, go ahead.

11:26:08 5            THE COURT:  That's okay, can you tell us a

11:26:11 6  little bit about that?

11:26:11 7            A JUROR:  Yes, both my parents had alcohol

11:26:14 8  problems, some drug problems, my dad went through a

11:26:18 9  30-day-in-patient treatment center.  Yeah.

11:26:25 10            THE COURT:  Sorry.

11:26:26 11            A JUROR:  No, that's okay.

11:26:27 12            THE COURT:  Is that when you were a child or

11:26:28 13  when you were older?

11:26:30 14            A JUROR:  Yeah, when I was a child.

11:26:31 15            THE COURT:  Is there anything about that

11:26:32 16  experience that would make it difficult for you to be fair

11:26:36 17  and impartial in listening to evidence about struggles with

11:26:42 18  drug addiction or controlled substances?

11:26:45 19            A JUROR:  In my opinion, I think it would -- I

11:26:48 20  think it would be easier for me because I went through that

11:26:50 21  with my parents, so I understand it from a -- from that

11:26:55 22  perspective, you know.  It is a disease, you know, and I

11:27:01 23  don't look down upon that or feel any judgment because

11:27:07 24  people have problems.

11:27:09 25            THE COURT:  Okay.  And would you be able to put

11:27:17 1    your emotions aside and just listen to the facts and the law

11:27:21 2    in this case?

11:27:23 3                    A JUROR:  Yes, I believe I can.

11:27:24 4                    THE COURT:  Okay.  All right.  Any follow-up?

11:27:38 5                    MR. HINES:  Ma'am, are you able to render a

11:27:40 6    verdict and hold him responsible, even though you understand

11:27:45 7    it's a disease and addiction?

11:27:48 8                    A JUROR:  Absolutely.

11:27:49 9                    MR. LOWELL:  And based on the question, ma'am,

11:27:51 10   when he asked, "hold him responsible", based on what Your

11:27:55 11   Honor says the law is after you hear the facts?

11:27:57 12                   A JUROR:  After I hear the facts, exactly.

11:28:00 13                   THE COURT:  All right.  Thank you very much.

11:28:09 14                   (Juror exiting the courtroom.)

11:28:14 15                   THE COURT:  Any motions?

11:28:17 16                   MR. LOWELL:  No motion from us.

11:28:20 17                   THE COURT:  I just want to get a nod or a no.

11:28:23 18                   MR. LOWELL:  I'm sorry.

11:28:24 19                   THE COURT:  No, appreciate that.  Thank you.

11:28:26 20                   MR. LOWELL:  Just an inquiry as to if there is

11:28:28 21   going to be a break and when you plan to do that.

11:28:31 22                   THE COURT:  If you'd like one, we could take

11:28:33 23   one.

11:28:33 24                   MR. LOWELL:  If I'm the only one, I can wait.

11:28:39 25   If I'm not the only one, that would be great.

11:28:42  1              THE COURT:  How about we go to juror number 30,

11:28:46  2     that would be like halfway through our panel.

11:28:49  3              MR. LOWELL:  That's fine.

11:28:52  4              THE COURT:  Thank you.

11:28:53  5              (Juror 28 entering the courtroom) .

11:28:57  6              COURTROOM DEPUTY:  Juror number 28.

11:28:59  7              THE COURT:  Good morning.

11:29:00  8              A JUROR:  Good morning, how are you?

11:29:01  9              THE COURT:  Thanks for coming in.  So you

11:29:05 10     answered yes to a question or more than one question?

11:29:08 11              A JUROR:  2, 18, and 20, I did.

11:29:10 12              THE COURT:  2, 18, and 20?  Thank you.  Two is

11:29:13 13     the question that I think you heard anything about this

11:29:16 14     case.  Can you tell us what you have heard?

11:29:18 15              A JUROR:  Just basic factual stuff, just reading

11:29:23 16     articles on Delaware Online.

11:29:26 17              THE COURT:  Okay.

11:29:26 18              A JUROR:  Just news, Delaware is a small place,

11:29:29 19     so you hear stuff.

11:29:31 20              THE COURT:  So when you said you read articles,

11:29:34 21     is there anything that you can recall about what you have

11:29:37 22     heard about this case?

11:29:39 23              A JUROR:  Just some of the stuff leading up to

11:29:45 24     the case, as far as where it happened, a store in

11:29:55 25     Greenville, that's about it, you know, stuff about, basic

11:29:59  1   facts like that.

11:30:00  2                THE COURT:  Okay.  Now, you said you read the

11:30:03  3   articles in Delaware Online, or it was local Delaware stuff

11:30:08  4   that you have seen?

11:30:09  5                A JUROR:  Yeah, uh-huh.

11:30:10  6                THE COURT:  Anything -- have you done any

11:30:13  7   independent research or looking into this in any way?

11:30:16  8                A JUROR:  No.

11:30:18  9                THE COURT:  Anything about what you have heard

11:30:20 10   that would make it difficult for you to be fair and

11:30:22 11   impartial, listen to the facts, and apply that to the law

11:30:26 12   that I give you?

11:30:28 13                A JUROR:  No.

11:30:28 14                THE COURT:  You also answered yes to questions

11:30:31 15   18 and 20?

11:30:34 16                A JUROR:  Right.

11:30:35 17                THE COURT:  Those are questions about owning a

11:30:38 18   firearm?

11:30:38 19                A JUROR:  Uh-huh.

11:30:39 20                THE COURT:  You or someone close to you?

11:30:42 21                A JUROR:  Uh-huh.

11:30:43 22                THE COURT:  Can you tell us about that?

11:30:44 23                A JUROR:  My brother owns firearms and he shoots

11:30:48 24   skeet, that's the extent of it.

11:30:50 25                THE COURT:  That's the extent?

11:30:51  1                    A JUROR:  Yes.

11:30:52  2                    THE COURT:  Do you know how many he has or what

11:30:54  3   kind?

11:30:54  4                    A JUROR:  I have no idea.

11:30:55  5                    THE COURT:  And with respect to the paperwork,

11:30:58  6   did you answer yes to that simply because you figured he

11:31:02  7   filled out paperwork?

11:31:03  8                    A JUROR:  Exactly.

11:31:04  9                    THE COURT:  But you don't have any knowledge of

11:31:06 10   that paperwork?

11:31:07 11                    A JUROR:  I don't, no.

11:31:08 12                    THE COURT:  Anything about your brother's

11:31:10 13   ownership of firearms that would make it difficult for you

11:31:13 14   to be fair and impartial?

11:31:15 15                    A JUROR:  No.

11:31:15 16                    THE COURT:  Any follow-up?

11:31:17 17                    MR. HINES:  Sir, you mentioned you read some

11:31:20 18   articles, and one of them involved a grocery store.  Did you

11:31:23 19   read any articles involving the gun store?

11:31:27 20                    A JUROR:  I believe there was a couple sentences

11:31:30 21   in the article, location of gun store, but other than that,

11:31:38 22   no.

11:31:41 23                    MR. LOWELL:  Good morning.

11:31:43 24                    A JUROR:  Good morning.

11:31:43 25                    MR. LOWELL:  To use your phrase, I think you

11:31:46  1    read "stuff leading up to the case."

11:31:48  2              A JUROR:  Yes.

11:31:49  3              MR. LOWELL:  What led up to the case?

11:31:51  4              A JUROR:  As far as?

11:31:54  5              MR. LOWELL:  I just wanted to know what you

11:31:57  6    meant.

11:31:57  7              A JUROR:  Stuff leading up to the case meaning,

11:31:59  8    I read these articles, found a gun in a trash can, that sort

11:32:08  9    of thing.

11:32:09 10              MR. LOWELL:  Tell us what it is that you can

11:32:11 11    remember from the articles, you said something about the

11:32:13 12    grocery store?

11:32:15 13              A JUROR:  The location of the grocery store.

11:32:17 14              MR. LOWELL:  Do you know that location?

11:32:18 15              A JUROR:  I do.

11:32:19 16              MR. LOWELL:  Do you shop there?

11:32:20 17              A JUROR:  No.

11:32:21 18              MR. LOWELL:  So you know something about the

11:32:24 19    grocery store, now you said you know something about thrown

11:32:26 20    in the trash at the store?

11:32:27 21              A JUROR:  At the store, in the article that I

11:32:29 22    read, a gun was found in the receptacle behind the grocery

11:32:33 23    store, I believe.

11:32:34 24              MR. LOWELL:  Do you know who found it?

11:32:36 25              A JUROR:  No.

11:32:37 1                    MR. LOWELL:  Okay.  So those are two things.

11:32:39 2    Anything else?  You said, trash, grocery store, what else do

11:32:44 3    you recall reading?

11:32:46 4                    A JUROR:  That would be it.

11:32:47 5                    MR. LOWELL:  And when was that again, how long

11:32:49 6    ago or how recent ago?

11:32:51 7                    A JUROR:  As far as the article?

11:32:53 8                    MR. LOWELL:  Yes, about when you learned this?

11:32:56 9                    A JUROR:  A year-and-a-half, two years ago.

11:32:58 10                   MR. LOWELL:  And then the source of that was

11:33:01 11   Delaware Online.

11:33:02 12                   A JUROR:  Delaware Online, yeah, The News

11:33:05 13   Journal.

11:33:05 14                   MR. LOWELL:  I'm sorry?

11:33:06 15                   A JUROR:  The News Journal, Delaware Online.

11:33:09 16                   MR. LOWELL:  Do you get your news sources

11:33:12 17   anywhere other Delaware Online or The News Journal?

11:33:15 18                   A JUROR:  No, I don't pay attention.

11:33:17 19                   MR. LOWELL:  TV, radio, and other stuff you

11:33:20 20   don't, why is that?

11:33:21 21                   A JUROR:  I'm not interested.

11:33:22 22                   MR. LOWELL:  No other questions, Judge.

11:33:25 23                   THE COURT:  Thank you, sir.  Just give us a

11:33:27 24   moment.

11:33:27 25                       (Juror exiting the courtroom.)

11:33:34  1          THE COURT:  The government says no objection.

11:33:38  2          MR. LOWELL:  No motion.

11:33:39  3          THE COURT:  All right.  Thank you.

11:33:48  4          (Juror 29 entering the courtroom.)

11:33:50  5          COURTROOM DEPUTY:  Juror number 29.

11:33:53  6          THE COURT:  All right.  Good morning, sir.

11:33:54  7          A JUROR:  Good morning, how are you?

11:33:55  8          THE COURT:  Thank you for coming in.

11:33:57  9          A JUROR:  Thank you.

11:33:58 10          THE COURT:  All right.  Can you tell us what

11:34:00 11 question or questions you answered yes to?

11:34:03 12          A JUROR:  Question 2, question 10, 12, 15, 18,

11:34:08 13 19, 20 and 21.

11:34:10 14          THE COURT:  Okay.  So question number two is

11:34:15 15 have you heard anything about this case before you came in.

11:34:17 16 Can you tell us what you have heard about this case?

11:34:19 17          A JUROR:  I just heard in the news about what

11:34:23 18 happened of Mr. Biden getting a gun without proper

11:34:39 19 documentation, and he was using drugs at that time and so

11:34:42 20 on.

11:34:42 21          THE COURT:  You understand that those are just

11:34:44 22 accusations, that those are not facts that have been proven

11:34:47 23 in this case?

11:34:47 24          A JUROR:  Yes.

11:34:48 25          THE COURT:  And you understand that the

11:34:49 1    government would have to prove those facts beyond a

11:34:52 2    reasonable doubt?

11:34:52 3                    A JUROR:  Correct, yes.

11:34:53 4                    THE COURT:  So, have you formed any opinions as

11:34:59 5    to whether what you heard on the news was correct or not?

11:35:02 6                    A JUROR:  No, I have not.

11:35:03 7                    THE COURT:  And where did you say you heard

11:35:05 8    that?

11:35:05 9                    A JUROR:  In the news, WDEL radio station.

11:35:11 10                   THE COURT:  WDEL?

11:35:12 11                   A JUROR:  Yeah.

11:35:13 12                   THE COURT:  And is that something recent or was

11:35:15 13   that over a period of time?

11:35:16 14                   A JUROR:  Over a period of time.

11:35:19 15                   THE COURT:  Okay.  Question number ten was has

11:35:27 16   any member of your immediate family or close friends been

11:35:31 17   employed by, or investigated by any law enforcement agency?

11:35:35 18                   A JUROR:  Investigated by a law enforcement

11:35:38 19   agency, New York City.

11:35:39 20                   THE COURT:  Okay.  And in what context?

11:35:43 21                   A JUROR:  Well, he was selling illegal drugs.

11:35:47 22                   THE COURT:  What was this person's relationship

11:35:49 23   to you?

11:35:49 24                   A JUROR:  He was my brother.

11:35:51 25                   THE COURT:  Your brother?

11:35:52 1          A JUROR:  Yeah, he got arrested and he got

11:35:56 2  deported.

11:35:56 3          THE COURT:  Oh, okay.  Anything about your

11:35:59 4  brother's experience with the law enforcement agencies or

11:36:07 5  getting deported that would make it difficult for you to be

11:36:10 6  fair and impartial in this case.

11:36:11 7          A JUROR:  No.

11:36:13 8          THE COURT:  Anything other than your brother

11:36:15 9  that you were thinking of in connection with question ten?

11:36:18 10          A JUROR:  No.

11:36:18 11          THE COURT:  Question 12 is have you or any

11:36:24 12  member of your immediate family been a victim of a crime, a

11:36:27 13  witness or arrested?  You told us about your brother in New

11:36:31 14  York.  Anything else that made you answer yes to that?

11:36:34 15          A JUROR:  That would be all.

11:36:35 16          THE COURT:  15, education or work experience in

11:36:40 17  this stated field, can you tell us what your answer to that

11:36:44 18  one is based on?

11:36:45 19          A JUROR:  I'm sorry?

11:36:46 20          THE COURT:  Question 15, you said you answered

11:36:48 21  yes to, it was do you have any education, training, or work

11:36:53 22  experience in the areas of firearms, law enforcement,

11:36:57 23  policing, investigation, substance, alcohol abuse,

11:36:59 24  laboratory testing or retail sales?

11:37:02 25          A JUROR:  Yeah, I have take several classes for

11:37:05  1    my conceal carry, so I have several states conceal carry,

11:37:11  2    which use that, Delaware, Maryland.

11:37:14  3             THE COURT:  So you are licensed to carry a

11:37:17  4    concealed weapon?

11:37:18  5             A JUROR:  Yes, ma'am.

11:37:19  6             THE COURT:  In those states?

11:37:20  7             A JUROR:  Yes, ma'am.

11:37:21  8             THE COURT:  And in order to get that licensure,

11:37:24  9    you had to take some classes or study?

11:37:27 10             A JUROR:  Take some classes, study, and do some

11:37:30 11    shooting, also.

11:37:32 12             THE COURT:  Okay.  Would you be able to put

11:37:37 13    aside anything that you learned in those classes, or any of

11:37:44 14    your knowledge of firearms, and just listen to the facts in

11:37:47 15    this case and the law and apply it to the law I give you.

11:37:50 16             A JUROR:  Yes, ma'am, I would be able to.

11:37:53 17             THE COURT:  Okay.  And you also answered yes to

11:37:56 18    questions 18, 19, 20, and 21, which all have to deal with

11:38:02 19    experience, purchasing, or owning, or selling firearms.  So

11:38:07 20    you told us that you have a concealed carry permit.  How

11:38:10 21    many firearms do you own?

11:38:12 22             A JUROR:  Four.

11:38:13 23             THE COURT:  Four?

11:38:14 24             And are those firearms that you have for

11:38:19 25    recreational purposes, self-protection, hunting, collecting?

11:38:23  1          A JUROR:  Recreation, and self protection.

11:38:26  2          THE COURT:  And how long have you owned guns?

11:38:30  3          A JUROR:  I think 2013.

11:38:34  4          THE COURT:  And is there anything about your

11:38:36  5   experience in either owning firearms or applying for

11:38:45  6   firearms that would make it difficult for you to be fair and

11:38:49  7   impartial in this case?

11:38:50  8          A JUROR:  No, ma'am.

11:38:51  9          THE COURT:  Alright, you said that in response

11:38:53 10   to question number 21, you said you had strong views about

11:38:57 11   gun ownership in this country, the gun lobby or the Second

11:39:02 12   Amendment.  Can you tell us what those views are?

11:39:04 13          A JUROR:  Well, I believe as long as we do the

11:39:07 14   correct things, we be able to carry our own firearms with

11:39:11 15   proper safety measure.

11:39:13 16          THE COURT:  You say as long as we do the right

11:39:15 17   thing, what do you mean?

11:39:17 18          A JUROR:  By just using self protection, within

11:39:20 19   the right allocation, so nobody else can touch it.

11:39:24 20          THE COURT:  Keeping it safe and away from

11:39:26 21   others?

11:39:27 22          A JUROR:  Yes, ma'am.

11:39:27 23          THE COURT:  Anything about -- would you be able

11:39:30 24   to put aside any strong views you have on gun ownership, the

11:39:35 25   gun lobby, or Second Amendment and deal with just the facts

11:39:39 1    and the law in this case?

11:39:40 2                    A JUROR:  I would be able to, yes.

11:39:42 3                    THE COURT:  All right.  Thank you.  Any

11:39:43 4    follow-up?

11:39:50 5                    MR. HINES:  Hi, sir.  Do you believe someone who

11:39:53 6    uses drugs should own a gun?

11:39:56 7                    A JUROR:  No.

11:39:57 8                    MR. HINES:  And my second question for you is,

11:40:00 9    does your brother's arrest or anything related to that

11:40:04 10   experience leave you with any negative feelings whatsoever

11:40:07 11   towards law enforcement.

11:40:09 12                   A JUROR:  No.

11:40:09 13                   MR. LOWELL:  Good morning.  You said somebody

11:40:12 14   who uses drugs should not be able to own a gun?

11:40:15 15                   A JUROR:  Correct.

11:40:16 16                   MR. LOWELL:  When you say that, how about

11:40:18 17   somebody who has used drugs in the past, that doesn't

11:40:21 18   anymore?

11:40:24 19                   A JUROR:  If that person has a right test that

11:40:30 20   says not using any drugs and he's beyond past that point, it

11:40:33 21   would be okay for them to carry it.

11:40:35 22                   MR. LOWELL:  How about do you have any strong

11:40:37 23   feelings about whether somebody should be able to own a gun

11:40:41 24   if they abuse alcohol?

11:40:43 25                   A JUROR:  Well, if they abuse alcohol or they

11:40:46 1  are an alcoholic, I don't believe they should be able to use

11:40:49 2  any guns or arms like that.

11:40:51 3              MR. LOWELL:  So in a case in which you heard

11:40:54 4  somebody used alcohol and at the same time possessed a gun,

11:40:57 5  would that affect your ability to be a fair and impartial

11:41:00 6  juror?

11:41:00 7              A JUROR:  No.

11:41:01 8              MR. LOWELL:  Even though you don't believe that

11:41:03 9  somebody who abuses alcohol should have a gun.

11:41:06 10             A JUROR:  Correct.

11:41:07 11             MR. LOWELL:  Where did you purchase your gun?

11:41:08 12             A JUROR:  I purchase it in a shooting range over

11:41:12 13 in Dover.

11:41:12 14             MR. LOWELL:  In Delaware?

11:41:14 15             A JUROR:  Yes.

11:41:15 16             MR. LOWELL:  When you did that, did you have to

11:41:17 17 fill out any forms?

11:41:18 18             A JUROR:  Correct.

11:41:19 19             MR. LOWELL:  Do you know, do you remember

11:41:20 20 whether that is a federal form?

11:41:21 21             A JUROR:  It's a federal form, yes.

11:41:23 22             MR. LOWELL:  Did you fill out the form and sign

11:41:25 23 it?

11:41:25 24             A JUROR:  I sign it, they do a background check,

11:41:29 25 if everything come out right, you can get it in ten days, if

11:41:32 1    not, they postpone you and call you in a couple of days, and

11:41:36 2    call you once they get a response from the government.

11:41:38 3              MR. LOWELL:  Did you have to do that on every

11:41:40 4    occasion when you purchased a gun?

11:41:42 5              A JUROR:  Yes, sir.

11:41:43 6              MR. LOWELL:  Lastly, when you filled that out,

11:41:45 7    did the people with whom you bought the gun, did they go

11:41:49 8    over the form with you and tell you what each one meant?

11:41:52 9              A JUROR:  Yes.

11:41:52 10             MR. LOWELL:  And they did that in order and they

11:42:00 11   needed you to sign?

11:42:01 12             A JUROR:  Yes.

11:42:02 13             THE COURT:  Let me ask you this, if your

11:42:04 14   personal beliefs about who should and should not be able to

11:42:08 15   own a gun were not consistent with the law, would you be

11:42:11 16   able to put those aside and follow the law that I give you?

11:42:14 17             A JUROR:  Yes, ma'am, I would.

11:42:15 18             THE COURT:  All right.  Give us a moment.

11:42:18 19             (Juror leaving the courtroom.)

11:42:22 20             MR. HINES:  No motion.

11:42:22 21             MR. LOWELL:  No motion.

11:42:23 22             THE COURT:  All right.

11:42:30 23             (Juror 30 entering the courtroom.)

11:42:34 24             COURTROOM DEPUTY:  Juror number 30.

11:42:37 25             THE COURT:  Mark, we're going to take a short

11:42:41 1    break after this.

11:42:42 2                      COURTROOM DEPUTY:  Sure.

11:42:44 3                      THE COURT:  All right.  Thanks.  Good morning,

11:42:45 4    sir.  Thanks for coming in.

11:42:48 5                      A JUROR:  Good morning.

11:42:49 6                      THE COURT:  Can you tell us what questions you

11:42:51 7    answered yes to?

11:42:52 8                      A JUROR:  Primarily number one, schedule.

11:42:53 9                      THE COURT:  Can you tell us about that?

11:42:55 10                     A JUROR:  Yeah, I have a medical appointment

11:42:56 11   starting tomorrow with Christiana Care.

11:42:59 12                     THE COURT:  Do you have a letter?

11:43:00 13                     A JUROR:  Yeah.

11:43:13 14                     THE COURT:  All right.  This is an appointment

11:43:16 15   that it appears it would be difficult and harmful for him to

11:43:21 16   have to reschedule.  So I am going to excuse him.

11:43:26 17                     MR. HINES:  We agree, Your Honor.

11:43:27 18                     THE COURT:  Any objection?

11:43:28 19                     MR. HINES:  No objection.

11:43:29 20                     MR. LOWELL:  No.

11:43:38 21                     THE COURT:  All right.  So how about we take a

11:43:40 22   ten-minute break.

11:43:45 23                     (A brief recess was taken.)

11:55:59 24                     THE COURT:  All right.  Anything before we bring

11:56:02 25   the next person in?

11:56:04 1                    MR. HINES:  No, Your Honor.

11:56:05 2                    MR. LOWELL:  No, Your Honor.

11:56:05 3                    THE COURT:  All right.  Everyone, please be

11:56:08 4    seated.

11:56:13 5                         (Juror 31 entering the courtroom.)

11:56:16 6                    COURTROOM DEPUTY:  Juror number 31.

11:56:23 7                    THE COURT:  Good morning, sir.

11:56:26 8                    A JUROR:  Good morning.

11:56:27 9                    THE COURT:  Thanks for coming in.  Hopefully

11:56:29 10   we're getting close to noon.  Okay, what questions did you

11:56:32 11   answer yes to?

11:56:33 12                   A JUROR:  18, 19, and 20.

11:56:35 13                   THE COURT:  All right.  Can you tell us about

11:56:38 14   your answers, those are the ones about you or someone close

11:56:42 15   to you purchasing, owning, et cetera, a gun.

11:56:45 16                   A JUROR:  Yes, ma'am.

11:56:46 17                   THE COURT:  Can you tell us about that?

11:56:47 18                   A JUROR:  So my father has purchased a firearm

11:56:50 19   before, a handgun.

11:56:52 20                   THE COURT:  Okay.

11:56:52 21                   A JUROR:  And then I mean, I'm roughly familiar

11:56:56 22   with, for 19, some laws and regulations, such as crossing

11:57:00 23   state borders just from -- but nothing too extreme, I'm not

11:57:06 24   super knowledgeable.

11:57:07 25                   THE COURT:  Okay.

11:57:07  1          A JUROR:  And then 20, I said yes because I'm

11:57:11  2  not sure whether or not my father was ever required to fill

11:57:15  3  out anything.

11:57:15  4          THE COURT:  Okay.  So this is all because your

11:57:17  5  -- does he own one or multiple?

11:57:19  6          A JUROR:  He owns a few.

11:57:21  7          THE COURT:  Anything about the fact that your

11:57:24  8  father owns firearms that would make it difficult for you to

11:57:28  9  be fair and impartial?

11:57:29 10          A JUROR:  No, ma'am.

11:57:29 11          THE COURT:  Any follow-up?

11:57:31 12          MR. HINES:  Sir, has your father had any

11:57:32 13  substance abuse issues, past or present?

11:57:36 14          A JUROR:  No, sir.

11:57:38 15          MR. LOWELL:  Any substance, that would include

11:57:42 16  drugs, alcohol, anything like that?

11:57:45 17          A JUROR:  No, sir.

11:57:45 18          MR. LOWELL:  No other questions.

11:57:46 19          THE COURT:  Thank you.  Sir.  Just give us one

11:57:49 20  moment.

11:57:49 21          (Juror exiting the courtroom.)

11:57:52 22          MR. HINES:  Nothing.

11:57:53 23          THE COURT:  Mr. Lowell, are you okay?

11:57:55 24          MR. LOWELL:  No questions.

11:57:56 25          THE COURT:  All right.  Thank you.

11:57:58  1                    (Juror 32 entering the courtroom.)

11:58:02  2                    COURTROOM DEPUTY:  Juror number 32.

11:58:13  3                    THE COURT:  Good morning, ma'am.  Thanks for

11:58:15  4    coming in.  What questions did you answer yes to?

11:58:19  5                    A JUROR:  There are 17 of them.

11:58:22  6                    THE COURT:  Why don't we start with, let's start

11:58:24  7    with, what's the first one?

11:58:26  8                    A JUROR:  2, 3, 4, 10, 11, 13, 14, 18, 19, 21,

11:58:39  9    22, 26, 27, 29, 31, and 40.  I apologize, 16.

11:58:48 10                    THE COURT:  Okay.  2 and 3 are have you heard

11:58:52 11    about this case and formed any opinions that would make it

11:58:55 12    difficult for you to be fair and impartial?

11:58:58 13                    A JUROR:  Yes, ma'am.

11:58:58 14                    THE COURT:  Can you tell us about that?

11:58:59 15                    A JUROR:  My niece is in law school, so we have

11:59:02 16    been reviewing actually this case for the last week or so

11:59:06 17    following while he was doing the plea bargain and not plea

11:59:11 18    bargain.  I have read memoirs.

11:59:14 19                    THE COURT:  You have read his book?

11:59:16 20                    A JUROR:  Yes.

11:59:17 21                    THE COURT:  And do you think that what you have

11:59:19 22    seen and heard outside of the courtroom would make it

11:59:23 23    difficult for you to follow -- to limit your opinions to the

11:59:26 24    facts you hear here and the law that I give you?

11:59:29 25                    A JUROR:  Unfortunately, yes.

11:59:33 1          THE COURT:  Okay.  All right.  Thank you, ma'am.

11:59:35 2     We'll excuse you.

11:59:37 3               (Juror exiting the courtroom.)

11:59:43 4               (Juror 33 entering the courtroom.)

11:59:50 5          COURTROOM DEPUTY:  Juror number 33.

12:00:20 6          THE COURT:  All right.  Good morning, sir.  Good

12:00:24 7     afternoon, sir.  Noon, so good noon, sir.

12:00:28 8          What questions did you answer yes to?

12:00:32 9          A JUROR:  12, 14, and 15.

12:00:34 10          THE COURT:  All right.  So 12 asks "have you or

12:00:41 11    a member of your family been a victim of a crime, a witness,

12:00:44 12    or arrested for a crime?"  Can you tell us about that?

12:00:47 13          A JUROR:  My biological father was unfortunately

12:00:52 14    killed in a crime in 2004.  And my brother was arrested for

12:00:56 15    a crime.  I am afraid I don't remember what year.  I want to

12:01:04 16    say around '14 or '15.

12:01:06 17          THE COURT:  I'm sorry to hear about your father.

12:01:10 18          Is there anything about -- well, can you tell us

12:01:17 19    something -- what crime was your brother arrested for, do

12:01:21 20    you know?

12:01:22 21          A JUROR:  I believe it was possession of

12:01:23 22    narcotics.

12:01:24 23          THE COURT:  It was narcotic possession.  Do you

12:01:27 24    know what the outcome of that was?

12:01:29 25          A JUROR:  He was sentenced to a year in jail.

12:01:33  1                   THE COURT:  That was in the State of Delaware?

12:01:36  2                   A JUROR:  Yes.

12:01:37  3                   THE COURT:  Anything about that experience, or

12:01:39  4       your experience with your father being the victim of a

12:01:44  5       crime, that would make it difficult for you to serve on this

12:01:48  6       jury and be a fair and impartial juror?

12:01:51  7                   A JUROR:  No.

12:01:52  8                   THE COURT:  14 is the question about studying,

12:01:59  9       or planning to, or currently working in the legal

12:02:01  10      profession.

12:02:03  11                  A JUROR:  And I had a close friend of mine who

12:02:08  12      was studying to be a lawyer, before changing their mind.

12:02:13  13      And I took some classes.

12:02:15  14                  THE COURT:  You did?

12:02:16  15                  A JUROR:  I took some classes, but not enough to

12:02:19  16      persuade me to go into lawyering.

12:02:22  17                  THE COURT:  Okay.  I hope nothing about this

12:02:24  18      experience so far has made that decision any worse.

12:02:30  19                  Okay.  So you're not currently, just in the past

12:02:36  20      you thought about studying law, and one of your friends was,

12:02:42  21      but did you say your friend also stopped?

12:02:44  22                  A JUROR:  My friend also stopped.  I graduated

12:02:47  23      with a forensic science degree, so I am pursuing something

12:02:53  24      along with forensic sciences, some law making position.  So

12:03:04  25      to 15, I know some education about law enforcement,

12:03:10 1    firearms, and such as that.

12:03:14 2            THE COURT:  Okay.  So with respect to your --

12:03:17 3    are you currently working in a forensic field?

12:03:21 4            A JUROR:  Currently, no.

12:03:23 5            THE COURT:  You're currently a teacher?

12:03:25 6            A JUROR:  I am currently a substitute teacher at

12:03:29 7    Caesar Rodney High School pursuing -- looking for

12:03:33 8    internships or positions for forensic science.

12:03:36 9            THE COURT:  When you talk about forensic

12:03:39 10   science, what are you referring to?

12:03:40 11           A JUROR:  Biology, like lab work, blood

12:03:46 12   splatter, fingerprinting, such as that.

12:03:49 13           THE COURT:  Okay.  All right.  Let me open it up

12:03:54 14   to these folks if you want to ask any follow-up.

12:04:02 15           MR. HINES:  When you said -- sir, hello, when

12:04:05 16   you said you might want to work in a forensic science law

12:04:09 17   making type position, did you mean something like with the

12:04:12 18   government or private?

12:04:13 19           A JUROR:  Government, I want to work for -- I

12:04:17 20   wanted to try and work for the Delaware State or any other

12:04:23 21   state that would provide work for me.

12:04:26 22           MR. HINES:  And with respect to your brother, is

12:04:30 23   there anything whatsoever about that experience that causes

12:04:33 24   you to have even a little bit of a negative resentment

12:04:37 25   towards law enforcement?

12:04:39  1          A JUROR:  No, sir.

12:04:40  2          MR. LOWELL:  Good afternoon.  Sorry about your

12:04:42  3   dad.

12:04:42  4          Did that incident involve a gun?

12:04:47  5          A JUROR:  Yes.

12:04:48  6          MR. LOWELL:  This case has something to do about

12:04:51  7   allegations that might include a gun.  Would that event

12:04:54  8   happening to your dad affect you in hearing the evidence

12:04:58  9   about any possession of a gun in this case?

12:05:00 10          A JUROR:  No, sir.

12:05:01 11          MR. LOWELL:  When you said you took classes,

12:05:03 12   where did you take those classes?

12:05:04 13          A JUROR:  I took the classes in Delaware State

12:05:08 14   University, once again, as a major in forensic biology.

12:05:15 15          MR. LOWELL:  And you say before you were asked a

12:05:18 16   question about where you might want to work.  Did you want

12:05:21 17   to work in a police or law enforcement department as part of

12:05:24 18   your forensic training, or some other private, or any other

12:05:30 19   places?

12:05:31 20          A JUROR:  My hope is a -- working like in a lab

12:05:36 21   that would help the police, but I am not opposed to working

12:05:41 22   with the police, just directly as a forensic -- what's the

12:05:50 23   word, consultant, or such as that.

12:05:55 24          MR. LOWELL:  Do you know anyone that does that

12:05:56 25   presently, friends, family, or someone who does that for the

12:06:01  1    police?

12:06:01  2                    A JUROR:  No.

12:06:03  3                    MR. LOWELL:  Thank you.

12:06:04  4                    A JUROR:  I'm sorry.

12:06:05  5                    MR. LOWELL:  Go ahead.

12:06:06  6                    A JUROR:  My sister works as -- in the New York

12:06:10  7    police department, my half sister works in the New York City

12:06:15  8    police department.  I apologize.

12:06:17  9                    MR. LOWELL:  Tell me what she does there?

12:06:20 10                    A JUROR:  I only know she works as a police

12:06:22 11    officer, I haven't talked to her for some years.

12:06:25 12                    MR. LOWELL:  In New York City, and when you say

12:06:28 13    she is a police officer, on the beat, on the streets, or

12:06:30 14    working in some other capacity?

12:06:32 15                    A JUROR:  As of what I know, is on the streets.

12:06:34 16                    MR. LOWELL:  And how long has she been there?

12:06:37 17                    A JUROR:  I would say about five years.

12:06:40 18                    MR. LOWELL:  And how close are you to your half

12:06:43 19    sister?

12:06:44 20                    A JUROR:  Unfortunately, not that close.

12:06:46 21                    MR. LOWELL:  So if there were testimony in this

12:06:48 22    case that would come from a police officer, and then there

12:06:51 23    are testimony from nonpolice officers, would you be able to

12:06:54 24    weigh them equally?

12:06:56 25                    A JUROR:  Yes.

12:06:58  1                THE COURT:  Thank you.  Just give us a moment,

12:07:02  2    please.

12:07:04  3                (Juror exiting the courtroom.)

12:07:08  4                THE COURT:  So, I'm sorry, we let 33 in.

12:07:38  5                (Juror 34 entering the courtroom.)

12:07:45  6                THE COURT:  Can we bring in 34?

12:07:49  7                COURTROOM DEPUTY:  Juror number 34.

12:07:56  8                THE COURT:  Hi.

12:07:59  9                A JUROR:  Hi, how are you?

12:08:01 10                THE COURT:  Good afternoon, ma'am.  Thanks for

12:08:03 11    being here.  And, thank you for your patience.  Can you tell

12:08:06 12    us what questions you answered yes to?

12:08:08 13                A JUROR:  Number two, number 12, number 18, 19,

12:08:13 14    20, and 43.

12:08:15 15                THE COURT:  So number two is have you heard

12:08:18 16    anything about this case.  Can you tell us what you have

12:08:22 17    heard about this case?

12:08:23 18                A JUROR:  Well, when it came across the screen

12:08:26 19    of the television, at first just seeing his name, that's the

12:08:30 20    extent of what I know about the case.

12:08:32 21                THE COURT:  So you haven't done any research

12:08:34 22    into this case or about the issues?

12:08:37 23                A JUROR:  No.

12:08:37 24                THE COURT:  Do you remember what came across the

12:08:39 25    screen?  Do you just really remember --

12:08:43  1                A JUROR:  The name, that was it.

12:08:44  2                THE COURT:  Okay.  With respect to number 12,

12:08:49  3      that's a question of any -- if you or any member of your

12:08:54  4      immediate family been a victim of a crime, a witness to a

12:08:57  5      crime, or arrested for a crime, can you tell us about that?

12:08:59  6                A JUROR:  My home was burglarized years ago.

12:09:03  7                THE COURT:  Sorry to hear that.  Anything about

12:09:05  8      that experience that would make it difficult for you to be

12:09:08  9      fair and impartial as a juror in this case?

12:09:09 10                A JUROR:  No.

12:09:10 11                THE COURT:  Were you home when that happened?

12:09:11 12                A JUROR:  No.

12:09:12 13                THE COURT:  And would you say that was more than

12:09:14 14      ten years ago?

12:09:15 15                A JUROR:  Yes.

12:09:16 16                THE COURT:  Questions 18, 19, and 20 all have to

12:09:21 17      do with you or close family members owning, purchasing,

12:09:27 18      selling, filling out paperwork for guns.  Can you tell us a

12:09:30 19      little bit about that?

12:09:32 20                A JUROR:  I purchased a gun, as far as the

12:09:35 21      paperwork, I did have to fill out a background, permission

12:09:38 22      to do a background check.

12:09:40 23                THE COURT:  When did you do that?

12:09:42 24                A JUROR:  Years ago, I lived in Philadelphia, so

12:09:45 25      I think that was about 20, over 20 years ago.

12:09:48 1          THE COURT:  Do you still own the weapon?

12:09:51 2          A JUROR:  Yes.

12:09:52 3          THE COURT:  Anything about that experience that

12:09:54 4  would make it difficult for you to be fair and impartial?

12:09:57 5          A JUROR:  No.

12:09:57 6          THE COURT:  Okay.  And anything about the fact

12:10:05 7  that you were able to obtain a gun or that you wanted to

12:10:10 8  obtain a gun, that would make it difficult for you to be

12:10:14 9  fair and impartial?

12:10:15 10          A JUROR:  No.

12:10:16 11          THE COURT:  All right, the last question was 43,

12:10:18 12  is that where you were a juror before?

12:10:21 13          A JUROR:  Yes.

12:10:21 14          THE COURT:  Can you tell us when that was?

12:10:23 15          A JUROR:  Again, over 20 years ago in

12:10:25 16  Philadelphia.

12:10:26 17          THE COURT:  And it was a criminal case, do you

12:10:29 18  remember the subject matter?

12:10:30 19          A JUROR:  It was narcotics, drug possession,

12:10:33 20  selling narcotics, and something with firearms as well.

12:10:36 21          THE COURT:  And did you -- were you one of the

12:10:39 22  people who deliberated?

12:10:41 23          A JUROR:  Yes.

12:10:41 24          THE COURT:  Do you remember what the verdict

12:10:43 25  was?

12:10:43  1                    A JUROR:  Yes.

12:10:44  2                    THE COURT:  What was the verdict?

12:10:45  3                    A JUROR:  It was guilty.

12:10:46  4                    THE COURT:  Anything about that experience that

12:10:48  5      would make it difficult for you to be fair and impartial

12:10:51  6      here?

12:10:52  7                    A JUROR:  No.

12:10:52  8                    THE COURT:  All right.  Any follow-up?

12:10:54  9                    MR. HINES:  No, Your Honor.

12:10:55 10                    MR. LOWELL:  Just one, good afternoon ma'am.

12:10:58 11      When you purchased the gun, did you have to fill out a form?

12:11:00 12                    A JUROR:  Yes.

12:11:01 13                    MR. LOWELL:  Do you remember if it was a

12:11:03 14      Pennsylvania form, or a federal form, or what kind of form

12:11:07 15      it was?

12:11:07 16                    A JUROR:  I believe it was just for the State of

12:11:10 17      Pennsylvania.

12:11:10 18                    MR. LOWELL:  Was that at the time of the

12:11:12 19      purchase?

12:11:12 20                    A JUROR:  Yes, that was at the time of the

12:11:14 21      purchase.

12:11:14 22                    MR. LOWELL:  Was that at the place you bought

12:11:16 23      the gun?

12:11:16 24                    A JUROR:  Yes, that's correct.

12:11:18 25                    MR. LOWELL:  When you filled out that form, did

12:11:20  1  somebody carry you through the form to tell you what it

12:11:23  2  meant?

12:11:23  3              A JUROR:  Yes.

12:11:23  4              MR. LOWELL:  Thank you, that's all I have.

12:11:25  5              THE COURT:  Thank you.  Just give us a moment,

12:11:27  6  please.

12:11:27  7              A JUROR:  Thank you.

12:11:28  8              THE COURT:  Thank you.

12:11:29  9              (Juror exiting the courtroom.)

12:11:33 10              THE COURT:  The government shook his head,

12:11:36 11  anything from you?  All right.  Thank you.

12:11:40 12              (Juror 35 entering the courtroom.)

12:12:01 13              COURTROOM DEPUTY:  Juror number 35.

12:12:05 14              THE COURT:  Good afternoon, sir.  Thanks for

12:12:08 15  coming in.

12:12:08 16              A JUROR:  How you doing?

12:12:09 17              THE COURT:  I'm fine, thanks, how are you?

12:12:11 18              A JUROR:  Good.

12:12:12 19              THE COURT:  Thanks for your patience with us as

12:12:14 20  we try and work through this.  What questions did you answer

12:12:16 21  yes to?

12:12:17 22              A JUROR:  1, 2, 10, 12, 14, 15, 20, 31, 32, 38,

12:12:30 23  and 45.

12:12:32 24              THE COURT:  Okay.  Thank you.  Let's talk about

12:12:35 25  number one, scheduling issue.  What's the issue there?

12:12:39  1          A JUROR:  Well, I live down in Lewes, I got a

12:12:42  2   two-hour drive up here every morning, I had to get up at ten

12:12:46  3   after 4:00, I'm retired, you know.

12:12:48  4          THE COURT:  I'm sorry.  Sir, if we were to get

12:12:50  5   you a room up here so you didn't have to do that, would that

12:12:54  6   address your scheduling issue?

12:12:56  7          A JUROR:  That presents another problem, my

12:12:58  8   wife's birthday is on Wednesday, I got my grandchildren

12:13:02  9   coming up this weekend to enjoy a weekend at my house, I

12:13:05 10   mean, it's just --

12:13:07 11          THE COURT:  Bad timing.

12:13:08 12          A JUROR:  Yeah, terrible timing.

12:13:09 13          THE COURT:  All right.  Tell us about some of

12:13:12 14   the other answers that you have given, number two, you said

12:13:18 15   you had heard about this case.  What have you heard about

12:13:21 16   this case?

12:13:21 17          A JUROR:  Yeah, I just remember back a couple of

12:13:25 18   months -- maybe six months ago, I watch Coast TV news, and

12:13:32 19   they had said that there was a plea deal offered and

12:13:35 20   accepted and then it wasn't, and it was going to go to

12:13:40 21   trial.  So that's the only thing I know about it.  But I

12:13:43 22   knew that at one time there was a deal and then there

12:13:47 23   wasn't.

12:13:47 24          THE COURT:  Okay.  And you haven't done any

12:13:50 25   further investigation or looking into that?

12:13:53  1    A JUROR:  No, I'm just retired, I just enjoy

12:13:56  2    myself.

12:13:59  3    THE COURT:  You're making us all kind of jealous

12:14:02  4    here.

12:14:03  5    And so anything that you have heard about that,

12:14:07  6    would it make it difficult for you to be fair and impartial?

12:14:10  7    A JUROR:  No, not at all.

12:14:11  8    THE COURT:  All right.  You answered yes to

12:14:15  9    question ten, which was you and -- have you or any member of

12:14:21 10    your immediate family or close friends been employed by or

12:14:25 11    investigated by law enforcement, can you tell us what that

12:14:28 12    is?

12:14:29 13    A JUROR:  I have a brother-in-law who is a

12:14:31 14    retired DEA agent.  I have a nephew who is a police officer.

12:14:37 15    And I have a nephew who is a -- works in the prison system

12:14:42 16    over in Pennsylvania.

12:14:45 17    THE COURT:  Having all those members of your

12:14:47 18    family in law enforcement, would that make it difficult for

12:14:50 19    you to be fair and impartial when you listen to members of

12:14:55 20    law enforcement testify in this case?

12:14:58 21    A JUROR:  No, not at all.

12:15:00 22    THE COURT:  Okay.  Question 12, have you or a

12:15:07 23    member of your family been a victim of a crime, a witness in

12:15:10 24    a case, or arrested for a crime.

12:15:14 25    A JUROR:  My nephew, yes, he was -- he got in

12:15:18  1    trouble, he burglarized the bar restaurant that he was

12:15:24  2    working at, and he was addicted to drugs at the time.

12:15:29  3              THE COURT:  Anything about that experience or

12:15:31  4    the fact that he was struggling with addiction at that time

12:15:36  5    that would make it difficult for you to be fair and

12:15:38  6    impartial in this case?

12:15:39  7              A JUROR:  No, not at all.

12:15:41  8              THE COURT:  All right.  14 is anyone, you or

12:15:49  9    your immediate family or close friends studying, planning

12:15:53 10    to, or currently working in the legal profession, a lawyer,

12:15:57 11    paralegal, et cetera.

12:15:59 12              A JUROR:  I have a niece who is a lawyer in a

12:16:01 13    prestigious firm in Philadelphia, they do the catholic

12:16:07 14    church, that's the only lawyer we got in the family.

12:16:09 15              THE COURT:  You got a lot of family.

12:16:11 16              A JUROR:  Yeah.

12:16:12 17              THE COURT:  Anything about your nieces's work

12:16:14 18    that would make it difficult for you to be a juror?

12:16:18 19              A JUROR:  No.

12:16:18 20              THE COURT:  Okay.  Do you have any education,

12:16:21 21    training, or work experience in the areas of firearms, law

12:16:26 22    enforcement, policing, investigation, substance alcohol

12:16:29 23    abuse, laboratory testing or retail sales?

12:16:32 24              A JUROR:  Well, I was a postmaster in the post

12:16:35 25    office.  We had substance, alcohol abuse, with the employee

12:16:41 1    assistance program, so I did have training in that, what not

12:16:47 2    to do, retail sales, we sell stamps, so, that's the only --

12:16:53 3    I had to answer yes.

12:16:54 4          THE COURT:  Okay.  I appreciate that.  And

12:16:57 5    again, nothing in that -- anything in that training that you

12:16:59 6    wouldn't be able to put aside and listen to the facts here?

12:17:04 7          A JUROR:  No, that's fine.

12:17:07 8          THE COURT:  Then we have 20, which is have you

12:17:09 9    or a close family member ever filled out a government form

12:17:13 10   as part of a purchase of a firearm.

12:17:14 11         A JUROR:  Well, I had a neighbor across the

12:17:17 12   street that filled out -- he wanted a conceal and carry

12:17:20 13   permit, so he put me down as a reference, and I was

12:17:23 14   contacted.

12:17:24 15         THE COURT:  And that's your only experience?

12:17:27 16         A JUROR:  That's it, I don't own one, I never

12:17:30 17   applied for one.

12:17:31 18         THE COURT:  Do you remember who you were

12:17:33 19   contacted by?

12:17:34 20         A JUROR:  No, I don't, it might have been

12:17:36 21   somebody from the FBI maybe, or something like that, I don't

12:17:40 22   know.

12:17:40 23         THE COURT:  All right.

12:17:41 24         A JUROR:  I just got a call, do you know him,

12:17:44 25   and I said yes.

12:17:45  1          THE COURT:  Okay.  And then you also answered

12:17:47  2  yes to 31 and 32, which are about family members, or close

12:17:51  3  friends, or you, who have struggled with addiction or drug

12:18:00  4  abuse or treatment?

12:18:03  5          A JUROR:  Yeah, I have --

12:18:04  6          THE COURT:  That is your nephew?

12:18:06  7          A JUROR:  My nephew, yeah, he got a college

12:18:11  8  scholarship in football, hurt his shoulder, they kept giving

12:18:16  9  him oxy, and then he quit their football program, he was a

12:18:21 10  mess.

12:18:21 11          THE COURT:  Is that the one that you were

12:18:23 12  thinking of when you answered yes to those questions?

12:18:25 13          A JUROR:  Yeah, he's better now.

12:18:27 14          THE COURT:  Glad to hear it.

12:18:28 15          A JUROR:  Yeah.

12:18:29 16          THE COURT:  And then finally, you answered yes

12:18:31 17  to -- oh, so 38 is the question that says "if you are chosen

12:18:38 18  to sit as a juror in this case, you will be instructed that

12:18:41 19  you will not be able to do research on the internet, on any

12:18:44 20  issues or communicate with others.  Is this an instruction

12:18:47 21  you will be able to follow?"

12:18:49 22          A JUROR:  Yeah.

12:18:49 23          THE COURT:  Okay.  So really, I should have

12:18:52 24  asked, is that an instruction you would not be able to

12:18:55 25  follow?

12:18:56  1          A JUROR:  No.

12:18:56  2          THE COURT:  I just want to be clear, you're fine
12:18:58  3   with doing that?

12:18:59  4          A JUROR:  I'm fine, yeah, I can follow it.

12:19:01  5          THE COURT:  And then 45 is, have you ever been a
12:19:04  6   witness in a civil or criminal matter or a plaintiff or
12:19:09  7   defendant?

12:19:09  8          A JUROR:  Well, I was a witness in a DUI case,
12:19:14  9   they had sent the person certified mail, so the district
12:19:19 10   attorney asked me to come in and explain the procedures for
12:19:22 11   delivering certified mail.

12:19:25 12          THE COURT:  Were you a postmaster in Delaware?

12:19:28 13          A JUROR:  Well in Pennsylvania, three different
12:19:30 14   places.

12:19:31 15          THE COURT:  All right.  Okay.  Any follow-up?

12:19:34 16          MR. HINES:  No, Your Honor.

12:19:36 17          MR. LOWELL:  One.  Good afternoon.

12:19:38 18          A JUROR:  Good afternoon.

12:19:39 19          MR. LOWELL:  You said you had read something I
12:19:41 20   think you called it about a plea deal?

12:19:43 21          A JUROR:  I saw it on the news.

12:19:44 22          MR. LOWELL:  What is it that you remember seeing
12:19:46 23   about it?

12:19:47 24          A JUROR:  Just that there was an agreement on --
12:19:54 25   or a plea, a negotiated plea, and then I guess a lot of

12:19:59  1    people were screaming and yelling or whatever, but then,

12:20:03  2    boom, they decided to stop it.

12:20:04  3                    MR. LOWELL:  When you say a plea deal, was your

12:20:07  4    understanding that Mr. Biden was going to plead guilty?

12:20:10  5                    A JUROR:  No, just that they -- well, I don't

12:20:13  6    remember hearing the word guilty, I just remember hearing

12:20:16  7    there was a negotiation.

12:20:18  8                    MR. LOWELL:  And then you don't know one way or

12:20:19  9    the other?

12:20:20 10                    A JUROR:  It was like six months ago, it was on

12:20:22 11    the news at night.

12:20:24 12                    MR. LOWELL:  You don't know what the nature of

12:20:26 13    that arrangement or bargain --

12:20:28 14                    A JUROR:  No, I don't recall it.

12:20:29 15                    MR. LOWELL:  Just that you heard something about

12:20:31 16    it?

12:20:31 17                    A JUROR:  Yeah, I was just waiting for the

12:20:33 18    weather.

12:20:33 19                    MR. LOWELL:  If this case progresses and you get

12:20:36 20    chosen to serve the jury, is that something you would be

12:20:39 21    able to take out of your mind and just focus on this case?

12:20:43 22                    A JUROR:  Sure.

12:20:44 23                    MR. LOWELL:  You said your brother or

12:20:45 24    brother-in-law is a DEA agent?

12:20:47 25                    A JUROR:  He was, he's retired.

```
12:20:49  1              MR. LOWELL:  In this case there is some

12:20:51  2   testimony of law enforcement, including a DEA agent.  Can

12:20:55  3   you judge the testimony of just a person as a DEA agent the

12:20:59  4   same as you would with a non-law enforcement person?

12:21:02  5              A JUROR:  Sure.

12:21:03  6              MR. LOWELL:  They can both be accurate, right?

12:21:05  7              A JUROR:  Yeah.

12:21:06  8              MR. LOWELL:  And they can both be wrong?

12:21:09  9              A JUROR:  Sure.

12:21:10 10              MR. LOWELL:  No questions.

12:21:13 11              THE COURT:  Thank you, sir.  Just give us a

12:21:15 12   moment, please.

12:21:16 13                   (Juror exiting the courtroom.)

12:21:19 14              MR. HINES:  No motion.

12:21:24 15              MR. LOWELL:  No motion.

12:21:25 16              THE COURT:  Wait.  Before you bring anyone in,

12:21:29 17   Mark, come here.

12:21:33 18                   (Discussion off the record.)

12:21:42 19                   (Juror 36 entering the courtroom.)

12:21:47 20              COURTROOM DEPUTY:  Juror number 36.

12:21:51 21              THE COURT:  Good afternoon, ma'am.  Thanks for

12:21:53 22   coming in.  All right.  Can you tell us what questions you

12:21:57 23   answered yes to?

12:21:58 24              A JUROR:  Number two.

12:21:59 25              THE COURT:  Number two?
```

12:22:00 1                  A JUROR:  15, 31 and 32.

12:22:03 2                  THE COURT:  All right.  So number two is the

12:22:06 3       question have you heard anything about this case.

12:22:09 4                  A JUROR:  Whatever I saw on television or the

12:22:11 5       news.

12:22:12 6                  THE COURT:  Okay.  Do you remember what that

12:22:13 7       was, like, did you see anything about, anything specific,

12:22:16 8       was it more general?

12:22:18 9                  A JUROR:  More general, you know, I was --

12:22:22 10                 THE COURT:  Okay.  Do you remember when you saw

12:22:24 11      that?

12:22:25 12                 A JUROR:  It was a while ago, and then this

12:22:28 13      morning, they said it was supposed to be in Wilmington, I

12:22:30 14      never thought it was this, I just drove up here and then I

12:22:34 15      seen, it's this.

12:22:36 16                 THE COURT:  All right.  Have you, based on

12:22:40 17      anything that you have heard, have you -- are you having --

12:22:45 18      do you think you would have a hard time being fair and

12:22:47 19      impartial in this case?

12:22:49 20                 A JUROR:  No, uh-uh.

12:22:53 21                 THE COURT:  You answered yes to question number

12:22:55 22      15?

12:22:56 23                 A JUROR:  15 is the question where you worked --

12:23:00 24                 THE COURT:  Right.  Do you have any experience,

12:23:01 25      training, or work experience in this area?

12:23:03 1                    A JUROR:  Yes, drug and alcohol, I'm an RN, I

12:23:09 2      work for group homes and the community as a drug and alcohol

12:23:13 3      counselor.

12:23:15 4                    THE COURT:  And how long have you done that?

12:23:18 5                    A JUROR:  25 years.

12:23:23 6                    THE COURT:  And you're still working there now?

12:23:27 7                    A JUROR:  I switched out of drug and alcohol,

12:23:30 8      but I still work for the community, so I'm in touch with a

12:23:34 9      lot of people for that.

12:23:35 10                   THE COURT:  Would you be able to put aside your

12:23:38 11     personal feelings about drugs and alcohol use or addiction,

12:23:42 12     and your knowledge as a counselor of someone who helps

12:23:46 13     people struggling with those issues, and listen to the

12:23:49 14     evidence here, and apply the law?

12:23:52 15                   A JUROR:  Yes.

12:23:53 16                   THE COURT:  And then you also answered yes to

12:23:56 17     question 31 and 32 about having people that you know, or

12:24:04 18     you, suffering or struggling with drug or alcohol abuse and

12:24:07 19     counseling, is that separate from your work or is that --

12:24:10 20                   A JUROR:  It's separate from work.

12:24:12 21                   THE COURT:  Can you tell us about that?

12:24:13 22                   A JUROR:  A couple of friends, a family member,

12:24:17 23     they are suffering with it.  And two of them I think have

12:24:21 24     went into detox, in-patient, they're doing kind of good, but

12:24:27 25     one of them, he's not doing so well.  But I can separate my

12:24:30  1    work from --

12:24:31  2              THE COURT:  You can.  You can separate your

12:24:33  3    feelings on those and how you would feel about your friends

12:24:35  4    and just listen to the facts?

12:24:37  5              A JUROR:  To the facts, uh-huh.

12:24:38  6              THE COURT:  All right.  Any follow-up?

12:24:41  7              MR. HINES:  Ma'am, based on your employment as a

12:24:44  8    counselor, if the evidence supported such a finding, would

12:24:48  9    you hold someone responsible who was a drug addict?

12:24:53 10              A JUROR:  Yes.

12:24:57 11              THE COURT:  All right.  Anything?

12:24:58 12              MR. LOWELL:  And then naturally the opposite

12:25:00 13    question, if the evidence goes to the standard the judge

12:25:04 14    will tell you, you could find somebody not guilty?

12:25:07 15              A JUROR:  Yes.

12:25:07 16              THE COURT:  All right.  Thank you.  Just give us

12:25:10 17    a moment, please.

12:25:11 18              (Juror exiting the courtroom.)

12:25:15 19              THE COURT:  And then can I see counsel at

12:25:17 20    side-bar?

12:26:43 21              (Side-bar discussion:)

12:26:43 22              THE COURT:  So during the break, I think it was

12:26:43 23    Juror 24, who was the woman who got a bit antagonistic when

12:26:43 24    you were asking questions, she said to my -- she expressed

12:26:43 25    some frustration about you to my -- not in front of the

12:26:43 1    jurors, but to my case manager.  And given that she

12:26:43 2    expressed that, I think I am going to now excuse her.  She

12:26:43 3    was just, you know, expressing frustration, I'm not

12:26:43 4    suggesting you did.

12:26:43 5            MR. LOWELL:  I was going to ask you, I don't

12:26:43 6    think I asked anything --

12:26:43 7            THE COURT:  I'm not suggesting you did anything

12:26:43 8    wrong, she was a little bit defensive, she was a bit

12:26:43 9    defensive here and she has taken it out of the courtroom and

12:26:43 10   she made those additional comments, so I'm going to strike

12:26:43 11   juror number 24.

12:26:43 12           MR. LOWELL:  I understand.

12:26:47 13            (End of side-bar.

12:26:48 14           THE COURT:  So 34, 35 and 36 are okay.  So the

12:26:52 15   next juror is 37.

12:26:54 16           MR. LOWELL:  I'm sorry, remind me, what number?

12:26:57 17           THE COURT:  Why don't we make sure we're all on

12:26:59 18   the same page.  So the jurors who I have who have not been

12:27:02 19   excused are 2, 3, 5, 6, 10, 12, 16, 17, 18, 19, 20, 21, 25,

12:27:19 20   26, 27, 28, 29, 31, 33, 35 -- sorry, 33, 34, 35 and 36.

12:27:32 21           MR. LOWELL:  And the one that we just discussed

12:27:34 22   was --

12:27:35 23           THE COURT:  24.

12:27:38 24           MR. HINES:  That's what we have, Your Honor.

12:28:13 25           THE COURT:  Okay.

12:28:13  1                MR. LOWELL:  I'm sorry, yes, ma'am, that's what

12:28:16  2   we have as well.

12:28:17  3                THE COURT:  So that's 22?

12:28:21  4                MR. HINES:  Yes.

12:28:21  5                THE COURT:  Okay.

12:28:23  6                (Juror 37 entering the courtroom.)

12:28:27  7                COURTROOM DEPUTY:  Juror number 37.

12:28:34  8                THE COURT:  Good afternoon, sir.  Thanks for

12:28:35  9   your patience with us.

12:28:37 10                A JUROR:  You're welcome.

12:28:38 11                THE COURT:  What questions did you answer yes

12:28:41 12   to?

12:28:42 13                A JUROR:  Number 2, 18, 31, and 32.

12:28:48 14                THE COURT:  All right.  So number two is the

12:28:51 15   question about whether you had heard anything about this

12:28:54 16   case.  Can you tell us what you have heard?

12:28:56 17                A JUROR:  Correct.  The only thing I really

12:28:59 18   heard, because Saturday I was at a graduation party, and I

12:29:04 19   was telling my brother that --

12:29:06 20                THE COURT:  That you had jury duty?

12:29:08 21                A JUROR:  That I had jury duty up in Wilmington,

12:29:10 22   and he said do you know who is on trial, and I said no, and

12:29:13 23   he said Hunter Biden.  Well, I didn't read the news, so I

12:29:19 24   didn't even know what was going on.  He said just drug

12:29:22 25   charges, not drug charges, gun charges.  So well, we better

12:29:28 1   not say anymore.

12:29:29 2               THE COURT:  So that's really the end of it?

12:29:31 3               A JUROR:  That's the end of it, I learned more

12:29:33 4   today --

12:29:33 5               THE COURT:  Than you learned then?

12:29:35 6               A JUROR:  Than I did then.

12:29:36 7               THE COURT:  You haven't formed any opinions or

12:29:38 8   views that would --

12:29:39 9               A JUROR:  No.

12:29:39 10              THE COURT:  All right.  So then you also

12:29:42 11  answered yes to question number 18, which is purchasing, you

12:29:48 12  or a close family member have experience purchasing a

12:29:51 13  firearm?

12:29:52 14              A JUROR:  Yes.

12:29:52 15              THE COURT:  Can you explain that?

12:29:54 16              A JUROR:  I have a niece and nephew that bought

12:29:57 17  a gun, I don't know much about it, I just know they

12:30:00 18  purchased a gun, and I have a brother-in-law, I know he

12:30:03 19  purchased a gun.  I know he has a conceal carry, that's all.

12:30:07 20              THE COURT:  Okay.  Anything about the fact that

12:30:09 21  you have family members who own guns that would make it

12:30:12 22  difficult for you to be fair and impartial in this case?

12:30:15 23              A JUROR:  No.

12:30:16 24              THE COURT:  All right.  And then 31 and 32 are

12:30:19 25  questions about whether you or someone close to you has

12:30:22  1    struggled with drug addiction or drug abuse?

12:30:25  2                   A JUROR:  Right.

12:30:26  3                   THE COURT:  Can you tell us about that?

12:30:27  4                   A JUROR:  I have a brother-in-law, and a brother

12:30:32  5    that suffer from alcohol, and they both passed.

12:30:37  6                   THE COURT:  They're both dead, I'm sorry to hear

12:30:40  7    that, sir.  Anything about that that would make it difficult

12:30:44  8    for to you sit through this trial, listen to the evidence,

12:30:47  9    and come up with a fair and impartial verdict?

12:30:49 10                   A JUROR:  No, because I know they both had

12:30:51 11    diseases, it was tough.

12:30:55 12                   THE COURT:  All right.  But you would be able to

12:30:57 13    put aside --

12:30:57 14                   A JUROR:  Oh, yeah.

12:30:58 15                   THE COURT:  Your feelings?

12:30:59 16                   A JUROR:  Yeah.

12:31:00 17                   THE COURT:  Any follow-up?

12:31:04 18                   MR. HINES:  No, Your Honor.

12:31:06 19                   MR. LOWELL:  No, Your Honor.

12:31:07 20                   THE COURT:  All right.  Thanks.  Just give us a

12:31:09 21    second, sir.

12:31:11 22                   A JUROR:  Okay.

12:31:12 23                   (Juror exiting the courtroom.)

12:31:19 24                   THE COURT:  Anything?

12:31:20 25                   MR. HINES:  No, Your Honor.

12:31:20  1                  THE COURT:  Mr. Lowell?

12:31:22  2                  MR. LOWELL:  No motions, judge.

12:31:23  3                  THE COURT:  All right.  Thank you.

12:31:25  4                  (Juror 38 entering the courtroom.)

12:31:37  5                  COURTROOM DEPUTY:  Juror number 38.

12:31:40  6                  THE COURT:  Good afternoon, ma'am.

12:31:45  7                  What questions did you answer yes to?

12:31:48  8                  A JUROR:  18, 31, and 32.

12:31:51  9                  THE COURT:  Okay.  So question 18 is the

12:31:55 10  question about whether you or someone close to you has had

12:31:59 11  experience in purchasing a firearm.

12:32:01 12                  A JUROR:  Yes.

12:32:01 13                  THE COURT:  Can you tell us about that?

12:32:03 14                  A JUROR:  Yeah, my family hunts, they have

12:32:06 15  hunting rifles and things like that.

12:32:08 16                  THE COURT:  Do you personally own any of those?

12:32:10 17                  A JUROR:  I do not.

12:32:11 18                  THE COURT:  Anything about the fact that your

12:32:13 19  family has firearms for hunting that would make it difficult

12:32:17 20  for you to be fair and impartial here?

12:32:19 21                  A JUROR:  No.

12:32:19 22                  THE COURT:  And then 31 and 32 are the questions

12:32:22 23  asking about whether you or anyone close to you has

12:32:26 24  struggled with alcohol abuse or addiction.  Any-- can you

12:32:33 25  tell us about that?

12:32:34  1          A JUROR:  Yeah, so I do not, however my

12:32:38  2   childhood best friend passed away from an overdose.

12:32:42  3          THE COURT:  Sorry.  And did your friend struggle

12:32:45  4   with drugs before that?

12:32:47  5          A JUROR:  Yes.

12:32:48  6          THE COURT:  And is that something that you would

12:32:51  7   be able to put aside and listen to the facts and evidence in

12:32:58  8   this case to come up with a fair and impartial verdict?

12:33:01  9          A JUROR:  Yes.

12:33:02 10          THE COURT:  Any follow-up?

12:33:05 11          MR. HINES:  Ma'am, some of the evidence in this

12:33:08 12   case may involve substance abuse, there might be a

12:33:12 13   significant amount of that.  Would that be challenging for

12:33:15 14   you to hear that in light of your experience with your

12:33:18 15   friend?

12:33:19 16          A JUROR:  No.

12:33:20 17          MR. LOWELL:  One last one, I'm sorry about the

12:33:23 18   loss.  Were you close enough to know, you said she

12:33:29 19   overdosed, what was the drug on which she overdosed?

12:33:32 20          A JUROR:  Heroin.

12:33:34 21          THE COURT:  All right.  Thank you.

12:33:39 22          (Juror exiting the courtroom.)

12:33:45 23          THE COURT:  Thoughts, feelings, motions?

12:33:47 24          MR. HINES:  No motions.

12:33:49 25          MR. LOWELL:  No motions.

12:33:52  1                  (Juror 39 entering the courtroom.)

12:33:56  2                  COURTROOM DEPUTY:  Juror number 39.

12:34:03  3                  THE COURT:  Hi.

12:34:07  4                  A JUROR:  How are you doing?

12:34:08  5                  THE COURT:  Good afternoon.  Thanks for coming

12:34:10  6      in.  Just give me one second.

12:34:12  7                  Thank you for coming in.  What questions did you

12:34:19  8      answer yes to?

12:34:20  9                  A JUROR:  Question 31 and 32.

12:34:22 10                  THE COURT:  31 and 32.

12:34:24 11                  Those are questions about whether someone close

12:34:26 12      to you has struggled with addiction or drug use.

12:34:29 13                  A JUROR:  Yes.

12:34:30 14                  THE COURT:  Can you tell us about that?

12:34:31 15                  A JUROR:  That's my older brother, he has been

12:34:34 16      addicted to PCP and heroin.  He has been admitted to rehab

12:34:41 17      multiple times.  Recently, I have no idea as far as if he's

12:34:47 18      going back, if he's been addicted to heroin, I'm not sure,

12:34:51 19      but last time I checked, he was.

12:34:53 20                  THE COURT:  All right.  Sorry to hear that.

12:34:54 21                  Is there anything about that -- so this case is

12:34:58 22      going to involve issues of substance use or evidence of --

12:35:05 23      not evidence, but you're going to see things in this case

12:35:08 24      about that.  Will that -- will you be okay with -- will you

12:35:13 25      be able to address the issues in this case fairly and

12:35:17  1    impartially given your brother's history?

12:35:21  2              A JUROR:  Say that again.

12:35:22  3              THE COURT:  I'm just asking is there anything

12:35:24  4    about the fact that your brother had these struggles that

12:35:27  5    would make it difficult for you to be fair and impartial in

12:35:30  6    this case?

12:35:31  7              A JUROR:  No.  No.

12:35:33  8              MR. HINES:  Sir, has your brother ever owned a

12:35:35  9    firearm to your knowledge?

12:35:37 10              A JUROR:  Owning one, I'm not sure, but has he

12:35:41 11    had one, yes.

12:35:42 12              MR. HINES:  Was that prior to his substance use

12:35:46 13    issues?

12:35:46 14              A JUROR:  That I'm not sure, I'm not sure.

12:35:50 15              MR. HINES:  Do you have any views as to whether

12:35:52 16    someone like your brother, someone who is addicted to drugs,

12:35:55 17    should be able to have a firearm?

12:35:57 18              A JUROR:  No, they shouldn't.

12:36:01 19              MR. LOWELL:  Sir, on that question, what about

12:36:03 20    somebody who has had that abuse and then no longer did?

12:36:09 21              A JUROR:  Well, I believe that there is room for

12:36:13 22    change, so to answer your question -- wait, can you repeat

12:36:16 23    that again?  I'm sorry.

12:36:18 24              MR. LOWELL:  Sure.  My friend over there asked

12:36:20 25    you whether or not somebody who had drug use should hold a

12:36:24  1    gun and you said no, and I'm asking whether or not you feel

12:36:26  2    the same way about somebody who had an abuse issue and then

12:36:31  3    no longer did.

12:36:32  4                    A JUROR:  No, I don't believe so.

12:36:33  5                    MR. LOWELL:  And then what would your answer be

12:36:35  6    as to whether or not somebody should own a gun who might be

12:36:40  7    using or abusing alcohol.

12:36:41  8                    A JUROR:  If they're using and abusing, they

12:36:44  9    could harm themselves, as well as others, so no.

12:36:47 10                    MR. LOWELL:  Thank you.

12:36:49 11                    THE COURT:  Thank you, sir.  Just give us a

12:36:51 12    moment.

12:36:52 13                    (Juror exiting the courtroom.)

12:36:55 14                    MR. HINES:  No motion.

12:36:56 15                    THE COURT:  Mr. Lowell?

12:36:57 16                    MR. LOWELL:  Not for cause.

12:37:06 17                    (Juror 40 entering the courtroom.)

12:37:12 18                    COURTROOM DEPUTY:  Juror number 40.

12:37:14 19                    THE COURT:  Good afternoon, ma'am.  Thanks for

12:37:16 20    coming in.  Thanks for your patience.

12:37:18 21                    Can you tell us what questions you answered yes

12:37:20 22    to?

12:37:21 23                    A JUROR:  Quite a few.  12, 14, 21, 23, 24, 28,

12:37:29 24    32, and 47.

12:37:33 25                    THE COURT:  All right.  So let's start with

12:37:35  1    number 12, which is have you or a member of your immediate

12:37:39  2    family ever been a victim of a crime, witness in a criminal

12:37:43  3    case, or arrested for a crime?

12:37:45  4              A JUROR:  Yes, my mother was a victim of a

12:37:47  5    criminal crime a number of years ago.

12:37:49  6              THE COURT:  What kind?

12:37:50  7              A JUROR:  It was a robbery of her jewelry store

12:37:53  8    that she was employed in, in Nashville, Tennessee.

12:37:57  9              THE COURT:  Was she in the store at the time?

12:38:00 10              A JUROR:  Yes.

12:38:00 11              THE COURT:  Were guns involved?

12:38:02 12              A JUROR:  Yes.

12:38:02 13              THE COURT:  Is the fact that guns were involved

12:38:04 14    in that, will that -- will you be able to put that aside and

12:38:10 15    make a decision in this case that involves guns?

12:38:13 16              A JUROR:  Yes.

12:38:14 17              THE COURT:  Anything else other than your mother

12:38:16 18    --

12:38:17 19              A JUROR:  No.

12:38:17 20              THE COURT:  14 is have you or a member of your

12:38:21 21    immediate family or close friends studying or planning to

12:38:24 22    work in the legal profession.

12:38:27 23              A JUROR:  I have a few family members who are

12:38:29 24    attorneys.

12:38:29 25              THE COURT:  Are they attorneys in Delaware?

12:38:31 1                A JUROR:  No.

12:38:31 2                THE COURT:  Do you know what kind of law they

12:38:33 3       practice?

12:38:33 4                A JUROR:  One is corporate, one is travel law,

12:38:36 5       and that's all.

12:38:44 6                THE COURT:  21 is do you have strong views about

12:38:47 7       gun ownership, the gun lobby, or the Second Amendment.  Can

12:38:51 8       you tell us about that?

12:38:52 9                A JUROR:  We would like stronger laws in this

12:38:55 10      country about certain types of weapons that are able to be

12:38:59 11      purchased.  I know people that --

12:39:03 12               THE COURT:  When you say certain kinds of

12:39:05 13      weapons, do you have something in mind?

12:39:07 14               A JUROR:  Well normally the ones with high

12:39:09 15      repeat, you know, that kill children in schools.

12:39:13 16               THE COURT:  A lot of people.

12:39:15 17               A JUROR:  Yes.

12:39:15 18               THE COURT:  And when you said that certain types

12:39:18 19      of weapons, so that's what you were thinking of?

12:39:31 20               A JUROR:  Yeah.

12:39:31 21               THE COURT:  Any other strong views about gun

12:39:34 22      ownership, you said something about stronger laws?

12:39:37 23               A JUROR:  Yeah, make it harder to get a gun that

12:39:41 24      can kill a lot of people at once, make it -- let's do more

12:39:46 25      background checks and things like that, well ban them

12:39:50  1    altogether, to be honest.

12:39:52  2              THE COURT:  Now, are you going to be able to put

12:39:54  3    those strong views that you have aside, and make a fair and

12:39:58  4    impartial decision in this case?

12:39:58  5              A JUROR:  I would like to think so.

12:40:01  6              THE COURT:  Okay.  So imagine you are the

12:40:03  7    defendant in a criminal case and a potential juror said I

12:40:07  8    would like to think so, it might make them a little bit

12:40:11  9    uncomfortable.  So the question is, and it's fine either

12:40:14 10    way, but do you think you could do that and put your views

12:40:17 11    aside and come up with a fair and impartial verdict?

12:40:24 12              A JUROR:  No, maybe not.  No.

12:40:30 13              THE COURT:  And that's fine.  That's fine to

12:40:32 14    say, it's just better that you do it now.

12:40:35 15              A JUROR:  I understand.

12:40:37 16              THE COURT:  With number 23, have you ever

12:40:43 17    donated money to a political campaign or 24, actively been

12:40:48 18    involved, can you tell us about that?

12:40:50 19              A JUROR:  Yes, for the first one, I donated to a

12:40:53 20    number of democratic candidates in the mid-terms, scattered

12:40:57 21    around the country.

12:40:59 22              THE COURT:  Recent mid-terms?

12:41:00 23              A JUROR:  Yeah, '18.

12:41:06 24              THE COURT:  '20, we're already at '24.

12:41:09 25              A JUROR:  Sorry, I lost a few years.  Again in

12:41:13 1   '22, yes, as I recall.

12:41:15 2          THE COURT:  All right.  And were those national

12:41:17 3   or local elections or both?

12:41:19 4          A JUROR:  National.  Well, house and senate for

12:41:22 5   the U.S., not local or state.

12:41:27 6          THE COURT:  Yes, that's what I'm asking.

12:41:29 7          A JUROR:  These were federal.

12:41:31 8          THE COURT:  And then what about your '24,

12:41:34 9   actively involved?

12:41:36 10          A JUROR:  I joined one of the resistance groups

12:41:41 11   in 2016, after the election, that campaigned to get more

12:41:47 12   people registered to vote for upcoming elections.

12:41:51 13          THE COURT:  Okay.  And do you remember the name

12:41:53 14   of that --

12:41:56 15          A JUROR:  I don't.  I'm sorry, it was here, it

12:41:59 16   was here in Delaware, but I don't remember the name.

12:42:01 17          THE COURT:  All right.  You have answered yes to

12:42:03 18   question 28 also, which is do you believe that the defendant

12:42:06 19   is being prosecuted because his father is the President of

12:42:10 20   the United States, and a candidate for president.

12:42:12 21          A JUROR:  The question is pretty black and white

12:42:14 22   and my answer is more gray, I think it was a very strong

12:42:20 23   factor.

12:42:20 24          THE COURT:  What is your basis for saying that?

12:42:23 25          A JUROR:  That other people might have done

12:42:25  1   similar things and not had it brought to the same level of

12:42:28  2   scrutiny.

12:42:29  3              THE COURT:  And do you have a basis for saying

12:42:31  4   that or is that just a gut?

12:42:33  5              A JUROR:  No, it's opinion.

12:42:34  6              THE COURT:  All right.  And then you also

12:42:37  7   answered a question about folks close to you attending or

12:42:42  8   seeking treatment, professional counseling, rehab.

12:42:45  9              A JUROR:  Yeah, just a sister-in-law who has had

12:42:48 10   some alcohol issues and who has had a few alcoholic stints

12:42:54 11   in rehab for her addiction.

12:42:57 12              THE COURT:  All right.  Anything about that that

12:42:58 13   would make it difficult for you to be fair and impartial?

12:43:01 14              A JUROR:  No.

12:43:01 15              THE COURT:  All right.  And finally, you

12:43:04 16   answered yes to question 47 which is a catch all.

12:43:08 17              A JUROR:  Yeah, I travel for my job, and I

12:43:10 18   actually had, a few weeks ago, have a business trip that

12:43:14 19   takes off out of Philly tomorrow afternoon at 2:20, and

12:43:19 20   another one next week going to -- that was to Cleveland, and

12:43:23 21   the next one is to Minneapolis.

12:43:25 22              THE COURT:  Hitting all the hot spots in the

12:43:27 23   Midwest.

12:43:28 24              A JUROR:  Yes.

12:43:28 25              THE COURT:  All right.  And would it be

12:43:31  1    difficult for you not to be able to go on those trips?

12:43:34  2                A JUROR:  Absolutely, they were considered

12:43:35  3    mandatory meetings at the time we booked them.

12:43:40  4                THE COURT:  All right.  Any follow-up?

12:43:42  5                MR. HINES:  No, Your Honor.

12:43:42  6                MR. LOWELL:  No, Your Honor.

12:43:43  7                THE COURT:  All right.  Thank you.  Just give us

12:43:45  8    a moment.

12:43:46  9                (Juror exiting the courtroom.)

12:43:51 10                MR. HINES:  Joint motion for cause.

12:43:54 11                THE COURT:  Okay.

12:44:02 12                MR. LOWELL:  For the schedule, are we thinking,

12:44:06 13    I forget if there was supposed to be a lunch break today or

12:44:10 14    not?

12:44:10 15                THE COURT:  The other jurors are here and I

12:44:12 16    asked them to come back at 1:15.  But I don't know, we're

12:44:16 17    going to have to figure this out, we will give you an

12:44:18 18    opportunity to get something to eat.

12:44:23 19                COURTROOM DEPUTY:  Juror number 41.

12:44:25 20                THE COURT:  Good afternoon, ma'am.

12:44:26 21                A JUROR:  Hi.

12:44:27 22                THE COURT:  Hi.  Thanks for coming in.  What

12:44:30 23    question did you answer yes to?

12:44:32 24                A JUROR:  Number one.

12:44:34 25                THE COURT:  Let's start with number one.  What's

12:44:36  1    your issue?

12:44:37  2              A JUROR:  I take my mother to her medical

12:44:40  3    appointment that she has, a regular ophthalmology

12:44:44  4    appointment for muscular degeneration on the sixth.

12:44:49  5              THE COURT:  On the sixth.  If you can't take

12:44:51  6    her, she would just have to miss that appointment?

12:44:53  7              A JUROR:  Yes.

12:44:54  8              THE COURT:  All right.  Anything else with

12:44:55  9    respect to number one?

12:44:57 10              A JUROR:  I personally have two medical

12:45:00 11    appointments this month that have been scheduled for six

12:45:03 12    months.

12:45:03 13              THE COURT:  And it would be difficult for to you

12:45:05 14    reschedule them?

12:45:06 15              A JUROR:  I would probably have to wait another

12:45:09 16    at least 4, 5, 6 months for those.

12:45:11 17              THE COURT:  Anyone objection?  We'll excuse you.

12:45:16 18    Do you have your belongings?

12:45:18 19              A JUROR:  Yes.

12:45:18 20              THE COURT:  Thank you.  Thank you for coming in.

12:45:20 21              (Juror exiting the courtroom.)

12:45:25 22              (Juror 42 entering the courtroom.)

12:45:59 23              COURTROOM DEPUTY:  Juror number 42.

12:46:02 24              THE COURT:  All right, sir.  Thanks for coming

12:46:04 25    in.  Hi, how are you?

12:46:05  1                    A JUROR:  Good.

12:46:06  2                    THE COURT:  What questions did you answer yes

12:46:07  3  to?

12:46:08  4                    A JUROR:  Number ten.

12:46:09  5                    THE COURT:  Can you tell us about your answer to

12:46:11  6  that?

12:46:12  7                    A JUROR:  Yes, my wife worked when she got out

12:46:15  8  of high school for Tacoma Park Police Department, clerical,

12:46:20  9  I think it was parking tickets.  And that was 40 years ago.

12:46:24 10  That was it.

12:46:25 11                    THE COURT:  That's it?  Anything about that

12:46:27 12  experience, your wife, that would make it difficult for you

12:46:31 13  to be fair and impartial here?

12:46:33 14                    A JUROR:  No.

12:46:34 15                    THE COURT:  Follow-up?

12:46:35 16                    MR. HINES:  That's the only question?  Sir, can

12:46:37 17  I ask, you're retired now?

12:46:39 18                    A JUROR:  I'm sorry?

12:46:40 19                    MR. HINES:  Are you retired now?

12:46:41 20                    A JUROR:  I am.

12:46:41 21                    MR. HINES:  Could I ask what you did for a

12:46:44 22  living?

12:46:44 23                    A JUROR:  Hung wallpaper and paint.

12:46:48 24  Self-employed.

12:46:48 25                    THE COURT:  Any follow-up?

12:46:51  1              MR. LOWELL:  Where was it that you had your job?

12:46:54  2              A JUROR:  It was in Maryland, so I was working

12:46:57  3      mostly Montgomery County, Washington D.C. a little bit,

12:47:02  4      Virginia.

12:47:02  5              MR. LOWELL:  No further questions.

12:47:03  6              THE COURT:  Thanks sir, just give us one moment.

12:47:07  7              A JUROR:  Thank you.

12:47:08  8              THE COURT:  Thank you.

12:47:08  9              (Juror exiting courtroom.)

12:47:11 10              THE COURT:  Mr. Lowell?

12:47:14 11              MR. HINES:  No motions.

12:47:14 12              MR. LOWELL:  No motion.

12:47:16 13              THE COURT:  Thank you.

12:47:18 14              (Juror 43 entering the courtroom.)

12:47:25 15              COURTROOM DEPUTY:  Juror number 43.

12:47:29 16              THE COURT:  Good afternoon, ma'am.  Thanks for

12:47:32 17      coming in.  Thanks for being patient with us.

12:47:35 18              What questions did you answer yes to?

12:47:37 19              A JUROR:  1, 2, 18, 20, 31, and 32.

12:47:45 20              THE COURT:  Okay.  Let's start with number one,

12:47:47 21      the scheduling issue.

12:47:48 22              A JUROR:  So my only concern was you were

12:47:50 23      thinking it was going to go longer than June 14th, and I

12:47:54 24      have work travel that starts on the 21st.

12:47:56 25              THE COURT:  On the 21st?

12:47:57  1          A JUROR:  Yes.

12:47:57  2          THE COURT:  As long as we were done by the 21st,

12:48:00  3   you would be okay?

12:48:01  4          A JUROR:  Yes.

12:48:02  5          THE COURT:  What about number two, have you

12:48:03  6   heard anything about this case?

12:48:04  7          A JUROR:  I just seen head lines in the news but

12:48:08  8   really haven't been following it, just aware of it.

12:48:10  9          THE COURT:  You haven't done any research on it

12:48:12 10   or anything like that?

12:48:13 11          A JUROR:  No.

12:48:14 12          THE COURT:  Okay.  18, asks about you, or a

12:48:21 13   close family member, or friend have experience with

12:48:26 14   purchasing a firearm?

12:48:27 15          A JUROR:  Yeah, I actually relocated from

12:48:29 16   Connecticut, and I had a conceal permit to carry up there,

12:48:33 17   purchasing a firearm there, I have not used it here in the

12:48:37 18   State of Delaware.

12:48:38 19          THE COURT:  Anything about that that would make

12:48:39 20   it difficult for you to be fair and impartial?

12:48:42 21          A JUROR:  No.

12:48:42 22          THE COURT:  Do you just have one firearm?

12:48:44 23          A JUROR:  I have none right now.

12:48:46 24          THE COURT:  You have none?

12:48:47 25          A JUROR:  No.

12:48:47 1                        THE COURT:  Because you got rid of it when you

12:48:50 2     moved?

12:48:50 3                        A JUROR:  Correct, when I relocated, yeah.

12:48:52 4                        THE COURT:  And then 30?

12:48:55 5                        A JUROR:  31 and 32.

12:48:57 6                        THE COURT:  31 and 32, those are about folks

12:49:01 7     close to you who have, or you who have suffered with,

12:49:05 8     struggled with alcohol, sorry, addiction, or drug use.

12:49:10 9                        A JUROR:  Yes, my father passed away, he was an

12:49:12 10    alcoholic.

12:49:14 11                       THE COURT:  Sorry to hear that.  Was that

12:49:17 12    recently?

12:49:18 13                       A JUROR:  Oh, no, over 20 years ago now.

12:49:22 14                       THE COURT:  Anything about that experience that

12:49:24 15    would make it difficult for you to be in this trial, or to

12:49:28 16    be fair and impartial?

12:49:28 17                       A JUROR:  No.

12:49:29 18                       THE COURT:  All right.  Any follow-up?

12:49:32 19                       MR. HINES:  No, Your Honor.

12:49:33 20                       MR. LOWELL:  No, Your Honor.

12:49:34 21                       THE COURT:  All right.  Thank you.  Just give us

12:49:35 22    a moment.

12:49:36 23                       (Juror exiting the courtroom.)

12:49:42 24                       MR. HINES:  No motion.

12:49:44 25                       MR. LOWELL:  No motion.

12:49:48  1              THE COURT:  Okay.  Thank you.

12:49:50  2              (Juror 44 entering the courtroom.)

12:49:54  3              COURTROOM DEPUTY:  Juror number 44.

12:50:01  4              THE COURT:  Good afternoon.

12:50:04  5              A JUROR:  Hi.

12:50:04  6              THE COURT:  Thanks for coming in.  What

12:50:06  7   questions did you answer yes to?

12:50:08  8              A JUROR:  1, 2, 3, 8, 10, 18, 21 and 28.

12:50:23  9              THE COURT:  All right.  So let's start with one.

12:50:26 10   What's the scheduling issue?

12:50:28 11              A JUROR:  I finished cancer treatment in

12:50:31 12   February, and I am being treated for -- and I see my

12:50:39 13   oncologist again next week.

12:50:40 14              THE COURT:  So that's an important appointment

12:50:43 15   and if you miss it, it would be difficult to reschedule?

12:50:46 16              A JUROR:  Well, I need to be treated weekly with

12:50:48 17   the physical therapist, I have a note, Your Honor.

12:50:55 18              THE COURT:  You have a note?

12:50:57 19              A JUROR:  Yeah.  If you look at my driver's

12:51:24 20   license, I had long hair.

12:51:28 21              THE COURT:  You look good.

12:51:29 22              A JUROR:  No, I don't look good.

12:51:31 23              THE COURT:  All right.  I am going to excuse the

12:51:34 24   juror for cause.  And wish you good luck.

12:51:39 25              (Juror exiting the courtroom.)

12:51:54  1                    COURTROOM DEPUTY:  Juror number 45.

12:51:56  2                    THE COURT:  Good afternoon, sir.  Thanks for

12:51:58  3        coming in.

12:51:59  4                    What questions did you answer yes to?

12:52:02  5                    A JUROR:  There is a bunch of them.

12:52:05  6                    THE COURT:  Let's start with the first one.

12:52:07  7                    A JUROR:  That is a no.

12:52:09  8                    THE COURT:  The first question you answered yes

12:52:12  9        to?

12:52:12 10                    A JUROR:  Number two.

12:52:13 11                    THE COURT:  What have you heard about this case?

12:52:15 12                    A JUROR:  Well, just what the charges were and

12:52:20 13        essentially the evening news, and what I read on file.

12:52:26 14                    THE COURT:  Do you think based on what you have

12:52:28 15        heard about the charges that it would be difficult for you

12:52:32 16        to be fair and impartial and give him a fair shake?

12:52:35 17                    A JUROR:  I'm not so sure about that.

12:52:38 18                    THE COURT:  Okay.  So can you tell us where did

12:52:41 19        you hear it, you said on the news?

12:52:44 20                    A JUROR:  I read a lot.

12:52:45 21                    THE COURT:  Oh, you read?

12:52:46 22                    A JUROR:  Yeah.

12:52:47 23                    THE COURT:  And where did you read about that,

12:52:50 24        the charges?

12:52:51 25                    A JUROR:  News Maximum, Fox.

```
12:52:56  1              THE COURT:  And have you looked at the specifics
12:53:00  2   of the charges?
12:53:01  3              A JUROR:  I won't say way in depth, I just know
12:53:05  4   that they were firearms charges.
12:53:07  5              THE COURT:  Firearms charges.  And in looking at
12:53:09  6   that or any opinions about the charges, have you formed any
12:53:15  7   opinions as to his guilt or innocence?
12:53:19  8              A JUROR:  I wouldn't say as guilt or innocence,
12:53:22  9   but you know, I have varying opinions, that's a personal
12:53:27 10   matter.
12:53:28 11              THE COURT:  Yeah.  So the personal opinions, are
12:53:31 12   those opinions that would interfere with your ability to be
12:53:35 13   fair and impartial?
12:53:36 14              A JUROR:  I can't tell you no.
12:53:38 15              THE COURT:  You can't tell me no?
12:53:40 16              A JUROR:  No.
12:53:41 17              THE COURT:  Okay.  Anyone want to follow-up on
12:53:46 18   that?
12:53:48 19              MR. HINES:  No, we have a motion.
12:53:50 20              MR. LOWELL:  No.
12:53:52 21              THE COURT:  Thank you.  It's important that --
12:53:54 22   we appreciate your candor in that, because it's important
12:53:58 23   that we try to get folks who can be fair and impartial and
12:54:01 24   if you say you can't, we do appreciate you letting us know
12:54:05 25   now.  Thank you.
```

12:54:07  1                    (Juror exiting the courtroom.)

12:54:10  2                    MR. HINES:  Just for the record, we'll move to

12:54:12  3    strike.

12:54:12  4                    MR. LOWELL:  We'll join the motion.

12:54:16  5                    (Juror 46 entering the courtroom.)

12:54:19  6                    COURTROOM DEPUTY:  Juror number 46.

12:54:20  7                    THE COURT:  All right.  Sir, thanks for coming

12:54:22  8    in.  What questions did you answer yes to?

12:54:26  9                    A JUROR:  A lot.

12:54:27 10                    THE COURT:  Okay.

12:54:28 11                    A JUROR:  Starting with two.

12:54:29 12                    THE COURT:  Two.  So what have you heard about

12:54:31 13    this case?

12:54:32 14                    A JUROR:  My -- I see a lot on social media, as

12:54:36 15    I'm sure a lot of people do.

12:54:38 16                    THE COURT:  Right.

12:54:39 17                    A JUROR:  I know that Hunter was addicted to

12:54:47 18    drugs.  I knew about the firearms, so that's all I know.

12:54:54 19                    THE COURT:  Okay.  Is this something that you

12:54:56 20    just sort of seen come across your screen or is it something

12:55:01 21    you have dug in a little bit more and done research?

12:55:03 22                    A JUROR:  I haven't done research.

12:55:05 23                    THE COURT:  And have you formed any opinions as

12:55:12 24    to the matters that are at issue in this case?

12:55:18 25                    A JUROR:  I would -- yes.

12:55:20 1                    THE COURT:  Okay.  Do you think it would be

12:55:22 2    difficult for you to be fair and impartial?

12:55:23 3                    A JUROR:  It would.

12:55:25 4                    THE COURT:  All right.  Anyone want to

12:55:27 5    follow-up?

12:55:28 6                    MR. LOWELL:  No, Your Honor.

12:55:29 7                    MR. HINES:  No.

12:55:30 8                    THE COURT:  Thank you, sir.  We do appreciate

12:55:32 9    your candor.  Give me one moment.

12:55:35 10                   (Juror exiting the courtroom.)

12:55:40 11                   MR. HINES:  We'll move to strike.

12:55:41 12                   THE COURT:  Joint motion?

12:55:42 13                   MR. LOWELL:  Yes.

12:55:43 14                   THE COURT:  Okay.

12:55:43 15                   (Juror 47 entering the courtroom.)

12:55:46 16                   COURTROOM DEPUTY:  Juror number 47.

12:55:55 17                   THE COURT:  Hi, sir, good afternoon, thanks for

12:55:58 18   coming in.

12:55:59 19                   A JUROR:  How are you doing?

12:56:00 20                   THE COURT:  I'm fine.  Thank you.  Can you tell

12:56:02 21   us what questions you answered yes to?

12:56:04 22                   A JUROR:  Number 2, 10, 18, and 20.

12:56:07 23                   THE COURT:  All right.  Thank you.  So two is a

12:56:10 24   question have you heard anything about this case before

12:56:12 25   today.  Can you tell us what you have heard?

12:56:14  1           A JUROR:  Just what's been on the news.  I

12:56:18  2   really didn't pay attention to it.

12:56:20  3           THE COURT:  All right.  You say what's been on

12:56:22  4   the news, you mean like a head line?

12:56:24  5           A JUROR:  Yeah, like head lines, like CNN and

12:56:26  6   stuff, just glancing through and stop.

12:56:29  7           THE COURT:  Have you formed any opinions as to

12:56:32  8   any of the issues in this case?

12:56:33  9           A JUROR:  No, I try not to do that.

12:56:35 10           THE COURT:  All right.  Question ten asks about

12:56:42 11   whether you or a member of your immediate family or close

12:56:45 12   friends have been employed by, or investigated by law

12:56:47 13   enforcement.  Can you tell us about that?

12:56:49 14           A JUROR:  My wife is a 911 dispatcher.

12:56:57 15           THE COURT:  That's a high pressure job.

12:56:59 16           A JUROR:  Oh, yeah, love hearing all of it.

12:57:02 17           THE COURT:  Anything about her experiences there

12:57:06 18   or your experiences talking with her about it that would

12:57:09 19   make a difference?

12:57:10 20           A JUROR:  She doesn't talk about it, we tried

12:57:13 21   the work thing, cut that out, 25 years.

12:57:15 22           THE COURT:  Keeps you married.

12:57:17 23           A JUROR:  Yes.

12:57:17 24           THE COURT:  Okay.  You also answered yes to

12:57:20 25   questions 18 and 20, which have to do with you or a close

12:57:23  1   family member experiencing, purchasing a firearm, or filling

12:57:26  2   out the forms.  Can you tell us about that?

12:57:28  3                   A JUROR:  Yes.  I have got a gun, my wife does,

12:57:32  4   too.

12:57:32  5                   THE COURT:  So you each have a firearm, and is

12:57:36  6   there anything about the fact that you own those or that you

12:57:39  7   had to fill out the forms to get those that would make it

12:57:43  8   difficult for you to be fair here?

12:57:46  9                   A JUROR:  No.

12:57:46 10                   THE COURT:  Any follow-up?

12:57:48 11                   MR. HINES:  No, Your Honor.

12:57:49 12                   MR. LOWELL:  Yes, Your Honor.

12:57:50 13                   You said you followed some of the news head

12:57:53 14   lines, you mentioned CNN.  From where else do you get your

12:57:57 15   news, sir?

12:57:57 16                   A JUROR:  Most of time it's just flipping

12:57:59 17   through, so it could be any of them, CBS, ABC, I don't

12:58:04 18   really watch the news that much.

12:58:06 19                   MR. LOWELL:  Is it just television you get your

12:58:08 20   news?

12:58:08 21                   A JUROR:  Yeah.

12:58:09 22                   MR. LOWELL:  How about any sources online?

12:58:11 23                   A JUROR:  Facebook, memes, but I don't pay

12:58:14 24   attention to that stuff.

12:58:15 25                   MR. LOWELL:  Did you see any of those internet

12:58:18  1  sources talk about this case at all?

12:58:19  2              A JUROR:  No.

12:58:20  3

12:58:20  4              MR. LOWELL:  And you said your spouse is a 911

12:58:23  5  dispatcher.

12:58:23  6              A JUROR:  Yes, sir.

12:58:24  7              MR. LOWELL:  For which force is that?

12:58:26  8              THE WITNESS:  Kent County, State Police.

12:58:28  9              MR. LOWELL:  Kent County, you said both she and

12:58:30 10  you own a gun?

12:58:32 11              A JUROR:  Yes.

12:58:33 12              MR. LOWELL:  Where did you purchase that gun?

12:58:35 13              A JUROR:  I purchased mine through, what's the

12:58:37 14  one there, Rodney village, or the Christiana Mall?

12:58:41 15              THE COURT:  Cabalas?

12:58:43 16              A JUROR:  Cabalas, and I have no idea where she

12:58:46 17  got hers.

12:58:47 18              MR. LOWELL:  How long have you had that handgun,

12:58:50 19  I said handgun.

12:58:51 20              A JUROR:  My own protection, a handgun, I have

12:58:54 21  had mine for about ten years.

12:58:56 22              MR. LOWELL:  Do you know when she purchased

12:58:58 23  hers?

12:58:58 24              A JUROR:  No, I wouldn't.

12:58:59 25              MR. LOWELL:  When you purchased that handgun at

12:59:01 1    Cabalas, did you have to fill out any forms?

12:59:04 2                A JUROR:  Yeah, I filled out a form, yes, for

12:59:06 3    the federal form or whatever it was.

12:59:08 4                MR. LOWELL:  It was a federal form?

12:59:10 5                A JUROR:  Yes.

12:59:11 6                MR. LOWELL:  Do you remember anything about that

12:59:12 7    federal form?

12:59:13 8                A JUROR:  No, I can't recall.  It was painless,

12:59:16 9    I can tell you that.

12:59:17 10                MR. LOWELL:  Meaning that you zipped through it?

12:59:18 11                A JUROR:  Yeah, we just filled it out, it wasn't

12:59:21 12    even probably an hour later that we were leaving.

12:59:24 13                MR. LOWELL:  Did the person who sold you the gun

12:59:26 14    go through that form with you?

12:59:28 15                A JUROR:  Yes.

12:59:28 16                MR. LOWELL:  Nothing further.

12:59:32 17                THE COURT:  All right.  Just give us a moment.

12:59:34 18                (Juror exiting the courtroom.)

12:59:38 19                MR. HINES:  No objection.

12:59:40 20                MR. LOWELL:  No.

12:59:41 21                THE COURT:  Thank you.

12:59:42 22                (Juror 48 entering the courtroom.)

12:59:45 23                COURTROOM DEPUTY:  Juror number 48.

12:59:51 24                THE COURT:  Good afternoon, sir.  Thanks for

12:59:54 25    coming in, being patient with us.

12:59:55  1                   A JUROR:  Thank you.

12:59:56  2                   THE COURT:  Can you tell us what questions you

12:59:58  3       answered yes to?

13:00:00  4                   A JUROR:  2, 14, 16, 31, 32, and I'm not sure

13:00:10  5       about 38, I would like that when you're ready.

13:00:13  6                   THE COURT:  All right.  Thank you.

13:00:14  7                   So two is what -- have you heard anything about

13:00:18  8       this case.  Can you tell us what you have heard?

13:00:21  9                   A JUROR:  I live in Delaware, you can't swing a

13:00:24 10       cat without hearing something.

13:00:26 11                   THE COURT:  So have you heard things on the

13:00:30 12       news?

13:00:30 13                   A JUROR:  On the news.

13:00:31 14                   THE COURT:  On the news.  Now is that

13:00:34 15       something -- have you looked into it in any detail?

13:00:37 16                   A JUROR:  I have not followed it in detail.

13:00:39 17                   THE COURT:  You're saying you're aware there

13:00:42 18       were charges.

13:00:43 19                   A JUROR:  There was a case.

13:00:44 20                   THE COURT:  There was a case.

13:00:45 21                   A JUROR:  As a matter of fact, I was in Germany

13:00:48 22       yesterday, I flew in from Germany yesterday, it's over

13:00:52 23       there, too.

13:00:53 24                   THE COURT:  You got a little jet lag going, you

13:00:57 25       look pretty good.

13:00:58 1        A JUROR:  Yeah, big time.

13:00:59 2        THE COURT:  Have you formed any opinions?

13:01:02 3        A JUROR:  No, ma'am.

13:01:03 4        THE COURT:  Anything -- all right.  So you also

13:01:06 5  answered yes to question 14, which is you or a member of

13:01:09 6  your family studying the law in any way.

13:01:11 7        A JUROR:  I have a sister-in-law that's a

13:01:13 8  paralegal that I have no -- I don't talk to her or anything.

13:01:19 9  You know, but I --

13:01:21 10        THE COURT:  You don't talk to her about the law?

13:01:24 11        A JUROR:  I don't even talk to her as family,

13:01:27 12  but I just answered it legally.

13:01:29 13        THE COURT:  Okay.  All right.  And then with

13:01:33 14  respect to question 16, you said all people should be

13:01:38 15  permitted to buy or possess firearms regardless of whether

13:01:42 16  they have been or are a user of controlled substance or

13:01:46 17  addicted to a controlled substance?

13:01:48 18        A JUROR:  Could you do me a favor and come back

13:01:51 19  to that and I'll explain and you'll see why, please?

13:01:54 20        THE COURT:  Okay.  I see.  So you want to talk

13:01:56 21  about 31, 32 first.

13:01:58 22        A JUROR:  Yes.

13:01:58 23        THE COURT:  Okay.

13:02:00 24        Why don't you tell us about that?

13:02:03 25        A JUROR:  I have a daughter that's a recovering

13:02:06  1    addict, and I think after everybody is recovering, they need

13:02:11  2    a second chance.  My daughter has been given a second

13:02:15  3    chance, everybody needs a second chance.

13:02:17  4                    THE COURT:  Okay.

13:02:18  5                    A JUROR:  Okay, and that's why I say that about

13:02:21  6    the other question.

13:02:21  7                    THE COURT:  Okay.  So when you said you should

13:02:23  8    be able to -- now, the question is regardless of whether

13:02:27  9    they have been or are a user of controlled substances or

13:02:31 10    addicted --

13:02:34 11                    A JUROR:  Have been, if they have completed a

13:02:37 12    treatment program, and are in recovery, yes, I believe they

13:02:42 13    should be able to as a citizen.

13:02:45 14                    THE COURT:  All right.  And is that something

13:02:48 15    that you feel so strongly about that you would have a

13:02:52 16    difficult time looking at the facts in this case and

13:02:54 17    applying the law as I tell of the law -- as I tell you what

13:03:00 18    the law is?

13:03:00 19                    A JUROR:  No, I do not feel I would have a

13:03:03 20    problem.

13:03:03 21                    THE COURT:  You could put that aside?

13:03:04 22                    A JUROR:  Yes, ma'am.

13:03:05 23                    THE COURT:  And follow the law?

13:03:06 24                    A JUROR:  Yes, ma'am.

13:03:07 25                    THE COURT:  Okay.  And lastly, you gave me a

13:03:12  1    maybe on 38.  So what's the issue there?

13:03:17  2              A JUROR:  I'm not sure how to answer that.

13:03:19  3              THE COURT:  Well 38 was poorly worded.

13:03:21  4              A JUROR:  Yes.

13:03:21  5              THE COURT:  What it's supposed to be is you're

13:03:23  6    going to be instructed you can't do any research.  Will you

13:03:27  7    have a problem following that instruction?

13:03:29  8              A JUROR:  No, I would not.

13:03:30  9              THE COURT:  Okay.  That was my guess.  That was

13:03:33 10    the only question where yes was kind of the, I can be

13:03:36 11    impartial.

13:03:37 12              A JUROR:  And that's why I asked you that.

13:03:39 13              THE COURT:  Appreciate that.  All right.  Any

13:03:41 14    follow-up?

13:03:42 15              MR. HINES:  Sir, you said that you have some

13:03:45 16    views that people deserve a second chance when they are a

13:03:50 17    recovering addict?

13:03:51 18              A JUROR:  Yes.

13:03:52 19              MR. HINES:  How long do you feel someone needs

13:03:55 20    to be clean for before they can purchase a firearm?

13:03:58 21              MR. LOWELL:  Objection.

13:03:58 22              THE COURT:  You can ask him, do you have a

13:04:00 23    thought on what that means?

13:04:01 24              A JUROR:  On a time period, no, I do not.  It's

13:04:04 25    up to each individual.  In their recovery process.

13:04:10  1        MR. LOWELL:  Good afternoon, sir.  One question.

13:04:13  2   You're retired now, right?

13:04:14  3        A JUROR:  Yes.

13:04:15  4        MR. LOWELL:  What did you do before?

13:04:16  5        A JUROR:  I was a maintenance mechanic for

13:04:18  6   Christiana Hospital.

13:04:19  7        MR. LOWELL:  Thank you, sir.  No other

13:04:21  8   questions.

13:04:21  9        THE COURT:  All right.  Thank you, sir.

13:04:23  10        (Juror exiting courtroom.)

13:04:33  11        MR. HINES:  Your Honor, we move to strike, his

13:04:35  12   view is honestly enthetically to what the law is, if someone

13:04:40  13   is an addict, whether they're recovering or not, that is

13:04:43  14   still a violation.  You have the law if they are an addict,

13:04:46  15   as the law stated, so we would move to strike him for cause.

13:04:50  16        THE COURT:  Let me just see what he said.  I

13:05:03  17   mean, he did say, I asked him, does he feel so strongly he

13:05:07  18   would not be able to look at the facts and apply the law and

13:05:11  19   he said he would not have a problem doing that.  So I will

13:05:15  20   -- do you have any issues?

13:05:16  21        MR. LOWELL:  No, judge, that's what I heard him

13:05:18  22   say as well.

13:05:19  23        THE COURT:  So I will allow him.

13:05:21  24        (Juror 49 entering the courtroom.)

13:05:28  25        COURTROOM DEPUTY:  Juror number 49.

13:05:40  1          THE COURT:  All right, good afternoon sir, thank

13:05:42  2  you for coming in.  What questions did you answer yes to?

13:05:48  3          A JUROR:  Number two, and number 43.

13:05:53  4          THE COURT:  All right.  Two is have you heard

13:05:55  5  about this case before?  Can you tell us what you have

13:05:57  6  heard?

13:05:58  7          A JUROR:  Some time ago when everything, I

13:06:01  8  guess, was happening, I remember hearing about it on the

13:06:04  9  radio, listening to WGMD, I can remember hearing things

13:06:10 10  about, no details, just the actual event.

13:06:13 11          THE COURT:  When you say when everything was

13:06:15 12  happening, what do you mean by that?

13:06:19 13          A JUROR:  Whatever they were talking about.

13:06:21 14          THE COURT:  You mean a while back, I understand

13:06:23 15  that there was -- this was on the news?

13:06:26 16          A JUROR:  Yes, correct.

13:06:27 17          THE COURT:  Do you have any understanding as to

13:06:29 18  what the charges being discussed were or anything like that?

13:06:32 19          A JUROR:  Not then, no.

13:06:33 20          THE COURT:  And how about now, do you have any

13:06:36 21  understanding of the charges now other than from what I just

13:06:38 22  told you?

13:06:39 23          A JUROR:  What I have read today.

13:06:41 24          THE COURT:  And what you read today means the

13:06:44 25  jury -- the voir dire that I gave you?

13:06:46  1                    A JUROR:  That's correct.

13:06:47  2                    THE COURT:  I just want to make sure it wasn't

13:06:50  3      from something on the news.

13:06:51  4                    A JUROR:  That's correct.

13:06:51  5                    THE COURT:  And what about 43, is that you have

13:06:55  6      served on a jury before?

13:06:57  7                    A JUROR:  Yes, correct.

13:06:57  8                    THE COURT:  Where was that?

13:06:58  9                    A JUROR:  That was in Georgetown, Delaware.

13:07:01  10                   THE COURT:  And when was that?

13:07:02  11                   A JUROR:  A long time ago.

13:07:03  12                   THE COURT:  Do you remember the nature of the

13:07:05  13     charges?

13:07:05  14                   A JUROR:  I do.

13:07:06  15                   THE COURT:  What were they?

13:07:08  16                   A JUROR:  It was a sexual abuse of a minor.

13:07:11  17                   THE COURT:  That's a rough one.

13:07:12  18                   A JUROR:  Unfortunately.

13:07:14  19                   THE COURT:  And do you remember what the verdict

13:07:17  20     was?

13:07:17  21                   A JUROR:  I do, I was the foreperson on that

13:07:20  22     one.

13:07:20  23                   THE COURT:  You were?

13:07:21  24                   A JUROR:  I was, and with the evidence that was

13:07:24  25     brought to us, it was a guilty verdict.

13:07:27 1          THE COURT:  All right.  Any follow-up?

13:07:29 2          MR. HINES:  No, Your Honor.

13:07:31 3          MR. LOWELL:  Just a few.  You said that what you

13:07:35 4  remember was about the event that happened before.  Is the

13:07:38 5  event, the bringing of the case that you remember hearing

13:07:41 6  something about, or is the event what happened before a case

13:07:44 7  was brought under the facts of the case, just what do you

13:07:47 8  mean by the event?

13:07:49 9          A JUROR:  I can recall them talking on the radio

13:07:52 10 about Hunter Biden and a gun.

13:07:55 11         MR. LOWELL:  So you knew from the radio it had

13:07:57 12 something to do with Mr. Biden and a gun?

13:08:00 13         A JUROR:  That's about all.

13:08:01 14         MR. LOWELL:  That's all you recall?

13:08:03 15         A JUROR:  I don't remember any details or

13:08:04 16 anything like that, just hearing that.

13:08:08 17         MR. LOWELL:  You said that was a while ago, do

13:08:10 18 you remember how long ago that was?

13:08:11 19         A JUROR:  I don't.

13:08:12 20         MR. LOWELL:  Hearing that one time would have no

13:08:15 21 impact on your being a fair and impartial juror and hearing

13:08:19 22 the facts as presented in this room?

13:08:21 23         A JUROR:  That is correct.

13:08:23 24         THE COURT:  Thank you, sir.  Just give us a

13:08:25 25 moment.

13:08:25  1                    (Juror exiting the courtroom.)

13:08:30  2                    MR. HINES:  No motion.

13:08:31  3                    MR. LOWELL:  No motion.

13:08:32  4                    THE COURT:  Thank you.

13:08:34  5                    (Juror 50 entering the courtroom.)

13:08:37  6                    COURTROOM DEPUTY:  Juror number 50 here.

13:08:42  7                    THE COURT:  Good afternoon, ma'am.  Thanks for

13:08:45  8    coming in.

13:08:46  9                    A JUROR:  Hi.

13:08:47 10                    THE COURT:  Hi.  What questions did you answer

13:08:49 11    yes to?

13:08:50 12                    A JUROR:  Number 2, 10, 23, 25, and 43.

13:08:58 13                    THE COURT:  All right.  So two is have you heard

13:09:00 14    anything about this case.  Can you tell us what you have

13:09:05 15    heard?

13:09:06 16                    A JUROR:  Just that it was a case going on.

13:09:09 17                    THE COURT:  Did you do any research or look into

13:09:14 18    the specifics of the case?

13:09:16 19                    A JUROR:  No.

13:09:16 20                    THE COURT:  And was that recently?  In recent

13:09:20 21    days that you remembered hearing that, or at some point in

13:09:23 22    the past?

13:09:24 23                    A JUROR:  Say that again?

13:09:25 24                    THE COURT:  When was that that you say you

13:09:27 25    remember hearing?

13:09:28  1                A JUROR:  That was a while ago.

13:09:30  2                THE COURT:  Okay.  And it's not something you

13:09:32  3      have been following ever since?

13:09:34  4                A JUROR:  Oh, no.

13:09:36  5                THE COURT:  You also answered yes to question

13:09:38  6      number ten, which asks if any -- if you or any member of

13:09:43  7      your immediate family or close friends have been employed by

13:09:46  8      or investigated by law enforcement.  Can you tell us about

13:09:50  9      that?

13:09:51 10                A JUROR:  What was that question again?

13:09:53 11                THE COURT:  That's number ten, which is have you

13:09:55 12      or any member of your immediate family or close friends been

13:09:59 13      employed by or investigated by law enforcement?

13:10:04 14                A JUROR:  My brother was a retired policeman, is

13:10:07 15      that the question?

13:10:08 16                THE COURT:  Yes.  Employed by as law

13:10:11 17      enforcement.

13:10:11 18                A JUROR:  Yeah.

13:10:12 19                THE COURT:  Where was he a police officer?

13:10:15 20                A JUROR:  Yeah.

13:10:17 21                THE COURT:  In Delaware?

13:10:18 22                A JUROR:  Yes, he was -- yeah, he was New Castle

13:10:22 23      County Police, uh-huh.

13:10:22 24                THE COURT:  All right.  And he's retired now?

13:10:26 25                A JUROR:  Yes.

13:10:27  1                THE COURT:  Now, would the fact that your

13:10:29  2    brother was in the New Castle County Police, would that make

13:10:32  3    it difficult for you to be fair and impartial when listening

13:10:34  4    to the witnesses who are in law enforcement?

13:10:37  5                A JUROR:  No.

13:10:42  6                THE COURT:  23.  You answered yes too, which is

13:10:44  7    have you donated money to a political campaign.  Can you

13:10:48  8    tell us about that?

13:10:49  9                A JUROR:  Yes, because now he is a state

13:10:51 10    representative.

13:10:52 11                THE COURT:  Who is that?  Who is that?

13:10:55 12                A JUROR:  His name?

13:10:56 13                THE COURT:  Who is it?

13:10:58 14                A JUROR:  His name?

13:10:58 15                THE COURT:  Yes, his name.

13:10:59 16                A JUROR:  Yes, Franklin Cook, Jr.

13:11:02 17                THE COURT:  That was for the Delaware State

13:11:03 18    legislature?

13:11:05 19                A JUROR:  Yes.

13:11:05 20                THE COURT:  Is that someone that you know

13:11:06 21    personally?

13:11:07 22                A JUROR:  Excuse me?

13:11:08 23                THE COURT:  Do you know him personally?

13:11:09 24                A JUROR:  He's my brother.

13:11:11 25                THE COURT:  Oh, he's your brother?

13:11:13  1                A JUROR:  Yes.

13:11:14  2                THE COURT:  So your brother who was the cop, is

13:11:16  3    now in the legislature?

13:11:19  4                A JUROR:  Yes.

13:11:19  5                THE COURT:  I got it.  It's good of you to give

13:11:21  6    him money.

13:11:22  7                A JUROR:  Yes, that's why I said yes to that.

13:11:25  8                THE COURT:  Anyone else?

13:11:25  9                A JUROR:  No.

13:11:26 10                THE COURT:  And does that -- is that the reason

13:11:32 11    that you answered yes to the question about anyone in your

13:11:35 12    family running for political office?

13:11:37 13                A JUROR:  Yes.

13:11:38 14                THE COURT:  Because of your brother?

13:11:39 15                A JUROR:  Yes.  Uh-huh.

13:11:41 16                THE COURT:  And 43, you were on a jury before?

13:11:44 17                A JUROR:  Yes.

13:11:45 18                THE COURT:  Where was that, here in Delaware?

13:11:47 19                A JUROR:  Yes.

13:11:48 20                THE COURT:  Do you remember what the nature of

13:11:49 21    the charges were?

13:11:50 22                A JUROR:  I have been on a couple of them.  One

13:11:52 23    was the state police discrimination case, and one was a

13:11:57 24    criminal case.

13:11:58 25                THE COURT:  What was the nature of the criminal

13:12:00  1    case?

13:12:02  2                    A JUROR:  Someone, the lady -- an older lady hit

13:12:09  3    a younger lady, and they was suing her.

13:12:13  4                    THE COURT:  Do you remember what -- did you

13:12:15  5    actually deliberate on the case and decide it?

13:12:17  6                    A JUROR:  Yeah, I was the first person.

13:12:19  7                    THE COURT:  You were the foreperson?

13:12:21  8                    A JUROR:  Yeah.

13:12:22  9                    THE COURT:  All right.

13:12:23 10                    A JUROR:  The family lost, because the lady

13:12:25 11    didn't mean to hit her, the other lady was drunk and

13:12:28 12    everything else, and got hit by a car.

13:12:31 13                    THE COURT:  All right.  Any follow-up?

13:12:32 14                    MR. HINES:  No, Your Honor.

13:12:33 15                    MR. LOWELL:  No, Your Honor.

13:12:33 16                    THE COURT:  All right.  Thank you very much.

13:12:35 17    Just give us a moment.

13:12:36 18                    A JUROR:  All right.

13:12:37 19                    (Juror exiting the courtroom.)

13:12:43 20                    MR. HINES:  No motion.

13:12:44 21                    MR. LOWELL:  No motion.

13:12:47 22                    THE COURT:  Okay.  I think I have 31.

13:12:58 23                    MR. LOWELL:  That's my count as well, judge.

13:13:00 24                    THE COURT:  So we need to get to 32 and then

13:13:03 25    we'll be in the --

13:13:05  1              MR. LOWELL:  36.

13:13:06  2              THE COURT:  No, but 32 and then we get to the

13:13:08  3      alternates.  We already are in alternates, right?  32

13:13:14  4      includes the alternates.

13:13:15  5              COURTROOM DEPUTY:  36 includes the alternates.

13:13:18  6              THE COURT:  So 32, and then the next ones will

13:13:21  7      be the alternates after we get 32?

13:13:23  8              MR. LOWELL:  Yes.

13:13:24  9              THE COURT:  Okay.  I think we're all saying the

13:13:26 10      same thing, we're just hungry.  Okay.  51.

13:13:31 11              (Juror 51 entering the courtroom.)

13:13:36 12              COURTROOM DEPUTY:  Juror number 51.

13:13:41 13              THE COURT:  All right.  Good afternoon, sir.

13:13:43 14      Thanks for coming in.  All right.  What questions did you

13:13:45 15      answer yes to?

13:13:47 16              A JUROR:  8, 12, 14, 15, 21, 23, 31, 32, and 38.

13:14:04 17              THE COURT:  All right.  Let's start with number

13:14:07 18      eight.  Eight is -- oh, you know somebody on the witness

13:14:14 19      list?

13:14:15 20              A JUROR:  Oh, no, I thought -- well, just from

13:14:18 21      social media, not like I know them personally.

13:14:21 22              THE COURT:  Like you have heard their names?

13:14:23 23              A JUROR:  Yes.

13:14:24 24              THE COURT:  Okay.  So do you have any personal

13:14:27 25      acquaintance with any of these folks?

13:14:29  1              A JUROR:  No.

13:14:30  2              THE COURT:  Anything that you have heard about

13:14:32  3    any of these folks on social media, would that keep you from

13:14:36  4    being fair and impartial in this case?

13:14:38  5              A JUROR:  No.

13:14:39  6              THE COURT:  So are you -- who are you -- are

13:14:41  7    there particular names on here you're thinking about?

13:14:44  8              A JUROR:  Just like the Biden's grandkids.

13:14:46  9              THE COURT:  The Biden's grandkids?  Oh, you mean

13:14:52 10    like you have heard --

13:14:54 11              A JUROR:  Like their family members, just from

13:14:56 12    seeing them post stuff.

13:14:58 13              THE COURT:  You follow them on social media?

13:15:01 14              A JUROR:  Yeah, on Instagram.

13:15:04 15              THE COURT:  Who do you follow on Instagram?

13:15:07 16              A JUROR:  POTUS and FLOTUS.

13:15:13 17              THE COURT:  I see.  And so then some of their

13:15:15 18    family members post stuff on their site?

13:15:18 19              A JUROR:  Yeah.

13:15:18 20              THE COURT:  Okay.  All right.  Anything about

13:15:26 21    the fact that you follow those that would keep you from

13:15:29 22    being fair and impartial in this case?

13:15:32 23              A JUROR:  No.

13:15:33 24              THE COURT:  Have you or any member of your

13:15:38 25    immediate family, number 12, been the victim of a crime, or

13:15:42  1    a witness in a criminal case or arrested for a crime?

13:15:45  2                    A JUROR:  Yes, my younger daughter was sexually

13:15:48  3    abused.

13:15:49  4                    THE COURT:  Sorry to hear that.  Was this

13:15:52  5    recently?

13:15:53  6                    A JUROR:  8, 10 years ago.

13:15:57  7                    THE COURT:  All right.  And anything about your

13:15:59  8    experience with that, or law enforcement, or the courts that

13:16:04  9    would make it difficult for you to be fair in this case?

13:16:07 10                    A JUROR:  No.

13:16:08 11                    THE COURT:  Anything else that you answered yes

13:16:11 12    on question 12 for?

13:16:13 13                    A JUROR:  Nope.

13:16:14 14                    THE COURT:  Number 14, any member of your

13:16:17 15    immediate family or close friends working in the legal

13:16:20 16    profession or studying law?

13:16:22 17                    A JUROR:  Friends working in the legal

13:16:24 18    profession.

13:16:25 19                    THE COURT:  And anything in particular?

13:16:28 20                    A JUROR:  Family Court and personal injury

13:16:32 21    attorneys.

13:16:33 22                    THE COURT:  Okay.  How about number 15,

13:16:37 23    education, training, or work experience in areas of

13:16:41 24    firearms, law enforcement, policing, investigation,

13:16:43 25    substance or alcohol abuse, laboratory testing or retail

13:16:47 1    sales?

13:16:48 2              A JUROR:  Retail sales, and you consider like

13:16:51 3    litigation, policing, or law enforcement, for court cases?

13:16:59 4              THE COURT:  So what do you mean by litigation?

13:17:02 5              A JUROR:  So I work for a bank here, and I

13:17:05 6    manage the relationship with our law firm that does

13:17:08 7    litigations for people who don't pay their bills.

13:17:10 8              THE COURT:  I got it.  Okay.  And I'm not -- it

13:17:15 9    was good that you told us so we can see.  All right.

13:17:18 10   Anything about those experiences that would make it

13:17:21 11   difficult for you to be fair and impartial here?

13:17:24 12             A JUROR:  No.

13:17:25 13             THE COURT:  All right.  21 is, do you have

13:17:27 14   strong views about gun ownership, the gun lobby, or the

13:17:30 15   Second Amendment, and you said yes.  What are those views?

13:17:34 16             A JUROR:  That maybe not everybody should have

13:17:37 17   that right to own a gun.  There are lots of mental health

13:17:42 18   issues, and other things that you know, people probably

13:17:48 19   shouldn't always have that right.

13:17:49 20             THE COURT:  And would you be able to put those

13:17:53 21   strong views aside, listen to the evidence here, and make a

13:17:57 22   determination that's fair and impartial?

13:18:01 23             A JUROR:  Honestly, I don't know without hearing

13:18:05 24   it.

13:18:05 25             THE COURT:  Okay.  So you do have some doubts

13:18:08 1    that you could -- that you could be fair and impartial?

13:18:13 2                A JUROR:  Well, I could be fair and impartial,

13:18:16 3    but I don't know, my beliefs might influence the way I

13:18:22 4    interpret something.

13:18:24 5                THE COURT:  Okay.  So what we want to do is make

13:18:32 6    sure that anyone who sits on the jury says that they can --

13:18:36 7    knows in their heart that they can be fair and impartial and

13:18:39 8    we do appreciate you being candid that you have some doubts

13:18:43 9    whether you could put aside your strong views on that, and

13:18:47 10   not be influenced by that.  But I think I am going to excuse

13:18:52 11   you at this point, so you can -- do you have your stuff with

13:18:56 12   you?

13:18:57 13               A JUROR:  Yeah.

13:18:58 14               THE COURT:  So you can actually go home.  Thanks

13:19:00 15   so much for coming in, I appreciate it.

13:19:03 16               A JUROR:  Thanks.

13:19:04 17               (Juror exiting the courtroom.)

13:19:08 18               (Juror 52 entering the courtroom.)

13:19:11 19               COURTROOM DEPUTY:  Juror number 52.

13:19:15 20               THE COURT:  Hi.  Thanks for coming in.

13:19:16 21               A JUROR:  Hi.

13:19:17 22               THE COURT:  Can you tell us what questions you

13:19:19 23   answered yes to?

13:19:20 24               A JUROR:  1, 2, 10, 15, 21, and 47.

13:19:27 25               THE COURT:  Okay.  What about number one is the

13:19:29  1    scheduling question, what are your issues there?

13:19:33  2                 A JUROR:  I just have two small school aged

13:19:36  3    children, so just making sure what time we would have to be

13:19:40  4    up here in the morning.

13:19:42  5                 THE COURT:  Okay.  We would -- we usually start

13:19:45  6    around 9 o'clock.  Would that be a problem for you?

13:19:49  7                 A JUROR:  No.

13:19:49  8                 THE COURT:  So we start at 9 o'clock.  And then

13:19:52  9    what about your kids getting home, we usually go until about

13:19:56 10    4:30, would that work?

13:19:59 11                 A JUROR:  Yes, that would be fine.

13:20:00 12                 THE COURT:  Anything else on the scheduling for

13:20:02 13    number one?

13:20:03 14                 A JUROR:  No.

13:20:04 15                 THE COURT:  Number two, you answered yes, have

13:20:06 16    you heard anything about this case?

13:20:08 17                 A JUROR:  Just, you know, seeing what popped up,

13:20:11 18    but no digging into it.

13:20:14 19                 THE COURT:  So you have seen like headlines and

13:20:16 20    that the case is going on?

13:20:18 21                 A JUROR:  Yes.

13:20:18 22                 THE COURT:  And you haven't done any independent

13:20:20 23    research?

13:20:20 24                 A JUROR:  No.

13:20:21 25                 THE COURT:  And have you formed any opinions as

13:20:24  1    to the facts or anything in this case?

13:20:26  2               A JUROR:  No.

13:20:27  3               THE COURT:  You answered yes to question ten,

13:20:29  4    which is about whether you or any members of your immediate

13:20:33  5    family have been employed by or investigated by law

13:20:36  6    enforcement.  Can you tell us about that?

13:20:39  7               A JUROR:  So this one I only answered yes just

13:20:42  8    so I could say it with you to get clarification, my

13:20:46  9    father-in-law is an air traffic controller at Dover Air

13:20:50 10    Force Base, so he does sometimes -- he is sometimes in

13:20:54 11    correspondence with the Secret Service, but other than that,

13:20:57 12    that's it.

13:20:58 13               THE COURT:  And anything about that or your

13:21:01 14    discussions with him about any of that --

13:21:03 15               A JUROR:  Never anything other than you know, do

13:21:05 16    you know when he's coming in or leaving?

13:21:08 17               THE COURT:  And by "he", you mean the President?

13:21:11 18               A JUROR:  Yeah, sorry.

13:21:12 19               THE COURT:  Okay.  15, education, training, work

13:21:18 20    experience in areas of firearms, law enforcement, policing,

13:21:23 21    investigation, substance or alcohol abuse, laboratory

13:21:25 22    testing, or retail sales?

13:21:28 23               A JUROR:  When I turned 18, I was in retail

13:21:32 24    sales, and currently I work with the Delaware State Fire

13:21:37 25    Prevention Commission, I work with their investigations

13:21:39  1    unit.  So I am their administrative specialist, so I do

13:21:44  2    like, I type up their transcripts, and I see a lot of their

13:21:49  3    investigative process, so in that term, that's really all.

13:21:53  4                THE COURT:  Those are fire investigations?

13:21:56  5                A JUROR:  Yes.

13:21:57  6                THE COURT:  And then 21 you answered yes.  Do

13:22:01  7    you have strong views about gun ownership in this country,

13:22:05  8    the gun lobby, or the Second Amendment?

13:22:08  9                A JUROR:  Yes.  You know, just personal views

13:22:11 10    that it should be strict, more strict.

13:22:14 11                THE COURT:  More strict, more laws?

13:22:16 12                A JUROR:  Yeah.

13:22:16 13                THE COURT:  And would you be able to put those

13:22:19 14    strong views aside and make a fair and impartial decision in

13:22:25 15    this case?

13:22:26 16                A JUROR:  Yes, ma'am.

13:22:27 17                THE COURT:  So you would be able to listen to

13:22:29 18    the facts here and apply the law as I give it and put aside

13:22:33 19    your personal thoughts?

13:22:34 20                A JUROR:  Yes, ma'am.

13:22:34 21                THE COURT:  And then you answered yes to 47.  Is

13:22:38 22    that the sort of catch all question?

13:22:41 23                A JUROR:  Yeah, it was just to follow-up on the

13:22:44 24    father-in-law working.

13:22:45 25                THE COURT:  All right.  Thank you.  Any

13:22:46  1    follow-up?

13:22:47  2              A JUROR:  No.

13:22:47  3              MR. HINES:  No, Your Honor.

13:22:48  4              THE COURT:  I'm sorry, you're fine, I was

13:22:51  5    talking to you and then I turned.

13:22:53  6              MR. HINES:  No, Your Honor, thank you.

13:22:54  7              MR. LOWELL:  Yes, ma'am.  When you said that

13:22:56  8    some things popped up and you read articles, with where do

13:22:59  9    you get your news from?

13:23:00 10              A JUROR:  Facebook.

13:23:02 11              MR. LOWELL:  When it popped up that's where --

13:23:05 12              A JUROR:  Yeah, just pop ups on a news thing

13:23:07 13    will pop up, even like First State News, local news will

13:23:11 14    just pop up and say something.

13:23:13 15              MR. LOWELL:  So you get news from there, how

13:23:15 16    about television?

13:23:17 17              A JUROR:  Aside from where I work, like they

13:23:20 18    have the news on all day, but I put air pods in my ears so I

13:23:25 19    don't have to listen to it, it's very depressing.

13:23:28 20              MR. LOWELL:  And then other forms, not

13:23:31 21    newspapers, not websites?

13:23:33 22              A JUROR:  No.

13:23:34 23              MR. LOWELL:  And then you said that you think

13:23:36 24    the laws should be, you think, to use your phrase, "more

13:23:39 25    strict".  Can you be a little bit more specific, more strict

13:23:44 1    how?

13:23:45 2                    A JUROR:  I think that question more boils down

13:23:47 3    to recent events within the last years with the school

13:23:51 4    shootings, how I think there should be more to a person,

13:23:55 5    mental health evaluations, and stuff, or maybe having to

13:24:00 6    have a mental health evaluation every so often to make sure

13:24:04 7    that you can continue to have that permit.

13:24:09 8                    MR. LOWELL:  That's why I asked more

13:24:11 9    specifically than that, it would have to do with somebody's

13:24:14 10   mental health?

13:24:15 11                   A JUROR:  Yes.

13:24:16 12                   MR. LOWELL:  That's all I have judge.

13:24:19 13                   THE COURT:  Thanks.  Just give us a moment.

13:24:21 14                   (Juror exiting the courtroom.)

13:24:25 15                   THE COURT:  Mr. Lowell?

13:24:27 16                   MR. LOWELL:  No motion.

13:24:28 17                   THE COURT:  Thank you.  So that is 32.  We're

13:24:33 18   all in agreement there?

13:24:36 19                   MR. HINES:  Yes, Your Honor.

13:24:36 20                   MR. LOWELL:  Yes.

13:24:37 21                   THE COURT:  All right.

13:24:40 22                   (Juror 53 entering the courtroom.)

13:24:43 23                   COURTROOM DEPUTY:  Juror number 53.

13:24:55 24                   THE COURT:  Good afternoon.

13:24:56 25                   A JUROR:  Good afternoon.

13:24:57  1                    THE COURT:  Thanks for coming in.  Can you tell

13:24:59  2    us what questions you answered yes to?

13:25:01  3                    A JUROR:  2, 18, 31 and 32.

13:25:04  4                    THE COURT:  All right.  So two is the question

13:25:07  5    that asked if you are familiar or have you heard anything

13:25:10  6    about this case.  Can you tell us about that?

13:25:14  7                    A JUROR:  Honestly very minimal, but just that

13:25:17  8    basic knowledge of being from Delaware, living in Delaware,

13:25:20  9    and turning the news on and just kind of seeing it in that

13:25:23 10    realm, but nothing deeper than that.

13:25:26 11                    THE COURT:  You haven't done any digging in it?

13:25:28 12                    A JUROR:  No.

13:25:29 13                    THE COURT:  And did you have any understanding

13:25:32 14    about what the charges were before you saw the charges?

13:25:36 15                    A JUROR:  I know that he was being charged with

13:25:39 16    something of the sorts, but not until I read the three that

13:25:42 17    were all in this paper.

13:25:44 18                    THE COURT:  And you haven't formed any opinions

13:25:46 19    in this case?

13:25:48 20                    A JUROR:  No.

13:25:49 21                    THE COURT:  Okay.  Now, you also answered yes to

13:25:51 22    question 18, which is you or a close family member

13:25:55 23    experienced with purchasing a firearm, can you tell us about

13:25:58 24    that?

13:25:58 25                    A JUROR:  My grandfather had firearms within the

13:26:01  1  household growing up, my uncle is a retired state trooper,

13:26:05  2  I've always had that kind of experience of being around

13:26:08  3  firearms, to a small degree.

13:26:11  4          THE COURT:  Okay.

13:26:12  5          A JUROR:  But that was all.

13:26:13  6          THE COURT:  All right.  Anything about that that

13:26:14  7  would make it difficult for you to be fair and impartial

13:26:17  8  here?

13:26:17  9          A JUROR:  No.

13:26:18 10          THE COURT:  And then the last two that you

13:26:21 11  answered yes to were 31 and 32 about someone, you or someone

13:26:26 12  close to you having a struggle with drug or alcohol abuse or

13:26:30 13  addiction.

13:26:31 14          A JUROR:  Yes, I have family members that have

13:26:33 15  had alcohol addictions and drug addictions, that now are

13:26:37 16  part of rehab facilities that they're the speakers in now.

13:26:42 17  I have lost many friends to drug overdoses, unfortunately,

13:26:47 18  from being in the area.  What other things were on here?  I

13:26:53 19  have had an uncle go to jail for being a drug addict, these

13:26:59 20  are unfortunately things that I dealt with, but I feel it's

13:27:02 21  an every day part of the world these days.

13:27:04 22          THE COURT:  Is there anything about that that

13:27:06 23  would make it difficult for to you sit through this trial

13:27:09 24  and listen to the evidence and render your verdict?

13:27:13 25          A JUROR:  No.

```
13:27:14   1              THE COURT:  Any follow-up?
13:27:14   2              MR. HINES:  Ma'am, do any of your friends or
13:27:16   3    family who have had challenges with drug use now own a gun?
13:27:21   4              A JUROR:  Not that I am aware of.  I mean, I
13:27:24   5    would hope not.
13:27:26   6              MR. LOWELL:  Why would you hope not, ma'am?
13:27:28   7              A JUROR:  I mean, just involving this case, I
13:27:31   8    don't -- I don't want to know anything right now, because I
13:27:34   9    have to come in blindsided, but -- or like not knowing any
13:27:38  10    information, so that's why.
13:27:40  11              MR. LOWELL:  When you had mentioned that before
13:27:42  12    you saw something, which was described as being the sorts of
13:27:46  13    things about views of news, where do you get your news from?
13:27:50  14              A JUROR:  My dad.  So I work full-time, two
13:27:52  15    jobs, so my dad, whatever is on the TV that day before he
13:27:56  16    heads to work, he's just like hey, did you hear about this?
13:27:59  17    And I preferably -- and Twitter, things will pop up on
13:28:02  18    Twitter often, if anybody scrolls through Twitter ever,
13:28:08  19    there is little articles that pop up that just have a head
13:28:10  20    line, but you don't ever believe the head line, but I don't
13:28:14  21    click on them, frankly I have a lot of things going on in my
13:28:18  22    life I don't need to dive deeper into others.
13:28:21  23              MR. LOWELL:  Has your dad, when he's given you
13:28:24  24    any of the news told you anything about this case or
13:28:26  25    Mr. Biden?
```

13:28:27 1          A JUROR:  I didn't know this case was going on

13:28:29 2   today, I was advised today when I was on the way here, he

13:28:33 3   was like today is the potential jury picking of the Hunter

13:28:36 4   Biden case, and I was like oh, that's why there is a lot of

13:28:40 5   police force in town, that's it.

13:28:42 6          MR. LOWELL:  You said your uncle was a state

13:28:43 7   trooper?

13:28:44 8          A JUROR:  Yes, my uncle was a state cop, he's

13:28:47 9   been retired many years now.

13:28:49 10          MR. LOWELL:  Here in Delaware?

13:28:50 11          A JUROR:  Yes.

13:28:51 12          MR. LOWELL:  If there were witnesses in this

13:28:52 13   case that are from Delaware State Police and a nonpolice

13:28:56 14   officer that testifies, would you weigh that evidence

13:28:58 15   equally?

13:28:59 16          A JUROR:  Absolutely, I looked through these

13:29:01 17   names, and was really looking through them heavily trying to

13:29:04 18   recall if I had any of the names that I met or been in

13:29:07 19   passing at family funerals or the sort, none of them ring a

13:29:12 20   bell.

13:29:12 21          MR. LOWELL:  Thank you for your time.

13:29:13 22          A JUROR:  Of course.

13:29:14 23          THE COURT:  Thank you.  Give us a moment.

13:29:16 24          (Juror exiting the courtroom.)

13:29:20 25          MR. HINES:  No motion.

13:29:21  1          MR. LOWELL:  No motion.

13:29:25  2               (Juror 54 entering the courtroom.)

13:29:42  3          COURTROOM DEPUTY:  Juror number 54.

13:29:45  4          THE COURT:  Thanks for coming in, thanks for

13:29:47  5  your patience with us.  Can you tell us what questions you

13:29:49  6  answered yes to?

13:29:50  7          A JUROR:  1, 7, 20, 31, and 32.

13:29:55  8          THE COURT:  Can you tell us, one is your

13:29:57  9  scheduling, can you tell us your scheduling issues?

13:30:00 10          A JUROR:  My scheduling issues, I work over

13:30:03 11  nights, my granddaughter is autistic, my daughter has a

13:30:07 12  brain aneurism, so I'm helping -- it's called oculare,

13:30:12 13  behind her eye, and I take care of them during the day off

13:30:15 14  and on, while she sleeps, and then I work at night.

13:30:20 15          THE COURT:  Okay.  So you basically work all

13:30:24 16  night and you take care of your grandchildren during the

13:30:27 17  day?

13:30:28 18          A JUROR:  Most of the day.

13:30:29 19          THE COURT:  And if you're not there, there is no

13:30:32 20  one to take care of them?

13:30:35 21          A JUROR:  I'm trying to find someone in case,

13:30:37 22  usually I am there.

13:30:38 23          THE COURT:  But you haven't been able to find

13:30:40 24  anyone as of yet?

13:30:41 25          A JUROR:  No.

13:30:44 1                    THE COURT:  All right.  So ma'am, I'm going to

13:30:48 2    excuse you, and appreciate you coming in and spending the

13:30:53 3    morning in there with us, but we'll excuse you because I

13:30:56 4    think your personal situation and scheduling is difficult.

13:31:00 5                    A JUROR:  Thank you so much, I appreciate that.

13:31:02 6                    THE COURT:  And I wish you good luck with your

13:31:04 7    daughter's health.

13:31:05 8                    A JUROR:  Thank you.

13:31:05 9                    (Juror exiting the courtroom.)

13:31:10 10                   (Juror 55 entering the courtroom.)

13:31:15 11                   COURTROOM DEPUTY:  Juror number 55.

13:31:19 12                   THE COURT:  All right.  Hi, thanks for coming

13:31:23 13   in.  What questions did you answer yes to?

13:31:26 14                   A JUROR:  I answered question number one, I do

13:31:29 15   have a personal event the week of the 13th and the 14th that

13:31:33 16   I have spent $1,500 on, a big golf tournament at Wilmington

13:31:39 17   Country Club, my guest is flying in from Arizona, it would

13:31:43 18   be a major bummer if I couldn't play.

13:31:47 19                   THE COURT:  When is that?

13:31:48 20                   A JUROR:  13th and 14th of June.

13:31:52 21                   THE COURT:  When you said the week of--

13:31:56 22                   A JUROR:  Question number seven, I actually know

13:31:59 23   the Biden family reasonably well, Beau and I played a squash

13:32:04 24   tournament at Wilmington Country Club back in 2010, his son

13:32:08 25   played on a number of teams with my kids, I even coached him

13:32:11  1   a couple of times in baseball, basketball, flag football.

13:32:16  2              THE COURT:  Would that make it difficult for you

13:32:17  3   to be fair and impartial?

13:32:19  4              A JUROR:  It would probably be the case.  I know

13:32:23  5   Hallie Biden pretty well.  She's very friendly with my wife

13:32:24  6   and a lot of the women at Tatnall, the connection at Tatnall

13:32:30  7   School is strong.

13:32:31  8              THE COURT:  Anyone have an objection to me

13:32:33  9   excusing him?

13:32:34 10              MR. HINES:  No.

13:32:34 11              MR. LOWELL:  No objection.

13:32:35 12              THE COURT:  Thank you, sir, for coming in.

13:32:37 13   You're excused.  You can leave.

13:32:41 14              (Juror exiting the courtroom.)

13:32:44 15              (Juror 56 entering the courtroom.)

13:32:47 16              COURTROOM DEPUTY:  Juror number 56 here.

13:32:50 17              THE COURT:  Hi.

13:32:51 18              A JUROR:  Hey.

13:32:52 19              THE COURT:  Thanks for coming in.  You can walk

13:32:54 20   out that way.  Can you tell us what questions you answered

13:33:00 21   yes to?

13:33:01 22              A JUROR:  I answered yes to number 12, 16, 18,

13:33:05 23   19, 20, 31, and 32.

13:33:12 24              THE COURT:  Okay.  Thank you.  So question 12 is

13:33:16 25   have you, or a member of your immediate family been a victim

13:33:19 1    of a crime, witness in a criminal case, or arrested for a

13:33:22 2    crime.  Can you tell us about that?

13:33:24 3              A JUROR:  Yes.  So I have a few close family

13:33:28 4    members, along with myself, who have been arrested for DUI.

13:33:34 5              THE COURT:  Okay.  Just DUI?

13:33:37 6              A JUROR:  Just DUI.

13:33:39 7              THE COURT:  And how long ago were you arrested

13:33:41 8    for DUI?

13:33:43 9              A JUROR:  2012.

13:33:44 10             THE COURT:  It was just one?

13:33:45 11             A JUROR:  Just one.

13:33:46 12             THE COURT:  Okay.  And do you or any of your

13:33:50 13   family members struggle with alcoholism?

13:33:53 14             A JUROR:  Yeah, there has been a history of

13:33:55 15   struggle with alcohol and drugs in my family.

13:33:58 16             THE COURT:  Do you feel that you have that

13:34:00 17   struggle yourself?

13:34:01 18             A JUROR:  I do not.

13:34:02 19             THE COURT:  Okay.  And you answered yes to

13:34:07 20   questions 31 and 32, so that was about other people in your

13:34:11 21   family?

13:34:12 22             A JUROR:  Yes, correct, 31 and 32.  Yes.

13:34:16 23             THE COURT:  I did kind of jump ahead because I

13:34:19 24   figured you were talking about it.

13:34:20 25             A JUROR:  That's okay.

13:34:21 1          THE COURT:  Is that something that -- so can you

13:34:25 2  tell us like how many family members you're talking about

13:34:28 3  there?

13:34:29 4          A JUROR:  There is multiple.  My father being

13:34:32 5  the closest one to me.  I have had uncles also and a

13:34:36 6  grandfather.

13:34:38 7          THE COURT:  And anything about their struggles

13:34:40 8  with addiction or abuse of alcohol or drugs that would make

13:34:45 9  it difficult for you to be fair and impartial here?

13:34:48 10         A JUROR:  No.

13:34:49 11         THE COURT:  You also answered yes to question

13:34:54 12  16.  Do you believe all people should be permitted by law to

13:34:57 13  buy or possess a firearm regardless of whether they have

13:35:00 14  been or are a user of a controlled substance or addicted to

13:35:04 15  a controlled substance?

13:35:05 16         A JUROR:  Yes, I answered yes to that.

13:35:07 17         THE COURT:  So you think that you should be able

13:35:09 18  to own a gun if you're using drugs?

13:35:13 19         A JUROR:  Well, not necessarily.  I mean, I read

13:35:16 20  the question as if you had used drugs before, not under the

13:35:20 21  influence, but I feel like those two things can be separate

13:35:25 22  and distinct.  That's just how I took the preceding

13:35:29 23  question.

13:35:29 24         THE COURT:  Okay.  And is that something that

13:35:37 25  you feel so strongly about that you wouldn't be able to put

13:35:42 1    it aside and focus on the facts here and apply the law that

13:35:47 2    I tell you you have to apply?

13:35:49 3              A JUROR:  No, I feel the justice system, you

13:35:51 4    have to take the facts in as they're presented to you in the

13:35:55 5    room, and that's the only way that the justice system works

13:35:57 6    in my opinion.

13:35:58 7              THE COURT:  Right.  And you could follow the

13:36:00 8    law, even if I tell you that the law is inconsistent with

13:36:03 9    your belief?

13:36:04 10              A JUROR:  Correct.

13:36:05 11              THE COURT:  Okay.  I'm not saying it is, I'm

13:36:08 12    just asking to the extent that you would perceive it that

13:36:11 13    way, I'm just asking.

13:36:13 14              A JUROR:  Yeah, correct.

13:36:14 15              THE COURT:  Okay.  And you also answered

13:36:17 16    questions 18, 19 and 20, which are you or a close family

13:36:21 17    member ever experience purchasing or owning or filling out

13:36:28 18    the forms for a firearm.

13:36:29 19              A JUROR:  Yes, uh-huh, extended family, I have a

13:36:34 20    stepfather who owns a number of firearms legally, and a

13:36:38 21    number of friends.

13:36:40 22              THE COURT:  Okay.  And you mentioned that there

13:36:42 23    were some issues in your family with respect to struggles

13:36:46 24    with addiction, or a drug or alcohol abuse.  Do any of those

13:36:51 25    folks who own guns, using or --

13:36:57  1                    A JUROR:  No.

13:36:58  2                    THE COURT:  Or having a history of that?

13:36:59  3                    A JUROR:  No.

13:37:00  4                    THE COURT:  Any follow-up?

13:37:03  5                    MR. HINES:  No, Your Honor.

13:37:05  6                    MR. LOWELL:  Good afternoon.  As to those

13:37:08  7    individuals in your family who you say, step dad and friends

13:37:13  8    having guns, did they buy them in Delaware?

13:37:16  9                    A JUROR:  No.

13:37:17 10                    MR. LOWELL:  Where were they?

13:37:18 11                    A JUROR:  New Jersey and Pennsylvania.

13:37:20 12                    MR. LOWELL:  And are any of them in Delaware now

13:37:22 13    with guns?

13:37:23 14                    A JUROR:  Yes, my stepfather.

13:37:25 15                    MR. LOWELL:  Your step dad, where is he?

13:37:27 16                    A JUROR:  He's in Georgetown.

13:37:28 17                    MR. LOWELL:  And then did they tell you anything

13:37:30 18    about the purchase of guns, what it entailed, whether they

13:37:33 19    had to fill out any forms, whether there were any kind of

13:37:36 20    checks or things like that, did they ever discuss that with

13:37:39 21    you?

13:37:39 22                    A JUROR:  Uh-uh.

13:37:40 23                    MR. LOWELL:  Thank you.

13:37:41 24                    THE COURT:  Thank you.  Just give us a moment.

13:37:43 25                    (Juror exiting the courtroom.)

13:37:47 1             MR. HINES:  No motion.

13:37:58 2             (Juror 57 entering the courtroom.)

13:38:00 3             COURTROOM DEPUTY:  Juror number 57.

13:38:03 4             THE COURT:  Hi.  Thanks for your patience with

13:38:05 5  us.

13:38:06 6             What questions did you answer yes to?

13:38:09 7             A JUROR:  1, 2, 10, 15, 18, 19, 20, 21, 27, 29.

13:38:15 8             THE COURT:  All right.  Start with number one.

13:38:17 9  What's your scheduling issue?

13:38:19 10            A JUROR:  So it's a special problem, I'm in

13:38:23 11 traveling sales, I go to five states and District of

13:38:26 12 Columbia, and I go to meetings scheduled all next week and

13:38:32 13 the following, that would be my special problem, not anyone

13:38:35 14 else's.

13:38:36 15            THE COURT:  So these are meetings that have

13:38:38 16 already been scheduled?

13:38:39 17            A JUROR:  Yes.

13:38:40 18            THE COURT:  If you were not able to attend them

13:38:43 19 because you were here, what would happen?

13:38:45 20            A JUROR:  I wouldn't get paid.

13:38:47 21            THE COURT:  Okay.  So these are meetings that

13:38:50 22 involve you making sales that you --

13:38:54 23            A JUROR:  Correct.

13:38:54 24            THE COURT:  Okay.  Does anyone have an objection

13:38:58 25 to me --

13:39:00  1              MR. HINES:  No objection.

13:39:01  2              MR. LOWELL:  No.

13:39:01  3              THE COURT:  We're going to let you go.

13:39:03  4              Apparently it was a special enough problem.  So

13:39:06  5      we will excuse you.  Do you have your stuff with you?

13:39:09  6              A JUROR:  I do.

13:39:10  7              THE COURT:  You are excused.  Thank you for

13:39:11  8      coming in.

13:39:12  9              A JUROR:  Thank you.  Have a great day.

13:39:14 10              THE COURT:  You, too.

13:39:16 11              (Juror exiting the courtroom.)

13:39:19 12              THE COURT:  So that is the end of our first

13:39:21 13      list, which means we need to bring some people from our

13:39:24 14      Second list up, which means I need to read them the voir

13:39:32 15      dire, so seems like a good time to take a break.

13:39:35 16              How do you propose we deal with this?  So I can

13:39:44 17      excuse everybody who is not on our list?

13:39:52 18              MR. LOWELL:  I'm sorry, as to the old group,

13:39:55 19      could I ask a question?  Would it be okay to get juror

13:39:59 20      number 21, who we've never set eyes on, come in and answer

13:40:03 21      questions, whether he was able or unable, since we have not

13:40:07 22      seen the person, before that person -- maybe we could ask

13:40:13 23      that question.

13:40:13 24              THE COURT:  How should we deal with this?

13:40:18 25              MR. HINES:  We would be okay with the Court

13:40:22  1   excusing the folks who are already not on the list as

13:40:25  2   selected as potential jurors.

13:40:27  3           THE COURT:  So what I was thinking is, I'm

13:40:31  4   trying to figure out because we have all these people in the

13:40:33  5   Court and if I bring them back in or everyone is going to

13:40:37  6   have to go over there, like how we -- how would this work,

13:40:41  7   that's why I'm asking.

13:40:42  8           MR. LOWELL:  So I think we would agree that the

13:40:44  9   people who we, I'll call it the people who got to

13:40:49 10   thirty-two, or thirty-two plus one, if you're asking whether

13:40:52 11   they should be excused for the day, I have no objection to

13:40:55 12   that.  We could then figure out who, if we get that far

13:41:00 13   would be struck and those who are not would be asked to come

13:41:03 14   in, is that what Your Honor has in mind?  I'm trying to

13:41:07 15   figure out, or do we do that in the morning?

13:41:10 16           THE COURT:  In the morning, I think if we can

13:41:12 17   get the jury picked today-- well, it's 2 o'clock.  I don't

13:41:17 18   know when we would start.  But I'm just -- we can start

13:41:27 19   tomorrow, but what I am trying to figure out is you just

13:41:33 20   want me to say anyone who is not on our list can go home,

13:41:38 21   and then we have to bring in some portion of the 50 people

13:41:42 22   who came, so we'll randomize those people and call like the

13:41:48 23   first ten, twenty, how many do you want me to call?

13:41:54 24           MR. HINES:  Twenty sounds appropriate.

13:41:57 25           THE COURT:  Twenty to get one?  Okay.

13:42:00  1                    MR. HINES:  It's really just two, right?

13:42:02  2                    MR. LOWELL:  Yeah, we need two.

13:42:03  3                    THE COURT:  Because I excused number 57.  Okay.

13:42:08  4        So you're going to bring in 21.

13:42:15  5                    (Juror 21 entering the courtroom.)

13:42:20  6                    COURTROOM DEPUTY:  Juror number 21.

13:42:22  7                    THE COURT:  Hi.  Thanks for coming in.

13:42:25  8        Everybody was just curious about you, because you were the

13:42:27  9        only person who we didn't get to see because you haven't

13:42:30 10        answered yes to any questions.

13:42:32 11                    A JUROR:  No.

13:42:32 12                    THE COURT:  So can you tell us, so you are a van

13:42:40 13        driver?

13:42:40 14                    A JUROR:  Yes.

13:42:41 15                    THE COURT:  What do you drive a van for?

13:42:43 16                    A JUROR:  Delaware First Transportation.

13:42:46 17                    THE COURT:  How long have you done that?

13:42:47 18                    A JUROR:  Two years now.

13:42:48 19                    THE COURT:  Okay.  All right.  Anyone want to

13:42:50 20        follow-up?

13:42:53 21                    MR. HINES:  No, Your Honor.

13:42:54 22                    MR. LOWELL:  No, Your Honor.

13:42:55 23                    THE COURT:  All right.  Thanks for coming in.

13:42:58 24                    A JUROR:  Thank you.

13:43:00 25                    THE COURT:  I wanted to make sure you got to

13:43:02  1    take a walk like the other potential jurors.

13:43:06  2               (Juror exiting the courtroom.)

13:43:08  3           THE COURT:  Okay.  So the people who need to

13:43:12  4    stay from the original 57 are jurors 2, 3, 5, 6, 10, 12, 16,

13:43:22  5    17, 18, 19, 20, 21, 25, 26, 27, 28, 29, 31, 33, 34, 35, 36,

13:43:36  6    37, 38, 39, 42, 43, 47, 48, 49, 50, 52, 53, and 56.

13:43:50  7           MR. HINES:  That's what we have, Your Honor.

13:43:52  8           THE COURT:  Okay.  So now do you want me to go

13:43:56  9    excuse everybody else?

13:43:58 10           MR. HINES:  That's fine with us.

13:43:59 11           MR. LOWELL:  That's fine with us.

13:44:00 12           THE COURT:  And then we'll take a half an hour.

13:44:04 13           MR. HINES:  Yes, excuse the folks from the

13:44:07 14    morning panel.

13:44:08 15           THE COURT:  And I'm going to let the folks who

13:44:10 16    are chosen get some lunch.  And then we'll come back at --

13:44:17 17           MR. LOWELL:  Come back at 2:30?

13:44:19 18           THE COURT:  Come back at 2:30 and we'll

13:44:22 19    randomize the second pool and bring twenty of them in.

13:44:26 20           MR. LOWELL:  And maybe I should ask Mr. Buckson.

13:44:28 21    So when we re-randomize it, that's when we get the list?

13:44:32 22           COURTROOM DEPUTY:  Correct.

13:44:33 23           THE COURT:  Okay.

13:44:41 24           COURTROOM DEPUTY:  All rise.

14:23:59 25           (A luncheon recess was taken.)

14:54:52  1                    THE COURT:  All right.  Everyone please be

14:55:05  2    seated.  All right.  Good afternoon, everyone, and thank you

14:55:18  3    for being here.  My name is Maryellen Noreika, and I am the

14:55:21  4    judge who is overseeing this criminal case, which is called

14:55:26  5    the United States vs. Robert Hunter Biden for which we are

14:55:30  6    about to select a jury.

14:55:32  7                    I'm going to ask you some questions to help us

14:55:35  8    in the jury selection process.  Before I ask those

14:55:37  9    questions, I am going to ask my deputy clerk to swear the

14:55:43 10    jury panel in to answer the questions truthfully.  Mr.

14:55:47 11    Buckson.

14:55:47 12                    COURTROOM DEPUTY:  Members of the jury panel.

14:55:49 13    Will you please rise and raise your right hand.

14:55:55 14                    (Jury panel sworn.

14:56:06 15                    THE COURT:  All right.  Thank you, please be

14:56:07 16    seated.

14:56:08 17                    You each have a list of the questions that I am

14:56:11 18    going to read.  If you answer yes to any of the questions

14:56:13 19    that I ask, please make a note of that on the list.  At the

14:56:16 20    end of the questions, you will all move into another

14:56:19 21    courtroom.  Then I will ask those of you who answered yes to

14:56:22 22    any questions to be brought back into this courtroom one at

14:56:25 23    a time so that you can talk with the lawyers and me about

14:56:27 24    your answers.

14:56:28 25                    Jury selection and the presentation of evidence

14:56:32  1    in this case is expected to conclude by next Friday,

14:56:35  2    June 14th, 2024.   The jury deliberations could extend your

14:56:39  3    service beyond that.   The schedule that I expect to keep

14:56:41  4    over the days of evidence presentation will include a

14:56:45  5    morning break of 15 minutes, a lunch break of 30 to

14:56:48  6    45 minutes, and an afternoon break of 15 minutes.   We'll

14:56:52  7    start each day at 9:00 a.m., and finish no later than 4:30

14:56:56  8    to 4:45 p.m. each day.

14:56:58  9             My questions.

14:56:59 10             1.   Does the schedule I have just mentioned

14:57:01 11    present a special problem to any of you?

14:57:04 12             2.   This is a criminal case involving three

14:57:07 13    charges against the defendant, Robert Hunter Biden:

14:57:10 14                  I.   Count one alleges the defendant made a

14:57:12 15    false statement in the purchase of a firearm in violation of

14:57:15 16    Title 18, United States Code, Section 922(A)(6).

14:57:19 17                  II.   Count 2 alleges that the defendant

14:57:20 18    made a false statement related to information required to be

14:57:23 19    kept by law by a federal firearms licensed dealer, in

14:57:29 20    violation of Title 18, United States Code,

14:57:31 21    Section 924(a)(1)(a).

14:57:33 22                  III.   Count 3 alleges that the defendant,

14:57:36 23    knowing that he was an unlawful user of a controlled

14:57:39 24    substance or addicted to a controlled substance, did

14:57:41 25    knowingly possess a firearm, in violation of Title 18,

14:57:45  1    United States Code, Section 922(G)(3).

14:57:49  2            The jury in this case will be asked to decide

14:57:51  3    whether Robert Hunter Biden is guilty beyond a reasonable

14:57:55  4    doubt of these charges against him.  Mr. Biden has pled not

14:57:57  5    guilty to each of the charges and is presumed to be

14:58:00  6    innocent.  Have you heard or read anything about this case

14:58:02  7    or the underlying investigation from the news, social media,

14:58:06  8    or any other source?

14:58:07  9            3.  Have you formed any opinions about this case

14:58:09 10    that would prevent you from being a fair and impartial

14:58:13 11    juror?

14:58:13 12            4.  Is there anything about the nature of the

14:58:15 13    charges in this case that would prevent you from being a

14:58:19 14    fair and impartial juror?

14:58:20 15            5.  The lawyers in this case are Derek Hines and

14:58:25 16    Leo Wise, of the United States Department of Justice who

14:58:27 17    represent the United States, and Abbe Lowell, David

14:58:30 18    Kolansky, and Isabella Oishi -- I'm sorry about that, it's

14:58:35 19    just written, so I can't see the handwriting -- of Winston &

14:58:42 20    Strawn LLP, as well as Bartholomew Dalton of Dalton and

14:58:46 21    Associates, and they represent Mr. Biden.

14:58:47 22            Do you or your immediate family, such as a

14:58:50 23    spouse, child, parent, or sibling know any of the attorneys

14:58:53 24    I have just named?

14:58:54 25            6.  Have you or any member of your immediate

14:58:57  1    family had any business dealings with, or been employed by,

14:58:59  2    any of these attorneys or their offices?

14:59:02  3              7.  Are you, any member of your immediate

14:59:04  4    family, or close friends acquaintances with Robert Hunter

14:59:08  5    Biden or any member of his family?

14:59:10  6              8.  The potential witnesses in this case are

14:59:13  7    listed below.  I'm give you a minute to look through those.

14:59:21  8              Are you familiar with any of these potential

14:59:37  9    witnesses?

14:59:38 10              9.  The law enforcement agencies involved in

14:59:42 11    this case are:

14:59:42 12              The Federal Bureau of Investigation (FBI).

14:59:45 13              The Bureau of Alcohol, Tobacco and Firearms

14:59:49 14     (ATF).

14:59:50 15              The U.S. Drug Enforcement Administration, (DEA).

14:59:53 16              The Delaware State Police, (DSP).

14:59:56 17              Would the fact that those agencies investigated

15:00:00 18    this case interfere with your ability to be a fair and

15:00:03 19    impartial juror?

15:00:03 20              10.  Have you, or any member of your immediate

15:00:06 21    family, or close friends ever been employed by, or

15:00:08 22    investigated by, any law enforcement agency, including:

15:00:11 23    Delaware or other state or local police, the FBI, ATF, DEA,

15:00:14 24    Secret Service, U.S. Marshals, IRS, U.S. Immigration and

15:00:20 25    Customs, U.S. Customs and Border Protection, The Bureau of

Prisons, or any state or federal prosecutor's office, or any state or local prison system?

        11.  Do you believe that you will give more or less weight to the testimony of a law enforcement officer, simply because he or she is employed as a law enforcement officer?

        12.  Have you or any member of your immediate family ever been (a) a victim of a crime, (b) a witness in a criminal case, or (c) arrested for a crime, not including minor traffic offenses?

        13.  Do you have any opinions about the criminal justice system that would make it difficult for you to be fair and impartial in this case?

        14.  Are you, any member of your immediate family or close friends studying, planning to or currently working in the legal profession (e.g., lawyer, paralegal, legal secretary)?

        15.  Do you have any education or training or work experience in any of the following areas:  Firearms, law enforcement or policing, investigations, substance/alcohol abuse, laboratory testing; or retail sales?

        16.  Do you believe that all people should be permitted by law to buy or possess a firearm regardless of whether they have been or are a user of controlled substance

15:01:26  1   or addicted to a controlled substance?

15:01:28  2           17.  Do you believe that the government should

15:01:31  3   not be able to require a background check for a gun

15:01:35  4   purchase?

15:01:35  5           18.  Do you or a close family member have any

15:01:39  6   experience purchasing a firearm (including handgun, pistol,

15:01:42  7   automatic rifle, hunting rifle, or other)?

15:01:46  8           19.  Are you familiar with any laws,

15:01:48  9   regulations, or requirements regarding purchasing, owning,

15:01:50 10   or selling a firearm?

15:01:51 11           20.  Have you or a close family member ever

15:01:54 12   filled out any government forms as part of a purchase of a

15:01:57 13   firearm?

15:01:57 14           21.  Do you have any strong views about gun

15:02:01 15   ownership in this country, the gun lobby, or the Second

15:02:01 16   Amendment?

15:02:05 17   Politics:

15:02:05 18           22.  If you were eligible to vote in any

15:02:09 19   elections in which Joseph R. Biden was the candidate, would

15:02:13 20   that fact prevent you from maintaining an open impartial

15:02:16 21   mind until all the evidence is presented and the

15:02:20 22   instructions of the Court are given?

15:02:22 23           24.  Have you ever been actively involved in a

15:02:25 24   political campaign, political organization?

15:02:29 25           Sorry, I missed one.

23.  Have you ever donated money to a political campaign?

And we have 24.  Have you ever been actively involved in a political campaign, political organization, or any organization that is associated with political party?

25.  Have you, or any member of your immediate family or household ever run for, sought, or held any elected or appointed political office?

26.  Do your views regarding the 2024 election or of any of the candidates for President in any way prevent you from being a fair and impartial juror in this case?

27.  Do you believe the United States Department of Justice, the FBI, ATF, DEA, or any other law enforcement agency investigates and prosecutes individuals because of politics?

28.  Do you believe Robert Hunter Biden is being prosecuted in this case because his father is the President of the United States and a candidate for president?

29.  Do you believe Robert Hunter Biden is not being prosecuted for other crimes because his father is the President of the United States and a candidate for president?

30.  Do you disagree that the law should apply equally to all, including the son of the President?

Addiction Matters:

15:03:40  1          31.  Have you, a family member or a close friend

15:03:45  2  ever suffered from drug or alcohol abuse, or been addicted

15:03:48  3  to drugs or alcohol in any way?

15:03:51  4          32.  Have you, any member of your family or a

15:03:53  5  close friend ever sought treatment, professional counseling,

15:03:56  6  entered a rehab program, gone to Alcoholics Anonymous, or

15:04:00  7  tried other forms of addiction treatment or therapy?

15:04:02  8          33.  Do you have any strong negative views about

15:04:05  9  past users of controlled substances, narcotics, or alcohol?

15:04:09 10          34.  Do you believe someone who is addicted to

15:04:12 11  drugs should not be charged with a crime?

15:04:15 12          35.  Do you have any opinions about addiction to

15:04:17 13  drugs or alcohol that would prevent you from maintaining an

15:04:21 14  open, impartial mind until all of the evidence is presented,

15:04:24 15  and the instructions of the Court are given?

15:04:26 16          36.  If you are selected to sit as a juror in

15:04:29 17  this case, are you aware of any reason why you would be

15:04:31 18  unable to render a verdict solely on the evidence presented

15:04:34 19  here in the courtroom at trial?

15:04:36 20          37.  If you are selected to sit as a juror in

15:04:39 21  this case, are you aware of any reason why you would not be

15:04:42 22  able to follow the law as I give it to you?

15:04:45 23          38.  If you are chosen to sit as a juror in this

15:04:49 24  case, you will be instructed that you will not be able to do

15:04:52 25  any research or investigation, including on the Internet, on

15:04:55 1   any issues in the case, or communicate with others about

15:04:59 2   your jury service.  Is this an instruction that you will not

15:05:03 3   be able to follow?

15:05:05 4           So the question that's written on the paper is,

15:05:08 5   is this an instruction that you will be able to follow, I'm

15:05:12 6   correcting that, it should say is this an instruction you

15:05:15 7   will not be able to follow?

15:05:17 8           39.  Under the law, a defendant need not testify

15:05:20 9   or produce any evidence.  The burden of proof is always on

15:05:23 10  the government.  If a defendant does not testify, the jury

15:05:26 11  may not consider that fact in any way in reaching a

15:05:29 12  decision.  Do you have any difficulty following this rule?

15:05:31 13          40.  A fundamental principle of our legal system

15:05:36 14  is that when a person is charged with a crime, he is

15:05:39 15  presumed to be innocent unless and until the government

15:05:42 16  proves guilty beyond a reasonable doubt.  If you are

15:05:45 17  selected to sit as a juror in this case, will you have

15:05:48 18  difficulty following this rule of law?

15:05:49 19          41.  Robert Hunter Biden, as the defendant in

15:05:53 20  this case, may choose not to testify in his own defense, and

15:05:56 21  I instruct you that that choice not to testify, if that is

15:06:01 22  Robert Hunter Biden's choice, may not be held against him.

15:06:03 23  If you are selected as a juror in this case, will you have

15:06:07 24  difficulty following that instruction?

15:06:08 25          42.  Testimony may be presented in this case by

15:06:12  1    a witness who has received a grant of immunity.  I instruct

15:06:15  2    you that if such a witness testifies, you will have to

15:06:18  3    evaluate that witness's testimony as you would of any other

15:06:22  4    witness.  If you are selected as a juror in this case, will

15:06:24  5    you have difficulty following that instruction?

15:06:27  6             43.  Have you served on a jury in a criminal

15:06:30  7    case before?

15:06:31  8             44.  Have you served on a grand jury before?

15:06:33  9             45.  Have you ever been a witness in a civil or

15:06:36 10    criminal matter, or been a plaintiff or a defendant in any

15:06:39 11    case?

15:06:39 12             46.  Is there anything, such as poor vision,

15:06:43 13    difficulty hearing, difficulty understanding spoken or

15:06:46 14    written English, that would make it difficult for you to

15:06:48 15    serve on this jury?

15:06:49 16             47.  And this is the last question.  Is there

15:06:53 17    anything else, including something that you have remembered

15:06:55 18    in connection with one of the earlier questions, that you

15:06:57 19    think you would like to tell me in connection with your

15:07:01 20    service as a juror in this case?

15:07:03 21             Excuse me.  I have other things going on at the

15:07:10 22    moment.

15:07:16 23             All right.  Apologies.  Okay.  So those are the

15:07:21 24    end of my questions.  What I am going to do now is to ask

15:07:24 25    you all to move in the next courtroom over, which is

Courtroom 4B.  You'll still be sitting there in order.  And then my courtroom deputy and my case manager will come in and ask you if you answered yes to any questions.  If you did, you'll then wait in there to come in and talk to us about your answers.

While you are waiting, it's very important that you follow the instructions I am about to give you.  I am not providing these instructions to make your service difficult, I am doing so because these instructions are important.  The Sixth Amendment to our constitution guarantees a trial by an impartial jury.  This means the jurors must decide the case based solely on the evidence and the law presented in this courtroom.  My instructions are designed to limit your exposure about this case to anything outside of the courtroom and ensure a fair trial.

Do not take any pictures or make any videos or other types of recording.  Taking pictures, making videos, and recordings is not permitted inside a federal courtroom.  You have been allowed to keep your phones with you.  That is a privilege that you have as jurors in recognition of your service.  Most people coming into the court house do not have that privilege and I ask you not to abuse it.

Do not talk with anyone else or listen to others talk about this case.  This means do not talk with anyone about this case.  It means do not talk among yourselves.  Do

15:08:54 1    not talk to or listen to any of the parties, lawyers, or

15:08:57 2    witnesses involved in this case, outside of this courtroom.

15:09:00 3    Do not talk to or listen to your family and friends about

15:09:03 4    this case.  Do not talk to or listen to any press or members

15:09:07 5    of the public who are watching this case.  Do not talk to or

15:09:11 6    listen to anyone about this case.

15:09:12 7              Do not watch or listen to any television, radio,

15:09:16 8    podcast, or any other type of main stream media, or social

15:09:20 9    media programs, or reports about the case, or read any news

15:09:23 10   or internet sources addressing the case in any way.  Do not

15:09:27 11   conduct any independent research about this case or the

15:09:29 12   matters, legal issues, legal individuals, or other entities

15:09:32 13   involved in the case.  Do not visit any location involved in

15:09:35 14   this case or conduct experiments addressing issues in this

15:09:38 15   case.  Do not search or review any traditional sources of

15:09:41 16   information about this case such as dictionaries, reference

15:09:44 17   materials, or television news or entertainment programs.  Do

15:09:48 18   not search the internet or any other electronic resources

15:09:51 19   for information about this case, or the witnesses or parties

15:09:55 20   involved in it.  Do not communicate about the case with

15:09:58 21   anyone including your family and friends, whether in person

15:10:00 22   or writing through e-mail, text messaging, blogs, social

15:10:04 23   media websites, or apps like Twitter, Facebook, Instagram,

15:10:08 24   LinkedIn, WhatsApp or Snapchat.  Because it is so important

15:10:11 25   to the parties rights that you decide this case based solely

15:10:14  1   on the evidence and my instructions on the law, any time you

15:10:17  2   return to the courtroom, I may ask you whether you have

15:10:19  3   followed these instructions or learned about or shared any

15:10:22  4   information outside the courtroom.  I like to let you know

15:10:25  5   that I might ask you that so you're prepared it could

15:10:28  6   happen.

15:10:29  7           Okay.  At this point you can follow my deputy

15:10:32  8   and the case manager over to the other courtroom.

15:10:36  9           COURTROOM DEPUTY:  All rise.

15:10:58 10           THE COURT:  All right.  You can be seated.  So

15:11:13 11   we have an issue with Juror 18, we also have an issue with

15:11:20 12   Juror 6, because my case manager has just informed me that

15:11:23 13   Juror number 6 is her cousin.  I'm sorry, juror number 61.

15:11:32 14   Oh, never mind, forget about Juror 6, Juror 61 is my case

15:11:38 15   manager's cousin.  So, would you like me to excuse her?

15:11:46 16           MR. HINES:  Yes, we would like you to excuse

15:11:49 17   her, Your Honor, and also Juror 18.

15:11:51 18           THE COURT:  So you want Juror 18 excused?

15:11:54 19           MR. HINES:  Yes, given the hardship she

15:11:56 20   articulated, and we have the luxury of 20 jurors here now,

15:12:01 21   we think we might as well see a full jury with four

15:12:04 22   alternates that won't have to risk someone leaving early

15:12:08 23   next week.

15:12:08 24           THE COURT:  So I'm so confused because Juror 18,

15:12:12 25   you moved to exclude, and Mr. Lowell said let's let it play

15:12:17  1    out, and then I understood that you just recently said okay,

15:12:20  2    now we have extra people.

15:12:23  3            MR. LOWELL:  No, ma'am, I hope I didn't say

15:12:24  4    that, I said your last ruling still worked for me because we

15:12:28  5    have four alternates.

15:12:29  6            THE COURT:  I have it backwards.  Mark, you said

15:12:32  7    that Mr. Lowell asked for her to be excused?

15:12:35  8            MR. LOWELL:  No.

15:12:38  9            MR. HINES:  In any event, I came up to Mr.

15:12:41 10    Buckson with Mr. Lowell, and indicated that our preference

15:12:44 11    is to have juror number 18 excused, that way we don't risk

15:12:48 12    her having to leave if the trial is still continuing,

15:12:52 13    although we have four alternates, at this stage, we have

15:12:56 14    only two to select, so we might as well select three this

15:12:59 15    afternoon, that would be our preference, and excuse 18.

15:13:02 16            MR. LOWELL:  Select three, we have four

15:13:07 17    alternates.

15:13:07 18            THE COURT:  He wants to excuse 18?

15:13:10 19            MR. LOWELL:  Now I understand.

15:13:11 20            THE COURT:  The problem I have -- and 18 I said,

15:13:13 21    I mean, 18 is the one who during the selection process I

15:13:19 22    said but if we go past the 13th, I will excuse her.  So --

15:13:28 23            MR. LOWELL:  Because we had four alternates,

15:13:30 24    which is two more than we said, so I didn't change my

15:13:34 25    position, Your Honor.

15:13:48  1                MR. HINES:  What I recall her saying, Your

15:13:50  2    Honor, she had to leave on -- vacation starts on Thursday, I

15:13:54  3    don't know if that meant leaving Wednesday or Thursday.

15:13:56  4                THE COURT:  I looked at the transcript, she's

15:13:59  5    not here Thursday.

15:14:00  6                MR. HINES:  Right.  So I think rather than

15:14:03  7    starting the trial with one hand behind our back

15:14:06  8    potentially, let's seat a full jury that has the ability to

15:14:09  9    sit for two full weeks if necessary, including four

15:14:12 10    alternates that can as well.

15:14:15 11                THE COURT:  All right.

15:14:16 12                MR. LOWELL:  I don't have anything new to say

15:14:20 13    except for this, we picked through to the jury so we could

15:14:25 14    figure out what strikes we could make, we're now into the

15:14:28 15    alternates, if we did that, the alternate that is now an

15:14:33 16    alternate becomes a juror, I didn't change my position,

15:14:36 17    because we have four alternates, the case may go faster as

15:14:41 18    the government believes ^it.

15:14:43 19                THE COURT:  All right.  I'll leave her on the

15:14:44 20    jury.  We're taking off and we're losing of our 20, we're

15:14:48 21    taking off two because they weren't on the original list,

15:14:51 22    right?  18 and 60, do I have those numbers right?

15:15:03 23                MR. HINES:  Yes.

15:15:03 24                THE COURT:  Now we're taking off 61?

15:15:15 25                COURTROOM DEPUTY:  Juror number 59.

15:15:16  1                    THE COURT:  Good afternoon, sir.

15:15:18  2                    A JUROR:  Good afternoon, ma'am.

15:15:19  3                    THE COURT:  Thanks for putting up with us and

15:15:21  4     being patient with us.  You answered what question?

15:15:25  5                    A JUROR:  Quite a few of them.

15:15:26  6                    THE COURT:  Okay.

15:15:27  7                    A JUROR:  Start with number two.

15:15:31  8                    THE COURT:  Okay.

15:15:33  9                    A JUROR:  Every morning and evening, morning I

15:15:36 10     watch the news, and evening I watch the local news.

15:15:40 11                    THE COURT:  Okay.

15:15:41 12                    A JUROR:  Most of what I have heard about it.

15:15:44 13                    THE COURT:  What news do you watch?

15:15:45 14                    A JUROR:  In the morning is CNN and Fox, and in

15:15:49 15     the evening is my local news down in Dover, WBOC.

15:15:54 16                    THE COURT:  And so have you done any sort of

15:15:56 17     independent research or it's just what you have seen on the

15:16:00 18     news?

15:16:00 19                    A JUROR:  On the news and a little bit on

15:16:02 20     Facebook or social media.

15:16:04 21                    THE COURT:  And so, can you tell us specifically

15:16:06 22     what, if anything, you know about the case?  I'm trying to

15:16:10 23     figure out if you know there is a case, or if you know

15:16:13 24     anything that would make you have formed an opinion?

15:16:16 25                    A JUROR:  It kind of goes into some of the other

15:16:19  1    questions.

15:16:20  2                    THE COURT:  Okay.  Did you answer yes to

15:16:22  3    question number three?

15:16:23  4                    A JUROR:  I did not.

15:16:24  5                    THE COURT:  Okay.  So in your view, has anything

15:16:28  6    that you have heard about this case caused you to form an

15:16:32  7    opinion that you think would make you not fair and

15:16:37  8    impartial?

15:16:39  9                    A JUROR:  It's hard -- I sold guns, as a retail

15:16:45 10    sales, so I know about the form.  So I don't know --

15:16:48 11                    THE COURT:  You have some doubts whether you

15:16:50 12    could be fair and impartial, do you think?

15:16:53 13                    A JUROR:  I can also say I'm not sure.

15:16:56 14                    THE COURT:  All right.  And you can understand

15:16:58 15    if you were a defendant in a criminal case and a potential

15:17:02 16    juror came up and said I don't know if I can give you a fair

15:17:05 17    shake, that wouldn't make you feel very good.

15:17:07 18                    A JUROR:  Understood, absolutely.

15:17:09 19                    THE COURT:  We do appreciate you being up front

15:17:12 20    about this, because it's better that you tell us now than

15:17:16 21    later.

15:17:16 22                    All right.  So can we keep going through these

15:17:23 23    questions?

15:17:24 24                    MR. LOWELL:  I do not --

15:17:27 25                    THE COURT:  So, sir, we'll excuse you.  I do

15:17:30  1  appreciate you coming in.  And we'll excuse you, just

15:17:34  2  because I think you have been quite candid that you're just

15:17:37  3  not sure, and we appreciate that.  We do.  But I'm going to

15:17:41  4  excuse you.

15:17:42  5           A JUROR:  Okay.

15:17:43  6           THE COURT:  Thank you so much.

15:17:44  7           A JUROR:  Thank you.

15:17:45  8           (Juror exiting the courtroom.)

15:17:51  9           (Juror 62 entering the courtroom.)

15:17:54 10           COURTROOM DEPUTY:  Juror number 62.

15:17:57 11           THE COURT:  Hi.

15:17:58 12           A JUROR:  How are you?

15:17:59 13           THE COURT:  So what questions did you answer yes

15:18:01 14  to?

15:18:01 15           A JUROR:  2, 7, 8, 18, 23, questionable on 20

15:18:06 16  and 28, 31, 32 and 47.

15:18:20 17           THE COURT:  Okay.  All right.  So question

15:18:24 18  number 2, you have heard about this case?

15:18:26 19           A JUROR:  Yes.

15:18:27 20           THE COURT:  Can you tell me what you've heard?

15:18:29 21           A JUROR:  Nothing except for when it popped up

15:18:31 22  on my phone today, I skimmed the article.

15:18:34 23           THE COURT:  And what was that article in?  Like

15:18:36 24  what was the news source that you read?

15:18:39 25           A JUROR:  I don't remember.

15:18:39 1                THE COURT:  You don't even know?

15:18:41 2                A JUROR:  No.

15:18:41 3                THE COURT:  It was just something that came up

15:18:43 4     with a headline and you scanned through it?

15:18:45 5                A JUROR:  Uh-huh, thinking that I might be

15:18:47 6     called for this jury.

15:18:48 7                THE COURT:  And did you -- can you tell me if

15:18:52 8     you learned anything about the case from skimming through

15:18:54 9     it?

15:18:55 10                A JUROR:  Not much.

15:18:56 11                THE COURT:  Did it cause you to form any

15:18:59 12     opinions in this case?

15:19:01 13                A JUROR:  No.

15:19:04 14                THE COURT:  All right.  Question seven, are you,

15:19:07 15     any member of your immediate family or close friend

15:19:10 16     acquaintances with the defendant or any other --

15:19:14 17                A JUROR:  Yes.

15:19:14 18                THE COURT:  Can you tell me about that?

15:19:15 19                A JUROR:  I know Hunter, just as an

15:19:18 20     acquaintance, hello, and my husband was very good friends

15:19:22 21     with Beau.

15:19:23 22                THE COURT:  Would that make it difficult for you

15:19:24 23     to be impartial and fair in this case?

15:19:27 24                A JUROR:  I don't think so.

15:19:28 25                THE COURT:  You think that you could put that

15:19:31 1    aside?

15:19:32 2                        A JUROR:  I do.

15:19:33 3                        THE COURT:  And how are you an acquaintance with

15:19:36 4    the defendant?

15:19:37 5                        A JUROR:  How am I an acquaintance?  Wilmington

15:19:40 6    is a small place.  Just my husband has been friends with the

15:19:45 7    Biden family for a long time.

15:19:49 8                        THE COURT:  Okay.  Can you elaborate, is that

15:19:58 9    working, is that socializing, what is that?

15:20:02 10                       A JUROR:  Socializing.

15:20:03 11                       THE COURT:  In what kind of setting?

15:20:07 12                       A JUROR:  My husband was pretty good friends

15:20:10 13   with Beau, I mean, at the club, social events.

15:20:15 14                       THE COURT:  Do you belong to the same clubs?

15:20:18 15                       A JUROR:  No.

15:20:20 16                       THE COURT:  Okay.  You said 8?

15:20:27 17                       A JUROR:  Hold on, Your Honor, he does belong to

15:20:31 18   the club in Wilmington, but just socially, socially we know

15:20:37 19   the Bidens.

15:20:39 20                       THE COURT:  Do you know potential witnesses in

15:20:41 21   this case?

15:20:42 22                       A JUROR:  Yes.

15:20:42 23                       THE COURT:  Who?

15:20:43 24                       A JUROR:  Hallie Biden.

15:20:45 25                       THE COURT:  How do you know Hallie Biden?

15:20:48  1                    A JUROR:  Just an acquaintance, just from

15:20:51  2    socially in Wilmington.

15:20:52  3                    THE COURT:  I just don't really know what that

15:20:54  4    means.

15:20:54  5                    A JUROR:  Just from Wilmington.

15:20:56  6                    THE COURT:  You wave at her across the room or

15:21:02  7    --

15:21:02  8                    A JUROR:  Just hello, how are you.

15:21:04  9                    THE COURT:  Okay.  Anyone else?

15:21:07  10                   A JUROR:  No.

15:21:07  11                   THE COURT:  All right.  18, close family member,

15:21:15  12   have any experience purchasing firearm?

15:21:18  13                   A JUROR:  Yes.

15:21:19  14                   THE COURT:  Tell me about that?

15:21:20  15                   A JUROR:  My brother-in-law has several

15:21:23  16   firearms.

15:21:24  17                   THE COURT:  Do you know anything about the

15:21:29  18   process for obtaining a firearm?

15:21:31  19                   A JUROR:  Not at all.  No.

15:21:38  20                   THE COURT:  Okay.  Have you donated money to a

15:21:41  21   political campaign?

15:21:42  22                   A JUROR:  Yes.

15:21:42  23                   THE COURT:  What political campaign or

15:21:45  24   campaigns?

15:21:47  25                   A JUROR:  Several.

15:21:48  1    THE COURT:  We have to get specific because

15:21:50  2  we're trying to --

15:21:51  3    A JUROR:  Specifically recently, so I am a chair

15:21:54  4  of the Delaware Lyme Disease Education state board, to work

15:22:02  5  in that space, whether you're blue or red, it doesn't matter

15:22:06  6  to me, to make political contributions, we make political

15:22:12  7  contributions for official --

15:22:16  8    THE COURT:  So who?

15:22:17  9    A JUROR:  Matt Meyer, Lieutenant Governor

15:22:22 10  Bethany Hall-Long, Senator Kyle Gay, I'm trying to think

15:22:33 11  somebody that's more recent.

15:22:34 12    THE COURT:  It doesn't have to be recent, it can

15:22:36 13  be in the past.

15:22:37 14    A JUROR:  The Bidens, I'm sure we made donations

15:22:40 15  to, the senators, elected officials statewide.

15:22:46 16    THE COURT:  The senators meaning sitting

15:22:50 17  senators?

15:22:50 18    A JUROR:  Uh-huh.

15:22:55 19    THE COURT:  With the Bidens, you mean Joe Biden

15:22:59 20  and Beau Biden?

15:23:00 21    A JUROR:  I think so, but I would have to look

15:23:02 22  back in Quickbooks to give you the specifics.

15:23:06 23    THE COURT:  Okay.  Anything else you can

15:23:11 24  remember?  Have you personally donated money aside from your

15:23:16 25  role of the chair of that committee?

15:23:18  1                 A JUROR:  Yes.

15:23:19  2                 THE COURT:  Who have you donated money to?

15:23:21  3                 A JUROR:  So I'm just saying I'm the chair of

15:23:25  4      the Delaware Lyme Disease Education, but personally all

15:23:28  5      those donations have been made.

15:23:30  6                 THE COURT:  I see.  You're saying there are some

15:23:33  7      through that --

15:23:34  8                 A JUROR:  Not through that committee, I'm just

15:23:37  9      saying in that case, I do kind of line policy work, and also

15:23:41 10      for the business and we do, we just have relationships in

15:23:48 11      that space and so we do make donations.  I could get a list

15:23:53 12      if you want, but I don't know the --

15:23:55 13                 THE COURT:  Nobody suggested this was going to

15:23:57 14      be a test.

15:23:58 15                 A JUROR:  I don't have Quickbooks with me.

15:24:01 16                 THE COURT:  Do you believe, you answered to --

15:24:05 17      do you believe Robert Hunter Biden is being prosecuted in

15:24:09 18      this case because his father is the President of the United

15:24:12 19      States and a candidate for president?

15:24:15 20                 A JUROR:  I think it's possible.

15:24:16 21                 THE COURT:  Why do you think that?

15:24:18 22                 A JUROR:  I don't think it's a position for him

15:24:21 23      to be in.

15:24:25 24                 THE COURT:  You think don't think that is why

15:24:30 25      he's being prosecuted in this case?

15:24:32  1              A JUROR:  I'm just being completely honest with

15:24:34  2      you, that's my duty, I'm just being honest with you, that's

15:24:37  3      how I feel.

15:24:38  4              THE COURT:  All right.  Thank you.

15:24:42  5              You also answered yes to question 31 and 32,

15:24:46  6      whether you, a family member, or a close friend have

15:24:49  7      suffered from drug or alcohol abuse or been addicted to

15:24:52  8      drugs or alcohol, or you thought --

15:24:55  9              A JUROR:  My brother and a very dear friend,

15:24:57 10      yes.

15:24:57 11              THE COURT:  All right.  And is anything about

15:25:00 12      that, would that affect your ability to be fair and

15:25:02 13      impartial in this case?

15:25:03 14              A JUROR:  I don't think so.

15:25:06 15              THE COURT:  And you also answered question 47,

15:25:09 16      which is kind of a cover all, will you tell me about your

15:25:12 17      response there.

15:25:12 18              A JUROR:  Just to be full disclosure to the

15:25:15 19      integrity, Beau was a friend of the family, and a good man,

15:25:20 20      and we miss him.  And my husband was a pretty good friend of

15:25:25 21      him, and I was a friend, and that's what the disclosure

15:25:29 22      asked to make.

15:25:29 23              THE COURT:  I appreciate that.  Any follow-up?

15:25:32 24              MR. HINES:  No, Your Honor.

15:25:33 25              MR. LOWELL:  No, Your Honor.

15:25:34  1            THE COURT:  All right.  Thanks.  Give us a

15:25:35  2   minute.

15:25:37  3            (Juror exiting the courtroom.)

15:25:42  4            MR. HINES:  Move to strike, a joint strike.  I'm

15:25:46  5   happy to argue it.

15:25:48  6            MR. LOWELL:  I had a hard time figuring out what

15:25:50  7   was her husband's relationship, what was hers, and that's

15:25:54  8   social, but given what she said about Hunter's situation,

15:26:01  9   that's kind of where I understand that the government

15:26:05 10   motions for cause.

15:26:06 11            THE COURT:  I am having a hard time figuring out

15:26:08 12   the distinction between her husband and her, she was clearly

15:26:11 13   getting choked up talking about it, so I think we're going

15:26:14 14   to strike her.  We are not off to a officious start giving

15:26:21 15   that we got rid of so many jurors.

15:26:25 16            (Juror 63 entering the courtroom.)

15:26:40 17            COURTROOM DEPUTY:  Juror number 63.

15:26:45 18            THE COURT:  All right.  Good afternoon, ma'am.

15:26:47 19   Thanks for coming in.  Can you tell me what questions you

15:26:52 20   answered yes to?

15:26:54 21            A JUROR:  10, 18, 23, and 43.

15:27:02 22            THE COURT:  All right.  So with respect to

15:27:04 23   question number 10, have you or any member of your immediate

15:27:12 24   family or close friends been employed by, or investigated by

15:27:16 25   any law enforcement agency, including the listed ones?

15:27:19  1                 Can you tell me what your response is there?

15:27:22  2                 A JUROR:  My daughter and son-in-law are

15:27:24  3    correctional officers at Vaughn.

15:27:26  4                 THE COURT:  They're correctional officers?

15:27:38  5                 Anything else that would make you answer yes to

15:27:41  6    that?

15:27:42  7                 A JUROR:  No.

15:27:42  8                 THE COURT:  You answered yes to question 18,

15:27:47  9    which is do you or a close family member have experience

15:27:52 10    purchasing a firearm?

15:27:53 11                 Can you tell me about that?

15:27:54 12                 A JUROR:  They're the same two, my daughter and

15:27:57 13    son-in-law.

15:27:59 14                 THE COURT:  Do you know anything about the

15:28:01 15    process by which they got the firearm, or you just know that

15:28:06 16    they have it?

15:28:06 17                 A JUROR:  I mean, just part of it through work

15:28:09 18    and part of it -- yeah.

15:28:12 19                 THE COURT:  Like an off-duty kind of thing?

15:28:14 20                 A JUROR:  Yeah.  Yeah.

15:28:15 21                 THE COURT:  Okay.  23, you answered yes, which

15:28:19 22    is have you ever donated money to a political campaign.

15:28:23 23                 A JUROR:  Yes.

15:28:24 24                 THE COURT:  Can you tell me what that is?

15:28:26 25                 A JUROR:  Probably eight years ago, the

15:28:28  1    Republican campaign.

15:28:32  2                THE COURT:  Was that, do you remember what race

15:28:34  3    it was, like was it a local race, a federal race?

15:28:40  4                A JUROR:  Federal.

15:28:41  5                THE COURT:  The senate?

15:28:42  6                A JUROR:  Presidential.

15:28:45  7                THE COURT:  Presidential race.

15:28:53  8                Was that just a one-time thing?

15:28:55  9                A JUROR:  Yes.

15:28:56 10                THE COURT:  And who did you donate to?

15:29:01 11                A JUROR:  Trump.

15:29:04 12                THE COURT:  President Trump.  That was in 2016?

15:29:07 13                A JUROR:  The first one, yeah.

15:29:09 14                THE COURT:  Okay.  And then anything about that

15:29:13 15    donation that would make it difficult for you to be fair and

15:29:15 16    impartial in this case?

15:29:17 17                A JUROR:  No.

15:29:19 18                THE COURT:  Okay.  And then you also answered

15:29:22 19    yes to question 43, you were on a jury before?

15:29:24 20                A JUROR:  Yeah, at the county building.

15:29:27 21                THE COURT:  That was a criminal case?

15:29:29 22                A JUROR:  Yes.

15:29:29 23                THE COURT:  And when was that?

15:29:31 24                A JUROR:  Probably six years ago, roughly.

15:29:34 25                THE COURT:  Do you remember the subject matter?

15:29:38  1                    A JUROR:  I think it was just a gentleman that

15:29:42  2    resisted arrest, and we just came back the next day.

15:29:48  3                    THE COURT:  It was a quick trial?

15:29:50  4                    A JUROR:  Yeah.

15:29:50  5                    THE COURT:  Did you actually deliberate?

15:29:52  6                    A JUROR:  Yeah, we did.

15:29:53  7                    THE COURT:  Do you remember what the decision

15:29:55  8    was?

15:29:55  9                    A JUROR:  He was guilty.

15:29:57 10                    THE COURT:  All right.  Any follow-up?

15:29:59 11                    MR. HINES:  No questions, Your Honor.

15:30:01 12                    MR. LOWELL:  Good afternoon, ma'am.  You said

15:30:04 13    that your son and daughter-in-law --

15:30:07 14                    A JUROR:  My daughter and son-in-law.

15:30:10 15                    MR. LOWELL:  Are both correction officers?

15:30:12 16                    A JUROR:  Yes.

15:30:12 17                    MR. LOWELL:  In a case like this, there could be

15:30:14 18    testimony from law enforcement officials, and there will be

15:30:17 19    testimony from people who are not in law enforcement, would

15:30:20 20    you be able notwithstanding your family's connections to the

15:30:24 21    law enforcement community, be able to judge both of those

15:30:28 22    individuals equally, and not provide any basis to favor law

15:30:31 23    enforcement?

15:30:33 24                    A JUROR:  Yes, I think I would be fine to do

15:30:35 25    that.

15:30:35  1                   MR. LOWELL:  Thank you.

15:30:35  2                   THE COURT:  Thank you, ma'am.  Just give us one

15:30:38  3  moment.

15:30:38  4                   (Juror exiting the courtroom.)

15:30:44  5                   MR. HINES:  No motion.

15:30:45  6                   MR. LOWELL:  No motion.

15:30:46  7                   THE COURT:  All right.  Thank you.

15:30:48  8                   (Juror 64 entering the courtroom.)

15:31:07  9                   COURTROOM DEPUTY:  Juror number 64.

15:31:10 10                   THE COURT:  Good afternoon.  Thanks for coming

15:31:15 11  in.  You answered yes, can you tell us what question or

15:31:19 12  questions?

15:31:20 13                   A JUROR:  I answered yes to questions 1, 2, 21,

15:31:24 14  22, 31 and 32.

15:31:30 15                   THE COURT:  All right.  Let's start with

15:31:32 16  question one.  What is the scheduling issue?

15:31:34 17                   A JUROR:  I will be out of the country for the

15:31:36 18  next two weeks.

15:31:37 19                   THE COURT:  You already have plane reservations?

15:31:39 20                   A JUROR:  I do, yes.

15:31:40 21                   THE COURT:  And when are you leaving?

15:31:43 22                   A JUROR:  The 10th.

15:31:44 23                   THE COURT:  All right.  Any one have any

15:31:49 24  objection to me excusing her?

15:31:50 25                   MR. HINES:  No, Your Honor.

15:31:51  1                    THE COURT:  We will excuse you.  Thank you for

15:31:53  2      coming in.  And enjoy your trip.

15:31:56  3                    A JUROR:  Thank you.

15:31:57  4                    (Juror exiting the courtroom.)

15:32:01  5                    (Juror 65 entering the courtroom.)

15:32:07  6                    COURTROOM DEPUTY:  Juror number 65.

15:32:10  7                    THE COURT:  Come on in.  Good afternoon.  You

15:32:16  8      okay, tripped up?  What questions did you answer yes to?

15:32:22  9                    A JUROR:  I wasn't sure about the question, it's

15:32:25 10      question number 23, which reads as follows, have you ever

15:32:29 11      donated money to a political campaign.

15:32:32 12                    THE COURT:  And have you?

15:32:33 13                    A JUROR:  Never, ever.

15:32:35 14                    THE COURT:  You never have?

15:32:36 15                    A JUROR:  I'm answering the question, ever,

15:32:38 16      ever, no matter when?

15:32:40 17                    THE COURT:  If you recall, then I would say yes,

15:32:43 18      ever, if you can recall, you know, back to when it happened.

15:32:53 19                    A JUROR:  Maybe I did, if it's ever, yes.

15:32:57 20                    THE COURT:  Do you have a recollection of having

15:32:58 21      done so?  Do you remember doing it?

15:33:09 22                    A JUROR:  Yes.

15:33:10 23                    THE COURT:  Okay.  And do you remember when --

15:33:13 24      what time frame it would have been.

15:33:19 25                    A JUROR:  Maybe -- can I say the name of the

15:33:33  1    person?

15:33:33  2                    THE COURT:  Sure.

15:33:34  3                    A JUROR:  During President Obama's time.

15:33:38  4                    THE COURT:  So you donated to President Barrack

15:33:42  5    Obama, that you recall?

15:33:43  6                    A JUROR:  Yes.

15:33:44  7                    THE COURT:  That's probably an easier way to do

15:33:46  8    it than asking do you remember the date.

15:33:47  9                    A JUROR:  Yes, I can't remember the date.

15:33:49 10                    THE COURT:  Is that the only time that you

15:33:51 11    remember donating to a campaign?

15:33:53 12                    A JUROR:  Yes.

15:33:54 13                    THE COURT:  All right.  And now, President Biden

15:34:00 14    was the vice-president at that time.  Does the fact that you

15:34:03 15    donated to president Barrack Obama's campaign, does that

15:34:08 16    make you feel like you couldn't be fair and impartial in

15:34:12 17    this case?

15:34:13 18                    A JUROR:  I wouldn't be partial.

15:34:17 19                    THE COURT:  You would not be partial?

15:34:19 20                    A JUROR:  No.

15:34:19 21                    THE COURT:  So you would be impartial and fair.

15:34:21 22                    A JUROR:  Yes, I would be impartial and fair.

15:34:24 23                    THE COURT:  Okay.  All right.  And is that the

15:34:28 24    only question that you answered yes to?

15:34:29 25                    A JUROR:  Yes, it is.

15:34:30  1                    THE COURT:  Okay.  Any follow-up?

15:34:33  2                    MR. HINES:  No, Your Honor.

15:34:34  3                    MR. LOWELL:  No, Your Honor.

15:34:35  4                    THE COURT:  All right.  Thanks.  Just give us

15:34:37  5    one minute.

15:34:38  6                        (Juror exiting the courtroom.)

15:34:43  7                    MR. HINES:  No motion.

15:34:44  8                    MR. LOWELL:  No motion.

15:34:45  9                    THE COURT:  Okay.  All right.  So then I think

15:34:54 10    our list of jurors would be 2, 3, 5, 6, 10, 12, 16, 17, 18,

15:35:04 11    19, 20, 21, 25, 26, 27, 28, 29, 31, 33, 34, 35, 36, 37, 38,

15:35:14 12    39, 42, 43, 47, 48, 49, 50, 52, 53, 56, 63 and 65.

15:35:26 13                    MR. LOWELL:  I think that's right.  Did we get

15:35:28 14    to the fourth alternate?  That was just her?

15:35:33 15                    THE COURT:  Yeah the four alternates are 53, 56,

15:35:37 16    63, and 65.

15:35:46 17                    MR. LOWELL:  There was two from before and two

15:35:49 18    now.

15:35:56 19                    THE COURT:  So you each get two strikes for

15:35:59 20    alternates.

15:35:59 21                    MR. LOWELL:  Yes, ma'am.

15:36:00 22                    THE COURT:  So then the strikes -- so then the

15:36:02 23    alternates would be from 29 -- 48 -- so it's -- so the

15:36:08 24    alternates would then be 48, 49, 50, 52, 53, 56, 63, and 65.

15:36:25 25                    MR. LOWELL:  If you give me a moment, I thought

15:36:27 1    the alternates are 53, 56, 63 and --

15:36:37 2             THE COURT:  No, yes, those are alternates, but

15:36:40 3    because we're picking four alternates, you have to go back

15:36:45 4    eight because you each have two strikes.  So your -- so the

15:36:53 5    --

15:36:53 6             MR. LOWELL:  Meaning we still have to interview

15:36:55 7    a few more is what you're saying?

15:36:57 8             THE COURT:  What I'm saying is the first 28

15:37:00 9    numbers that I read, which go through 47, are the panel.

15:37:09 10   Then we have eight more and you each get two strikes.

15:37:19 11            MR. LOWELL:  So the first potential alternate,

15:37:22 12   just to be clear, I'm sorry, is number 48, and then the

15:37:26 13   second is 49, and then the third is 52 -- 50, 52, 53, 56,

15:37:47 14   and 63?

15:37:57 15            THE COURT:  That's what I said.  I think we're

15:37:59 16   all on the same page.

15:38:00 17            MR. LOWELL:  Thank you.

15:38:00 18            THE COURT:  So how is it that you want to do

15:38:04 19   preemptory strikes?  Preemptory strikes we will do 10 and 6

15:38:10 20   on the first 28.

15:38:14 21            MR. LOWELL:  And, Your Honor, we need just a

15:38:16 22   short break to be able to confer with our client.

15:38:19 23            THE COURT:  Absolutely.  What I was going to do

15:38:22 24   is bring the jurors in, in case you want to remind

15:38:25 25   yourselves what they look like.

15:38:27  1              MR. LOWELL:  And then, so if I remember what you

15:38:29  2    said in the status conference, it would be the government

15:38:32  3    gets one, and then we do two, and the government gets one

15:38:35  4    and we do two.  And the government gets one, and we do two.

15:38:40  5    The government gets one, we do two.  And then it's 1, 1, 1,

15:38:45  6    1, 1, 1.

15:38:47  7              THE COURT:  Yes.  Any objection to that?

15:38:49  8              MR. HINES:  No.

15:38:50  9              THE COURT:  Okay.  So I am not going to excuse

15:39:00 10    juror numbers 66 through 77 quite yet, just in case there is

15:39:05 11    a problem that we notice when we're in here.  But let's --

15:39:09 12    I'm going to ask anyone who is sitting on my left side of

15:39:12 13    the courtroom to move over so that we can bring the jurors

15:39:17 14    in.  Do we have enough seats on that side, Mark?

15:39:25 15              All right.  We'll be back.  And you want five or

15:39:30 16    ten minutes to talk?

15:39:30 17              MR. LOWELL:  Yes.  Ten minutes.  Every time I

15:39:34 18    say five, you know it would be ten, so if we could have ten

15:39:40 19    that would be great.

15:39:48 20              THE COURT:  Okay.

15:39:49 21              COURTROOM DEPUTY:  All rise.

15:39:50 22              (A brief recess was taken.)

15:57:25 23              THE COURT:  All right.  Everyone, please be

15:57:28 24    seated.  All right.  We're almost done for those of you who

15:57:32 25    are sitting over here waiting.

15:57:37  1                    Mr. Buckson.

16:08:02  2                    (Preemptory juror strikes were conducted.)

16:13:33  3                    COURTROOM DEPUTY:  Folks, when I call your

16:14:30  4   number, please come forward.  You're going to come through

16:14:43  5   here, you're going to walk back here, enter the jury box

16:14:47  6   starting with that first chair, the first row closest to

16:14:50  7   that side of the courtroom.

16:14:51  8                    Juror number 3.

16:14:59  9                    Juror number 5.

16:15:04 10                    Juror number 16.

16:15:16 11                    Juror number 19.

16:15:26 12                    Juror number 20.

16:15:39 13                    Juror number 26.

16:15:46 14                    Juror number 31.

16:15:56 15                    Juror number 33.

16:16:06 16                    You're going to start in the second row all the

16:16:12 17   way, the first chair.

16:16:14 18                    Juror number 34.

16:16:19 19                    Juror number 37.

16:16:29 20                    Juror number 38.

16:16:40 21                    Juror number 39.

16:17:01 22                    Juror number 50.

16:17:08 23                    Juror number 52.

16:17:31 24                    Juror number 53.

16:17:36 25                    Juror number 65.

16:18:08  1          THE COURT:  All right.  We have selected our

16:19:25  2   jury.  So everyone who is sitting in the back, you spent a

16:19:36  3   good portion of your day here, we are very grateful for you

16:19:39  4   coming in here and participating in this.  You are excused

16:19:43  5   with our thanks.

16:19:45  6          COURTROOM DEPUTY:  All rise.

16:19:48  7          (Jury pool excused from the courtroom at

16:20:10  8   4:19 p.m.)

16:20:18  9          COURTROOM DEPUTY:  Members of the jury, please

16:20:25 10   rise and raise your right hand.  You and each of you do

16:20:31 11   swear, those of you who swear and you, and each of you do

16:20:34 12   affirm, those of who do affirm, that you will well and truly

16:20:38 13   try the issue joined in this indictment between the United

16:20:40 14   States and the defendant, Robert Hunter Biden, and that you

16:20:43 15   will a true verdict render according to the evidence, so

16:20:47 16   help you God, those of you who swear and you do so affirm

16:20:51 17   those of you who affirm.

16:20:53 18          (Jury said I do)

16:20:57 19          THE COURT:  All right.  My plan was to read the

16:21:08 20   jury, the preliminary jury instructions to the jury today,

16:21:12 21   so that tomorrow we can start with opening statements.  Any

16:21:18 22   concerns?

16:21:19 23          MR. HINES:  Yes, we're good with that, Your

16:21:21 24   Honor, thank you.

16:21:21 25          MR. LOWELL:  Reading them now is fine.

THE COURT:  All right.  Members of the jury, now that you have been sworn, let me tell you what your role is as jurors in this case.  Under our system of justice, your role as the jury is to find the facts of the case based on the evidence you will see and hear during the trial.  From that evidence, you will decide what the facts are.  You will then apply to those facts the law that I will give to you in my final instructions.  That is how you will reach your verdict.

I've just mentioned facts and law.  Your job is to find the facts.  Mine is to deal with the law.  I play no part in finding the facts.  You should not take anything I may say or do during the trial as indicating what I think of the evidence or about what your verdict should be.  My role is to make whatever legal decisions that have to be made during the course of the trial, and to explain to you the legal principles that must guide you in your decisions.

You must apply my instructions about the law. This includes these that I am giving you now, and those that I will give at the end of trial.  Each of the instructions is important.  You must not substitute your own notion or opinion about what the law is or ought to be.  You must follow the law that I give to you, whether you agree with it or not.

Perform these duties fairly and impartially.  Do

not allow sympathy, prejudice, fear, political, or other beliefs, or public opinions to influence you.  You should also not be influenced by any person's race, color, religion, national ancestry, or gender.

The Sixth Amendment of our constitution guarantees a trial by an impartial jury.  This means that, as jurors, you must decide this case based solely on the evidence and law presented to you here in this courtroom. Until all the evidence and arguments have been presented and you begin to deliberate, you may not discuss this case with anyone, even your fellow jurors.  After you start to deliberate, you may discuss the case, the evidence, and the law as it has been presented, but only with your fellow jurors.  You cannot discuss it with anyone else until you have returned a verdict, and the case has come to an end.

So now let me give you some guidance for conducting yourselves as jurors.

1.  Keep an open mind.  Do not make up your mind about the verdict until you have heard all of the evidence, and I have given final instructions about the law at the end of the trial, and you have discussed the case with your fellow jurors during your deliberations.

2.  As I just told you, do not discuss the case among yourselves until the end of the trial when you retire to the jury room to deliberate.  You need to allow each

juror the opportunity to keep an open mind throughout the
entire trial.  During trial you may talk with your fellow
jurors about anything else of a personal nature or of common
interest, but not this case.

     3.  During the trial you should not speak to any
of the parties, lawyers, or witnesses involved in this case,
not even to pass the time of day or exchange pleasantries.
If any lawyer, party, or witness does not speak to you when
you pass in the hall, ride the elevator, or the like, they
are not trying to be rude.  Remember it is because they are
not supposed to talk or visit with you, either.

     4.  Do not talk with anyone or listen to others
talk about this case until the trial has ended and you have
been discharged as jurors.  It is important not only that
you do justice in this case, but that you give the
appearance of justice.  If anyone should try to talk to you
about this case during the trial, please report that to me.
You should not discuss that with any other jurors.  You
should instead tell my courtroom deputy immediately.

     5.  When I say do not talk with anyone else or
listen to others talk about the case, I really mean anyone.
And that includes family and friends when you go home.  You
may tell your family or friends that you have been selected
as a juror in a case and you may tell them how long the
trial is expected to last.  However, you should also tell

them that the judge instructed you not to talk anymore about
the case and that they should not talk to you about it.  The
reason for this is that sometimes someone else's thoughts
can influence you.  Your thinking should be influenced only
by what you learn in the courtroom.

      6.  When I say do not talk with anyone else or
listen to the case, again, that means anyone, including the
press or members of the public, who are interested in
viewing this trial.

      Until the trial is over and your verdict is
announced, do not watch or listen to any television, radio,
podcast, or any other type of media (including social media)
programs or reports about the case or read any news or
internet sources addressing the case in any way.  There may
be press here.  It may be tempting to click on an article or
look at pictures or search the internet to see what is being
said about the case or the jury or the evidence.  Do not do
it.  This is very important.  Your role is to decide this
case based on the evidence presented in this courtroom.

      8.  During the trial, you must not conduct any
independent research about this case, or the matters, legal
issues, individuals, or other entities involved in this
case.  You must not visit the scene or conduct experiments.
Also, just as you must not search or review any traditional
sources of information about this case (such as

07:29:00 1    dictionaries, reference materials, or television news or

07:29:04 2    entertainment programs), you also must not search the

07:29:10 3    internet or any other electronic resources for information

07:29:15 4    about this case or the witnesses or parties involved in it.

07:29:19 5    The bottom line for the important work you will be doing is

07:29:29 6    that you must base your verdict only on the evidence

07:29:32 7    presented in this courtroom, along with instructions on the

07:29:37 8    law that I will provide.

07:29:38 9            9.   One of my first points was do not discuss

07:29:43 10   the case among yourselves.  The exception to that is at the

07:29:47 11   end of the case when you begin your deliberations.  At that

07:29:52 12   point, you may, in fact you must, discuss the case with each

07:29:57 13   other, but only each other.  During deliberations, you must

07:30:04 14   continue not to communicate about the case with anyone else.

07:30:09 15   Most of us use smart phones, tablets, or computers in our

07:30:15 16   daily lives to access the internet, for information, and to

07:30:20 17   participate in social media platforms.  To remain impartial

07:30:25 18   jurors, however, you must not communicate with anyone about

07:30:29 19   this case, whether in person, in writing, or through e-mail,

07:30:34 20   text messaging, blogs, or social media website's and apps

07:30:42 21   (like Twitter, Facebook, Instagram, LinkedIn, YouTube,

07:30:49 22   WhatsApp, and SnapChat)

07:30:52 23           10.  Please note that these restrictions are

07:30:58 24   about all kinds of communications about this case, even

07:31:03 25   those that are not directed at any particular person or

07:31:08  1    group.  Communications like blog posts or tweets can be

07:31:13  2    shared to an ever-expanding circle of people and can have an

07:31:19  3    unexpected impact on this trial.  For example, a post you

07:31:24  4    make to your social media account might be viewable by a

07:31:29  5    witness who is not supposed to know what has happened in

07:31:33  6    this courtroom before he or she has testified.  For these

07:31:37  7    reasons, you must inform me immediately if you learn about

07:31:43  8    or share any information about the case outside of this

07:31:53  9    courtroom, even if by accident, or if you discover that

07:32:01 10    another juror has done so.

07:32:03 11            11.  You should also be aware of an even newer

07:32:07 12    challenge for trials such as this one - persons, entities,

07:32:14 13    and even foreign governments may seek to manipulate your

07:32:18 14    opinions, or your impartiality during deliberations, using

07:32:23 15    the communications I've already discussed or using fake

07:32:27 16    social media accounts.  But these misinformation efforts

07:32:32 17    might also be undertaken through targeted advertising online

07:32:36 18    or in social media.  Many of the tools you use to access

07:32:41 19    e-mail, social media, and the internet display third-party

07:32:49 20    notifications, pop-ups, or ads while you are using them.

07:32:55 21    These communications may be intended to persuade you or your

07:33:00 22    community on an issue and could influence you in your

07:33:12 23    service as a juror in this case.  For example, while

07:33:31 24    accessing your e-mail, social media, or the internet,

07:33:38 25    through no fault of your own, you might see pop-ups

07:33:42 1    containing information about this case or the matters, legal

07:33:46 2    principles, individuals, or other entities involved in this

07:33:50 3    case.  Please be aware of this possibility.  Ignore any

07:33:55 4    pop-ups or ads that might be relevant to what we are doing

07:34:00 5    here, and certainly do not click through to learn more if

07:34:04 6    these notifications or ads appear.  If this happens, you

07:34:10 7    must let me know.  Because it is so important to the

07:34:13 8    parties' rights that you decide this case based solely on

07:34:18 9    the evidence and my instructions on the law, at the

07:34:21 10   beginning of each day, I may ask you whether you have

07:34:25 11   learned about or shared any information outside of this

07:34:28 12   courtroom.

07:34:40 13        12.  Finally, you should not concern yourselves

07:34:44 14   with or consider the possible punishment that might be

07:34:49 15   imposed if you return a verdict of guilty.

07:34:52 16        I have told you a number of times that you must

07:35:04 17   make your decision in this case based only on the evidence

07:35:07 18   that you see and hear in the courtroom and not let rumors,

07:35:11 19   suspicions, or anything else that you may see or hear

07:35:18 20   outside of court influence your decision in any way.

07:35:22 21        So let me tell you what is the evidence from

07:35:25 22   which you are to find the facts.  The evidence consists of:

07:35:30 23        1.  The testimony of the witnesses;

07:35:34 24        2.  Documents and other things received as

07:35:38 25   exhibits; and

3.  Any fact or testimony that is stipulated; that is, formally agreed to by the parties.

The following things are not evidence:

1.  Statements and arguments of the lawyers for the parties in this case;

2.  Questions by the lawyers and questions that I might ask.  You must not assume that a fact is true just because one of the lawyers or I ask a question about it.  It is the witness answers that are evidence.  Of course, you may need to consider the question to know what a witness means by his or her answer.  For example, if a witness answers yes to a question, you will have to consider the question to understand what the witness is saying.

3.  Objections by lawyers, including objections in which the lawyers state facts;

4.  Any testimony I strike or tell you to disregard; and

5.  Anything you may see or hear about this case outside the courtroom is not evidence.

You should use your common sense in weighing the evidence.  Consider it in light of your every day experience with people and events, and give it whatever weight you believe it deserves.  If your experience and common sense tell you that certain evidence reasonably leads to a conclusion, you may reach that conclusion.

The rules of evidence control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  An objection simply means that the lawyer is asking me to decide whether the evidence should be allowed under the rules.  Lawyers have a responsibility to their clients to make objections when they think evidence being offered is improper under the rules of evidence.  You should not be influenced by the fact that an objection is made.

You should also not be influenced by my rulings on objections to evidence.  If I overrule an objection, the question may be answered or the exhibit may be received as evidence, and you should treat the testimony or exhibit like any other.  I may allow evidence (testimony or exhibits) only for a limited purpose.  If I do that, you must consider the evidence only for that limited purpose, and you must follow that instruction.

If I sustain an objection, the question will not be answered or the exhibit will not be received as evidence.  Whenever I sustain an objection, you must disregard the question or the exhibit entirely.  Do not think about or guess what the witness might have said in answer to the question; do not think about or guess what the exhibit might

07:38:53 1  have shown.  Sometimes a witness may have already answered

07:39:01 2  before a lawyer objects or before I rule on the objection.

07:39:07 3  If that happens and I sustain the objection, you should

07:39:11 4  disregard the answer to that question.

07:39:13 5          Also, I may order that some testimony or other

07:39:17 6  evidence be stricken or removed from the record.  If I do

07:39:20 7  that, I will instruct you to disregard the evidence.  That

07:39:24 8  means when you are deciding the case, you must not consider

07:39:30 9  or be influenced in any way by the testimony or other

07:39:34 10 evidence that I told you to disregard.

07:39:37 11         Although the lawyers may call your attention to

07:39:46 12 certain facts or factual conclusions that they think are

07:39:49 13 important, what the lawyers say is not evidence and is not

07:39:53 14 binding on you.  It is your own recollection and

07:39:59 15 interpretation of the evidence that controls your decision.

07:40:00 16 Also, do not assume from anything I do or say during the

07:40:06 17 trial that I have any opinion about the evidence or about

07:40:11 18 any of the issues in this case, or about what your verdict

07:40:15 19 should be.

07:41:51 20         Two types of evidence may be used in this trial,

07:41:57 21 direct evidence and circumstantial (or indirect) evidence.

07:42:01 22 You may use both types of evidence in reaching your verdict.

07:42:05 23         "Direct evidence" is simply evidence which, if

07:42:09 24 believed, directly proves a fact.  An example of "direct

07:42:14 25 evidence" occurs when a witness testifies about something

the witness knows from his or her own senses - something the
witness has seen, touched, heard, or smelled.

"Circumstantial evidence" is evidence which, if
believed, indirectly proves a fact.  It is evidence that
proves one or more facts from which you could find or infer
the existence of some other fact or facts.  An inference is
simply a deduction or conclusion that reason, experience,
and common sense lead you to make from the evidence.  An
inference is not a suspicion or a guess.  It is a reasoned,
logical decision to find that a disputed fact exists on the
basis of another fact.

For example, if a witness testified that she had
been outside and saw that it was raining, that testimony
would be direct evidence that it was raining.  On the other
hand, if a witness testified that she saw someone walk in
from outside wearing a wet raincoat and carrying a wet
umbrella, that testimony would be circumstantial evidence
that it was raining, from which you could infer that it was
raining.  You would not have to find that it was raining,
but you could.

Sometimes, different inferences may be drawn
from the same set of facts.  The government may ask you to
draw one inference, and the defense may ask you to draw
another.  You, and you alone, must decide what inferences
you will draw based on all the evidence.

07:44:18 1          You should consider all the evidence that is

07:44:20 2     presented in this trial, direct and circumstantial.  The law

07:44:24 3     makes no distinction between the weight that you should give

07:44:27 4     to either direct or circumstantial evidence.  It is for you

07:44:34 5     to decide how much weight any piece of evidence gets.

07:44:37 6          In deciding what the facts are, you must decide

07:44:47 7     what testimony you believe and what testimony you do not

07:44:50 8     believe.  You are the sole judges of the credibility of the

07:44:54 9     witnesses.  Credibility refers to whether a witness is

07:44:58 10    worthy of belief:  Is the witness truthful?  Is the witness

07:45:06 11    testimony accurate?  You may believe everything a witness

07:45:12 12    says, or only part of it, or none of it.

07:45:15 13         You may decide whether to believe a witness

07:45:19 14    based on his or her behavior and manner of testifying, the

07:45:27 15    explanations the witness gives, and all the other evidence

07:45:31 16    in the case, just as you would in any important matter where

07:45:37 17    you are trying to decide if a person is being truthful,

07:45:41 18    straightforward, and accurate in his or her recollection.

07:45:46 19    In deciding the question of credibility, remember to use

07:45:50 20    your common sense, your good judgment, and your experience.

07:45:54 21         In deciding what to believe, you may consider a

07:45:58 22    number of factors:

07:46:00 23         1.  The opportunity and ability of the witness

07:46:07 24    to see or hear or know the things about which the witness

07:46:11 25    testifies;

2.   The quality of the witness's knowledge, understanding, and memory;

3.   The witness's appearance, behavior, and manner while testifying;

4.   Whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice;

5.   Any relation the witness may have with a party in the case and any effect that the verdict may have on the witness;

6.   Whether the witness said or wrote anything before trial that is different from the witness testimony in court;

7.   Whether the witness testimony is consistent or inconsistent with other evidence that you believe; and

8.   Any other factors that bear on whether the witness should be believed.  Inconsistencies or discrepancies in a witness's testimony or between the testimony of different witnesses may or may not cause you to disbelieve that witness's testimony.  Two or more persons witnessing an event may simply see or hear it differently. Mistaken recollection, like failure to recall, is a common human experience.  In weighing the effect of an inconsistency, you should consider whether it is about a matter of importance or an insignificant detail.  You should also consider whether the inconsistency is innocent or

intentional.

You are not required to accept testimony even if the testimony is not contradicted and the witness is not impeached. You may decide that the testimony is not worthy of belief because of the witness's bearing and demeanor, or because of the inherent improbability of the testimony, or for other reasons that are sufficient to you.

After you make your own judgment about the believability of a witness, you can then attach to that witness testimony the importance or weight that you think it deserves.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important than numbers is how believable the witnesses are, and how much weight you think their testimony deserves.

During the trial it may be necessary for me to talk with the lawyers out of your hearing. That is called a bench or side-bar conference. If that happens, please be patient. We also ask that you advise me, through my courtroom deputy, if you are able to hear any of the bench or side-bar conferences. We usually put on static and if you hear anything let us know, because the purpose is to hold these discussions outside the hearing of the jury, for important reasons.

07:50:40  1          I know you may be curious about what we are

07:50:44  2   discussing.  We are not trying to keep important information

07:50:47  3   from you.  These conferences are necessary for me to discuss

07:50:51  4   with the lawyers objections to evidence and to be sure that

07:50:58  5   evidence is presented to you correctly under the rules of

07:51:01  6   evidence.  We will, of course, do what we can to keep the

07:51:04  7   number and length of these conferences to a minimum.  If I

07:51:08  8   think the conference will be long, I will call a recess. If

07:51:08  9   at any point we're over here talking and you want to stand

07:51:11 10   up to stretch your legs, you should feel free to do so.

07:51:11 11          I may not always grant a lawyer's request for a

07:51:16 12   conference.  Do not consider my granting or denying a

07:51:20 13   request for a conference as suggesting my opinion of the

07:51:24 14   case or of what your verdict should be.

07:51:26 15          Only the lawyers and I are allowed to ask

07:51:36 16   questions of witnesses.  You are not permitted to ask

07:51:39 17   questions of witnesses.  If, however, you are unable to hear

07:51:42 18   a witness or a lawyer or see something that is being

07:51:46 19   displayed on the screen or elsewhere in the courtroom,

07:51:49 20   please raise your hand and I will correct the situation.

07:51:52 21          At the end of the trial, you will have to make

07:52:47 22   your decision based on what you remember of the evidence.

07:52:52 23   You will not have a written transcript of the testimony to

07:52:56 24   review.  You must play close attention to the testimony as

07:53:00 25   it is given.

If you wish, you may take notes to help you remember what witnesses said. My courtroom deputy will arrange for pens, pencils, and paper. If you do take notes, please keep them to yourself until the end of trial when you and your fellow jurors go to the jury room to decide the case. Here are some other specific points to keep in mind about note taking:

1. Note-taking is permitted, but it is not required. You are not required to take notes. How many notes you want to take, if any, is entirely up to you.

2. Please make sure that note-taking does not distract you from your tasks as jurors. You must listen to all the testimony of each witness. You also need to decide whether and how much to believe each witness. That will require you to watch the appearance, behavior, and manner of each witness while he or she is testifying. You can not write down everything that is said and there is always a fear that a juror will focus so much on note-taking that he or she will miss the opportunity to make important observations.

3. Your notes are memory aids; they are not evidence. Notes are not a record or written transcript of the trial. Whether or not you take notes, you will need to rely on your own memory of what was said. Notes are only to assist your memory; you should not be overly influenced by

notes.

4.  In your deliberations, do not give any more or less weight to the views of a fellow juror just because that juror did or did not take notes.  Do not assume that just because something is in someone's notes that it necessarily took place in court.  It is just as easy to write something down incorrectly as it is to hear or remember it incorrectly.  Notes are not entitled to any greater weight than each juror's independent memory of the evidence.  You should rely on your individual and collective memories when you deliberate and reach your verdict.

5.  When we take breaks during the day and when we take our recess each night, please take your notes to the jury room and leave your notes there.  Do not take your notes away from the jury room.  No one will read your notes but you.  My staff is responsible for making sure that no one looks at your notes.  Immediately after you have finished your deliberations and I have accepted your verdict, my staff will collect and destroy your notes to protect the secrecy of your deliberations.

The trial will begin tomorrow morning when you come in at 9:00 a.m.  It will proceed in the following manner:

First:  The lawyers will have an opportunity to make opening statements to you.  The prosecutor may make an

opening statement at the beginning of the case.  The

defendant's lawyer may make an opening statement after the

prosecutor's opening statement, or the defendant may

postpone the making of an opening statement until after the

government finishes presenting its evidence.  The defendant

is not required to make an opening statement.

The opening statements are simply an outline to

help you understand what each party expects the evidence to

show.  What is said in the opening statements is not itself

evidence.

Second:  After opening statements, the

government will introduce the evidence that it thinks proves

the charges stated in the indictment.  The government will

present witnesses and the defendant's lawyer may

cross-examine those witnesses.  The government may also

offer documents and other exhibits into evidence.

Third:  After the government has presented its

evidence, the defendant may present evidence, but he is not

required to do so.  As I will tell you many times during

this trial, the government always has the burden or

obligation to prove each and every element of the offenses

charged beyond a reasonable doubt.  The defendant is

presumed to be innocent of the charges.  The law never

imposes on a defendant in a criminal case the burden of

proving his innocence by calling any witnesses, producing

07:59:16 1    any exhibits, or introducing any evidence.

07:59:18 2              Fourth:  After all of the evidence has been

07:59:22 3    presented, the lawyers will have an opportunity to present

07:59:25 4    closing arguments.  Closing arguments are designed to

07:59:29 5    present to you the parties' theories about what the evidence

07:59:33 6    has shown and what conclusions may be drawn from the

07:59:37 7    evidence.  What is said in closing arguments is not

07:59:41 8    evidence, just as what is said in the opening statements is

07:59:46 9    not evidence.

07:59:47 10             After you have heard the closing arguments, I

07:59:56 11   will give you orally and in writing the final instructions

08:00:00 12   concerning the law that you must apply to the evidence

08:00:04 13   presented during the trial.  As I am doing now, I may also

08:00:09 14   give you instructions on certain aspects of the law

08:00:12 15   throughout the trial as well as at the end of the trial.

08:00:15 16             After my final instructions on the law, you will

08:00:23 17   retire to consider your verdict.  Your deliberations are

08:00:27 18   secret.  You will not be required to explain your verdict to

08:00:31 19   anyone.  Your verdict must be unanimous; all twelve jurors

08:00:38 20   who deliberate must agree to it or there will be no verdict.

08:00:42 21   At the end of all of the evidence, you will discuss the case

08:00:46 22   among yourselves in the jury room, and ultimately each of

08:00:50 23   you will have to make up his or her own mind.

08:00:54 24             You must keep your minds open during this trial.

08:00:58 25   Do not make up your mind about any of the questions in the

08:01:04  1    case until you have heard each piece of evidence and all of

08:01:08  2    the law which you must apply to the evidence, in other words

08:01:16  3    until you begin your deliberations.

08:01:27  4          The government has charged the defendant, Robert

08:01:32  5    Hunter Biden, with violating federal law, specifically:

08:01:37  6          Count One charges the defendant with making a

08:01:40  7    false statement material to a firearms sale, in violation of

08:01:45  8    Title 18, United States Code, Section 922(a)(6);

08:01:50  9          Count Two charges defendant with making a false

08:01:54  10   statement in a firearms transaction record in violation of

08:01:59  11   Title 18, United States Code, Section 924(a)(1)(A); and

08:02:04  12         Count Three charges defendant with possession of

08:02:08  13   a firearm by a drug user or drug addict, in violation of

08:02:15  14   Title 18, United States Code, Section 922(g)(3).

08:02:20  15         The charges against the defendant are contained

08:02:23  16   in the indictment.  An indictment is just the formal way of

08:02:28  17   specifying the exact crimes the defendant is accused of

08:02:33  18   committing.  An indictment is simply a description of the

08:02:37  19   charges against a defendant.  It is an accusation only.  An

08:02:43  20   indictment is not evidence of anything, and you should not

08:02:46  21   give any weight to the fact that the defendant has been

08:02:51  22   indicted in making your decision in this case.

08:02:55  23         The defendant, Robert Hunter Biden, has pleaded

08:03:05  24   not guilty to the offenses charged.  He is presumed to be

08:03:09  25   innocent.  He starts the trial with a clean slate, with no

08:03:14  1  evidence against him.  The presumption of innocence stays

08:03:17  2  with the defendant unless and until the government presents

08:03:20  3  evidence that overcomes that presumption by convincing you

08:03:25  4  that he is guilty of the offenses charged beyond a

08:03:29  5  reasonable doubt.

08:03:30  6          The presumption of innocence requires that you

08:03:35  7  find the defendant not guilty, unless you are satisfied that

08:03:38  8  the government has proved guilt beyond a reasonable doubt.

08:03:42  9  The presumption of innocence means that the defendant has no

08:03:46 10  burden or obligation to present any evidence at all or to

08:03:50 11  prove that he is not guilty.  The burden or obligation of

08:03:55 12  proof is on the government to prove that the defendant is

08:03:58 13  guilty, and this burden stays with the government throughout

08:04:02 14  the trial.

08:04:02 15          In order for you to find the defendant guilty of

08:04:07 16  the offenses charged, the government must convince you that

08:04:14 17  he is guilty beyond a reasonable doubt.  That means that the

08:04:18 18  government must prove each and every element of the offenses

08:04:22 19  charged beyond a reasonable doubt.  A defendant may not be

08:04:26 20  convicted based on suspicion or conjecture, but only on

08:04:31 21  evidence proving guilt beyond a reasonable doubt.

08:04:36 22          Proof beyond a reasonable doubt does not mean

08:04:39 23  proof beyond all possible doubt or to a mathematical

08:04:46 24  certainty.  Possible doubts or doubts based on conjecture or

08:04:51 25  speculation are not reasonable doubts.  A reasonable doubt

08:04:54 1    is a fair doubt based on reason, logic, common sense, or

08:04:59 2    experience.  A reasonable doubt means a doubt that would

08:05:03 3    cause an ordinary reasonable person to hesitate to act in

08:05:08 4    matters of importance in his or her own life.  It may arise

08:05:13 5    from the evidence, or from the lack of evidence, or from the

08:05:20 6    nature of the evidence.

08:05:21 7         If, after hearing all the evidence, you are

08:05:26 8    convinced that the government has proved the defendant

08:05:30 9    guilty beyond a reasonable doubt, you should return a

08:05:32 10   verdict of guilty.  However, if you have a reasonable doubt

08:05:39 11   as to an element of an offense, then you must return a

08:05:43 12   verdict of not guilty.

08:05:44 13        So that is the end of the preliminary

16:47:57 14   instructions.  You all have a copy of those.  You can look

16:47:59 15   at them at any time.  And what I am going to do now is

16:48:03 16   excuse you and ask you to be back here for us to begin

16:48:09 17   tomorrow morning at 9:00 a.m., so if you could get here

16:48:14 18   earlier so that you have time to get through security and

16:48:17 19   get up to the jury room.  I will remind you of everything

16:48:24 20   that I told you before when you were sitting in the back and

16:48:28 21   just now do not talk with anyone about this case.  Do not do

16:48:32 22   any investigation on your own.  Do not talk or listen to

16:48:35 23   other people talking about this case.

16:48:38 24        All right.  I will excuse you now.  And Mark,

16:48:41 25   are you going to show them -- and Mr. Buckson will show you

16:48:45  1    where to go and where you should come tomorrow.

16:48:47  2                    COURTROOM DEPUTY:  All rise.

16:48:49  3              (Jury exiting the courtroom at 4:48 p.m.)

16:49:07  4                    THE COURT:  All right.  Can you just be seated

16:49:26  5    for a minute.  I just want to -- there are a couple of

16:49:32  6    things I wanted to ask you.

16:49:33  7                    Okay.  So we're going to do openings first thing

16:49:36  8    tomorrow.  Have you guys discussed whether you're going to

16:49:40  9    exchange demonstratives in this trial?

16:49:42 10                    MR. HINES:  We haven't discussed it.  My

16:49:45 11    practice is usually to allow defense counsel before the

16:49:48 12    opening to look at my opening demonstratives and vice versa

16:49:51 13    before we begin.

16:49:52 14                    MR. LOWELL:  I have no problem with that, judge,

16:49:53 15    we'll do that later.

16:49:54 16                    THE COURT:  That's fine, I was just asking if

16:49:57 17    you had a practice.

16:49:58 18                    Okay.  Then let me ask the government, I

16:50:03 19    received a request from the press last week about exhibits,

16:50:09 20    doing something with the exhibits, posting them some place.

16:50:12 21    Did you see that motion?

16:50:14 22                    MR. HINES:  We did see the motion, Your Honor.

16:50:16 23    We took-- I believe we represented -- we took no position on

16:50:21 24    it.

16:50:21 25                    THE COURT:  They're asking you to do something

16:50:23  1   though, that's why I'm asking for your input.  I don't know

16:50:26  2   what kind of -- what that requires of you, so that's why I'm

16:50:31  3   asking.

16:50:32  4        MR. HINES:  Mechanically, first of all, there

16:50:35  5   are certain exhibits that we just can't share, physical

16:50:38  6   exhibits, things of that nature that aren't able to be

16:50:41  7   transmitted.  It is possible that we could transmit via a

16:50:49  8   certain share platform exhibits that are admitted into

16:50:51  9   evidence each day.  I don't know that it will be able to be

16:50:55 10   on the same day, it might end up being the following day

16:50:59 11   given our staffing limitations and the like, but we could

16:51:01 12   set up a process like that.

16:51:03 13        THE COURT:  So we'll try and figure out a way.

16:51:05 14   Let me talk with my folks in the clerk's office, too, as to

16:51:09 15   whether if we have the exhibits we can do that for exhibits

16:51:14 16   that are capable of being -- capable of being uploaded.

16:51:20 17        So we'll figure that out and issue a ruling on

16:51:24 18   that.

16:51:24 19        MR. LOWELL:  Judge, one of the issues on that is

16:51:26 20   if there is an exhibit that comes in on cross, for example,

16:51:32 21   it may not be in their database.  So when it's admitted, we

16:51:39 22   just have to figure out what that means and how to do that.

16:51:42 23   I'm not sure how that works.

16:51:44 24        THE COURT:  Okay.  If you guys have any ideas, I

16:51:47 25   am the last person who anybody would want to have to figure

16:51:50 1   this out.  But I can talk with my folks.  I mean, it may be

16:51:53 2   that Mr. Buckson has all of the exhibits and he can post

16:51:57 3   them.  I just -- I don't know.  But given that the order

16:52:01 4   that was presented to me was instruct the government to do

16:52:05 5   something, I felt like --

16:52:06 6              MR. HINES:  We appreciate that.

16:52:08 7              THE COURT:  There should be more than you saying

16:52:10 8   you're not taking a position.

16:52:12 9              MR. HINES:  There is a file sharing platform I

16:52:14 10  noted in that order, U.S.A. effects, there is an alternative

16:52:19 11  called JESS, we have something available to us, we can

16:52:21 12  transmit to one body of people, we can't be responsible for

16:52:25 13  transmitting it out to a whole host of people, unless there

16:52:28 14  is an alternative on the Court's website, we're happy to

16:52:33 15  facilitate that as well.

16:52:34 16             THE COURT:  We'll take a look at that and figure

16:52:36 17  it out.

16:52:36 18             What is left for me to rule on?  I know that

16:52:40 19  there was some objections that we got from the defendant

16:52:45 20  yesterday which I haven't had a chance to look at.  What

16:52:47 21  else is there?

16:52:49 22             MR. HINES:  On that note, Your Honor, we do

16:52:51 23  intend to file this evening a short response.  I think some

16:52:54 24  of the objections have already been resolved, but it will be

16:52:57 25  very short and brief and I anticipate we'll be able to

16:53:01 1    address them tomorrow morning.

16:53:02 2              The first witness we expect to testify is

16:53:06 3    Special Agent Erica Jensen of the FBI, and I anticipate most

16:53:10 4    of the exhibits that are raised in the defendant's

16:53:13 5    objections will be -- we will be seeking to admit through

16:53:19 6    her, we'll make sure that's presented to the Court early in

16:53:23 7    the morning.

16:53:23 8              THE COURT:  I know I have that.  Is there

16:53:25 9    anything else that I have not ruled on?

16:53:28 10             MR. HINES:  No, Your Honor, thank you.

16:53:29 11             MR. LOWELL:  Judge, on your ruling on the expert

16:53:32 12   issue, what we will do to follow your order is that when the

16:53:36 13   government tells us they're going to call their DEA person,

16:53:40 14   that's when we'll bring our person, so that they can hear

16:53:42 15   that, and then at the end of the day if it's still relevant,

16:53:46 16   that's when you can do the voir dire or whatever you want to

16:53:48 17   do.

16:53:48 18             THE COURT:  That sounds great, thank you.

16:53:50 19             MR. LOWELL:  That's how we'll do that one.

16:53:52 20             Secondly, on your other ruling, neither the

16:53:55 21   government or you, it's not necessary for tomorrow, this

16:53:58 22   addressed the issue of the part of the Count 2, which talks

16:54:01 23   about keeping the record, the 4473 record, that phraseology.

16:54:06 24   So it's not an issue until maybe the government calls

16:54:11 25   Mr. Cleveland.  I would like to think about it and get

16:54:13 1    guidance from you before that so I don't trip up, I will, I

16:54:18 2    won't do anything without telling you, that's where I'm

16:54:21 3    having an issue is which is the form that is quote kept in

16:54:24 4    the record end quote, but it's not an issue tomorrow, so let

16:54:28 5    me think that through.

16:54:30 6                THE COURT:  Okay.  All right.  Anything else?

16:54:33 7                MR. LOWELL:  And then lastly, in talking to the

16:54:36 8    government about getting ahead of time, the order of their

16:54:39 9    witnesses as we would tell them.  At least for the purpose

16:54:43 10   of what we talked about which is to getting you the night

16:54:47 11   before or early in the morning what might be the cross, so

16:54:50 12   I'll need them to tell me, gauge how much time we have in a

16:54:54 13   day so I can get ahead of that.

16:54:57 14               THE COURT:  All right.  Certainly if you don't

16:54:59 15   have time to get us the cross stuff in the morning, we

16:55:02 16   understand, you will get it when you can get it to us.

16:55:05 17               MR. LOWELL:  If they can tell us in advance,

16:55:07 18   that will make it a lot easier, certainly I know their first

16:55:11 19   witness and their second, I don't know how long tomorrow

16:55:14 20   willing, maybe we'll get it and we'll be on top of it.

16:55:18 21               THE COURT:  Anything else?

16:55:19 22               MR. HINES:  No, Your Honor, that's all.

16:55:20 23               THE COURT:  All right.  Thank you all.  And we

16:55:22 24   will see you here tomorrow morning.

16:55:26 25               COURTROOM DEPUTY:  All rise.  Court is in

16:55:37   1       recess.

2                         (Court adjourned at 4:55 p.m.)

3

4              I hereby certify the foregoing is a true and
       accurate transcript from my stenographic notes in the proceeding.

5

6                                    /s/ Dale C. Hawkins
                                     Official Court Reporter
7                                    U.S. District Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25